# EXHIBIT A

**Part
137**

# Minimum Wage Order for the Restaurant Industry

Part 137 of Title 12 of the Official Compilation of Codes, Rules, and Regulations of the state of
New York (Cited as 12 NYCRR 137)

Promulgated by the Commissioner of Labor Pursuant to the Minimum Wage Act
(Article 19 of the New York State Labor Law)

Statutory authority: Labor Law, Article 2, § 21 (11) and Article 19, § 652



As amended
Effective July 24, 2009

Official Compilation of Codes, Rules and Regulations of the State of New York
Title 12. Department of Labor
Chapter II. Division of Labor Standards
Subchapter B. Minimum Wage Orders
Part 137. Restaurant Industry

Subpart 137-1 Minimum Wage and Allowances
Subpart 137-2 Regulations
Subpart 137-3 Definitions

## Subpart 137-1

## Minimum Wage and Allowances

Section
137-1.1  Application
137-1.2  Basic minimum hourly wage rates
137-1.3  Overtime hourly rate
137-1.4  Tip allowance for service employees
137-1.5  Tip allowance for food service worker
137-1.6  Call-in pay rate
137-1.7  Additional rate for spread of hours
137-1.8  Rate for required uniforms
137-1.9  Allowances for meals and lodging

### § 137-1.1  Application.

Every employer in the restaurant industry shall pay to each employee, as defined in this Part, not less than the minimum wage rates provided in this Part.

### § 137-1.2  Basic minimum hourly wage rates.

The basic minimum hourly rate shall be:

(a)  $5.15 per hour on and after March 31, 2000;

(b)  $6.00 per hour on and after January 1, 2005;

(c)  $6.75 per hour on or after January 1, 2006;

(d)  $7.15 per hour on and after January 1, 2007;

(e)  $7.25 per hour on and after July 24, 2009; or, if greater, such other wage as may be established by Federal law pursuant to 29 U.S.C. section 206 or any successor provisions.

### § 137-1.3  Overtime hourly rate.

An employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek.

### § 137-1.4  Tip allowance for service employees.

(a)  Allowance for tips shall not exceed:

2

(1)  On and after March 31, 2000, $1.15 an hour for an employee whose average of tips received is between $1.15 and $1.65 per hour; $1.65 per hour for an employee whose average tips received is $1.65 per hour or more;

(2)  On and after January 1, 2005, $1.35 an hour for an employee whose average of tips received is between $1.35 and $1.90 per hour; $1.90 per hour for an employee whose average of tips received is $1.90 per hour or more;

(3)  On and after January 1, 2006, $1.50 an hour for an employee whose average of tips received is between $1.50 and $2.15 per hour; $2.15 per hour for an employee whose average of tips received is $2.15 per hour or more;

(4)  On and after January 1, 2007, $1.60 an hour for an employee whose average of tips received is between $1.60 and $2.30 per hour; $2.30 per hour for an employee whose average of tips received is $2.30 per hour or more;

(5)  On and after July 24, 2009, $1.60 per hour for an employee whose average of tips received is between $1.60 and $2.35 per hour; $2.35 per hour for an employee whose average of tips received is $2.35 per hour or more.

(b)  No allowance for tips or gratuities shall be permitted for an employee whose weekly average of tips is less than:

(1)  $1.15 per hour on and after March 31, 2000;

(2)  $1.35 per hour on and after January 1, 2005;

(3)  $1.50 per hour on and after January 1, 2006; and

(4)  $1.60 per hour on and after January 1, 2007.

## § 137-1.5  Tip allowance for food service worker.

(a)  On or after March 31, 2000, a food service worker shall receive a cash wage of at least $3.30 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $5.15 per hour.

(b)  On or after January 1, 2005, a food service worker shall receive a cash wage of at least $3.85 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $6.00 per hour.

(c)  On or after January 1, 2006, a food service worker shall receive a cash wage of at least $4.35 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $6.75 per hour.

(d)  On or after January 1, 2007, a food service worker shall receive a cash wage of at least $4.60 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $7.15 per hour.

(e)  On or after July 24, 2009, a food service worker shall receive a cash wage of at least $4.65 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $7.25 per hour.

## § 137-1.6  Call-in pay rate.

(a)  An employee who by request or permission of the employer reports for duty on any day, whether or not assigned to actual work, shall be paid at the applicable minimum wage rate:

> (1)  for at least three hours for one shift, or the number of hours in the regularly scheduled shift, whichever is less;

> (2)  for at least six hours for two shifts totalling six hours or less; or the number of hours in the regularly scheduled shift, whichever is less; and

> (3)  for at least eight hours for three shifts totalling eight hours or less, or the number of hours in the regularly scheduled shift, whichever is less.

## § 137-1.7  Additional rate for spread of hours.

On each day in which the spread of hours exceeds 10, an employee shall receive one hour's pay at the basic minimum hourly wage rate before allowances, in addition to the minimum wages otherwise required in this Part.

## § 137-1.8  Rate for required uniforms.

No allowance for the supply, maintenance, or laundering of required uniforms shall be permitted as part of the minimum wage.  Where an employee purchases a required uniform he shall be reimbursed by the employer for the cost thereof not later than the time of the next payment of wages.  Where the employer fails to launder or maintain required uniforms for any employee, he shall pay such employee in addition to the minimum wage prescribed herein:

(a)  $6.40 per week on and after March 31, 2000, if the employee works more than 30 hours weekly; $5.05 per week on and after March 31, 2000, if the employee works more than 20 but not more than 30 hours weekly; and $3.05 per week on and after March 31, 2000, if the employee works 20 hours or less weekly.

(b)  $7.45 per week on and after January 1, 2005, if the employee works more than 30 hours weekly; $5.90 per week on and after January 1, 2005, if the employee works more than 20 but not more than 30 hours weekly; and $3.55 per week on and after January 1, 2005, if the employee works 20 hours or less weekly;

(c)  $8.40 per week on and after January 1, 2006, if the employee works more than 30 hours weekly; $6.60 per week on and after January 1, 2006, if the employee works more than 20 but not more than 30 hours weekly; and $4.00 per week on and after January 1, 2006, if the employee works 20 hours or less weekly;

(d)  $8.90 per week on and after January 1, 2007, if the employee works more than 30 hours weekly; $7.00 per week on and after January 1, 2007, if the employee works more than 20 but not more than 30 hours weekly; and $4.25 per week on and after January 1, 2007, if the employee works 20 hours or less weekly;

(e)  $9.00 per week on and after July 24, 2009, if the employee works more than 30 hours weekly; $7.10 per week on and after July 24, 2009, if the employee works more than 20 but not more than 30 hours weekly; and $4.30 per week on and after July 24, 2009, if the employee works 20 hours or less weekly.

### § 137-1.9  Allowances for meals and lodging.

(a) *Allowances for meals.*

    (1)  Meals furnished by an employer to an employee shall be valued at no more than:

        (i)  $1.65 per meal on and after March 31, 2000, for food service workers receiving a cash wage of at least $3.30 per hour; and $1.75 per meal on and after March 31, 2000, for all other workers;

        (ii)  $1.85 per meal on and after January 1, 2005, for food service workers receiving a cash wage of at least $3.85 per hour; and $2.05 per meal on and after January 1, 2005, for all other workers;

        (iii)  $2.00 per meal on and after January 1, 2006, for food service workers receiving a cash wage of at least $4.35 per hour; and $2.30 per meal on and after January 1, 2006, for all other workers;

        (iv)  $2.10 per meal on and after January 1, 2007, for food service workers receiving a cash wage of at least $4.60 per hour; and $2.45 per meal on and after January 1, 2007, for all other workers;

        (v)  $2.10 per meal on and after July 24, 2009, for food service workers receiving a cash wage of at least $4.65 per hour; and $2.50 per meal on and after July 24, 2009, for all other workers.

    (2)  An allowance for more than one meal shall not be permitted for any employee working less than five hours on any day.

    (3)  An allowance for more than two meals shall not be permitted for any other employee on any day, except that an allowance of one meal per shift may be permitted for such an employee working on a split shift.

(b) *Allowances for lodging.*  Lodging furnished by an employer to an employee may be considered as part of the minimum wage but shall be valued at not more than:

    (1)  $1.20 per day on and after March 31, 2000, for food service workers receiving a cash wage of at least $3.30 per hour; $1.25 per day on and after March 31, 2000 for all other workers; $7.60 per week on and after March 31, 2000, for food service workers receiving a cash wage of at least $3.30 per hour; and $8.05 per week on and after March 31, 2000, for all other workers;

    (2)  $1.35 per day on and after January 1, 2005, for food service workers receiving a cash wage of at least $3.85 per hour; $1.45 per day on and after January 1, 2005, for all other workers; $8.45 per week on and after January 1, 2005, for food service workers receiving a cash wage of at least $3.85 per hour; and $9.40 per week on and after January 1, 2005, for all other workers;

    (3)  $1.45 per day on and after January 1, 2006, for food service workers receiving a cash wage of at least $4.35 per hour; $1.65 per day on and after January 1, 2006, for all other workers; $9.15 per week on and after January 1, 2006, for food service workers receiving a cash wage of at least $4.35 per hour; and $10.55 per week on and after January 1, 2006, for all other workers;

(4) $1.50 per day on and after January 1, 2007, for food service workers receiving a cash wage of at least $4.60 per hour; $1.75 per day on and after January 1, 2007, for all other workers; $9.50 per week on and after January 1, 2007, for food service workers receiving a cash wage of at least $4.60 per hour; and $11.15 per week on and after January 1, 2007, for all other workers;

(5) $1.50 per day on and after July 24, 2009, for food service workers receiving a cash wage of at least $4.65 per hour; $1.75 per day on and after July 24, 2009, for all other workers; $9.60 per week on and after July 24, 2009, for food service workers receiving a cash wage of at least $4.65 per hour; and $11.30 per week on and after July 24, 2009, for all other workers.

**Subpart 137-2**

**Regulations**

Section
137-2.1  Employer records
137-2.2  Statement to employee
137-2.3  Posting
137-2.4  Basis of wage payment
137-2.5  Deductions and expenses
137-2.6  Employment covered by more than one wage order
137-2.7  Learner or apprentice rates
137-2.8  Rehabilitation programs
137-2.9  Student obtaining vocational experience

## § 137-2.1  Employer records.

(a) Every employer shall establish, maintain and preserve for not less than six years weekly payroll records which shall show for each employee:

(1)  name and address;

(2)  social security number;

(3)  occupational classification and wage rate;

(4)  the number of hours worked daily and weekly, including the time of arrival and departure for each employee working a split shift or spread of hours exceeding 10;

(5)  the amount of gross wages;

(6)  deductions from gross wages;

(7)  allowances, if any, claimed as part of the minimum wage;

(8)  money paid in cash; and

(9)  student classification.

(b)  The records should also indicate whether the employee has uniforms laundered, cleaned or maintained by the employer.

(c)  In addition, for each individual permitted to work in an executive, administrative or professional capacity, an employer's records shall show:

    (1)  name and address;

    (2)  social security number;

    (3)  description of occupation; and

    (4)  for individuals working in an executive or administrative capacity, total wages, and the value of allowances, if any, for each payroll period.

(d)  For each individual for whom student status is claimed, a statement from the school which such individual attends indicating whether or not such individual:

    (1)  is a student whose course of instruction is one leading to a degree, diploma or certificate; or

    (2)  is completing residence requirements for a degree; and

    (3)  is required to obtain supervised and directed vocational experience to fulfill curriculum requirements.

(e)  Employers, including those who maintain their records containing the information required by this section at a place outside of New York State, shall make such records or sworn certified copies thereof available upon request of the commissioner at the place of employment.

## § 137-2.2  Statement to employee.

Every employer covered by this Part shall furnish to each employee a statement with every payment of wages listing hours worked, rates paid, gross wages, allowances, if any, claimed as part of the minimum wage, deductions and net wages.

## § 137-2.3  Posting.

Every employer covered by this Part shall post, in a conspicuous place in his or her establishment, a notice issued by the Department of Labor summarizing minimum wage provisions.

## § 137-2.4  Basis of wage payment.

The minimum wage provided by this Part shall be required for each week of work, regardless of the frequency of payment, whether the wage is on a commission, bonus, piece rate, or any other basis.

## § 137-2.5  Deductions and expenses.

(a)  Wages shall be subject to no deductions, except for allowances authorized in this Part, and except for deductions authorized or required by law, such as for social security and income tax. Some examples of prohibited deductions are:

    (1)  deductions for spoilage or breakage;

    (2)  deductions for cash shortages or losses;

    (3)  fines or penalties for lateness, misconduct, or quitting by an employee without notice.

(b)  The minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by his employer.

### § 137-2.6  Employment covered by more than one wage order.

An employee in the restaurant industry who works for the same employer at an occupation governed by another New York State minimum wage order:

    (a)  for two hours or more during any one day; or

    (b)  for 12 hours or more in any week;

shall be paid for all hours of working time for that day or week in accordance with the minimum wage standards contained in the minimum wage order for such other industry or the restaurant industry, whichever is higher.

### § 137-2.7  Learner or apprentice rates.

No learner or apprentice shall be paid less than the minimum rates prescribed in this Part.

### § 137-2.8  Rehabilitation programs.

For an individual employed as part of a rehabilitation program approved by the commissioner, the payment of compensation under such program shall be deemed to meet the requirements of this Part.

### § 137-2.9  Student obtaining vocational experience.

A student is not deemed to be working or to be permitted to work if, in order to fulfill the curriculum requirements of the educational institution which the student attends, such student is required to obtain supervised and directed vocational experience in another establishment.

**Subpart 137-3**

**Definitions**

Section
137-3.1  Restaurant industry
137-3.2  Employee
137-3.3  Service employee and nonservice employee
137-3.4  Food service worker
137-3.5  Regular rate
137-3.6  Working time
137-3.7  Voluntary absence
137-3.8  Meals
137-3.9  Lodging
137-3.10  Split shift
137-3.11  Spread of hours
137-3.12  Interval off duty
137-3.13  Required uniforms

## § 137-3.1  Restaurant industry.

(a)  The term *restaurant industry* includes any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, or curb service or counter service to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto.

(b)  The industry includes but is not limited to restaurant operations of other types of establishments, restaurant concessions in any establishment and concessions in restaurants.

(c)  The term *restaurant industry* excludes:

> (1)  eating or drinking places operated by establishments customarily offering lodging accommodations of five or more rooms to the public, to employees or to members or guests of members, except that it does not exclude eating or drinking places offering lodging accommodation only to their own employees;

> (2)  eating or drinking places operated by establishments where the service of food or beverage is not available to the public but is incidental to instruction, medical care, religious observance, or the care of handicapped or destitute persons or other charges; and

> (3)  eating and drinking places operated by any corporation, unincorporated association, community chest, fund or foundation organized exclusively for religious, charitable or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

These exclusions shall not be deemed to exempt such establishments from coverage under another minimum wage order which covers them.

## § 137-3.2  Employee.

(a)  *Employee* means any individual permitted to work by an employer in the restaurant industry, except as provided below.

(b)  Employee does not include any individual employed by a Federal, State or municipal government or political subdivision thereof.

(c)  Employee also does not include any individual permitted to work in, or as:

> (1)  Executive, administrative or professional capacity.

>> (i)  Executive.  Work in a *bona fide executive capacity* means work by an individual:

>>> (a)  whose primary duty consists of the management of the enterprise in which such individual is employed or of a customarily recognized department or subdivision thereof;

>>> (b)  who customarily and regularly directs the work of two or more other employees therein;

>>> (c)  who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the

9

advancement and promotion or any other change of status of other employees will be given particular weight;

(d) who customarily and regularly exercises discretionary powers; and

(e) who is paid for his services a salary of not less than:

> (1) $386.25 per week on and after March 31, 2000, inclusive of board, lodging, other allowances and facilities;

> (2) $450.00 per week on and after January 1, 2005, inclusive of board, lodging, other allowances and facilities;

> (3) $506.25 per week on and after January 1, 2006, inclusive of board, lodging, other allowances and facilities;

> (4) $536.10 per week on and after January 1, 2007, inclusive of board, lodging, other allowances and facilities;

> (5) $543.75 per week on and after July 24, 2009, inclusive of board, lodging, other allowances and facilities.

(ii) Administrative. Work in a *bona fide administrative capacity* means work by an individual:

> (a) whose primary duty consists of the performance of office or nonmanual field work directly related to management policies or general operations of such individual's employer;

> (b) who customarily and regularly exercises discretion and independent judgment;

> (c) who regularly and directly assists an employer, or an employee employed in a bona fide executive or administrative capacity (*e.g.*, employment as an administrative assistant); or who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge; and

> (d) who is paid for his services a salary of not less than:

>> (1) $386.25 per week on and after March 31, 2000, inclusive of board, lodging, other allowances and facilities;

>> (2) $450.00 per week on and after January 1, 2005, inclusive of board, lodging, other allowances and facilities;

>> (3) $506.25 per week on and after January 1, 2006, inclusive of board, lodging, other allowances and facilities;

>> (4) $536.10 per week on and after January 1, 2007, inclusive of board, lodging, other allowances and facilities;

>> (5) $543.75 per week on and after July 24, 2009, inclusive of board, lodging, other allowances and facilities.

(iii) Professional. Work in a *bona fide professional capacity* means work by an individual:

(a) whose primary duty consists of the performance of work:

requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual or physical processes; or

original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination or talent of the employee; and

(b) whose work requires the consistent exercise of discretion and judgment in its performance; or

(c) whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical or physical work), and is of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

(2) Outside salesperson. The term *outside salesperson* means an individual who is customarily and predominantly engaged away from the premises of the employer, and not at any fixed site and location for the purpose of:

(i) making sales; or

(ii) selling and delivering articles or goods; or

(iii) obtaining orders or contracts for service or for the use of facilities.

## § 137-3.3 Service employee and nonservice employee.

(a) A *service employee* is an employee who customarily receives tips at the rate of:

(1) $1.15 or more per hour on and after March 31, 2000;

(2) $1.35 or more per hour on and after January 1, 2005;

(3) $1.50 or more per hour on and after January 1, 2006; and

(4) $1.60 or more per hour on and after January 1, 2007.

(b) A *nonservice employee* is any employee other than a service employee.

(c) Classification as a service employee or as a nonservice employee shall be on a weekly basis except that an employee may not be classified as a service employee on any day in such week in which he has been assigned to work in an occupation in which tips are not customarily received.

(d) The employer shall have the burden of proof that an employee receives sufficient tips to entitle such employer to classify such employee as a service employee.

### § 137-3.4 Food service worker.

(a)  A *food service worker* is any employee who, after March 31, 2000, is primarily engaged in the serving of food or beverages to guests, patrons or customers in the hotel or restaurant industries, including, but not limited to, wait staff, bartenders, captains and bussing personnel; and who regularly receive tips from such guests, patrons or customers.

(b)  Classification as a *food service worker* shall be on a weekly basis except that an employee may not be classified as a *food service worker* on any day in such week in which he has been assigned to work in an occupation in which tips are not customarily received.

(c)  The employer shall have the burden of proof that an employee receives sufficient tips to entitle him to classify such employee as a food service worker.

### § 137-3.5 Regular rate.

The term *regular rate* shall mean the amount that the employee is regularly paid for each hour of work.  When an employee is paid on a piece rate, salary or any other basis than hourly rate, the regular hourly rate shall be determined by dividing the total hours worked during the week into the employee's total earnings.

### § 137-3.6 Working time.

*Working time* means time worked or time of permitted attendance, including waiting time, whether or not work is provided, and time spent in traveling as part of the duties of the employee.

### § 137-3.7 Voluntary absence.

*Voluntary absence* means an absence which is not designed or planned by the employee or the employer to evade minimum wage standards.  Recurrent or periodic absence is not voluntary absence except for medical treatment under a doctor's care.

### § 137-3.8 Meals.

(a)  A meal shall provide adequate portions of a variety of wholesome, nutritious foods and shall include at least one of the types of food from all four of the following groups:

> (1)  fruits or vegetables;
>
> (2)  cereals, bread or potatoes;
>
> (3)  eggs, meat, fish or poultry; and
>
> (4)  milk, tea or coffee,

except that for breakfast, group (3) may be omitted if both cereal and bread are offered in group (2).

(b) Meals shall be deemed to be furnished by an employer to an employee when made available to the employee during reasonable meal periods and customarily eaten by the employee.

## § 137-3.9  Lodging.

*Lodging* means living accommodations used by the employee which meet generally accepted standards of adequacy and sanitation.

## § 137-3.10  Split shift.

A *split shift* is a schedule of daily hours in which the working hours required or permitted are not consecutive.  No meal period of one hour or less shall be considered an interruption of consecutive hours.

## § 137-3.11  Spread of hours.

The *spread of hours* is the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty.

## § 137-3.12  Interval off duty.

An *interval off duty* is time during the workday other than working time, waiting time, travel time, and time off duty for any meal period of one hour or less.

## § 137-3.13  Required uniforms.

A *required uniform* shall be that clothing worn by an employee, at the request of an employer, while performing job-related duties or to comply with any State, city or local law, rule or regulation.  It does not, however, include clothing that may be worn as part of an employee's ordinary wardrobe.

# EXHIBIT B

**Part
146**

# Hospitality Industry Wage Order

Part 146 of Title 12 of the Official Compilation of Codes, Rules, and Regulations

of the State of New York (Cited as NYCRR 146)

Promulgated by the Commissioner of Labor



Effective January 1, 2011

Statutory Authority:  Labor Law Article 19, § 653 and § 656; Article 6, §199; and Article 2, § 21(11)

**PART 146**
**HOSPITALITY INDUSTRY**

Subpart 146-1 Minimum Wage Rates
Subpart 146-2 Regulations
Subpart 146-3 Definitions

**SUBPART 146-1**
**MINIMUM WAGE RATES**

Section
  146-1.1 Application
  146-1.2 Basic minimum hourly rate
  146-1.3 Tip credits
  146-1.4 Overtime hourly rates
  146-1.5 Call-in pay
  146-1.6 Spread of hours greater than 10 in restaurants and non-resort hotels
  146-1.7 Uniform maintenance pay
  146-1.8 Costs of purchasing required uniforms
  146-1.9 Credits for meals and lodging

**146-1.1.  Application.**

(a)  Every employer in the hospitality industry must pay to each employee, as defined in this Part, at least the minimum wage rates provided in this Part.

(b) The rates provided herein shall apply, unless otherwise stated, on and after January 1, 2011.

**146-1.2.  Basic minimum hourly rate.**

The basic minimum hourly rate shall be $7.25 per hour, or, if greater, such other wage as may be established by federal law pursuant to 29 U.S.C. section 206 or any successor provisions.

**146-1.3.  Tip credits.**

An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in Section 146-2.2.  Such employees shall be considered "tipped employees."

(a) *Tip credits for service employees.*

  A service employee shall receive a wage of at least $5.65 per hour, and credit for tips shall not exceed $1.60 per hour, provided that the total of tips received plus wages equals or exceeds $7.25 per hour.  FOR RESORT HOTELS ONLY, a service employee shall receive a wage of at least $4.90 per hour, and credit for tips

1

shall not exceed $2.35 per hour, if the weekly average of tips is at least $4.10 per hour.

(b) *Tip credits for food service workers.*

A food service worker shall receive a wage of at least $5.00 per hour, and credit for tips shall not exceed $2.25 per hour, provided that the total of tips received plus the wages equals or exceeds $7.25 per hour.

**146-1.4. Overtime hourly rates.**

An employer shall pay an employee for overtime at a wage rate of 1½ times the employee's regular rate for hours worked in excess of 40 hours in one workweek.

When an employer is taking a credit toward the basic minimum hourly rate pursuant to Section 146-1.3 above, the overtime rate shall be the employee's regular rate of pay before subtracting any tip credit, multiplied by 1½, minus the tip credit. It is a violation of the overtime requirement for an employer to subtract the tip credit first and then multiply the reduced rate by one and one half.

Example #1:  Non-tipped employee
An employee regularly paid $10.00 per hour who works 50 hours in a workweek:

| | |
|---|---|
| Regular rate: | $10.00 per hour |
| Overtime rate: | $10.00 x 1.5 = $15.00 per hour |
| | |
| Wage for 40 hours: | $10.00 x 40 = $400.00 |
| Wage for 10 hours: | $15.00 x 10 = $150.00 |
| | Total    $550.00 |

Example #2:  Tipped employee
A food service worker regularly paid $7.25 per hour minus a tip credit of $2.25 per hour, for a wage rate of $5.00 per hour, who works 50 hours in a workweek:

| | |
|---|---|
| Regular rate: | $7.25 per hour |
| Overtime rate: | $7.25 x 1.5 = $10.875 per hour |
| | |
| Wage rate for 40 hours: | $7.25 - $2.25 = $5.00 per hour |
| Wage rate for 10 hours: | $10.875 - $2.25 = $8.625 per hour |
| | |
| Wages for the workweek: | $5.00   x 40 hours =   $200.00 |
| | $8.625 x 10 hours =   $ 86.25 |
| | Total    $286.25 |
| | |
| *Alternative calculation:* | |
| Wages for the work week: | $7.25    x 40 hours = $290.00 |
| | $10.875 x 10 hours = $108.75 |
| | Subtotal    $398.75 |
| Minus tip credit | $2.25    x 50 hours = - 112.50 |

2

Total    $286.25

### 146-1.5. Call-in pay.

(a) An employee who by request or permission of the employer reports for duty on any day, whether or not assigned to actual work, shall be paid at the applicable wage rate:

(1) for at least three hours for one shift, or the number of hours in the regularly scheduled shift, whichever is less;

(2) for at least six hours for two shifts totaling six hours or less, or the number of hours in the regularly scheduled shift, whichever is less; and

(3) for at least eight hours for three shifts totaling eight hours or less, or the number of hours in the regularly scheduled shift, whichever is less.

(b) For purposes of this section, applicable wage rate shall mean:

(1) Payment for time of actual attendance calculated at the employee's regular or overtime rate of pay, whichever is applicable, minus any customary and usual tip credit;

(2) Payment for the balance of the period calculated at the basic minimum hourly rate with no tip credit subtracted.  Payment for the balance of the period is not payment for time worked or work performed and need not be included in the regular rate for the purpose of calculating overtime pay.

(c) Call-in pay shall not be offset by any credits for meals or lodging provided to the employee.

(d) A *regularly scheduled shift* is a fixed, repeating shift that an employee normally works on the same day of each week.  If an employee's total hours worked or scheduled to work on a given day of the week change from week to week, there is no regularly scheduled shift.

(e) This section shall apply to all employees, regardless of a given employee's regular rate of pay.

### 146-1.6. Spread of hours greater than 10 in restaurants and all-year hotels.

The *spread of hours* is the length of the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty.   Examples of a spread of hours greater than 10 are:

7 am – 10am, 7pm – 10pm = 6 hours worked but a 15 hour spread;
11:30am – 3pm, 4pm – 10:00pm = 9½ hours worked but a 10½ hour spread.

3

(a) On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate.

(b) The additional hour of pay shall not be offset by any credits for meals or lodging provided to the employee.

(c) The additional hour of pay is not a payment for time worked or work performed and need not be included in the regular rate for the purpose of calculating overtime pay.

(d) This section shall apply to all employees in restaurants and all-year hotels, regardless of a given employee's regular rate of pay.

**146-1.7.  Uniform maintenance pay.**

(a) Where an employer does not maintain required uniforms for any employee, the employer shall pay the employee, in addition to the employee's agreed rate of pay, uniform maintenance pay of:

> $9.00 per week for work weeks over 30 hours;
> $7.10 per week for work weeks of more than 20 but not more than 30 hours; and
> $4.30 per week for work weeks of 20 hours or less.

Maintaining required uniforms includes washing, ironing, dry cleaning, alterations, repair, or any other maintenance necessary.

(b) *Wash and wear exception to uniform maintenance pay.*  An employer will not be required to pay the uniform maintenance pay, where required uniforms

> (1) are made of "wash and wear" materials,
> (2) may be routinely washed and dried with other personal garments,
> (3) do not require ironing, dry cleaning, daily washing, commercial laundering, or other special treatment, and
> (4) are furnished to the employee in sufficient number, or the employee is reimbursed by the employer for the purchase of a sufficient number of uniforms, consistent with the average number of days per week worked by the employee.

(c) *Employee chooses not to use employer-provided laundry service.*  The employer will not be required to pay uniform maintenance pay to any employee who chooses not to use the employer's service, where an employer

> (1) launders required uniforms free of charge and with reasonable frequency,
> (2) ensures the availability of an adequate supply of clean, properly-fitting uniforms, and
> (3) informs employees individually in writing of such service.

(d) Uniform maintenance pay shall not be offset by any credits for meals or lodging provided to the employee.

(e) This section shall apply to all employees, regardless of a given employee's regular rate of pay.

**146-1.8  Costs of purchasing required uniforms.**

(a) When an employee purchases a required uniform, he or she shall be reimbursed by the employer for the total cost of the uniform no later than the next payday.  Employers may not avoid such costs by requiring employees to obtain uniforms before starting the job.

(b) Where the employer furnishes to the employees free of charge, or reimburses the employees for purchasing, enough uniforms for an average workweek, and an employee chooses to purchase additional uniforms in excess of the number needed, the employer will not be required to reimburse the employee for the cost of purchasing the additional uniforms.

(c) This section shall apply to all employees, regardless of a given employee's regular rate of pay.

**146-1.9.  Credits for meals and lodging.**

Meals and/or lodging provided by an employer to an employee may be considered part of the wages paid to the employee but shall be valued at no more than the amounts given below.

(a) *Meal credits in restaurants and all-year hotels.*

> (1) Meals furnished by an employer to an employee may be considered part of the wages but shall be valued at no more than $2.50 per meal for all workers.

> (2) A credit for more than one meal shall not be permitted for any employee working less than 5 hours on any day.

> (3) A credit for more than two meals shall not be permitted for any other employee on any day, except that a credit of one meal per shift may be permitted for an employee working on a split shift.

(b) *Lodging credits in restaurants.*

Lodging furnished by an employer to an employee may be considered part of wages but shall be valued at no more than:

> $1.50 per day for food service workers and $1.75 per day for all other workers; or $9.60 per week for food service workers and $11.30 per week for all other workers.

(c) *Lodging credits in all-year hotels.*

Lodging furnished by an employer to an employee in an all-year hotel may be considered part of wages but shall be valued at no more than 35 cents per hour.

5

(d) *Meal and lodging credits in resort hotels.*

Meals and lodging furnished by an employer to an employee in a resort hotel may be considered part of wages but shall be valued at no more than:

> (1) Lodging and 3 meals per day furnished to a residential employee:
>
> > $13.75 for each day worked by a food service worker and $16.25 per day for each day worked by all other workers.
>
> (2) Meals furnished to a non-residential employee:
>
> > $2.75 per meal on workdays for a food service worker and $3.25 per meal on workdays for all other workers.
>
> (3) Lodging furnished without meals:
>
> > 35 cents per hour.

## SUBPART 146-2
## REGULATIONS

Section

146-2.1   Employer records
146-2.2   Written notice of pay rates, tip credit and pay day
146-2.3   Statement to employee
146-2.4   Posting of minimum wage provisions
146-2.5   Hourly rates are required
146-2.6   Weekly basis of minimum wage
146-2.7   Deductions and expenses
146-2.8   Meals and lodging
146-2.9   Working at tipped and non-tipped occupations on the same day
146-2.10  Employment covered by more than one wage order
146-2.11  Trainee, learner or apprentice rates
146-2.12  Rehabilitation programs
146-2.13  Student obtaining vocational experience
146-2.14  Tip sharing and tip pooling
146-2.15  Tip sharing
146-2.16  Tip pooling
146-2.17  Records of tip sharing or tip pooling
146-2.18  Charge purported to be a gratuity, or tip
146-2.19  Administrative charge not purported to be a gratuity, or tip
146-2.20  Tips charged on credit cards

**146-2.1. Employer records.**

(a) Every employer shall establish, maintain and preserve for at least six years weekly payroll records which shall show for each employee:

> (1) name and address;
> (2) social security number or other employee identification number;
> (3) occupational classification;
> (4) the number of hours worked daily and weekly, including the time of arrival and departure for each employee working a split shift or spread of hours exceeding 10;
> (5) regular and overtime hourly wage rates;
> (6) the amount of gross wages;
> (7) deductions from gross wages;
> (8) the amount of net wages;
> (9) tip credits, if any, claimed as part of the minimum wage;
> (10) meal and lodging credits, if any, claimed as part of wages;
> (11) money paid in cash; and
> (12) student classification.

(b) The records should also indicate whether the employee has uniforms maintained by the employer.

(c) In addition, for each individual working in an executive, administrative or professional capacity, or as a staff counselor in a children's camp, an employer's records shall also show:

> (1) name and address;
> (2) social security number or other employee identification number;
> (3) description of occupation; and
> (4) for individuals permitted or suffered to work in an executive or administrative capacity, total wages, and the value of meal and lodging credits, if any, for each payroll period.

(d) For each individual for whom student status is claimed, a statement from the school which such individual attends indicating whether or not such individual:

> (1) is a student whose course of instruction is one leading to a degree, diploma or certificate; or
> (2) is completing residence requirements for a degree; and
> (3) is required to obtain supervised and directed vocational experience to fulfill curriculum requirements.

(e) Employers, including those who maintain their records containing the information required by this section, Section 146-2.2, Section 146-2.17 and Section 146-2.18 at a place outside of New York State, shall make such records or sworn certified copies thereof available at the place of employment upon request of the commissioner.

**146-2.2. Written notice of pay rates, tip credit and pay day.**

(a) Prior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip

credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate. The employer must provide notice in (1) English and (2) any other language spoken by the new employee as his/her primary language, so long as the Commissioner has made such notice available to employers in such language on the Department's website.

(b) Such notice shall also be required prior to any change in the employee's hourly rates of pay.

(c) An acknowledgment of receipt signed by the employee shall be kept on file for six years.

(d) The employer has the burden of proving compliance with the notification provisions of this section. As an example, the employer will have met this burden by providing the employee with the following notice, filled out and subject to revisions in the minimum rates, subject to the language requirements set forth in subdivision (a), and the employee signs a statement acknowledging that he or she received the notice.

<u>Notice of Pay Rates and Pay Day</u>

Company name and address _____

Preparer's name and title _____

Employee's name and address _____

Your regular rate of pay will be $_____ per hour for the first 40 hours in a week.

Your overtime rate of pay will be $_____ per hour for hours over 40.

Your designated pay day will be: _____

FOR TIPPED EMPLOYEES ONLY:
The tip credit taken will be $_____ per hour.

If you do not receive enough tips over the course of a week to bring you up to the minimum hourly rates of $7.25 per hour for the first 40 hours and $10.875 per hour for hours over 40, you will be paid additional wages that week to make up the difference.

FOR SERVICE EMPLOYEES IN RESORT HOTELS ONLY (if different from rates given above): If your weekly average of tips received is at least $4.10 per hour, your regular rate of pay will be $_____ per hour and your overtime rate of pay will be $_____ per hour. The tip credit taken will be $_____ per hour.

Preparer's signature and date _____

I have been notified of my pay rate, overtime rate, tip credit if applicable, and designated pay day on the date given below.

Employee's signature and date _____

### 146-2.3. Statement to employee.

Every employer shall provide to each employee a statement, commonly referred to as a pay stub, with every payment of wages. The pay stub must list hours worked, rates paid, gross wages, credits claimed (for tips, meals and lodging) if any, deductions and net wages.

### 146-2.4. Posting requirements.

Every employer shall post, in a conspicuous place in his or her establishment, notices issued by the Department of Labor about wage and hour laws, tip appropriations, illegal deduction provisions and any other labor laws that the Commissioner shall deem appropriate.

### 146-2.5. Hourly rates are required.

Employees as defined in Section 146-3.2, other than commissioned salespersons, shall be paid hourly rates of pay. Employers may not pay employees on a daily, weekly, salary, piece rate or other non-hourly rate basis.

### 146-2.6. Weekly basis of minimum wage.

The minimum wage provided by this Part shall be required for each week of work, regardless of the frequency of payment.

### 146-2.7. Deductions and expenses.

(a) Employers may not make any deductions from wages, except for credits authorized in this Part and deductions authorized or required by law, such as for social security and income taxes. Some examples of prohibited deductions are:

> (1) deductions for spoilage or breakage;
> (2) deductions because of non-payment by a customer;
> (3) deductions for cash shortages or losses; and
> (4) fines or penalties for lateness, misconduct, or quitting by an employee without notice.

(b) Employers may not charge employees separately from wages for items prohibited as deductions from wages, except for optional meal purchases allowed by Section 146-2.8(d) of this Part.

(c) If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage.

### 146-2.8. Meals and lodging.

(a) When an employer takes a meal and/or lodging credit toward the pay of an employee, the employer may not charge the employee any additional money for the meal(s) and/or lodging.

(b) A residential employee in a resort hotel whose compensation is based on the inclusion of meals shall be provided with three meals per day.

(c) An employee who works a shift requiring a meal period under Section 162 of the New York State Labor Law must either:

> (1) receive a meal furnished by the employer as part of his or her compensation, at no more than the meal credit allowed in this Part; or
> (2) be permitted to bring his or her own food and consume it on premises.

(d) Nothing in this Part shall prevent an employee from purchasing from the employer:

> (1) in a restaurant or an all-year hotel, meals at other times or places than those provided as part of his or her compensation;
> (2) in a resort hotel, food in addition to meals provided as part of his or her compensation.

Such purchases may not be paid for through deductions from the employee's wages.

## 146-2.9. Working at tipped and non-tipped occupations on the same day.

On any day that a service employee or food service worker works at a non-tipped occupation (a) for two hours or more, or (b) for more than twenty percent (20%) of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day.

Example: An employee has a daily schedule as follows:  8 a.m. to 9:45 a.m., food preparation; 9:45 a.m. to 1:30 p.m., serving food in the restaurant; takes ½ hour meal period; 2:00 p.m. to 4:30 p.m. serving food in the restaurant. That employee has worked 8 hours total, consisting of 6 hours, 15 minutes as a food service worker and 1 hour, 45 minutes in a non-tipped occupation.  Twenty percent (20%) of an 8 hour shift is 1 hour, 36 minutes.  Although the employee worked for less than two hours at the non-tipped occupation, he/she has worked for more than 20% of his/her shift at the non-tipped occupation.  Therefore, the employee is subject to no tip credit for that day.

## 146-2.10.  Employment covered by more than one wage order.

An employee in the hospitality industry who works for the same employer at an occupation governed by another New York State minimum wage order (a) for two hours or more during any one day or (b) for 12 hours or more in any week shall be paid for all hours of working time for that day or week in accordance with the minimum wage standards contained in the minimum wage order for such other industry or the hospitality industry, whichever is higher.

**146-2.11. Learner, trainee, or apprentice rates**.

Any employees whom an employer designates learners, trainees, or apprentices must nonetheless be paid at least the minimum rates prescribed in this Part.

**146-2.12. Rehabilitation programs**.

For an individual employed as part of a rehabilitation program approved by the commissioner, the payment of compensation under such program shall be deemed to meet the requirements of this Part.

**146-2.13. Student obtaining vocational experience**.

A student is not deemed to be permitted or suffered to work  if, in order to fulfill the curriculum requirements of the educational institution which the student attends, the student is required to obtain supervised and directed vocational experience in another establishment.

**146-2.14. Tip sharing and tip pooling**.

(a)  Tip sharing is the practice by which a directly tipped employee gives a portion of his or her tips to another service employee or food service worker who participated in providing service to customers and keeps the balance.

(b)  Tip pooling is the practice by which the tip earnings of directly tipped employees are intermingled in a common pool and then redistributed among directly and indirectly tipped employees.

(c)  Directly tipped employees are those who receive tips from patrons or customers without any intermediary between the patron or customer and the employee.

(d)  Indirectly tipped employees are those employees who, without receiving direct tips, are eligible to receive shared tips or to receive distributions from a tip pool.

(e) Eligibility of employees to receive shared tips, or to receive distributions from a tip pool, shall be based upon duties and not titles.  Eligible employees must perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental.  Examples of eligible occupations include:

> (1) wait staff;
> (2) counter personnel who serve food or beverages to customers;
> (3) bus persons;
> (4) bartenders;
> (5) service bartenders;
> (6) barbacks;
> (7) food runners;
> (8) captains who provide direct food service to customers; and
> (9) hosts who greet and seat guests.

(f) Employers may not require directly tipped employees to contribute a greater percentage of their tips to indirectly tipped employees through tip sharing or tip pooling than is customary and reasonable.

## 146-2.15.  Tip sharing.

(a) Directly tipped employees may share their tips on a voluntary basis with other service employees or food service workers who participated in providing service to customers.

(b) An employer may require directly tipped food service workers to share their tips with other food service workers who participated in providing service to customers and may set the percentage to be given to each occupation.  However, employees must handle the transactions themselves.

(c)  Nothing in this section shall be interpreted as requiring an employer to compensate participants in tip sharing for tips wrongfully withheld from the tip sharing by any participant.

## 146-2.16.  Tip pooling.

(a) Directly tipped employees may mutually agree to pool their tips on a voluntary basis and to redistribute the tips among directly tipped employees and indirectly tipped employees who participated in providing the service.

(b) An employer may require food service workers to participate in a tip pool and may set the percentage to be distributed to each occupation from the tip pool.  Only food service workers may receive distributions from the tip pool.

(c)  Nothing in this section shall be interpreted as requiring an employer to compensate participants in tip pooling for tips wrongfully withheld from the tip pool by any participant.

## 146-2.17.  Records of tip sharing or tip pooling.

(a) Employers who operate a tip sharing or tip pooling system must establish, maintain, and preserve for at least six years records which include:

> (1) A daily log of the tips collected by each employee on each shift, whether in cash or by credit card;

> (2) A list of occupations that the employer deems eligible to receive tips through a tip sharing or tip pool system;

> (3) The shares of tips that each occupation is scheduled to receive from tip sharing or tip pooling; and

> (4) The amount in tips that each employee receives from the tip share or tip pool, by date.

(b) Such records must be regularly made available for participants in the tip sharing or tip pooling systems to review. Nothing in this section shall be interpreted as granting any employee the right to review the payroll records of any other employee.

## 146-2.18. Charge purported to be a gratuity or tip.

Section 196-d of the New York State Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity.

(a) A charge purported to be a gratuity must be distributed in full as gratuities to the service employees or food service workers who provided the service.

(b) There shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for "service" or "food service," is a charge purported to be a gratuity.

(c) Employers who make charges purported to be gratuities must establish, maintain and preserve for at least six years records of such charges and their dispositions.

(d) Such records must be regularly made available for participants in the tip sharing or tip pooling systems to review.

## 146-2.19 Administrative charge not purported to be a gratuity or tip.

(a) A charge for the administration of a banquet, special function, or package deal shall be clearly identified as such and customers shall be notified that the charge is not a gratuity or tip.

(b) The employer has the burden of demonstrating, by clear and convincing evidence, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity.

(c) Adequate notification shall include a statement in the contract or agreement with the customer, and on any menu and bill listing prices, that the administrative charge is for administration of the banquet, special function, or package deal, is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service to the guests. The statements shall use ordinary language readily understood and shall appear in a font size similar to surrounding text, but no smaller than a 12-point font.

(d) A combination charge, part of which is for the administration of a banquet, special function or package deal and part of which is to be distributed as gratuities to the employees who provided service to the guests, must be broken down into specific percentages or portions, in writing to the customer, in accordance with the standards for adequate notification in subdivision (c) of this Section. The portion of the combination charge which will not be distributed as gratuities to the employees who provided service to the guests shall be covered by subdivisions (a), (b) and (c) of this Section.

## 146-2.20. Tips charged on credit cards.

When tips are charged on credit cards, an employer is not required to pay the employee's pro-rated share of the service charge taken by the credit card company for the processing of the tip. The employer must return to the employee the full amount of the tip charged on the credit card, minus the pro-rated portion of the tip taken by the credit card company.

Example: The bill totals $100.00 exactly. The customer leaves, on their credit card, the $100.00 payment of the bill, as well as a $20.00 tip. Both the tip and the bill must be processed through a credit card company which charges a 5% fee on all transactions. The total charge levied by the credit card company on the $120.00 charge is $6.00. Of that $6.00, $5.00 is for the bill (5% of $100) and $1.00 is for the tip (5% of $20). The employer must provide the employee $19, which represents the $20 tip minus $1.00 pro-rated employee's portion of the surcharge).

**SUBPART 146-3**
**DEFINITIONS**

Section

146-3.1  Hospitality industry
146-3.2  Employee
146-3.3  Service employee and non-service employee
146-3.4  Food service worker
146-3.5  Regular rate of pay
146-3.6  Working time
146-3.7  Meal
146-3.8  Lodging
146-3.9  Split shift
146-3.10  Required uniform
146-3.11  Week of work

**146-3.1. Hospitality industry.**

(a) The term *hospitality industry* includes any restaurant or hotel, as defined herein.

(b) The term *restaurant* includes any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto. The term restaurant includes but is not limited to restaurant operations of other types of establishments, restaurant concessions in any establishment and concessions in restaurants.

(c) The term *hotel* includes:

(1) any establishment which as a whole or part of its business activities offers lodging accommodations for hire to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto. The industry includes but is not limited to commercial hotels, apartment hotels, resort

14

hotels, lodging houses, boarding houses, all-year hotels, furnished room houses, children's camps, adult camps, tourist camps, tourist homes, auto camps, motels, residence clubs, membership clubs, dude ranches, and spas and baths that provide lodging.

(2) An *all-year hotel* is one that does not qualify as a resort hotel under the definition below. Motor courts, motels, cabins, tourist homes, and other establishments serving similar purposes shall be classified as all-year hotels unless they specifically qualify as resort hotels in accordance with the definition below.

(3) A *resort hotel* is one which offers lodging accommodations of a vacational nature to the public or to members or guests of members, and which:

     (i) operates for not more than seven months in any calendar year; or

     (ii) being located in a rural community or in a city or village of less than 15,000 population, increased its number of employee workdays during any consecutive four-week period by at least 100 percent over the number of employee workdays in any other consecutive four-week period within the preceding calendar year; or

     (iii) being located in a rural community or in a city or village of less than 15,000 population, increased its number of guest days during any consecutive four-week period by at least 100 percent over the number of guest days in any other consecutive four-week period within the preceding calendar year.

(d) The hospitality industry excludes:

     (1) establishments where the service of food or beverage or the provision of lodging is not available to the public or to members or guests of members, but is incidental to instruction, medical care, religious observance, or the care of persons with disabilities or those who are impoverished or other public charges; and

     (2) establishments where the service of food or beverage or the provision of lodging is offered by any corporation, unincorporated association, community chest, fund or foundation organized exclusively for religious, charitable or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

The exclusions set forth in paragraphs (d)(1) and (d)(2) of this section shall not be deemed to exempt such establishments from coverage under another minimum wage order which covers them.

**146-3.2. Employee.**

(a) *Employee* means any individual suffered or permitted to work in the hospitality industry by the operator of the establishment or by any other employer, except as provided below.

15

(b) Employee does not include any individual employed by a Federal, State or municipal government or political subdivision thereof.

(c) Employee also does not include any individual permitted to work in, or as:

    (1) An executive, administrative or professional capacity.

        (i) Executive. Work in a *bona fide executive capacity* means work by an individual:

            (*a*) whose primary duty consists of the management of the enterprise in which such individual is employed or of a customarily recognized department or subdivision thereof;

            (*b*) who customarily and regularly directs the work of two or more other employees therein;

            (*c*) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight;

            (*d*) who customarily and regularly exercises discretionary powers; and

            (*e*) who is paid for his services a salary of at least:

                $543.75 per week inclusive of board, lodging, or other allowances and facilities.

        (ii) Administrative. Work in a *bona fide administrative capacity* means work by an individual:

            (*a*) whose primary duty consists of the performance of office or non-manual field work directly related to management policies or general operations of such individual's employer;

            (*b*) who customarily and regularly exercises discretion and independent judgment;

            (*c*) who regularly and directly assists an employer, or an employee employed in a bona fide executive or administrative capacity (*e.g.*, employment as an administrative assistant); or who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge; and

            (*d*) who is paid for his services a salary of at least:

$543.75 per week inclusive of board, lodging, or other allowances and facilities.

(iii) Professional. Work in a *bona fide professional capacity* means work by an individual:

(*a*) whose primary duty consists of the performance of work:

requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual or physical processes, or

original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination or talent of the employee; and

(*b*) whose work requires the consistent exercise of discretion and judgment in its performance; or

(*c*) whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical or physical work), and is of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

(2) An outside salesperson. The term *outside salesperson* means an individual who is customarily and predominantly engaged away from the premises of the employer and not at any fixed site and location for the purpose of:

(i) making sales; or
(ii) selling and delivering articles or goods; or
(iii) obtaining orders or contracts for service or for the use of facilities.

(3) A golf caddy. This exclusion shall not be deemed to exclude caddies from another minimum wage order which covers such employees.

(4) A camper worker. A camper who works no more than four hours a day for a children's camp and at all other times enjoys the same privileges, facilities and accommodations as a regular camper in such camp shall be known as a *camper worker* and shall not be an employee within the meaning of this Part.

(5) Spa and bath workers employed by concessionaires in hotels or by spas and baths operated independently of hotels, who shall be covered under another

minimum wage order.  Spa and bath workers employed by hotels are employees under this Part.

(6) Staff counselors in children's camps.

(i) A *staff counselor* is a person whose duties primarily relate to the guidance, instruction, supervision and care of campers in children's camps, whether such work involves direct charge of, or responsibility for, such activities, or merely assistance to persons in charge. The term *staff counselor* includes, but is not limited to: head counselor, assistant head counselor, specialist counselor or instructor (such as swimming counselor, arts and crafts counselor, etc.), group or division leader, camp mother or father, supervising counselor, senior counselor, counselor, general counselor, bunk counselor, assistant counselor, co-counselor, junior counselor, and counselor aide.

(ii) *Children's camp* means any establishment which, as a whole or part of its business activities, is engaged in offering for children, on a resident or nonresident basis, recreational programs of supervised play or organized activity in such fields as sports, nature lore, and arts and crafts, whether known as camps, play groups, play schools, or by any other name. The term children's camp does not include an establishment which is open for a period of more than 17 consecutive weeks during the year.

## 146-3.3.  Service employee and non-service employee.

(a) A *service employee* is an employee, other than a food service worker, who customarily receives tips at the rate of $1.60 or more per hour.

(b) A *non-service employee* is any employee other than a service employee or a food service worker.

(c) Classification as a *service employee* or as a *non-service employee* shall be on a weekly basis except that an employee may not be classified as a service employee on any day in which she or he has been assigned to work at an occupation in which tips are not customarily received for 2 hours or more or for more than 20% of her or his shift, whichever is less.

(d) The employer shall have the burden of proof that an employee receives sufficient tips to be classified as a service employee.

## 146-3.4.  Food service worker.

(a) A *food service worker* is any employee who is primarily engaged in the serving of food or beverages to guests, patrons or customers in the hospitality industry, including, but not limited to, wait staff, bartenders, captains and bussing personnel; and who regularly receives tips from such guests, patrons or customers.  The term "food service worker" shall not include delivery workers.

(b) Classification as a *food service worker* shall be on a weekly basis except that an employee may not be classified as a food service worker on any day in such week in which she or he has been assigned to work in an occupation in which tips are not customarily received for 2 hours or more or for more than 20% of her or his shift, whichever is less.

## 146-3.5. Regular rate of pay.

(a) The term *regular rate* shall mean the amount that the employee is regularly paid for each hour of work, before subtracting a tip credit, if any.

(b) If an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.

*Exclusions from the regular rate* are gifts and discretionary bonuses, fringe benefits pay, expense reimbursement, profit-sharing and savings-plan payments, employer contributions to benefit plans, premium pay for hours worked above 8 hours a day or 40 hours a week or above normal daily or weekly standards, premium pay for time and one half (or greater) rates paid for Saturday, Sunday, holiday, day of rest, sixth or seventh day worked, and premium pay for work outside of a contractual daily period not exceeding 8 hours or a contractual weekly period not exceeding 40 hours.  The premium pay mentioned above shall be credited towards overtime pay due.

## 146-3.6. Working time.

*Working time* means time worked or time of permitted attendance, including waiting time, whether or not work duties are assigned, or time an employee is required to be available for work at a place or within a geographical area prescribed by the employer such that the employee is unable to use the time productively for his or her own purposes, and time spent in traveling as part of the duties of the employee.

## 146-3.7. Meal.

(a) A *meal* shall provide adequate portions of a variety of wholesome, nutritious foods and shall include at least one of the types of food from all four of the following groups:

> (1) fruits or vegetables;
> (2) grains or potatoes;
> (3) eggs, meat, fish, poultry, dairy, or legumes; and
> (4) tea, coffee, milk or juice.

(b) *Meals shall be deemed to be furnished* by an employer to an employee when made available to that employee during reasonable meal periods and customarily eaten by that employee.

## 146-3.8. Lodging.

*Lodging* means living accommodations used by the employee which meet generally accepted standards of adequacy and sanitation. All lodging provided by an employer to an employee must comply with all community standards for housing. For purposes of this Part, community standards shall mean all applicable state, county and local health or housing codes. The employer shall have the burden of proof that provided lodging complies with community standards.

**146-3.9. Split shift.**

A *split shift* is a schedule of daily hours in which the working hours required or permitted are not consecutive. Interruption of working hours for a meal period of one hour or less does not constitute a split shift.

**146-3.10. Required uniform.**

A *required uniform* is that clothing required to be worn while working at the request of an employer, or to comply with any federal, state, city or local law, rule, or regulation, *except* clothing that may be worn as part of an employee's ordinary wardrobe.

*Ordinary wardrobe* shall mean ordinary basic street clothing selected by the employee where the employer permits variations in details of dress.

**146-3.11. Week of work.**

A *week of work* is a fixed and regularly recurring period of 168 hours – seven consecutive twenty-four hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. For purposes of computing pay due under this Part, a single workweek may be established for an establishment as a whole or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him or her. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of this Part.

# EXHIBIT C

**Lexis**®

Switch Client | Preferences | Help | Sign Out

| Search ▼ | Get a Document ▼ | *Shepard's*® ▼ | More ▼ | ⏱ History ⚡ Alerts |
|---|---|---|---|---|

FOCUS™ Terms  cite(labor and 195)       Search Within  Original Results (1 - 1)    ◼ GO    Advanced...

View Tutorial

Source: **Find a Source > NY - New York Consolidated Law Service, 2009*** ⓘ
Terms:  **cite(labor and 195)**  (Suggest Terms for My Search)

*NY CLS Labor § 195*


NEW YORK CONSOLIDATED LAW SERVICE
Copyright © 2009 Matthew Bender, Inc.
a member of the LexisNexis (TM) Group
All rights reserved

*** ARCHIVE MATERIAL ***

*** THIS SECTION IS CURRENT AS OF DECEMBER 15, 2009 ***
*** THROUGH RELEASED CH. 507 ***

LABOR LAW
ARTICLE 6.  PAYMENT OF WAGES

NY CLS **Labor** § **195** (2009)

§ 195.  Notice and record-keeping requirements

Every employer shall:

1. [Until Oct 26, 2009]  notify his employees at the time of hiring of the rate of pay and of the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article;

1. [Eff Oct 26, 2009]  notify his or her employees, in writing, at the time of hiring of the rate of pay and of the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article, and obtain a written acknowledgement from each employee of receipt of this notice. Such acknowledgement shall conform to any requirements established by the commissioner with regard to content and form. For all employees who are eligible for overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by law or regulation, the notice must state the regular hourly rate and overtime rate of pay;

2. notify his employees of any changes in the pay days prior to the time of such changes;

3. furnish each employee with a statement with every payment of wages, listing gross wages, deductions and net wages, and upon the request of an employee furnish an explanation of how such wages were computed;

3-a. in addition, every railroad corporation shall furnish each employee with a statement with every payment of wages listing accrued total earnings and taxes to date and further furnish said employee at the same time with a separate listing of his daily wages and how they were computed;

4. establish, maintain and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

5. notify his employees in writing or by publicly posting the employer's policy on sick leave, vacation, personal leave, holidays and hours.

6. notify any employee terminated from employment, in writing, of the exact date of such termination as well as the exact date of cancellation of employee benefits connected with such termination. In no case shall notice of such termination be provided more than five working days after the date of such termination. Failure to notify an employee of cancellation of accident or health insurance subjects an employer to an additional penalty pursuant to section two hundred seventeen of this chapter.

**HISTORY:**
Add, L 1966, ch 548, § 2, eff Oct 1, 1966.
Former § 195, add, L 1921, ch 50, with substance transferred from § 10; amd, L 1935, ch 235, L 1951, ch 445; repealed, L 1966, ch 548, § 1, eff Oct 1, 1966, with substance transferred to § 192.
Prior § 195, add, L 1909, ch 36; repealed, L 1921, ch 50.
Sub 1, amd, L 2009, ch 270, § 1, eff Oct 26, 2009 (see 2009 note below).
Sub 3-a, add, L 1977, ch 615, § 1, eff Jan 1, 1978.
Sub 5, add, L 1981, ch 256, § 1, eff Dec 12, 1981.
Sub 6, add, L 1989, ch 524, § 1, eff Aug 15, 1989.

**NOTES:**

Editor's Notes

Laws 2009, ch 270, § 2, eff Oct 26, 2009, provides as follows:
§ 2. This act shall take effect on the ninetieth day after it shall have become a law and shall apply to all employees hired on or after such date.

New York References:
Record of employers, § 679

Research References & Practice Aids:
52 NY Jur 2d, Employment Relations § 127

Texts:
Liddle & Marino, Labor and Employment in New York (Michie) pp 21-17

**LexisNexis 50 State Surveys, Legislation & Regulations**

Payment of Wages

Case Notes:

Appellate Division would not determine whether employer's failure to respond to sales representative's request for information concerning calculation of her compensation gave rise to private right of action under CLS Labor §§ 191(1)(c) and 195(3), because representative improperly sought punitive damages unsupported by request for compensatory damages or any other relief and did not allege facts evincing gross, morally reprehensible, or wantonly dishonest conduct necessary to support claim for punitive damages. Caruso v Allnet Commun. Servs. (1997, 1st Dept) 242 App Div 2d 484, 662

Case 6:13-cv-06455-EAW-MWP    Document 176-2    Filed 03/13/14    Page 40 of 69

NYS2d 468.

Defendant, former employer, was properly granted summary judgment in action alleging that defendant violated CLS Labor § 195(6) and that, as result, plaintiffs' employment was not terminated and they were thus entitled to recover back wages since plaintiffs received actual notice of expiration of employment contract and termination of their employment through their union, plaintiffs' insurance and other benefits were provided by union and not by defendant, and there were no allegations that plaintiffs lost any benefits or incurred any medical expenses. Hugo v A & A Maintenance Enter. (2000, 2d Dept) 269 App Div 2d 357, 702 NYS2d 387, app den (2000) 95 NY2d 753, 711 NYS2d 155, 733 NE2d 227.

In amending CLS Labor § 195(6), Legislature did not intend to provide for employee's continued employment in absence of written notice of termination. Hugo v A & A Maintenance Enter. (2000, 2d Dept) 269 App Div 2d 357, 702 NYS2d 387, app den (2000) 95 NY2d 753, 711 NYS2d 155, 733 NE2d 227.

As the employer's policy did not clearly state that employees would not be paid for accrued, unused vacation and sick time if they were involuntarily terminated, the employee's claims that the employer violated state law by failing to pay her for accrued, unused vacation and sick time when it terminated her employment survived summary judgment. Kolesnikow v Hudson Valley Hosp. Ctr. (2009, SD NY) 622 F Supp 2d 98.

Source: **Find a Source > NY - New York Consolidated Law Service, 2009*** [i]
Terms: **cite(labor and 195)**  (Suggest Terms for My Search)
View: Full
Date/Time: Monday, August 19, 2013 - 5:17 PM EDT



LexisNexis®    About LexisNexis  ·  Privacy Policy   ·  Terms & Conditions    ·   Contact Us
Copyright © 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT D

Lexis®

Switch Client | Preferences | Help | Sign Out

Search ▼  |  Get a Document ▼  |  Shepard's® ▼  |  More ▼                    🕓 History  |  🔔 Alerts

FOCUS™ Terms   cite(labor and 198)          Search Within  Original Results (1 - 5)    GO   Advanced...
                                                                                                View Tutorial

Source:  Legal > / . . . / > NY - New York Consolidated Law Service, 2009* ⓘ
Terms:   cite(labor and 198)  (Suggest Terms for My Search)

☛ Select for FOCUS™ or Delivery
☐

*NY CLS Labor § 198*

NEW YORK CONSOLIDATED LAW SERVICE
Copyright © 2009 Matthew Bender, Inc.
a member of the LexisNexis (TM) Group
All rights reserved

*** ARCHIVE MATERIAL ***

*** THIS SECTION IS CURRENT AS OF DECEMBER 15, 2009 ***
*** THROUGH RELEASED CH. 507 ***

LABOR LAW
ARTICLE 6.  PAYMENT OF WAGES

NY CLS **Labor** § **198** (2009)

§ 198.  Costs, remedies

   1. In any action instituted upon a wage claim by an employee or the commissioner in which the
employee prevails, the court may allow such employee in addition to ordinary costs, a reasonable sum,
not exceeding fifty dollars for expenses which may be taxed as costs. No assignee of a wage claim,
except the commissioner, shall be benefited by this provision.

1-a. [Until Nov 24. 2009]  In any action instituted upon a wage claim by an employee or the
commissioner in which the employee prevails, the court shall allow such employee reasonable
attorney's fees and, upon a finding that the employer's failure to pay the wage required by this article
was willful, an additional amount as liquidated damages equal to twenty-five percent of the total
amount of the wages found to be due.

1-a. [Eff Nov 24, 2009] On behalf of any employee paid less than the wage to which he or she is
entitled under the provisions of this article, the commissioner may bring any legal action necessary,
including administrative action, to collect such claim and as part of such legal action, in addition to any
other remedies and penalties otherwise available under this article, the commissioner may assess
against the employer an additional amount as liquidated damages equal to twenty-five percent of the
total amount of wages found to be due, unless the employer proves a good faith basis for believing
that its underpayment of wages was in compliance with the law. In any action instituted in the courts
upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall
allow such employee reasonable attorney's fees and, [fig 1] unless the employer proves a good faith
basis to believe that its underpayment of wages was in compliance with the law, an additional amount
as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due.

2. The remedies provided by this article may be enforced simultaneously or consecutively so far as not
inconsistent with each other.

Case 6:13-cv-06455-EAW-MWP   Document 176-2   Filed 03/13/14   Page 43 of 69

3. Notwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years. All employees shall have the right to recover full wages, benefits and wage supplements accrued during the six years previous to the commencing of such action, whether such action is instituted by the employee or by the commissioner.

**HISTORY:**

Add, L 1966, ch 548, § 2, eff Oct 1, 1966, with substance transferred from former § 199-b(1, 2).

Former § 198, add, L 1921, ch 50, with substance transferred from § 12; amd, L 1934, ch 745, § 1, L 1944, ch 793, § 1, L 1965, ch 354, § 1; repealed, L 1966, ch 548, § 1, with substance transferred to § 197; amd, L 1966, ch 989, § 3; repealed, L 1967, ch 294, § 4, eff Sept 1, 1967.

Sub 1-a, add, L 1967, ch 310, § 1, eff Oct 1, 1967.

Sub 1-a, amd, L 2009, ch 372, § 1, eff Nov 24, 2009 (see 2009 note below).

The 2009 act deleted at fig 1 "upon a finding that the employer's failure to pay the wage required by this article was willful"

Sub 3, add, L 1967, ch 294, § 5, with substance transferred from former § 199-b(4); amd, L 1997, ch 605, § 4, eff Nov 16, 1997.

**NOTES:**

Editor's Notes

See 1967 note under §§ 133 and 196.


Laws 1997, ch 605, §§ 1 and 2, eff Nov 16, 1997, provide as follows:

Section 1. Legislative intent. The legislature declares that the working people of the state of New York are the key to our maintenance of a strong economy. The legislature finds, however, that too often the working people of our state do not receive the full wages they have earned, and that some workers are never paid at all for their labor. Underpaid and unpaid workers are found in all areas of commerce and industry, but are concentrated in low-wage areas such as garment factories and the service industry. Exploitation of these most vulnerable workers drives down wages for all working people. Low-wage workers who are unpaid or underpaid cannot support themselves and their families, and may be forced to rely on scarce public resources. Honest employers, who constitute the vast majority of those doing business in our state, suffer from unfair competition when others cut costs by underpaying their workers. Finally, the state loses precious tax revenue when employers avoid payment of wages. Especially as more and more New Yorkers are called upon to earn their living through work, we must ensure that working people are paid what they earn.

If our economy is to thrive, the state must pursue enforcement of the wage provisions of the labor law with vigor and fairness. That enforcement is the mandate of the department of labor. The purpose of this legislation, therefore, is to provide the department of labor and working people with stronger and more varied tools with which to collect unpaid wages. The legislature also seeks to ensure that the most vulnerable workers have access to the department's enforcement mechanisms, in an effort to prevent the generalized devaluation of wages for all workers.

§ 2. This act shall be known and may be cited as the "unpaid wages prohibition act".


Laws 2009, ch 372, § 4, eff Nov 24, 2009, provides as follows:

§ 4. This act shall take effect on the ninetieth day after it shall have become a law, and shall apply to offenses committed on or after such effective date.


Research References & Practice Aids:

15A NY Jur 2d, Business Relationships § 1380

52 NY Jur 2d, Employment Relations §§ 115, 118, 131, 132, 246

82 NY Jur 2d, Parties § 250

# EXHIBIT E

McKinney's Consolidated Laws of New York Annotated

Labor Law (Refs & Annos)

Chapter 31. Of the Consolidated Laws (Refs & Annos)

Article 19. Minimum Wage Act (Refs & Annos)

This section has been updated. Click here for the updated version.

Effective: December 6, 2004 to March 28, 2013

McKinney's Labor Law § 652

### § 652. Minimum wage

1. Statutory. Every employer shall pay to each of its employees for each hour worked a wage of not less than:

$4.25 on and after April 1, 1991

$5.15 on and after March 31, 2000,

$6.00 on and after January 1, 2005,

$6.75 on and after January 1, 2006,

$7.15 on and after January 1, 2007, or, if greater, such other wage as may be established by federal law pursuant to 29 U.S.C. section 206 or its successors

or such other wage as may be established in accordance with the provisions of this article.

2. Existing wage orders. The minimum wage orders in effect on the effective date of this act shall remain in full force and effect, except as modified in accordance with the provisions of this article. Such minimum wage orders shall be modified by the commissioner to increase all monetary amounts specified therein in the same proportion as the increase in the hourly minimum wage as provided in subdivision one of this section, including the amounts specified in such minimum wage orders as allowances for gratuities, and when furnished by the employer to its employees, for meals, lodging, apparel and other such items, services and facilities. All amounts so modified shall be rounded off to the nearest five cents. The modified orders shall be promulgated by the commissioner without a public hearing, and without reference to a wage board, and shall become effective on the effective date of such increases in the minimum wage except as otherwise provided in this subdivision, notwithstanding any other provision of this article.

3. Non-profitmaking institutions. (a) Application of article. This article shall apply to non-profitmaking institutions.

(b) Option available to non-profitmaking institutions. The provisions of any wage order issued under this article shall not apply, however, to any non-profitmaking institution which pays and continues to pay to each of its employees in every occupation a wage, exclusive of allowances, of not less than the minimum wage provided in subdivision one of this section provided that such institution had certified under oath to the commissioner, on or before September first, nineteen hundred sixty, that

on or before October first, nineteen hundred sixty it would pay and thereafter intended to pay such wage to each of its employees in every occupation and provided further that all the provisions of this article have not become applicable to such institution by operation of paragraph (c) of this subdivision. If such institution was not organized or did not hire any employees as defined in subdivision five of section six hundred fifty-one of this chapter before September first, nineteen hundred sixty, such provisions shall not apply so long as, commencing six months after it was organized, or first employed such employees it paid and continues to pay such wage to each of its employees in every occupation, provided that such institution certified under oath within six months after it was organized or first employed such employees that it would pay and thereafter intended to pay such wage to each of its employees in every occupation and provided further that all the provisions of this article have not become applicable to such institution by operation of paragraph (c) of this subdivision.

(c) Termination of option. All the provisions of this article, including all of the provisions of any wage order issued thereunder which, but for the operation of paragraph (b) of this subdivision, would apply to any non-profitmaking institution, shall become fully applicable to such institution sixty days after such institution files a notice with the commissioner requesting that the provisions of such wage order apply to it, or immediately upon the issuance of an order by the commissioner finding that such institution has failed to pay the wages provided in paragraph (b) of this subdivision, but in no event shall any such order discharge the obligation of such institution to pay the wages provided by paragraph (b) of this subdivision for any period prior to the issuance of such order.

4. Notwithstanding subdivisions one and two of this section, the wage for an employee who is a food service worker receiving tips shall be a cash wage of at least three dollars and thirty cents per hour on or after March thirty-first, two thousand; three dollars and eighty-five cents on or after January first, two thousand five; at least four dollars and thirty-five cents on or after January first, two thousand six; and at least four dollars and sixty cents on or after January first, two thousand seven, provided that the tips of such an employee, when added to such cash wage, are equal to or exceed the minimum wage in effect pursuant to subdivision one of this section and provided further that no other cash wage is established pursuant to section six hundred fifty-three of this article. In the event the cash wage payable under the Fair Labor Standards Act (29 United States Code Sec. 203 (m), as amended), is increased after enactment of this subdivision, the cash wage payable under this subdivision shall automatically be increased by the proportionate increase in the cash wage payable under such federal law, and will be immediately enforceable as the cash wage payable to food service workers under this article.

5. Notwithstanding subdivisions one and two of this section, meal and lodging allowances for a food service worker receiving a cash wage amounting to three dollars and thirty cents per hour on or after March thirty-first, two thousand; three dollars and eighty-five cents on or after January first, two

thousand five; four dollars and thirty-five cents on or after January first, two thousand six; and four dollars and sixty cents on or after January first, two thousand seven, shall not increase more than two-thirds of the increase required by subdivision two of this section as applied to state wage orders in effect pursuant to subdivision one of this section.

## Credits

(Added L.1960, c. 619, § 2. Amended L.1961, c. 440, § 4; L.1962, c. 439, § 4; L.1962, c. 440, § 2; L.1966, c. 649, § 2; L.1970, c. 282, § 1; L.1974, c. 280, § 1; L.1978, c. 747, §§ 1, 2; L.1979, c. 668, § 1; L.1990, c. 38, §§ 1, 2; L.1999, c. 3, § 3, eff. Dec. 29, 1999; L.2000, c. 14, § 4, eff. March 31, 2000; L.2004, c. 747, § 2, eff. Dec. 6, 2004.)

McKinney's Labor Law § 652, NY LABOR § 652

Current through L.2014, chapters 1 to 3.

# EXHIBIT F

# DAE LEE AND AMEN LEE'S CORPORATION
## (T/A TIP TOP CAR WASH)

## **Docket No. PR 09-009**

Dae Lee and Amen Lee's Corporation (T/A Tip Top Car Wash)

STATE OF NEW YORK
INDUSTRIAL BOARD OF APPEALS
-------------------------------------------------------------------x
In the Matter of the Petition of:                                 :

DAE LEE AND AMEN LEE'S CORPORATION                                :
(T/A TIP TOP CAR WASH),                                           :
                                                                  :
                                  Petitioners,                    :    DOCKET NO. PR 09-009
                                                                  :
To Review Under Section 101 of the Labor Law:                     :    <u>RESOLUTION OF DECISION</u>
An Order to Comply with Article 19 of the Labor                   :
Law, dated November 17, 2008,                                     :
                                                                  :
                        - against -                               :
                                                                  :
THE COMMISSIONER OF LABOR,                                        :
                                                                  :
                                  Respondent.                     :
-------------------------------------------------------------------x

## APPEARANCES

Seth Wapnick[1] for Petitioners.

Maria L. Colavito, Counsel, NYS Department of Labor, Benjamin A. Shaw of Counsel, for Respondent.

## WITNESSES

Hazeline Hudson, Roger Bentick, and Dae S. Lee for the Petitioners; Labor Standards Investigator Jose Luis Mendez and Senior Labor Standards Investigator Vincent Hammond for the Respondent.

## WHEREAS:

The Petition for review in the above-captioned case was filed with the Industrial Board of Appeals (Board) on January 15, 2009. Upon notice to the parties a hearing was held on October 28, 2009 in New York, New York, before Anne P. Stevason, Esq., Chairperson of the Board and the designated Hearing Officer in this proceeding. Each party was afforded a full opportunity to present documentary evidence, to examine and cross-examine witnesses, to make statements relevant to the issues, and to file post-hearing briefs.

---

[1] Mr. Wapnick is not an attorney nor is he a Certified Public Accountant. The Petitioners filed a Designation of Representation form authorizing Mr. Wapnick to represent them in this proceeding.

The Order to Comply with Article 19 (Wage Order) under review was issued by the Respondent Commissioner of Labor (Commissioner) on November 17, 2008 against the Petitioners and directs compliance with Article 19 and payment to the Commissioner for wages due and owing to several employees in the amount of $46,676.42 for the time period from October 29, 2006 to March 16, 2008, interest continuing thereon at the rate of 16% calculated to the date of the Order, in the amount of $5,033.39, and assesses a civil penalty in the amount of $46,676.00, for a total amount due of $98,385.81. A Penalty Order Under Article 19 was also issued charging the Petitioners with various recordkeeping violations. The Petitioners, although they attached this Order to their Petition, did not raise any objections to it, and therefore it is affirmed.

## SUMMARY OF EVIDENCE

Petitioners Dae S. Lee and Amen Lee's Corporation operate a car wash in Brooklyn, New York, trading as Tip Top Car Wash. Lee became the owner and president of Tip Top in 2006. Lee testified that the car wash's employees were paid in cash on a weekly basis and that they also received daily tips. The employees received their wages in an envelope marked with their names and the amount of wages paid. The payroll was processed by the car wash's manager, Hazeline Hudson, who used employee time cards to calculate the amount of wages to pay each employee. Lee testified that he kept each week's time cards for only a few months before discarding them. The Petitioners never produced any time cards to the Department of Labor (DOL).

Lee testified that the car wash's employees received tips left by customers in two "tip pans" located at the front and back of the car wash. At the end of each work day the tips were pooled and divided evenly among the employees. Additionally, some employees, particularly those working in the front, sometimes received tips directly from customers that may not have been shared with the other workers. Lee testified that because he believed the workers in the front of the car wash received more direct tips from customers, he started to give an additional $20.00 "bonus" to those who worked in the back on busy days. He eventually included the front employees in this practice after they complained that it was unfair. Lee testified that the manager, Ms. Hudson, kept records of the tips received by employees, but conceded he did not produce such records to DOL because "nobody asked for it." Lee did not keep records of the bonuses he periodically paid to his employees.

Hazeline Hudson testified that she has been the manager of Tip Car Wash since 2002. She stated that there are two tip pans at the car wash and that all the tips are pooled at the end of each work day and divided evenly with the employees.

Hudson prepared the "wage book" in which she recorded the weekly hours worked by each employee and the wages paid. She used the daily hours listed on the employee time cards to determine the weekly hours she then recorded in the wage book for each employee, and gave the time cards to Lee each week after completing the payroll.

Hudson testified that in 2009 she also prepared a book at the behest of the Petitioners' representative that included the information from the wage book plus the amount of daily tips each employee received. Hudson explained that this book was made by compiling the daily

tip records that she kept; however she testified that the daily tip records could not be produced at hearing because they had been stolen. Seven to eleven employees worked each day, some of them working only part-time. She estimated that a total of $100.00 to $200.00 in tips was left in the tip pans each day, and that each employee received between $12.00 and $15.00 per day in tips. Additionally, Hudson testified that Lee sometimes gave each employee an additional $20.00.

Roger Betnick testified that he worked for the Petitioners from August 2006 to January 2007 and then again from April 2007 on. He described his position as servicing and maintaining the machines, supervising the car wash employees, giving tickets to customers, putting cars on the belts, brushing the cars, sending cars through the car wash, and "making sure everything is ok." Betnick testified that he shares in the tips each day and that some workers receive tips directly from customers and do not put them in the tip box. Lee gives the employees an additional $20.00 when the car wash is busy.

Betnick testified that he has no fixed hours because the work depends on the weather. He is paid in cash and he signs for his wages in a book.

DOL Labor Standards Investigator (LSI) Jose Luis Mendez testified that he participated in a DOL investigative sweep of Brooklyn car washes. As part of this sweep, he inspected the Petitioners' premises and interviewed their employees. LSI Mendez testified that no records were available for review when he visited the car wash. Notebooks that the Petitioners subsequently provided did not include the daily hours worked by each employee, but did contain what appeared to him as daily wage rates. LSI Mendez prepared an audit of the wages owed to the Petitioners' employees based on employee statements and the notebooks the Petitioners provided. LSI Mendez credited the Petitioners with the hours worked and money paid listed in their records. He also credited $7.00 in tips per day because the employees stated that they did receive daily tips in that amount. LSI Mendez further testified that after his first audit was completed, he prepared a revised audit because an employee named Nelson was mistakenly left off the first audit.

LSI Mendez conceded during cross examination that errors were made in the calculations that formed the basis for the underpayments listed in the Wage Order. The formula that he used automatically posted regular wages at 40 hours even for employees who worked less than 40 hours. This led to an overstatement of the wages due and owing.

Senior Labor Standards Investigator (SLSI) Vincent Hammond testified that he led a team of investigators that did an investigative sweep of car washes in Brooklyn, New York, including Tip Top Car Wash. He recommended imposing a 100% civil penalty against the Petitioners because the Petitioners' records were inadequate, no wage statements were provided to their employees, and they paid straight time for all hours worked, including overtime hours.

FINDINGS AND CONCLUSIONS OF LAW

The Board makes the following findings of fact and law pursuant to the provision of Board Rules of Procedure and Practice 65.39 (12 NYCRR 65.39).

The Petitioners have the burden to show that the Orders are invalid or unreasonable (Labor Law § 101, 103; 12 NYCRR 65.30).

The Commissioner issued the Orders under review following an investigative sweep of car washes that found violations of the Minimum Wage Act, Article 19 of the Labor Law. The Commissioner based these violations on interviews with employees and the Petitioners' "wage books" which did not indicate the daily hours worked by the Petitioners' employees, or the amount of weekly tips they received.

Article 19 requires every employer to pay each of its covered employees the minimum wage in effect at the time payment is due (*see* Labor Law § 652). The applicable minimum wage in effect in New York during the time period covered by the Wage Order was $6.75 an hour in 2006; and $7.15 an hour from January 1, 2007 to March 16, 2008, the last date covered by the Wage Order (12 NYCRR 142-2.1). An employer must also pay every non-residential covered employee overtime at a wage rate of 1 1/2 times the employee's regular rate of pay for all hours worked in excess of 40 in a given work week (12 NYCRR 142-2.2). When an employee is paid on a basis other than an hourly rate, "the regular hourly rate shall be determined by dividing the total hours worked during the week into the employee's total earnings" (12 NYCRR 142-2.16). In addition, each employee shall receive one hour's "spread shift" pay at the basic minimum wage for any day in which an employee's spread of hours exceeds 10 hours (12 NYCRR 142-2.4 [a]).

Employers of employees who receive gratuities or tips, as in this case, may take a "tip allowance" against the minimum wage in specified amounts if certain conditions are met (12 NYCRR 142-2.5). In order to take the tip allowance, the employer must provide "substantial evidence that the employee received in tips at least the amount of the allowance claimed [such as a] statement signed by the employee that he actually received in tips the amount of the allowance claimed" (12 NYCRR 142-2.5 [b] [1] [ii]); and the allowance claimed must be "recorded on a weekly basis as a separate item in the wage record" (12 NYCRR 142-2.5 [b] [1] [iii]).

The tip allowance in 2006 was $1.05 an hour for an employee whose weekly average of tips received was between $1.05 and $1.65 per hour, and $1.65 an hour for an employee whose weekly average of tips received was $1.65 an hour or more (12 NYCRR 142-2.5 [b] [2] [i]); and in 2007 and 2008 was $1.10 an hour for an employee whose weekly average of tips received was between $1.10 per hour and $1.75 per hour, and $1.75 an hour for an employee whose weekly average of tips received was $1.75 per hour or more (*Id*). No allowance for tips was permitted in 2006 for an employee whose weekly average of tips received was less than $1.05 an hour, or in 2007 and 2008 for an employee whose weekly average of tips received was less than $1.10 an hour (12 NYCRR 142-2.5 [b] [2] [ii]).

Article 19 additionally requires employers to maintain payroll records and to keep those records available for inspection by the Commissioner at any reasonable time (Labor Law § 661). DOL regulations at 12 NYCRR 142-2.6 provide that weekly payroll records must be maintained and preserved for six years and shall show, *inter alia*, the name and address; social security number; wage rate; number of hours worked daily and weekly; amount of gross wages; deductions from gross wages; allowances if any claimed as part of minimum wages; and net wages paid for each employee.

The Petitioners' payroll records for the relevant time period are inadequate because they do not show each employee's daily hours worked or, in order to received a tip allowance, the amount of tips each received weekly.

In the absence of adequate payroll records, the Commissioner determined the amount of underpayments based on employee statements and the Petitioners' own records of weekly hours worked and wages paid. We have repeatedly held that where an employer fails to maintain required records, DOL may use the best available evidence to calculate back wages due to the employer's employees, which in this case was the estimate made by DOL (*see e.g. Matter of Abdul Wahid et al.,* PR 08-005 [November 17, 2009]; *Matter of Ricardo J. Ahrens,* PR 07-062 [August 27, 2009]; *Matter of 238 Food Corp.,* PR 05-068 [April 25, 2008]; *see also* Labor Law § 196-a). The Petitioners had the burden to prove that the Commissioner's method of assessing the Petitioners' liability in this case was invalid or unreasonable which, for the reasons discussed below, they failed to do.

Petitioners alleged that the Wage Order was unreasonable because their employees received tips in amounts sufficient to bring the Petitioners into compliance with Minimum Wage. However, the Petitioners provided no accurate evidence of the actual amount of weekly tips received by their employees, and unfortunately, the weekly tip records maintained by Ms. Hudson were stolen before they could be produced to DOL. Absent any credible evidence, DOL reasonably relied on employee statements to estimate the daily tips received by the Petitioners' employees.

Additionally, DOL relied on employee statements and the Petitioners' own records of weekly hours worked and wages paid to determine the amount of wages due and owing to the employees during the relevant time period. The Petitioners offered no evidence specific enough to contradict DOL's determination of the employee's daily hours worked and hourly wage rates, and indeed, Mr. Lee testified that he had destroyed the employees' time cards, the only reliable evidence that existed of the daily hours his employees worked. Accordingly, the Petitioners have failed to meet their burden that the Wage Order was unreasonable.

At hearing the Petitioners asserted for the first time that a mathematical error in the Wage Order led to an overstatement of their liability. The Hearing Officer allowed the Petitioners, over the Respondent's objection, to amend the petition to raise the mathematical errors in the Wage Order. We agree that the Wage Order is based on an incorrect calculation of the underpayment due to employees who worked fewer than 40 hours a week because the formula that DOL used in its computer generated spreadsheet automatically posts 40 hours at minimum wage for all employees in the "regular wages" column. At the Hearing Officer's direction, the Commissioner submitted a corrected spreadsheet after the hearing that reduces the wages due and owing from $46,676.42 to $41,224.69. Therefore, the Wage Order must be modified to reflect the corrected amount and the interest and civil penalty reduced in proportion.

## Civil Penalty

The Wage Order assesses a 100% civil penalty. The Board finds that the considerations required to be made by the Commissioner in connection with the imposition of a 100% civil penalty were proper and reasonable in all respects.

## INTEREST

Labor Law § 219(1) provides that when the Commissioner determines that wages are due, then the order directing payment shall include "interest at the rate of interest then in effect as prescribed by the superintendent of banks pursuant to section fourteen-a of the banking law per annum from the date of the underpayment to the date of payment." Banking Law section 14-A sets the "maximum rate of interest" at "sixteen percent per centum per annum."

NOW, THEREFORE, IT IS HEREBY RESOLVED THAT:

1. The Wage Order is modified to change the amount of wages due and owing to $41,224.69 and to reduce the civil penalty and interest proportionally; and

2. The Wage Order is otherwise affirmed; and

3. The Penalty Order Under Article 19 is affirmed; and

4. The Petition for Review be, and the same hereby is, denied.

Anne P. Stevason, Chairman

J. Christopher Meagher, Member

Jean Grumet, Member

Absent
LaMarr J. Jackson, Member

Jeffrey R. Cassidy, Member

Dated and signed in the Office of
the Industrial Board of Appeals,
at Albany, New York, on
May 26, 2010.

# EXHIBIT G

# Lexis®

| Search | Get a Document | *Shepard's*® | More | | History | Alerts |
|---|---|---|---|---|---|---|

FOCUS™ Terms  "hospitality industry" and "minimum   Search Within   Original Results (1 - 6)            View Tutorial
Advanced...

Source: **Legal > States Legal - U.S. > New York > Find Statutes, Regulations, Administrative Materials & Court Rules > NY State Net Regulatory Text** ⓘ

Terms: **"hospitality industry" and "minimum wage"**  (Suggest Terms for My Search)

☛Select for FOCUS™ or Delivery
☐

*2010 NY 21874*

## State Net®

### A LexisNexis® Company

Copyright © 2010 LexisNexis. All rights reserved.
Regulation Full Text

Title 12 NYCRR Parts 137, 138, 146

Department of Labor

PROPOSED RULE MAKING

NO HEARING(S) SCHEDULED

Hotel and Restaurant Wage Orders

I.D. No. LAB-42-10-00005-P

Retrieve Regulation Tracking Report

2010 NY Regulation Text 21874

**VERSION:** Proposed Rule Notice

VERSION-DATE: October 20, 2010

DIGEST: PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

Proposed Action: Repeal of Parts 137 and 138; and addition of Part 146 to Title 12 NYCRR.

Statutory authority: Labor Law, sections 21(11), 199, 653 and 656

Subject: Hotel and Restaurant Wage Orders.

Purpose: Combine the Hotel and Restaurant Wage Orders into one Wage Order

titled Hospitality Wage Order.

Substance of proposed rule (Full text is posted at the following State website:www.labor.ny.gov): The proposed new rule will combine the wage orders for the restaurant and hotel industries (12 NYCRR 137 and 138) into a single new **Minimum Wage** Order for the **Hospitality Industry** (12 NYCRR 146). Regarding tips, the proposed regulations replace departmental policies and case law with new regulations to provide clarity and uniformity throughout the **hospitality industry.** They simplify by consolidating the current two-tiered tip credits, which depend on the amount of tips received, into a single tier for most employees. They eliminate a separate tip credit for housekeeping employees in resort hotels, consolidating them with other tipped service employees. (However, the proposed regulations do retain several special provisions for resort hotels only, namely a higher tip credit for non-food service employees and higher meal and lodging credits for all employees.) They consolidate two-tiered meal credits into a single tier for most employees. They eliminate unnecessary housing regulations by simply requiring compliance with all state, county and local health and housing codes. They eliminate overtime pay requirements unique to the hotel industry, leaving only time-and-a-half after 40 hours as the common rule for all covered workers in the **hospitality industry.** They extend extra payments that currently apply only to employees at or near the minimum hourly rate (call-in pay, excessive spread of hours pay, uniform maintenance pay) to all covered employees, thus eliminating a phase-out as wage rates rise that is poorly understood and cumbersome to calculate. Extending these extra payments from a limited class to all covered employees will help to make these requirements less obscure and more widely known.

Subpart 146-1 entitled "**Minimum Wage** Rates" sets forth the basic minimum hourly wage rate for employees in the **hospitality industry,** allows for tips credits toward the **minimum wage,** requires that employers in the **hospitality industry** pay an increased hourly rate for hours worked over forty per week, provides for payment of wages in "call-in" situations and requires spread of hours pay for employees in restaurants and non-resort hotels. Further, this section provides for uniform maintenance pay, the cost of purchasing required uniforms and allows for credits toward the **minimum wage** for meals and lodging.

Subpart 146-2 entitled "Regulations" sets forth the records employers are required to keep, mandates written notice to employees of pay rates, tip credit and pay day, as well as the provision of wage statements to each employee with every payment of wages. Employers must post **minimum wage** provisions in the place of employment, and must pay employees at an hourly rate, rather than salary, piece rate, or any other non-hourly rate of pay. The **minimum wage** requirements must be met on a week by week basis, regardless of the frequency of the payment of wages. Employers are prohibited from making deductions from pay for such things as spoilage and breakage. Minimum requirements are set forth for the provision of meals and housing for employers taking those allowances toward the **minimum wage.** Employees working in both tipped and non-tipped jobs, or occupations covered by both the hospitality wage order and another wage order, must be paid at whatever rate is applicable to the highest paying job or wage order, depending on the hours worked or percentage of hours worked at each job. Trainees, learners or apprentices must still be paid in accordance with this part. Students obtaining vocational experience to meet curriculum requirements shall not be deemed to have been permitted or suffered to perform work, and participants in rehabilitation programs approved by the commissioner shall be paid in accordance with the requirements of the approved program to satisfy this part. Definition of the terms "tip pooling" and "tip sharing" are provided, as well as the circumstances under which each is

permissible, the degree to which the employer may require tip pooling and sharing, and the records the employer is required to keep when operating tip pooling or tip sharing. A rebuttable presumption is created that any charge in addition to the bill for such things as food, beverage and lodging is to be considered a gratuity. Employers are permitted to run the employees' tips through the employer's credit card machine without incurring the extra cost of associated with the same.

Subpart 146-3 entitled "Definitions" provides definitions for the terms "**hospitality industry**", "hotel", "all year hotel" and "resort hotel". This subpart specifies which types of employees are covered, and provides definitions of individuals employed in a bona fide executive, administrative or professional capacity, as an outside sales person, golf caddy, camper worker and staff counselor. This subpart further defines "service employee", "non-service employee" and "food service worker". Definitions of the terms "regular rate of pay", "working time", "meal", "lodging", split shift", "required uniform", "ordinary wardrobe" and "week of work" are all contained in the this subpart, as applicable to the entire part.

Text of proposed rule and any required statements and analyses may be obtained from: Benjamin Shaw, New York State Department of Labor, State Office Campus, Building 12, Room 509, Albany, New York 12240,

(518) 457-4380, email: usfbas@labor.ny.gov Data, views or arguments may be submitted to: Same as above.

Public comment will be received until: 45 days after publication of this notice.

Regulatory Impact Statement

1. Statutory authority:

The statutory authority for the promulgation of this rule is found in Labor Law sections 653, 656, 199 and 21(11).

2. Legislative objectives:

Pursuant to Section 650 of the Labor Law, the stated purposes of Article 19 (the **Minimum Wage** Act) are: to ensure that wage levels are sufficient to provide adequate maintenance for employees and their families; to promote the health, efficiency and well-being of employees; to prevent unfair competition against other employers and their employees; to promote stability of industry; to maintain the purchasing power of employees; and to minimize the necessity to supplement wages with public money for relief or other public and private assistance.

More generally, section 21(11) authorizes the Commissioner of Labor to issue regulations governing any provision of the NYS Labor Law.

3. Needs and benefits:

Problems identified repeatedly in oral and written testimony submitted to the Wage Board were excessive complexity of regulations, opacity of departmental policy and reliance on case law, inconsistent application, and lack of knowledge or understanding of the regulations by affected and regulated parties.

To remedy these problems, the regulations have been amended to explain all requirements more clearly, using plain language and examples. They consolidate two regulations (12 NYCRR 137 and 12 NYCRR 138) regarding the hotel and restaurant industries into one new regulation (the **hospitality industry)** at 12 NYCRR 146. Regarding tips, the proposed regulations replace departmental policies and case law with new regulations to provide clarity and uniformity throughout the **hospitality industry.** They eliminate unnecessary housing regulations by simply requiring compliance with all state, county and local health and housing codes. They eliminate overtime pay requirements unique to the hotel industry, leaving only time-and-a-half after 40 hours as the common rule for all covered workers in the **hospitality industry.** They extend extra payments that currently apply only to employees at or near the minimum hourly rate (call-in pay, excessive spread of hours pay, uniform maintenance pay) to all covered employees, thus eliminating a phase-out as wage rates rise that is poorly understood and cumbersome to calculate.

(b) Underpayments arising from failure to pay an hourly rate and/or to pay premium overtime pay.

Existing regulations do not prohibit paying salaries to non-exempt workers, per se, although they do require that the salary cover at least the minimum hourly rate for all hours worked and they do require extra pay in addition to the salary, at a half-time of the regularly hourly rate, for any overtime hours. Currently, when non-exempt workers are paid a salary for all hours worked, the "regular rate" must be derived by dividing the salary by the total number of hours worked during that pay period. For hours worked in excess of forty per week, the employee must be paid time plus one half the regular rate. This requirement, well established in case law, is not well known, and multitudes of overtime violations result from payment of weekly rates. Under the current regulations, which technically allow non-exempt workers to be paid by salary, even a well meaning employer can easily end up violating both the **minimum wage/**overtime and record keeping requirements of Article 19 and its current attendant regulations.

To remedy these problems, the proposed regulations require that: (i) all non-exempt employees (except commissioned salespeople) be paid an hourly rate; (ii) at the time of hiring and at any time prior to a change in the wage rates, employers must give employees written notices of their regular and overtime hourly rates; and (iii) employers are specifically prohibited from paying employees (except commissioned salespersons) on any basis other than an hourly rate and failure to do so shall result in the commissioner's calculation of an hourly rate by dividing the employee's total weekly earnings, not including exclusions, by the lesser of 40 hours or the actual number of hours worked by the employee during that work week, with the determination of regular and overtime wages due to be based upon such calculated hourly rate.

(c) The size of the gap between regular **minimum wage** and the tipped rates.

The tipped rate as a proportion of the general minimum rate has declined as follows: 70% in 1974, 69% in 1981, 68% in 1991, and 64% (food service) and 68% (non-food service) from 2000 to the present. Food service workers vastly outnumber other tipped occupations in the industries and the decline of their pay rate as a proportion of the general minimum rate amounts to $.425 per hour or $17 per 40-hour week or $884 per year.

The proposed $.35 per hour increase in the rate for tipped food service

workers only partially recoups the loss. Although small, it is a step in the right direction. Occupations affected by it include waitstaff, bussers and dining room attendants, bartender assistants, bartenders, room service waitstaff and others.

The other proposed increase is $.75 per hour in the rate for tipped nonfood service workers. The tipped rate of these workers as a proportion of the general minimum rate has declined from 70% in 1974 to 68% in 2009, or $.175 per hour or $7.00 per week or $364 per year. Unlike the $.35 increase, the $.75 proposed increase is not merely playing catch-up. Instead, it advances these occupations to 78% of the general **minimum wage.** The occupations covered by this increase include baggage porters, bellhops, door persons, housekeepers, valet parkers and food delivery workers.

(d) Bring clear and equitable rules for handling tips into the regulations.

The proposed regulations flesh out Section 196-d, the Labor Law prohibiting tip appropriation, with basic rules for the handling of tips and mandatory charges on guest bills purported to be gratuities or substitutes for gratuities. They clarify and fill in interstices in the statute by consolidating and incorporating previously issued case law, departmental guidelines, and departmental opinion letters. They allow employees to voluntarily share or pool their tips, allow employers to require tip sharing or tip pooling, allow employers to set the percentages to be shared with or distributed to various service occupations, limit the occupations eligible to receive shares of tips to those that provide direct personal service to patrons, and those that assist the direct service providers to do so, require written notice upon hiring to employees of any tip pooling system, require employers to keep specified records on shared and pooled tips and mandatory charges purported to be gratuities or substitutes for gratuities, relieve employers of any liability for an employee's wrongful withholding of his or her tips from shared or pooled tips, require employers to give all employees access to tip records but not the payroll records of other employees, require employers to distribute in full to employees as gratuities any charge on a guest bill that would be understood by the reasonable customer to be a gratuity or substitute for a gratuity, establish a rebuttable presumption that any charge for "service" or "food service" is a charge purported to be a gratuity, require written notice to customers when a charge for the administration of a banquet, special function or package deal is not a gratuity to be distributed to the employees who provided the service, and require employers to return to employees the full amount of any tips charged to credit cards, less the pro-rated portion of the tip taken by the credit card company.

(e) Existing call-in, spread of hours, and uniform maintenance protections exclude many workers.

Current regulations give these protections only to workers paid at or near the minimum hourly rate. The proposed regulations extend the protections involving these matters to all covered workers, and clarify these requirements for the benefit of both employer and employee.

(f) Eliminate unnecessary uniform maintenance protections. Current regulations require uniform maintenance pay even when the uniforms are made of wash and wear material and are routinely washed and dried with other personal garments, i.e., no extra care is required. This is unnecessary. Under the proposed regulations, by adopting a wash-andwear exemption, far fewer uniforms trigger the extra pay.

(g) Avoid captive audience for meal purchases.

The proposed regulations requires employers, whenever the shift is long enough to invoke the meal period law, to either allow employees to bring their own food or give them a meal at a cost no greater than the meal credit amount in the wage order.

4. Costs:

Costs: There are no added costs to the Department of Labor or to state and local governments. Following are the cost effects on **hospitality industry** businesses.

(a) The minimum hourly rate for tipped non-food service employees increases by $.75 per hour. The minimum hourly rate for tipped food service employees increases by $.35 per hour.

(b) A minimum of three hours call-in pay must be paid to all employees, with payment for actual attendance to be paid at the employees' regular or overtime rate minus tip credit and payment for the balance of the call-in period to be made at the **minimum wage** with no tip credit subtracted.

(c) An extra hour of pay at the minimum hourly rate for a workday with a spread of hours greater than10 is extended to all covered employees. Each such day will cost an additional $7.25.

(d) The adoption of a wash-and-wear exemption will reduce costs for a large number of businesses that currently pay uniform maintenance pay and will no longer be required to do so. The reduction in costs will be up to $9.00 per week per uniformed employee.

(e) The extension of uniform maintenance pay to all covered employees will increase costs for those employers who have above-**minimum wage** employees who are required to wear uniforms that require special care. The increase in costs will be up to $9.00 per week per above-**minimum wage** uniformed employee.

(f) Meal credits that employers may take for providing meals to food service workers in restaurants and all-year hotels are increased by $.15 per meal, reducing business costs by that amount.

(g) The added cost of complying with the new requirement to give written pay notices to employees whenever their pay rates change is minimal, mainly consisting of the time it takes to fill out a simple pay notice and obtain the employee's signed receipt, times the number of employees affected.

(h) The requirement that non-exempt employees be paid hourly rates is neutral with respect to costs.

(i) However, there is an added cost, after an employer has failed to pay an hourly rate. The proposed regulations treat the salary as constituting the straight time pay for only the first 40 hours and thus require the payment of full time-and-a-half for the overtime hours, in addition to the salary.

(j) The added cost of lowering the overtime pay threshold for residential employees in hotels from 44 hours to 40 hours is one-half the employee's rate of pay times up to 4 hours, whenever the employee works overtime.

(k) The cost reduction from eliminating the overtime premium on the 7th day when a resort hotel employee works less than 40 hours in a week but works a schedule spread over 7 days is the one-half the employee's regular rate times the number of hours worked on the 7th day.

(l) The costs of keeping records on tip pooling, tip sharing, and mandatory charges on guest bills for gratuities will be new costs for those employers who require pooling or sharing and/or who make mandatory charges, unless they already keep such records for their own operational needs.

(m) The time and costs of disputation and litigation will be reduced for businesses and for the Department of Labor.

5. Local government mandates:

None. Federal, state and local governments and political subdivisions thereof are excluded from coverage under the proposed wage order by Labor Law Section 651.5(n) and 651.5 (last paragraph).

6. Paperwork:

The two new paperwork requirements are: (a) businesses in the **hospitality industry** will be required to keep and retain for six years records related to tip pooling, tip sharing, charges for gratuities, and charges for services unrelated to gratuities; and (b) employers will be required to give written pay notices to employees whenever pay rates change and to retain signed acknowledgments of receipt for six years.

Duplication: The proposed rule does not duplicate any other state regulations.

Alternatives:

The Wage Board considered many alternatives and proposals before adopting its recommendations. Several were debated strenuously. Individual members of the board may not agree with every final Board recommendation. Each understood that some compromises were necessary. Some decisions involved prioritizing what was most important and balancing of interests. All Board members supported the final Report as a whole.

9. Federal standards:

The federal Fair Labor Standards Act expressly provides that when states have higher or stricter standards, the higher or stricter standard will apply.

Currently, both federal and NYS laws set a minimum rate of $7.25 per hour and overtime pay at one-and-one-half times the regular rate. The proposed rule exceeds federal standards in the following areas:

The proposed NYS regulations require employers to pay tipped employees at least $4.75 per hour this year and at least $5.00 per hour in 2011. The proposed NYS regulations do not allow fair market value credits toward the **minimum wage** and instead set low fixed limits on the value of meals and lodging as part of the wages paid to employees.

The federal standards set a weekly **minimum wage,** while some requirements in

the proposed NYS regulations apply to both **minimum wage** and above-**minimum wage** workers (call-in pay, excessive spread of hours pay, and uniform maintenance pay).

The proposed NYS regulations require at least 3 hours pay for reporting to work, unless the employee has a regularly scheduled shift that is shorter. The proposed NYS regulations require an extra hour of pay when the spread of hours is greater than 10. The proposed NYS regulations prohibit such deductions in their entirety, protecting the wages of above-**minimum wage** workers as well as **minimum wage** workers. The proposed NYS regulations do require that such charges be distributed to employees as tips. The proposed NYS uniform maintenance pay amounts are definite, stated amounts and must be added to the wages of all non-exempt employees at any pay rate.

10. Compliance schedule:

Regulated entities should be able to achieve immediate compliance with the regulations. All of the payments to employees required in the proposed rule are types of payments already required by the existing regulations, so that the payroll processes necessary for these payments already exist at all complying enterprises. For the same reason, employers compliant with current regulations will not have any difficulty understanding the payments required under the new regulations.

Regulatory Flexibility Analysis

Effect of rule: No local governments will be affected by these regulations. All restaurants and hotels, including small ones, will be affected. The types of businesses included in the terms "restaurant" and "hotel" are specified in Section 146-3.1 of the proposed regulations. Based on 2008 data, approximately 41,800 hotels and restaurants with a combined total of approximately 577,000 employees are located in New York State.

Compliance requirements: There are no reporting requirements. New recordkeeping requirements are: (a) to keep records of tip sharing, tip pooling and service charges, and (b) to give written notices to employees when pay rates change and obtain signed acknowledgments of receipt.

All covered employees, except commissioned salespersons, must be paid an hourly rate. If a business fails to pay an hourly rate, then the salary will cover the straight-time pay only for the first 40 hoursand full "timeand-a-half" will be due for any overtime hours. The overtime pay threshold for residential employees in hotels goes down from 44 hours to 40 hours and overtime on the 7th day in resorts is eliminated. (Current regulation 138-2.2 states that when employees of resort hotels work seven consecutive days, they must be paid overtime for all hours worked on the seventh consecutive day). The minimum rates of pay for tipped employees increase $.35 per hour for food service workers and $.75 per hour for other tipped workers. Call-in pay, spread of hours pay, and uniform maintenance pay are extended to all employees. However, businesses that require only wash-and-wear uniforms and provide a sufficient number of uniforms to employees will no longer have to pay uniform maintenance pay. The meal credits employers may take for providing meals to food service workers are increased. There are regulations regarding tip pooling, tip sharing and the handling of tips and service charges on credit card bills. Tip pooling and tip sharing may be required by the employer or implemented by the employees. If the tip pooling or tip sharing is required by the employer, the employer must keep records of the tips collected, lists of

the participating occupations and the share of each tip to which they are entitled and the amount of tips received by each employee from the tip share or tip pool.

Professional services: These regulations will not necessarily require small businesses to obtain additional professional services. If records of tip sharing, tip pooling and/or service charges have previously been limited to informal worksheets or the like, a bookkeeper or accountant's assistance may help to come into compliance with the new record-keeping requirements.

Compliance costs: As explained in the Regulatory Impact Statement, the minimum hourly rate for tipped non-food service employees increases by $.75 per hour and for tipped food service employees increases by $.35

per hour. The cost of providing written pay notices to employees is minimal. Such notices need only be provided to employees who don't read English if the Department has made such notices available at no cost to employers in the employee's primary language, thereby resulting in no additional cost to the employer. Costs may increase for overtime served by residential employees in hotels because overtime will now be triggered after 40 hours work rather than 44 hours. Costs for above **minimum wage** employees who work spreads of hours greater than 10 in a day will increase by $7.25 per employee. Additional costs related to new record keeping requirements for tips and gratuities will depend upon how much employers will need to adjust their existing recordkeeping practices. Costs reductions include $.15 per meal for employers who provide meals to employees and elimination of uniform maintenance costs for wash and wear uniforms that do not need special care. Annual costs cannot be estimated as they will vary with the size of the business, the type of business and the particular practices of the business regarding employees' work hours, meals, lodging, uniforms and tips.

Economic and technological feasibility: Immediate compliance will be economically and technologically feasible. Overtime pay, tip credits, meal and lodging credits, call-in pay, spread of hours pay, and uniform maintenance pay have existed for decades in the hotel and restaurant industries. Payroll procedures have been already set up. New record-keeping for tips and service charges is within the capacity of businesses in the industry to set up, if they have not already done so.

Minimizing adverse impact: To minimize any adverse impact from increasing the minimum hourly wage rates for tipped employees, the increase has been divided into two steps ($.10 in 2010 and $.25 in 2011).

Small business and local government participation: No local governments participated. A six-member wage board of unpaid citizens met, took public testimony and deliberated for over 5 months. Two board members were from the NYS Restaurant Association and the NYS Hospitality and Tourism Association. Both associations include small businesses among their members. At three public hearings held in Buffalo, Albany and New York City, and by written testimony, some 59 persons owning, managing or representing businesses in the **hospitality industry** submitted testimony. The 59 people included persons from numerous independent restaurants and hotels, small sole proprietorships and family businesses, small partnerships and investor-owned businesses, and participants in franchised chains. After the wage board issued its report and recommendations, public notice was published and another public comment period of 15 days ensued.

Rural Area Flexibility Analysis

Types and estimated numbers of rural areas: These regulations apply to all restaurants and hotels in rural areas of the state. The proposal specifically includes rural area location in two of the three characteristics that define "resort hotel." In 2008, the hotel industry employed approximately 81,000 people in approximately 2,800 establishments statewide. The restaurant industry employed approximately 486,000 people in approximately 39,000 establishments statewide. Following is data on the number of establishments and employment in the hotel and restaurant industries by region in 2008. While rural areas have not been separated out from suburban and urban areas, the available data demonstrates that the **hospitality industry** is located throughout rural areas of the State.

Hotels: Capital District -422 establishments, 6,322 employees; Central NY -161 establishments, 2,917 employees; Finger Lakes -181 establishments, 3,707 employees; Hudson Valley -415 establishments, 8,839 employees; Long Island -241 establishments, 5,190 employees; Mohawk Valley -119 establishments, 1,450 employees; New York City -567 establishments; 41,406 employees; North Country -242 establishments, 2,665 employees; Southern Tier -208 establishments, 2,519 employees; Western NY -236 establishments, 5,616 employees. Restaurants: Capital District -2,423 establishments, 30,088 employees; Central NY-1,613 establishments, 23,283 employees; Finger Lakes -2,181 establishments, 33,444 employees; Hudson Valley -4,760 establishments, 47,197 employees; Long Island -5,853 establishments, 71,484 employees; Mohawk Valley -1,027 establishments, 11,581 employees; New York City -16,157 establishments, 196,462 employees; North Country -905 establishments, 10,364 employees; Southern Tier -1,264 establishments, 16,669 employees; Western NY -2,897 establishments, 45,554 employees.

Reporting, recordkeeping, and other compliance requirements; and professional services: There are no new reporting requirements. There are two new recordkeeping requirements: (a) records on tip sharing, tip pooling and service charges. Rural area businesses that require employees to share or pool tips or that assess mandatory charges on guest bills for gratuities will need to keep records that can be adequately understood at a later date and are retained for six years. These are ordinary transactions in the normal course of business. Some employers may want the assistance of a bookkeeper or accountant in setting these up. The Department is not able to estimate the cost; (b) written notice must be given to employees whenever pay rates change, signed by the employee, and retained for six years. This does not require any additional professional services. While such notice must be provided in a language other than English if the employee doesn't read English, the requirement will only attach if the Department has developed notices in the necessary language and made them available to employers on its website. There are new compliance requirements for regulated employers regarding tip pooling, tip sharing, and service charges. In the time since a law against tip appropriation was passed in 1968, enforcement has relied on evolving departmental guidelines and case law. As recommended by the Wage Board, the new regulations set out and clarify the requirements. The regulations are expected to improve compliance with the law and reduce disputation and litigation.

Costs: The minimum hourly rate for tipped non-food service employees increases by $.75 per hour and for tipped food service employees increases by $.35 per hour. The cost of providing written pay notices to employees is minimal. Costs may increase for overtime served by residential employees in hotels in rural areas because overtime will now be triggered after 40 hours

work rather than 44 hours. Costs for above **minimum wage** employees who work spreads of hours greater than 10 in a day will increase by $7.25 per employee. Additional costs related to new record keeping requirements for tips and gratuities will depend upon how much employers will need to adjust their existing recordkeeping practices. Costs reductions include $.15 per meal for employers who provide meals to employees and elimination of uniform costs for wash and wear uniforms that do not need special care.

Minimizing adverse impact: To minimize any adverse impact from increasing the minimum hourly wage rates for tipped employees, the increase has been divided into two steps ($.10 in 2010 and $.25 in 2011).

Rural area participation: A six-member wage board of unpaid citizens met, took public testimony and deliberated for over 5 months. Two board members were from the NYS Restaurant Association and the NYS Hospitality and Tourism Association. Two board members were from UNITE HERE and the NY Hotel and Motel Trades Council, AFL-CIO. Two board members represented the general public, including the chair of the board from the School of Industrial and Labor Relations at Cornell University and a former Assistant Attorney General from Long Island. The board held 3 public hearings around the state. In Buffalo, 8 speakers from the region testified. In Albany, 10 speakers from the region and from Central New York testified. The third hearing was in New York City. Written testimony was received from 67 persons from many areas including rural areas of the state, who were owners, managers, and employees at restaurants and hotels. After over 5 months of deliberations, the wage board issued its report, after which a 15 day comment period ensued. The commissioner of labor accepted most of the board's recommendations and modified a few, giving her reasons.

Job Impact Statement

1. Nature of impact: It isapparent from the nature and purpose of the rule that it will not have a substantial impact on jobs or on employment opportunities.

These regulations are not expected to have a significant impact on jobs and employment opportunities for non-tipped employees paid the **minimum wage.** A recent study of the fast food industry in four other states has found that the impact of an increase in the **minimum wage** rate on employment rates is negligible in the positive or the negative (see The Effect of a Raised **Minimum Wage** on Employment: Differences Across State and Social Groups, St. Lawrence University 2009). Here, there is no general increase in the **minimum wage** rate, as the minimum hourly rate for non-tipped employees stays the same.

In regard to tipped employees, the purpose of these increases is not only to increase these tipped wage rates alone, but also to combine two different wage orders concerning different **minimum wages** for tipped employees working in different industries. The minimum hourly rate increases from $4.65 per hour to $5.00 per hour for tipped food service workers and from $4.90 per hour to $5.65 per hour for other tipped workers. The Wage Board representatives from the hotel and restaurant industries, as well as information provided by employers in these industries, indicated the need to simplify the wage order, which currently contains different **minimum wage** rates for tipped employees in the food service industry than tipped employees in the hotel industry, as well as two tiers of tipped rates within each industry. To that end, these regulations take the first steps toward creating one **minimum wage** rate for all tipped employees. In order to avoid any possible or perceived negative impact on the effected industries, the tipped **minimum wage** rate increases are enacted in

steps, mindful of the difficulties a sudden large change would present to struggling businesses.

The Wage Board recognized that it was in the interest of both employees and employers to reduce the number of worker classifications, along with their respective different **minimum wage** rates for tipped employees, and recommended that this increase occur over time. Again, these increases in **minimum wage** rates for tipped employees are not an increase in the **minimum wage** rate for all employees, do not increase the amount an employee is required to ultimately earn each hour in wages plus tips to meet the existing hourly **minimum wage** rate, and have the ultimate goal of simplifying the calculation of **minimum wage** rates for all tipped employees for the benefit of those employees as well as the employers, which currently must attempt to ascertain which employees fit into which categories and pay those employees at different rates, depending on their job duties.

Certain extra payments (uniform maintenance, spread of hours, call-in pay) are extended from **minimum wage** workers to all covered workers, but these extra payments are required only under certain circumstances that are within the control of the employer and usually can be avoided.

The net effect on costs will depend on the size, type and practices of the particular business. Costs will increase for businesses affected by the increase in minimum hourly rates for tipped employees. By the same token, costs will decrease for businesses benefitting from the adoption of the wash and wear exemption from uniform maintenance pay. Costs can change very little or not at all for businesses in which the two effects cancel each other out. Employers who have no tipped employees, such as sole proprietorships, as well as other establishments where the owner(s) perform the job duties of tipped employees while having other employees perform non-tipped duties (such as desk clerk and maintenance), the fast food industry, buffets, cafeterias, take-out restaurants, food stands, childrens' camps, adult camps, and auto and recreational vehicle partks, will not be affected by the increase in minimum hourly rates for tipped employees. The proposed regulations will have the significant benefit of reducing confusion and uncertainty on the part of employers regarding their legal obligations through simplification of the current wage order, elimination of unnecessary provisions, consolidation of other provisions, clarification of language, and including, for the first time, explicit regulations governing tips.

 AGENCY RULEMAKING (99%); LODGING (98%); **HOSPITALITY INDUSTRY** (96%); **MINIMUM WAGE** (96%); OVERTIME (96%); RESTAURANTS (96%); HOTELS & MOTELS (95%); GRATUITIES & TIPS (94%); WAGES & SALARIES (94%); REGIONAL & LOCAL GOVERNMENTS (94%); ADMINISTRATIVE PROCEDURE (93%); WAGE VIOLATIONS (93%); REGULATORY COMPLIANCE (93%); RESTAURANTS & FOOD SERVICE (92%); LABOR & EMPLOYMENT LAW (92%); HOTEL STAFF (92%); WAGE & HOUR LAWS (92%); LABOR DEPARTMENTS (91%); SALES FORCE (91%); REAL PROPERTY LAW (91%); **MINIMUM WAGE** LAWS (91%); US FEDERAL GOVERNMENT (90%); RESTRAINT OF TRADE (90%); RECRUITMENT & HIRING (90%); FULL TIME EMPLOYMENT (90%); WORK WEEK (90%); CURRICULA (90%); ACCOUNTING (90%); CREDIT CARDS (90%); APPROVALS (90%); US STATE GOVERNMENT (90%); RESORTS (90%); BUSINESS & PROFESSIONAL ASSOCIATIONS (90%); SOLE PROPRIETORSHIPS (90%); FAMILY (90%); FAMILY COMPANIES (90%); APPROPRIATIONS (90%); AVERAGE WEEKLY EARNINGS (90%); APPRENTICESHIPS & INTERNSHIPS (90%); SALES COMPENSATION (90%); COUNTIES (90%); COMMISSION PAY (90%); PAYMENT CARDS &

SERVICES (90%); RESTAURANT FOOD & BEVERAGE SALES (90%); SMALL
BUSINESS (90%); ACADEMIC STANDARDS (90%); PUBLIC FINANCE (90%); LODGING
INDUSTRY SECTOR PERFORMANCE (90%); BUILDING & HOUSING CODES (90%); BUSINESS
TORTS (90%); TOURISM (90%);

**STATE:** NEWYORK, USA (96%);

**LOAD-DATE:** October 22, 2010

Source: **Legal > States Legal - U.S. > New York > Find Statutes, Regulations, Administrative
Materials & Court Rules > NY State Net Regulatory Text** i
Terms: **"hospitality industry" and "minimum wage"** (Suggest Terms for My Search)
View: Full
Date/Time: Wednesday, January 29, 2014 - 1:36 PM EST

LexisNexis® About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2014 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.