**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ASHLEY HICKS et al.,** | |
| *Plaintiffs,* | |
| v. | |
| **T.L. CANNON CORP. ET AL.,** | |
| *Defendants.* | |

**Civil Action**
**No. 13-cv-6455 (EAW)**

### PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' CROSS-MOTION

**THOMAS & SOLOMON LLP**
*Attorneys for Plaintiffs*
693 East Avenue
Rochester, New York 14607
(585) 272-0540

Of Counsel:   J. Nelson Thomas
              Justin M. Cordello

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 3

I.    Legal Standard and Burden of Proof .................................................. 3

    A.    The Pay Stub requirement ....................................................... 3

    B.    The Wage Notice requirement ................................................ 4

II.    Defendants Are Liable for Not Paying Minimum Wage Because they Failed to Issue Compliant Pay Stubs Showing the Tip Credit as an Allowance, Which is a Prerequisite to Using the Tip Credit ............................... 4

    A.    The tip credit is a credit that must be listed on the Pay Stub under the post-2011 regulations ........................................ 5

    B.    The tip credit is an allowance that must be listed under the pre-2011 regulations ........................................................... 6

    C.    Every court to have ruled on the issue holds that failure to list the tip credit on the pay stub as an allowance results in disqualification to use the tip credit .................................... 7

III.    Defendants Are Liable for Not Paying Minimum Wage Because they Failed to Provide the Required Wage Notice, Which is a Prerequisite to Using the Tip Credit ..................................................... 10

    A.    There is no dispute that the defendants failed to provide the required Wage Notice ...................................................... 10

        1.    *Stipulation* ................................................................. 10

        2.    *Oral "notice"* ............................................................ 12

        3.    *Posters* ...................................................................... 12

        4.    *Forms provided in 2011* ............................................ 13

        5.    *Forms provided in 2012* ............................................ 15

        6.    *Summary of "notices"* ............................................... 15

    B.    Defendants were required to provide Wage Notices to the plaintiffs ... 17

    C.    Even under the defendants' reading, Raymond was entitled to the Wage Notice ................................................................. 19

D.    Defendants also failed to give a Wage Notice to other plaintiffs after the start of their employment.................................................................19

E.    The defendants' failure to provide the Wage Notice mandates payment at the minimum wage, not tip credit rate ..............................................22

F.    The tip credit provision is regulatory creation that can only be triggered when the regulatory requirements are met ...........................................25

IV.    The Defendants' Deliberate Violation of New York's Minimum Wage Law is Not a "Trifle." ......................................................................................28

V.    The Defendants are Not Entitled to Claim Customer Tips as Wages Paid to Reduce Their Own Liability ................................................................30

VI.    There is No Material Factual Dispute that Defendants' Conduct Triggers Liquidated Damages and Prejudgment Interest ...................................32

CONCLUSION.................................................................................................34

# TABLE OF AUTHORITIES

**Cases**

A.M. Medical Services, P.C. v. Progressive Casualty Ins. Co.,
101 A.D.2d 53 (2d Dep't 2012) ...................................................................25

Addison v. Huron Stevedoring Corp.,
96 F. Supp. 142 (S.D.N.Y. 1950)................................................................30

Addison v. Huron Stevedoring Corp.,
204 F.2d 88 (2d Cir. 1953) ........................................................................30

Ansoumana v. Gristede's Operating Corp.,
201 F.R.D. 81 (S.D.N.Y. 2001)..................................................................22

Barenboim v. Starbucks Corp.,
21 N.Y.3d 460, 995 N.E.2d 153 (2013) .....................................................24

Cao v. Wu Liang Ye Lexington Rest. Inc.,
No. 08-cv-3725, 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010).................... 2, 8

Chan v. Sung Yue Tung Corp.,
No. 03-cv-6048, 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007) ........................34

Copantitla v. Fiskardo Estiatorio, Inc.,
788 F. Supp. 2d 253 (S.D.N.Y. 2011) .................................................*passim*

Driver v. AppleIllinois, LLC,
917 F. Supp. 2d 793 (N.D. Ill. 2013) .........................................................28

Fengler v. Crouse Health Sys., Inc.,
634 F.Supp.2d 257 (N.D.N.Y. 2009) .........................................................22

Kilgore v. Outback Steakhouse of Fla., Inc.,
160 F.3d 294 (6th Cir. 1998)......................................................................28

Lanzetta v. Florio's Enters., Inc.,
763 F. Supp. 2d 615 (S.D.N.Y. 2011) ...................................................... 2, 8

Martin v. Tango's Rest., Inc.,
969 F.2d 1319 (1st Cir. 1992) ...........................................................17, 28, 29

Matter of Chesterfield Assoc. v. New York State Dept. of Labor,
4 N.Y.3d 597, 797 N.Y.S.2d 389, 830 N.E.2d 287 (2005)...........................25

Matter of Medical Scy. of State of N.Y. v. Serio,
100 N.Y.2d 854 (2003) ..............................................................................25

Mendez v. Pizza on Stone,
No. 11-cv-6316, 2012 WL 3133547 (S.D.N.Y. Aug. 1, 2012)...................... 2, 8

<u>Monterossa v. Martinez Rest. Corp.</u>,
   No. 11-cv-3689, 2012 WL 3890212 (S.D.N.Y. Sept. 7, 2012)...................................2, 4, 8

<u>Padilla v. Manlapaz</u>,
   643 F. Supp. 2d 302 (E.D.N.Y. 2009) ................................................................2, 4, 8, 34

<u>Paz v. Piedra</u>,
   No. 09-cv-3977, 2012 WL 121103 (S.D.N.Y. Jan. 12, 2012)......................................2, 33

<u>Perez v. Prime Steak House Rest. Corp.</u>,
   939 F. Supp. 2d 132 (D.P.R. 2013) ..............................................................................28

<u>Prickett v. Dekalb County</u>,
   349 F.3d 1294 (11th Cir. 2003)......................................................................................21

<u>Reich v. Chez Robert, Inc.</u>,
   28 F.3d 401 (3d Cir. 1994) ......................................................................................28, 32

<u>Richard v. Marriott</u>,
   549 F.2d 303 (4th Cir. 1977)..........................................................................................32

<u>Ring v. Sokolove</u>,
   No. 12-cv-12240, 2014 WL 1117859 (D. Mass March 18, 2014) ...................................28

<u>Samiento v. World Yacht Inc.</u>,
   10 N.Y.3d 70, 883 N.E.2d 990 (2008) ...........................................................................24

<u>Yu G. Ke v. Saigon Grill, Inc.</u>,
   595 F. Supp. 2d 240 (S.D.N.Y. 2008) ............................................................................34

**Statutes**

29 U.S.C. § 216(b)..........................................................................................................21

**Regulations**

29 C.F.R. § 531.60............................................................................................................15

12 NYCRR § 137-1.3.........................................................................................................15

12 NYCRR § 137-1.5 (pre-2011)........................................................................................6

12 NYCRR § 137-2.2 (pre-2011).....................................................................................3, 6

12 NYCRR § 142-2.8.........................................................................................................13

12 NYCRR § 146................................................................................................................24

12 NYCRR § 146-1.3...................................................................................................*passim*

12 NYCRR § 146-2.2.................................................................................................*passim*

12 NYCRR § 146-2.2(a) ......................................................................................................4

12 NYCRR § 146-2.2(c) ......................................................................................................4

12 NYCRR § 146-2.2(d) ......................................................................................................4

12 NYCRR § 146-2.3 (pre-2011)................................................................................... 4, 6

NYLL § 195 .......................................................................................................................25

NYLL § 199 ................................................................................................................. 24, 26

NYLL § 21(11) ............................................................................................................ 24, 26

NYLL § 652 .........................................................................................................................5

NYLL § 652(4)......................................................................................................................5

NYLL § 653 .......................................................................................................................23

NYLL § 653(2)............................................................................................................23, 24, 25

NYLL § 655 .......................................................................................................................24

NYLL § 656 .......................................................................................................................24

## PRELIMINARY STATEMENT

"Trifles."

That is how dismiss their failure to pay their employees minimum wage.[1] But compliance with the minimum wage requirements of the New York Labor Law Labor ("NYLL") is not a trifle.

Defendants' papers, read as though plaintiffs were seeking some form of draconian and unprecedented relief. But **every** case supports plaintiffs' claims and none support defendants' requested result. The plaintiffs' claims also comport with the plain language of the statute, regulation, and administrative interpretations. They are also consistent with the decades of federal law under similar federal provisions. Thus, it is really **the defendants** that are seeking a draconian and unprecedented result. This motion merely seeks basic and long-settled relief.

Defendants' hostility toward the regulations at issue in this case is clear. They dismiss them as "trifles" and brush their requirements aside as the "epitome of form over substance"—that exact phrase is in the opening line of their response.[2] The defendants can only draw that conclusion, though, because they believe that both the "form" **and** "substance" of the regulations are unimportant, for they violated both. But the important policy goals behind the regulations—protecting low wage workers from wage theft (as one of the relevant statutes was named) and clearly informing those workers of how they are paid, including their wage rate and allowances taken from that wage rate—are not "trifles" to the New York State Legislature that enacted these statutes or to the New York State Department

---

[1]    Doc. No. 178 at 20.

[2]    Doc. No. 178 at 1

of Labor ("DOL") that implemented them by enacting the regulations that the defendants dismiss as "form over substance." So strong is the policy behind these regulations, in fact, that even small, neighborhood, family-run restaurants are called to task when they fail to follow these regulations.[3] Even those "mom and pop" restaurants, those perhaps most sympathetic and deserving of a "free pass" when they fail to follow the "form," lose the privilege of paying less than the minimum wage if they do not follow the regulations. So strong is this policy, in fact, that even those restaurants have to pay back their tipped employees the difference between what they were paid and the minimum wage.

The defendants here, with their human resources department and national employment counsel are at least as able, if not more so, to follow the law, if they choose to. And given their deliberate action to evade the requirements of the regulations, the defendants here are at the very least as culpable as these other small business were for their failure to follow the regulations. So, the answer is, "yes," they, like other employers, need to follow the regulations. There is not a different, lower standard of compliance for large, sophisticated employers, and because they did not, comply, they owe their workers the minimum wage.

As set forth in plaintiffs' moving papers, there are two distinct claims at issue in this motion. One is for the defendants' failure to provide the required Wage Notice. The second is for the defendants' failure to provide proper pay stubs to the employees. Defendants' bear

---

[3]     *See, e.g., Lanzetta v. Florio's Enters., Inc.,* 763 F. Supp. 2d 615 (S.D.N.Y. 2011) (small, single-location, family-run, neighborhood restaurant); *Paz v. Piedra,* No. 09-cv-3977, 2012 WL 121103 (S.D.N.Y. Jan. 12, 2012) (small local, family business with only three restaurant locations); *Padilla v. Manlapaz,* 643 F. Supp. 2d 302 (E.D.N.Y. 2009) (small, single-location neighborhood restaurant); *Monterossa v. Martinez Rest. Corp.,* No. 11-cv-3689, 2012 WL 3890212 (S.D.N.Y. Sept. 7, 2012) (small, single-location neighborhood restaurant); *Cao v. Wu Liang Ye Lexington Rest. Inc.,* No. 08-cv-3725, 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010) (small neighborhood restaurant with only two locations); *Mendez v. Pizza on Stone,* No. 11-cv-6316, 2012 WL 3133547 (S.D.N.Y. Aug. 1, 2012) (small, local business); *Copantitla v. Fiskardo Estiatorio, Inc.,* 788 F. Supp. 2d 253 (S.D.N.Y. 2011) (local business).

the burden as to each of these two claims. These papers deal with the substantive issues surrounding each violation separately, and then address together the issues raised by defendants related to damages.

## ARGUMENT

### I.    Legal Standard and Burden of Proof.

Plaintiffs' claim is that the defendants are liable because they paid less than the minimum wage, and they cannot rely on the tip credit allowance to justify that violation because they failed to comply with the Pay Stub requirement, and also because they failed to comply with the Wage Notice requirement, either of which disqualifies them from using the tip credit. Because it is undisputed that the defendants paid less than the minimum wage, the only issue is whether the defendants complied with the Pay Stub requirement and the Wage Notice requirement.

### A.    The Pay Stub requirement.

The Pay Stub requirement was contained in section 137-2.2 of the pre-2011 regulations, and continues to be included in section 146-2.2 of the current regulations. Those sections require employers to provide employees with a wage statement with each pay check listing, among other things, the "allowances, if any, claimed as part of the minimum wage." *See* Doc. No. 145 at 18-19 (12 NYCRR § 146-2.2 (pre-2011 version)).

If the employer does not list the tip credit as an allowance on the pay stub, or does not maintain the required records, it cannot take advantage of the tip credit to pay less than the minimum wage. *E.g.*, *Monterossa v. Martinez Rest. Corp.*, No. 11-cv-3689, 2012 WL 3890212, at *4 (S.D.N.Y. Sept. 7, 2012) (summary judgment for employee); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 290 (S.D.N.Y. 2011) (same); *Padilla v.*

*Manlapaz*, 643 F. Supp. 2d 302, 310 (E.D.N.Y. 2009) (same). Courts applying these sections place the burden of proving compliance on the employer. *E.g.*, *Copantitla*, 788 F. Supp. 2d at 290 (holding that because the defendant failed to prove that it complied with the pay stub requirement, "defendants have failed to meet this requirement of claiming a "tip allowance" under New York law").

### B.    The Wage Notice requirement.

The wage notice requirement is contained in section 146-1.3 and section 146-2.2 of the regulations. These regulations were issued in 2011. Section 146-1.3 permits an employee to pay tipped employees less than the minimum wage using the "tip credit" "if the employee has been notified of the tip credit as required in Section 146-2.2." 12 NYCRR § 146-1.3. Section 146-2.2 specifies what information must be provided, including "the amount of the tip credit, if any, to be taken from the basic minimum hourly rate," mandates that it must be provided in writing, that the employee sign the form, and that the signed forms be retained for six years. *Id.* § 146-2.2 (a) & (c). Significantly, these regulations also expressly place the burden of proving compliance on the employer. *Id.* § 146-2.2(d).

Thus, both with respect to the Wage Notice claim and the Pay Stub claim, the defendants bear the burden to prove that they complied with the applicable regulations. As discussed in more detail below, they cannot do so, and plaintiffs' motion for summary judgment should therefore be granted, and defendants' cross-motion should be denied.

## II.    Defendants Are Liable for Not Paying Minimum Wage Because they Failed to Issue Compliant Pay Stubs Showing the Tip Credit as an Allowance, Which is a Prerequisite to Using the Tip Credit.

Defendants' first argument against having to notify the plaintiffs about the tip credit allowance on their paystubs is based on their claim that there is no such thing as a "tip

credit" or "tip allowance" under the law. *See* Doc. No. 178 at 10-11. They claim that the only wage due an employee is the tip credit wage rate and therefore no additional disclosures of "allowances" or "credits" are due.

The defendants' position represents a fundamental misunderstanding of the law. The tip credit wage is not an acceptable, alternative, lower wage, as defendants claim. Rather, it is a narrow exception to the minimum wage that can only be used if, when combined with an allowance the employer takes for the tips paid by customers, brings the employee's wage up to at least the minimum wage. NYLL § 652. (Defendants' argument further underscores that the defendants could not have been properly notifying the employees about their wages because, after all, the defendants themselves continue to misstate the law's basic provisions.)

The defendants point to NYLL § 652(4) to support their claim that the only wage due was the lower tip credit. But the statute actually undermines the defendants' argument. Although the law does state the lower wage can be paid, what it also requires—and what defendants tellingly omit from the citation—is the following phrase: "**provided** that the tips of such an employee, when added to such cash wage, are equal to or exceed the minimum wage in effect pursuant to subdivision one of this section." NYLL § 652(4) (emphasis added) Thus, it is the tip allowance, bringing the wage to the minimum wage, that allows the employer to only pay the $5.00 an hour. There has always been a tip credit allowance as part of the wage rate. This is confirmed both by the plain language of the regulations themselves, as well as the case law applying those regulations.

A.    **The tip credit is a credit that must be listed on the Pay Stub under the post-2011 regulations.**

This central point is echoed again in the regulations. As an initial matter, defendants' argument carries absolutely no weight after 2011. The 2011 regulations require that the

- 5 -

employer list all credits or allowances, expressly including the "credits claimed for tips" on the paystub. 12 NYCRR § 146-2.3. In defiance of this regulation, even after 2011, defendants still did not list the tip credit allowance.

### B.    The tip credit is an allowance that must be listed under the pre-2011 regulations.

Even under the pre-2011 regulations, those regulations' plain language makes clear the tip credit **is** an allowance—in fact, "allowance" is actually in the title of the regulation describing the tip credit: "**Tip allowance** for food service worker." *See* Ex. 1 (12 NYCRR § 137-1.5 (pre-2011 version)). Following that, the regulation states that, "Every employer…shall furnish to each employee a statement with every payment of wages listing . . . **allowances**, if any, claimed as part of the minimum wage." *See* Doc. No. 145 at 18-19 (12 NYCRR § 137-2.2 (pre-2011 version)). Therefore, even the pre-2011 the regulations expressly did treat the tip credit as an "allowance," that must be listed in the pay stub. To the degree that the defendants contend that the tip credit was not an "allowance," the regulatory language itself flatly contradicts that contention.

The DOL's interpretation also contradicts the defendants' position. The DOL expressly refers to the tip credit allowance under the pre-2011 regulations as a "tip **allowance**." For example, when, prior to issuing the 2011 regulations, the DOL began examining the tip credit issue, the Commissioner directed the Minimum Wage Board to explore whether the "tip **allowance**" should be expressly made to conform to the analogous federal provisions. *See* Affirmation of Jared K. Cook, sworn to April 3, 2014 ("Cook Aff.), Ex. A at 1 (Report and Recommendation of the Minimum Wage Board) (emphasis added). In accepting the board's recommendation, the Commissioner again referred to the tip credit as a "tip allowance:" "I accept the recommendation to require employers to notify tipped

employees of any tip allowances that will be taken and to **disallow the tip allowance** if such notice is not given." *See* Cook Aff, Ex. B at 2 (Order of Commissioner on Report and Recommendation of the 2009 Wage Board) (emphasis added).

Similarly, the defendants' argument that somehow they did not need to "list" or itemize the tip credit on the paystub is contradicted by both the regulation's plain language and the DOL's interpretation of the regulation. It expressly requires employers to "list[]" the allowances claimed. *Id.*, *see also, e.g.*, Cook Aff., Ex. C (Sample Pay Stub issued by the Department of Labor, listing allowances).

>    C.    **Every court to have ruled on the issue holds that failure to list the tip credit on the pay stub as an allowance results in disqualification to use the tip credit.**

Not only do the regulations' plain language and the DOL's interpretation of it both contradict the defendants' position, defendants' argument is further undercut by **every** decision that has addressed this issue. As set forth in plaintiffs' moving papers, every court to address this issue (including two decisions by Circuit Judge Chin, sitting by designation as a District Judge) all hold that an employer must list the tip credit as a separate item on the paystub. *See* Doc. No. 145 at 8-10. For example, in *Copantitla*, 788 F. Supp. 2d at 290, *Monterossa*, 2012 WL 3890212, at *4, and *Padilla*, 643 F. Supp. 2d at 310, the court granted summary judgment for the employees, holding that the employer failed to qualify for the tip credit under the NYLL because its paystubs failed to list the tip credit as an allowance. If the employer fails to comply by listing the tip credit as an allowance on the pay stub, **every single court** has held the employer is not in compliance with the tip credit regulations, and must therefore pay its employees the minimum wage. *Monterossa*, 2012 WL 3890212, at *4; *Copantitla*, 788 F. Supp. 2d at 290; *Padilla*, 643 F. Supp. 2d at 310; *Lanzetta v. Florio's Enters.*,

- 7 -

*Inc.*, 763 F. Supp. 2d 615, 624 (S.D.N.Y. 2011); *Cao v. Wu Liang Ye Lexington Rest. Inc.*, No. 08-cv-3725, 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010); *see also Mendez v. Pizza on Stone*, No. 11-cv-6316, 2012 WL 3133547, at *4 n.3 (S.D.N.Y. Aug. 1, 2012). These cases are unanimous. The defendants have failed to provide the Court with even one shred of authority holding otherwise. The defendants ask this Court to be the first to hold, contrary to the regulations themselves, that the employer faces no liability in failing to comply. That request must be denied.

The defendants' attempt to "distinguish" these cases, *see* Doc. No. 178 at 17-18, is a failure. The defendants point to a number of non-relevant distinctions in some cases, such as, for example, pointing out that the defendant in *Copantitla* also retained tips in addition to failing to provide compliant pay stubs, that the defendant in *Monterossa* failed to pay overtime in addition to failing to provide compliant pay stubs, or that the individual defendants in *Cao* defaulted. *See* Doc. No. 178 at 17-18. But mostly the defendants argue that because the defendants in those cases were also liable for additional violations, the courts' unanimous holdings that failure to provide compliant pay stubs listing the tip credit as an allowance should simply be ignored. They are wrong. The fact that the defendants in some of these cases may have committed additional violations does not change the fact that the court in all those cases squarely held that the violations that actually are at issue in this case—failure to provide compliant pay stubs—disqualify an employer from using the tip credit, as explained in further detail in plaintiffs' initial papers. *See* Doc. No. 145 at 8-10.[4] With any case, any party can always offer up some non-relevant distinctions. But here any

---

[4]    In addition, the defendants in this case also committed additional violations to the violation at issue in this case. In fact, there is a whole other class action currently pending dealing with additional violations committed by the same defendants. *See Roach v. T.L. Cannon Corp.*, No. 10-cv-591 (N.D.N.Y., filed May 19, 2010).

reasonable reading of each case demonstrates that the defendants are liable for their violations, a point further strengthened by the number of such holdings in any number of contexts and factual scenarios. The fact that the defendants cannot even cite a single case to the contrary is particularly telling.

Moreover, as noted above, these cases are also noteworthy for the fact that they were mostly decided against small, local, family-run businesses operating small, neighborhood restaurants (usually no more than 1 or 2 restaurant locations), *see supra* note 1, not large, sophisticated corporations with scores of locations and thousands of employees, like the defendants here. They thus demonstrate that the policy underlying these provisions is so strong that the courts enforce the plain language of the regulations even against small, family businesses—as sympathetic employer defendants as any. The defendants in this case—a large corporation that employs thousands of workers, has its own human resources team, and access to outside counsel to advise it on employment law compliance—cannot be heard to complain that the violation they have committed is merely "technical," or that the consequence of their violation—a consequence that applies uniformly to any employer that violates it, even small "mom and pop" businesses run by immigrant families—is too harsh. Just like the small "mom-and-pop" operations that have been held liable for their failures to follow the regulations, the defendants also have to comply with the law.

Therefore, because the defendants cannot show that they complied with the pay stub requirements by listing the tip credit as an allowance, they cannot use the tip credit and they are liable for failing to pay the minimum wage.

III.    **Defendants Are Liable for Not Paying Minimum Wage Because they Failed to Provide the Required Wage Notice, Which is a Prerequisite to Using the Tip Credit.**

As to the Wage Notice violation, defendants do not dispute, and the evidence clearly demonstrates, that they failed to provide the Wage Notice as required by law. The only issue, therefore, is whether the law required them to do so. Given this undisputed fact, the defendants offer a flood of alternative arguments, first claiming that they did not need to provide the Wage Notice, then claiming even if they did need to provide the Wage Notice, they could still pay the tip credit rate without providing the Wage Notice, and finally claiming that their violation is such a "trifle" that it is not worth remedying. This memorandum addresses each point in turn.

A.    **There is no dispute that the defendants failed to provide the required Wage Notice.**

There is no dispute that the defendants did not provide the required Wage Notice. The defendants never contend otherwise.[5] *See e.g.*, Doc. No. 178 at 13-14. This point deserves emphasis because defendants refer at several junctures to "notices" they gave the plaintiffs. These forms, however are not relevant to this motion because they are not Wage Notices, nor do they come close to providing the information required to claim the tip credit.

1.    *Stipulation*

As a preliminary matter, references to most of these "notices" are based on a stipulation between the parties. *See* Doc. No. 182. As background, discovery has not been

---

[5]    Although in their Counter-Statement of Material Facts Not in Dispute the defendants at first appear to contest the fact that they failed to provide a Wage Notice, Doc. No. 176-3, ¶¶ 4-5), a reading of their denial and referenced exhibit demonstrates that in making that denial, all they are saying is that they provided some "form" to the plaintiffs. However, that form is undeniably not the form that is required, and, as discussed herein, does not come close to complying with the Wage Notice requirements.

conducted on these issues and, as plaintiffs set forth in the stipulation, plaintiffs do not believe these facts alleged by the defendants are true. *See* Doc. No. 182 at 1-2. However, from plaintiffs' perspective, they are also irrelevant to the motion: plaintiffs' motion asserts that under the plain language of the tip credit regulation, an employer must provide the tip credit Wage Notice to pay the tip credit rate. *See* 12 NYCRR §§ 146-1.3; 146-2.2. Therefore, it is irrelevant whether the employer gave other (non-compliant) "notices" to employees.

When defendants stated they would oppose this motion on the basis that discovery was needed regarding these other "notices," plaintiffs agreed that they would not contest in their opposition papers that defendants provided these (non-compliant) "notices," both because the issue was irrelevant, and because defendants had not had discovery on these issues. *See* Doc. No. 182 at 1 ("Wherefore" clauses). Therefore, the stipulation allows the parties to present the straightforward legal issue to the Court: does an employer need to provide the Wage Notice and/or the correct paystubs to its employees in order to use the tip credit provision of the regulations. Absent the stipulation, the defendants' response would have raised claims that the motion was premature, and that there was the need for additional discovery. Given that plaintiffs' theory does not depend on those additional facts, plaintiffs agreed to the stipulation. However, as the stipulation specifies, these "facts" do not reflect plaintiffs' view of the case, but, as described below, reflect allegations that are not relevant to resolution of this motion no matter what is assumed about them. *See id.* at 1-2.

Additionally, as specified in the stipulation, the stipulation applies only to plaintiffs' summary judgment motion and plaintiffs' class certification motion; it does not apply for any other purpose in the case, including the defendants' cross-motion for summary judgment. *See*

Doc. No. 182 at 1 ("[P]laintiffs cannot oppose these asserted facts **for purposes of these motions (Docket Nos. 143 and 144)**.") (emphasis added).

2. *Oral "notice"*

Defendants' first reference to "notice" is to supposed "oral notices" they claim managers provided to the employees. *See* Doc. No. 178 at 5. Although plaintiffs fully expect to show such notices were not given, these alleged "oral notices" are irrelevant as they do not comply with the tip credit regulations and are thus irrelevant as to whether the defendants violated these regulations. The tip credit regulations explicitly require that the employer's notice be "written," "signed by the employee;" and "kept on file for six years"—none of which occurred with the "oral notices." 12 NYCRR § 146-2.2. Further, the defendants' "oral notices" did not notify the employees of their overtime pay rate; were (obviously) not signed by the employer's preparer; or set forth the company name and address—all as also required by the regulations. *See id.* Because the regulations do not allow the defendants' alleged "oral notice" to substitute for the mandated written Wage Notice, and because the "oral notices" did not even provide the required information, these alleged "oral notices" do not meet the requirements of  section 146-2.2, and do not allow payment at the tip credit rate.

3. *Posters*

Defendants next reference the posters they claim to have posted in stores. Doc. No. 178 at 5. Although plaintiffs do not believe discovery will reveal such posters were in fact routinely posted, that issue does not matter for this motion because the regulations do not allow posters to substitute for the Wage Notice. First, the regulations themselves require **both** that the posters be posted, *see* 12 NYCRR § 142-2.8, **and** that the Wage Notice be

provided, *see* 12 NYCRR § 146-2.2. If the posters could substitute for the Wage Notice, there would be no need for the Wage Notice regulation.

Second, the posters, although in writing, do not meet the Wage Notice standards: they are not signed by the employee; they are not specific to the employee in terms of that employee's straight and overtime wage rate; they do not specify an overtime rate at all; they are not specific in terms of the amount of tip credit for that particular employee; they do not list the overtime rate for the employee; they do not provide the regular payday; and they do not specify that an employer must make up the difference between the employee's rate of pay and the minimum wage if the tips are not sufficient to cover it—all as required by 12 NYCRR § 146-2.2. Additionally, the form was not signed by the employer's preparer; did not list the preparer's name; nor did it list the company name and address, also as listed on the Wage Notice form set forth in 12 NYCRR § 146-2.2. *See* Defendants Appendix 2-G, Doc. No. 176-10.

Therefore, whether or not posters were posted is simply irrelevant to the claim in this motion as to whether the Wage Notices pursuant to 12 NYCRR § 146-2.2 were provided.

### 4.    *Forms provided in 2011*

Defendants admit that the form they provided to employees in 2011 did not comply with the tip credit requirements. Doc. No. 178 at 5-6. (In fact, defendants simply continued to use the same form that they had used before the tip credit regulations were revised. *Compare* Defendants' Appendix, Doc. No. 176-10, Ex. 2-H *with* Ex. 2-I). The form they provided did not include the required statement that defendants' would make up any tips needed to ensure the employee earned $7.25 an hour. 12 NYCRR § 146-2.2.

In addition to the deficiencies the defendants expressly admit to, the defendants neglect to mention the number of other ways the 2011 form was non-compliant: the form did not list the amount of the tip credit being provided to get the wage tip credit rate up to the minimum wage of $7.25 an hour; the form stated that the employee's wage rate was $5.00 an hour, when the wage should actually be listed as $7.25 an hour (with the tip credit); and the form underreported to the overtime pay to which the employee was entitled,[6] all items required by 12 NYCRR § 146-2.2. *See* Defendants' Appendix, Doc. No. 176-10, Ex. 2-I. Additionally, the form was not signed by the employer's preparer; did not list the preparer's name; nor did it list the company name and address, also as listed on the Wage Notice form set forth in 12 NYCRR § 146-2.2. *See id.* Therefore, the 2011 pay form was non-compliant—and in substantial ways—with the tip credit regulation.

In fact, it appears that defense counsel itself advised its clients that the tip credit language needed to be included in the form, but defendants ignored that advice and chose to do the contrary. *See* Plaintiffs' Appendix, Ex. A Doc. No. 146-2, (Sabio Dep.) at 97-99; *see also* Cook Aff., Ex. E (Littler Mendelson, "Here's a Tip: New York is Overhauling the Restaurant and Hotel Industry Wage Orders" (March 2010) at p. 2 and n.3). (The defendants also attach a pay form they claim was used starting in June 2011, but there is no evidence in the record that any employee—much less the plaintiffs at issue on this motion—

---

[6] The form lists the overtime rate at $7.50 an hour when the employees should have been informed that the rate was $8.625 an hour. The overtime rate for hospitality workers is calculated by multiplying the minimum wage by time and one-half ($7.25hr. x 1.5 = $10.875) minus the tip credit ($2.25hr) for an overtime rate of $8.625. *See also* Cook Aff., Ex. D (Litter Mendelson, "New York Hospitality Wage Orders Revised" (December 17, 2010) (explaining this calculation)). Paying an overtime wage one and one-half times the base hourly wage rate, as defendants have done, is improper. *See Copantitla,* 788 F. Supp. 2d at 291. Even if defendants were entitled to take a tip credit, that credit should have been included in the "regular rate" both under 29 C.F.R. § 531.60 as well as under 12 NYCRR § 137-1.3. *See id.* at 292.

ever received or signed such a form. *See* Defendants' Appendix, Doc. No. 176-10 at 2-J. Given that lack of any evidence in the record that this form was ever used, it cannot serve as the basis to deny summary judgment.)

### 5. Form provided in 2012

Defendants then point to the form they used starting in 2012. Doc. No. 178 at 6. This form was addressed in some detail in plaintiffs' moving papers. *See* Doc. No. 145 at 4-5. Defendants do not dispute that on this form, they deliberately omitted the amount of tip credit taken, the specific overtime rate of pay; when the overtime rate starts (at 40 hours of work a week), and that if the employee's tips did not reach $7.25 an hour, the employer would make up the difference. Thus, as with the other forms, there is no dispute that the defendants' 2012 notice fell far short of what the regulations required to take a tip credit.

### 6. Summary of "notices"

Therefore, there is no genuine dispute that none of the alleged "notices" comes close to complying with the requirements to take the tip credit. Nor is there any dispute that, as discussed above, these violations are numerous, repeated, and substantial. Even if one pieces the notices together, the employee still does not receive the information required by the Wage Notice. To take just one example, in most "notices," the defendants incorrectly inform the plaintiffs that their hourly wage was $5.00 an hour (if the form even lists a wage rate at all). As the regulations make clear, the employer is supposed to inform the employee that her wage is the minimum wage—$7.25 an hour. The defendants were then to inform the employee that of that $7.25 an hour, the employer is taking a tip allowance of up to $2.25 from money paid by the customer in tips, and that the remaining $5.00 (plus any amount not covered by the tips) is paid by the employer. Repeatedly notifying an employee that her

hourly wage is only $5.00 is wrong, and is precisely the information the Wage Notice was designed to avoid. Although this is just one example of one of the recurrent problems in the "notices," the same analysis could be done of most of the violations listed above (the falsification of the overtime rate; the failure to include the tip credit amount; the requirement that the employer make up the difference between the tip credit wage and the minimum wage; etc.).

What makes the defendants' violations even more egregious is that they chose not to comply with the law even though the defendants' counsel went so far as to give them the form to provide to employees, as explained in more detail in plaintiffs' initial papers. *See* Doc. No. 145 at 5. But, living up to their "Two Loose Cannons" corporate name, the defendants continued to deliberately excise substantial amounts of required information from the forms no matter what the regulations said, and no matter what their lawyers told them, despite knowing the consequences of non-compliance.

They did so even though compliance in this case is particularly easy—the Department of Labor regulations themselves include a draft of a compliant notice for employers to use. All defendants had to do was simply fill in the limited amount of information required by the form and distribute it to their employees in one of the welter of other non-compliant forms defendants were already providing. *Cf. Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992) (noting, under the analogous federal regulations, that "if the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide").

In fact, defendants did not start providing much of the required information to current employees until after their Director of Human Resources was deposed in this action, and even then, only on the eve of the filing of this summary judgment motion. *See* Doc. No.

145 at 5. Defendants are a large corporation employing thousands of employees across multiple states with a dedicated human resources department and sophisticated outside employment counsel. In fact, defendants are one of the largest .03% of all U.S. employers. *See* Cook Aff., Ex. F (Affirmation of Christopher R. Hazenbush, sworn to April 3, 2014). It would not have been difficult for them to comply with the law. Their failure to comply was due not to difficulty, but to a deliberate choice.

**B.  Defendants were required to provide Wage Notices to the plaintiffs.**

Given that it is undisputed that no Wage Notice was provided to plaintiffs in this motion, the question then becomes a legal one: does the employer need to provide a Wage Notice? As the regulations make clear, issuing a compliant Wage Notice is a prerequisite that the employer must satisfy before it can pay the tip credit rate. *See* 12 NYCRR § 146-1.3. Otherwise, the normal minimum wage rules apply. Defendants claim they can get away with not providing a Wage Notice and yet still pay less than the minimum wage because they argue that they "were require[d] to provide notice in **only two** circumstances: (1) prior to the start of employment; and (2) prior to any change in the hourly rate," neither of which they claim was triggered here. Doc. No. 178 at 14. That argument, however, does not reflect the regulation's plain language or its regulatory history.

First, the defendants' interpretation flies in the face of the regulation's plain language. Although it is true that under 12 NYCRR § 146-2.2 an employer must give notice in the two situations noted by the defendants (when the employee starts employment and when her pay changes), section 146-1.3 of the regulations more fundamentally provides that an employer can use the tip credit **only** "**if** the employee has been notified of the tip credit as required in Section 146-2.2 [the Wage Notice requirement]." 12 NYCRR § 146-1.3 (emphasis added).

Therefore, under the plain language of section 1.3, if the Wage Notice is not provided, the tip credit cannot be taken, and the normal minimum wage needs to be paid. *See* 12 NYCRR §146-1.3. Section 146-1.3's requirement that a Wage Notice be given to employees before the employer can take the tip credit **is in addition** to the requirements of section 2.2; the requirements embodied in section 2.2 do not somehow erase the earlier and more fundamental proposition that a Wage Notice must be provided to any employee before a tip credit can be taken.

Second, even if accepted, the defendants' proffered interpretation leads to an incongruous result, and more importantly still actually warrants summary judgment for the plaintiffs. According to defendants, the only time employees are supposed to receive a Wage Notice is when they are hired or when their pay increases. But if those are the only triggers to get a Wage Notice, then according to defendants' own reading, the only employees to whom they could pay the tip credit are those who just started employment and those whose pay has increased because providing that Wage Notice is a requirement to use the tip credit. Since, according to the defendants, the plaintiffs do not fall into either category, all the defendants have confirmed is that the plaintiffs were not provided a Wage Notice and, thus lacking the Wage Notice, needed to be paid minimum wage, not the tip credit. This outcome—that only new employees and those receiving a change pay can be paid the tip credit—is nonsensical, but that is simply because it is the plain result of the defendants' nonsensical reading of the regulation.

Therefore, the defendants' argument that they only had to provide the Wage Notice to new employees, and those whose pay changed, is contradicted by the plain text of the regulation as well as logic.

**C.      Even under the defendants' reading, Raymond was entitled to the Wage Notice.**

Ignoring the requirement that current employees must receive the Wage Notice as a prerequisite to the employer using the tip credit, even under defendants' reading of the regulation, summary judgment is appropriate because defendants failed to give Ms. Raymond her Wage Notice after her pay increased. It is undisputed that Ms. Raymond's tip credit wage did increase on January 1, 2011 from $4.65 an hour to $5.00 an hour. *See* Plaintiffs' Appendix, Doc. No. 146-7, Ex. C at TLC0001050. Defendants did issue her a form noting her wage increase that day, *see* Defendants' Appendix, Doc. No. 176-10, Ex. 2-I, but as discussed above, deliberately cut out required Wage Notice information from that form, even though the tip credit regulations required that the Wage Notice be issued.

Therefore, summary judgment is warranted because defendants admit they did not provide Ms. Raymond her Wage Notice, even after the triggering event they concede required a Wage Notice to be issued, when her pay changed in 2011.

**D.      Defendants also failed to give a Wage Notice to other plaintiffs after the start of their employment.**

Defendants also do not dispute that they failed to give Wage Notices to plaintiffs upon their hiring—an event defendants themselves concede triggered its obligation to provide a Wage Notice, if the defendants wanted to pay the tip credit rate for those employees. Despite not providing the Wage Notice as they concede was required, defendants still deliberately paid those employees at the lower tip credit rate.

For example, Employee Nine[8] was hired on October 21, 2011, long after the 2011 regulations were in effect. *See* Plaintiffs' Appendix, Doc. No. 146-28, Ex. J-1. There is no dispute that Employee Nine was a paid a tip credit rate, and was hired after the Wage Notice required that she receive a Wage Notice to be paid the tip credit rate. And the defendants— despite conceding she needed to be provided the Wage Notice—do not dispute they did not provide the Wage Notice to her.

This is just one example from the limited number of "discovery plaintiffs" that are the subject of this motion. *See* Doc. No. 145 at 3. Given that defendants' policy to not provide the Wage Notice to **all** employees (whether current, those with pay changes, or those who were hired) was universal, these examples simply reflect the reality of defendants' uniform non-compliance with the tip credit regulations.

Notably, the defendants do not (because they cannot) dispute their uniform non-compliance. Defendants' only rebuttal rests on an overly technical (and incorrect) legal argument:  they claim that the Court should ignore this example of their uniform non-compliance because they argue that these "discovery plaintiffs" are not "parties" to the lawsuit. *See* Doc. No. 178 at 1 n.1. The opt-in provision of the Fair Labor Standards Act ("FLSA") forecloses that argument. By the express terms of the FLSA, when a party opts into the litigation, she becomes a "party plaintiff" to the "action." 29 U.S.C. § 216(b). These employees have opted in and are therefore, under the FLSA, party plaintiffs to this action, and the defendants' argument that they are not parties is incorrect.

Courts have enforced the statute's plain language. The Eleventh Circuit's explanation, for example, is directly on point:

---

[8]    This plaintiff's name and personal information has been redacted from these public filings for purposes of confidentiality, as was done in plaintiffs' initial papers.

- 20 -

> We are bound by the intent of Congress, as expressed in the language of the statute. The statute says, '[n]o employee shall be a party plaintiff to any such *action* unless he give his consent in writing to become such a party. . . ' 29 U.S.C. § 216(b) (emphasis added). That plain language indicates that plaintiffs do not opt-in or consent to join an action as to specific claims, but as to the action as a whole. The statute does not indicate that opt-in plaintiffs have a lesser status than named plaintiffs insofar as additional claims are concerned. To the contrary, by referring to them as 'party plaintiff[s]' Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs.

*Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003).

Federal courts in the Second Circuit have reached the same conclusion. *See, e.g.*, *Fengler v. Crouse Health Sys., Inc.*, 634 F.Supp.2d 257, 262-263 (N.D.N.Y. 2009) (Magistrate Judge's determination that opt-in plaintiffs must be limited to seeking damages for a single claim, rather than as to all claims asserted in the action, is clearly erroneous and contrary to law); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 90 (S.D.N.Y. 2001) ("Section 216(b) gives [opt-in plaintiffs] the status of parties and, as parties, they should have the same rights as the named Plaintiffs to have all their related claims adjudicated in the same forum.").

Moreover, the defendants themselves know these individuals to be parties to the lawsuit. After all, they used **party** discovery devices on these plaintiffs (interrogatories, document requests and deposition notices)—and not subpoenas—precisely because they knew them to be party plaintiffs in the action.

Therefore, given that these individuals are by force of statute parties to this action, and that defendants have proffered no relevant, admissible evidence to deny summary judgment as to these plaintiffs, they are each entitled to summary judgment in their favor.

E.    **The defendants' failure to provide the Wage Notice mandates payment at the minimum wage, not tip credit rate.**

After arguing that they did not need to provide the Wage Notice to the plaintiffs, the defendants next argue that even if they did need to, they still could have paid the employees at the tip credit rate without providing a compliant notice. There is no legal basis for this argument.

First, as discussed above, there is no doubt that the plain language of the regulation—"an employer may take a tip credit towards the basic minimum hourly rate **if**" it provides a Wage Notice—makes issuance of the Wage Notice a precondition for paying at the tip credit rate. 12 NYCRR § 146-1.3 (emphasis added).

Second, the commentary by the drafters and DOL show that they intended to give the regulation this plain meaning. The 2011 tip credit regulation grew out of legislation enacted by the New York State Legislature in 2000 requiring the Commissioner of the New York State Department of Labor ("Commissioner") to convene a wage board within six months of any changes to the minimum wage to study revisions to regulations applicable to food service employees. NYLL § 653(2); *see also* Ex. X (Report and Recommendation of the Minimum Wage Board) at 1. After the minimum wage increased on July 24, 2009, the Commissioner appointed the Wage Board, which included representatives of the restaurant and hospitality industries. *Id.*

One of the questions the Commissioner put to the Wage Board was:

Under federal law, in order to receive a tip allowance, employers must inform tipped employees that they are getting a lower rate based on receipt of gratuities, and must also keep an accurate record of tips received by employees. Employers who do not do so may not receive a tip allowance. Should the Wage Orders be amended to conform with federal law in this respect?

*Id.*

The Wage Board answered the question in the affirmative, and recommended that the new regulations require that employers provide the Wage Notice: a specific written notice of the employee's wage rates to the employees, and that the employee signs the written notice. Crucially, the Wage Board—which included the representatives representing the defendants' industry—also recommended that "employers who fail to notify their employees of the tip allowance system **will be prohibited from taking any tip credit** for an employee who is not notified of the tip credit system." *See* Cook Aff., Ex. A  at 1 (emphasis added). The Commissioner accepted that recommendation, promulgated the proposed regulations, and further confirmed, "I accept the recommendation to require employers to notify tipped employees of any tip allowances that will be taken and to **disallow the tip allowance** if such notice is not given." *See* Cook. Aff., Ex. B at 2 (emphasis added).

These comments by the Department of Labor that the employer cannot use the tip credit if no notice is provided are entitled to great deference. The NYLL explicitly empowers the Department of Labor to promulgate the Hospitality Regulations and to interpret them. NYLL §§ 199, 21(11). Further, NYLL, sections 653, 655 and 656 lay out the process by which the tip credit regulations were to be modified and made effective by the Wage Board and Commissioner, which was the process used in promulgating 12 NYCRR § 146. It makes a good deal of sense for the legislature to delegate to the Department of Labor the power to create and interpret the tip credit regulations. After all, it is the Department of Labor (along with the appointed Wage Board) that has extensive and specialized knowledge of the issues surrounding labor conditions generally, and the best way to provide for a tip credit. Therefore, in creating and interpreting the tip credit regulations the Commissioner acts with the full authority she was given by New York State to create these binding regulations.

Further, the New York Court of Appeals has already held that the Department of Labor's reading of the Hospitality Regulations—the precise regulations at issue in this case—are subject to great deference by the courts. "We have recognized that the DOL's 'interpretation of a statute it is charged with enforcing is entitled to deference.' Indeed, we previously deferred to the DOL's reading of the Labor Law . . . in *Samiento*." *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 470-71, 995 N.E.2d 153, 158 (2013) (citing *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 79, 883 N.E.2d 990, 995 (2008) ("The Labor Department's interpretation of a statute it is charged with enforcing is entitled to deference. The construction given statutes and regulations by the agency responsible for their administration, 'if not irrational or unreasonable,' should be upheld.")); *see also Matter of Chesterfield Assoc. v. New York State Dept. of Labor,* 4 N.Y.3d 597, 604, 797 N.Y.S.2d 389, 830 N.E.2d 287 (2005) (explaining that the "construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld" (internal quotation marks and citation omitted); *A.M. Medical Services, P.C. v. Progressive Casualty Ins. Co.*, 101 A.D.2d 53, 64 (2d Dep't 2012) (informal opinion of general counsel to Insurance Superintendent is entitled to deference unless irrational or unreasonable) (citing *Matter of Medical Scy. of State of N.Y. v. Serio*, 100 N.Y.2d 854, 863-64 (2003)).

Therefore, when the Department of Labor says that an employer forfeits the use of the tip credit when it fails to provide a Wage Notice, that interpretation controls—particularly when the plain language of the regulation says the same. To the degree defendants argue that this Court should usurp the considered opinion of the Wage Board and Department of Labor, there is no legal support for that request. Defendants' unhappiness

with the law does not justify their non-compliance. If the defendants do not want to follow the regulations, the proper course of action is not to violate the regulations and ask this Court to bless their violations, but instead to address their complaint through the regulatory or legislative process—a process during which defendants' industry representatives were already deeply involved.

Therefore, defendants' argument that failure to give the Wage Notice still allows them to pay the tip credit is contradicted by the regulation itself, and that understanding is also also confirmed by the commentary surrounding its creation.

> **F.** **The tip credit provision is regulatory creation that can only be triggered when the regulatory requirements are met.**

Likely recognizing that their position is untenable, the defendants then suggest that the regulation's language, as well as the DOL's interpretation of it, is contrary to Labor Law § 195, the statute the defendants claim the Hospitality Regulations are designed to implement.

The premise of the defendants' position is, however, wrong. First, the defendants are incorrect in claiming that the authority for promulgation of the Hospitality Regulations derives from NYLL § 195. As discussed above, the tip credit regulations are derived, not from NYLL section 195, but from section 653(2), in which the Legislature directed the DOL to look at modifying the existing tip credit regulations. It is simply not tenable to argue that the DOL exceeded its statutory powers by revising the tip credit regulations precisely as the Legislature directed it to do. And simply because the regulations clarified the notice requirements for tipped employees does not mean that the DOL somehow violated a statutory provision which mandates notices to other employees. Even if, as the defendants' suggest, the DOL was only acting pursuant to NYLL section 199, which gives the DOL broad authority to "issue such rules and regulations as he determines necessary for the purposes of

carrying out the provisions of this article," that does not mean the only regulations it could issue would be to effectuate one section of the NYLL (namely § 195) as the defendants claim. On the contrary, section 199, as well as section 21(11), gives broad power to the DOL to implement regulations for the entire Labor Law—including the minimum wage and tip credit provisions, as well as the Legislature's directive to modify those regulations in section 653(2).

Second, defendants' argument repeatedly refers to the "loss of the tip credit," as though paying the statutory minimum wage is some sort of draconian punishment for not complying with the law. It is not. The NYLL requires the employer to pay $7.25 an hour as the minimum wage. The tip credit provisions are a special regulatory exception to that statutory requirement. There is no requirement that restaurants use the tip credit method, and some do not. And if the restaurant does not use the tip credit method, it has no obligation to provide Wage Notices or any of the other tip credit requirements.

But if an employer wants to use the tip credit regulations to shift a significant amount of its labor costs to its customers, then it has to comply with the regulatory preconditions to pay that rate. Those preconditions include providing the Wage Notices. Expressed as a legal maxim, the employer must take the bitter with the sweet. Or, to use a more contemporary iteration of the same principle, the defendants "got to take the crookeds with the straights."[9]

Given that the tip credit is a creature of those regulations, an employer has no avenue to pay the tip credit other than complying with those regulations. Thus, in reality failure to follow the tip credit regulations does not result in the "loss" of the tip credit, it simply means the employer failed to comply with the conditions required for taking the tip credit. Such an employer therefore illegally paid less than the required minimum wage, and stands in the

---

[9]    August Wilson, *Fences* act 2, sc. 5.

same position as any other employer who paid less than the minimum wage. Therefore, defendants' liability here is not a punishment for not following the tip credit provisions, but simply a consequence of failing to qualify to claim the tip credit in the first place and thus remaining obligated to pay the minimum wage. The fact that defendants failed to pay the minimum wage because they subjectively (and wrongly) thought they were paying a tip credit rate does not make paying those lower wages somehow legal. (Although here, of course, defendants knew full well, through their counsel and other sources, that they were not following the tip credit requirements; the failure to do so was no innocent mistake.)

Further, it is well established in the federal context that the failure to follow the tip credit notice requirements means that an employer cannot claim the tip credit and must pay the employee the minimum wage.[10] In fact, as discussed above, in enacting the Wage Notice the DOL was consciously copying this federal approach making these cases particularly relevant in this context. *See* Cook Aff., Ex. A (Min. Wage Board Report) at 1.

---

[10] *See, e.g., Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 298 (6th Cir. 1998); *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994) ("If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage."); *Martin*, 969 F.2d at 1322 (holding that it is "a condition of the tip credit that the employee be informed by the employer" of the tip credit provisions); *Ring v. Sokolove*, No. 12-cv-12240, 2014 WL 1117859, at *2-3 (D. Mass March 18, 2014) (denying employer's motion for summary judgment where it was disputed whether the employer ever informed the employee that the employer would make up the difference between the tips and the minimum wage); *Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793, 802-05 (N.D. Ill. 2013) (denying employer's motion for summary judgment where the employer's posters, tip-sharing agreement, and oral notices, even taken together, failed to convey the information required to claim the tip credit); *Copantitla*, 788 F. Supp. 2d at 287-90 (granting employee's motion for summary judgment under both the FLSA and NYLL tip credit provisions, holding that "[b]ecause the notice requirement is unsatisfied, defendants are not entitled to a tip credit"); *Perez v. Prime Steak House Rest. Corp.*, 939 F. Supp. 2d 132, 137-39 (D.P.R. 2013) (holding that employees stated a plausible claim for violation of the minimum wage requirements by alleging that the employer failed to inform them of the tip credit provisions and therefore could not qualify for the tip credit).

Therefore, this is no basis for the defendants to assert that it somehow need not pay the minimum wage when it does not qualify for use of the tip credit regulations. Because the defendants cannot carry their burden to show that they complied with the Wage Statement requirement, they cannot use the tip credit, and are therefore liable to plaintiffs for their failure to pay the minimum wage.

## IV.   The Defendants' Deliberate Violation of New York's Minimum Wage Law is Not a "Trifle."

After claiming that they did everything correctly, again, likely recognizing that their arguments on those points are entirely unconvincing, the defendants then argue their liability for failing to pay the minimum wage is a "trifle" and should not be remedied. This argument fares no better than the others.

To start, if there is anything that is a "trifle," it would be the simple act of the defendants filling out a Wage Notice and providing it to the employees and listing the tip credit allowance on paystubs already provided to employees. As discussed above, the DOL had already drafted the Wage Notice and sample paystub for the defendants—all they had to do was give it to their employees. As the DOL said, "[t]he added cost of complying with the new requirement to give written pay notices to employees whenever their pay rates change is minimal, mainly consisting of the time it takes to fill out a simply pay notice and obtain the employee's signed receipt, times the number of employees affected." Cook Aff., Ex. G (DOL Summary Regulatory Impact Statement), ¶ 4(g).); *cf. Martin*, 969 F.2d at 1323 ("[I]f the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide.").

That is certainly a trifle for a multi-million dollar corporation which has a dedicated human resource department; who has experienced national labor counsel telling the

defendants what to do; and who is already regularly sending out non-compliant forms to employees. Beyond that, defendants actually made more work for themselves by taking the time to deliberately delete the relevant information from the form their counsel provided and sending that out to employees. Therefore, "trifles" best describes what it would have taken for the defendants to comply with the law, not the scope of the damages.

Defendants' argument is also circular. They suggest that because there was no harm to the plaintiffs, there should be no recovery. But that argument fails for at least two reasons.

First, if it were true the plaintiffs suffered no harm because they were paid correctly, then the reason the defendants would prevail is not because the violation was a trifle, but because there is no violation. If there was a violation, it is no trifle. This argument, therefore adds nothing to the analysis.

Second, it assumes that the plaintiffs were paid correctly, which as discussed above is not accurate. The plaintiffs were certainly harmed if they were paid $5.00 an hour when they were owed $7.25. That means that every hour of every day worked the plaintiffs were receiving $2.25 an hour less then they were entitled to receive. That is not a trifle; particularly not to a working-class restaurant employee. *Cf. Addison v. Huron Stevedoring Corp.*, 96 F. Supp. 142, 181 (S.D.N.Y. 1950) ("A dollar a week is not a trivial matter to a workingman") *reversed in part* 204 F.2d 88, 95 (2d Cir. 1953) (holding that even unpaid wages less than one dollar per week were not "trifles"). The New York State legislature did not consider this a "trifle" when it directed the Department of Labor to study the issue and revise the regulations. And the Department of Labor did not consider it a "trifle" either when it issued regulations to require proper notice as a condition before an employer can take the tip credit. Moreover, the defendants themselves characterize their exposure for this failure in

the "millions of dollars." *See* Doc. No. 178 at 20. In other words, the defendants have paid "millions of dollars" less in wages than they owed to their employees because of their violations. These violations are, by the defendants' own admission, substantial and cannot be passed off as a mere "trifle."

**V.    The Defendants are Not Entitled to Claim Customer Tips as Wages Paid to Reduce Their Own Liability.**

In a variation of their "trifles" argument, couched as yet another alternative argument, the defendants claim that even if they violated the law, they are nevertheless entitled to count customer tips as wages paid even if they did not comply with the tip credit provisions. In other words, the defendants claim that the carefully drawn tip credit provisions are meaningless because even if an employer violates those provisions, it does not need to pay **any** wages because all the employee is entitled to is tips as a remedy (provided they equal at least minimum wage). Taken seriously, this would mean employees could work solely for tips and be paid no wage at all, as long as those tips were more than the minimum wage—a result obviously at odds with the plain language of the tip credit provisions.

Not surprisingly, there is no support for that position. The best that the defendants can do to create the appearance of legal authority supporting that position is a badly mischaracterized description of a single line ripped out of its context in an Industrial Board of Appeals decision which they call the "Tip Top Decision." As an initial matter, it is entirely unclear what even happened in the *Tip Top* case. The employees in that case were not even food service workers and the regulations at issue in this case do not appear to have been at issue there. Without knowing what regulations were at issue there, it is impossible to know whether it even has any application in this case.

The defendants latch onto a line in the description of the factual background where the decision states that a DOL investigator "credited $7.00 in tips per day." The decision does not explain what it means to have "credited" this amount, and that line plays no role in the analysis or decision that follows. Contrary to the defendants' assertion that the Board "upheld" the investigator's decision to "credit[] $7.00 in tips per day"—whatever that means—the decision does not address that issue at all, much less "uphold" that decision. Indeed, given that the investigator's "crediting" was neither litigated nor ruled on at all, it has no persuasive value. The unexplained "credit[ing]" by a DOL investigator in Brooklyn under regulations not at issue, under an unclear factual situation, which was never litigated or ruled on, does not provide any persuasive guidance for this Court. Certainly, it does not overrule the DOL's considered opinion to permit employers to claim the tip credit only when they have satisfied the conditions to do so.

Moreover, to the extent that the defendants are arguing that tips can be counted as wages paid, without regard for the regulations limiting the tip credit to certain narrow situations, they are obviously wrong. Notably, the notion that employers can use the tip credit as a set-off without complying with the tip credit provisions has been soundly rejected by federal courts applying the analogous federal tip credit provision.[11] There is no reason for

---

[11]. In *Chez Robert*, 28 F.3d at 403-04 (3d Cir. 1994), for example, the district court, after finding that the employer had violated the tip credit provisions by failing to provide the required notice, took it upon itself to "alleviate the harsh results of the notice requirement by reducing the damages out of an equitable sense that some offset for tips should be allowed." *Id.* at 404. The Third Circuit rejected that argument, holding that "[i]f such a ruling were permissible, the district courts would effectively have discretion to waive the notice requirement in the interests of perceived fairness to the employer." *Id.* Likewise, as far back as 1977, the Fourth Circuit also rejected a district court's decision to allow an employer a partial set off for tips paid "out of a vague sense of fairness and a feeling that $5.43 and up per hour is enough for a wait(e)r(ess)." *Richard v. Marriott*, 549 F.2d 303, 305 (4th Cir. 1977). The Fourth Circuit explained that because the tip credit notice provisions stated that the tip credit could be used

a different result under the New York regulations. In fact, taken seriously, the defendants'
argument would lead to the absurd conclusion that compliance with the regulations results in
a tip credit of no more than $2.25 per hour, while defiance of the regulation results in a tip
credit of 100% of the employees' tips. If that were the law, the tip credit provisions would be
meaningless. It is understandable that the defendants want those provisions to be
meaningless, but wishful thinking does not overcome binding regulations.

## VI. There is No Material Factual Dispute that Defendants' Conduct Triggers Liquidated Damages and Prejudgment Interest.

There is no material factual dispute that the defendants conduct makes them liable for
liquidated damages after January 1, 2011. As defendants acknowledge, under the statute they
bear the burden of coming forward with evidence that they made active steps to comply with
the law. Despite acknowledging this burden, defendants present **no** evidence in their motion
that they made **any** efforts to comply with the law.[12] And they did not, as detailed in
plaintiffs' moving papers. Given that the record is devoid of any evidence to oppose plaintiffs'
motion for summary judgment on liquidated damages, summary judgment is appropriate. *See
Paz v. Piedra*, No. 09-cv-3977, 2012 WL 121103, at *12 (S.D.N.Y. Jan. 12, 2012) (granting
summary judgment on plaintiffs' claim for liquidated damages resulting from defendants'
willful violation of the tip credit provisions by failing to provide compliant Wage Notices

---

only if the employer provided the required notice, the "obvious and unavoidable" conclusion
was that failure to provide the notice means that the employer cannot use the tip credit. *Id.*

[12] Perplexingly, defendants' assert, "Not even Plaintiffs allege that Defendants took no steps to
comply with the law." Doc. No. 178 at 24. First, given that defendants acknowledge they bear
the burden of proof on this issue, it is defendants who have the obligation on this motion for
summary judgment to come forward with admissible evidence that they took those active steps
to comply with the law. Second, plaintiffs actually did come forward with such evidence,
namely the defendants head of human resources who under oath acknowledged the company
made **no** efforts to comply with the law. Plaintiffs' Appendix, Ex. A (Sabio Dep. at 97-99).

because the defendants failed to rebut plaintiffs' evidence tending to show that the violation was willful).

Prior to January 1, 2011, the defendants are also liable for liquidated damages, under the slightly different standard then in effect. The law on paystub allowances was well established. It was codified in the regulations. Numerous court decisions had addressed the issue. The DOL even issued a compliant paystub to assist employers. The defendants knew that if they were going to take advantage of the very favorable tip credit provisions, it was very important to be complying with those provisions. Plaintiffs' Appendix, Ex. A (Sabio Dep.) at 76:9-13. Although they had no problem affirmatively taking advantage of the tip credit regulation, defendants also decided to not follow what it required of them as employers. It is certainly "reckless" (at a minimum) to look at a regulation and only select the favorable portions to follow and deliberately disobey the provisions that are not favorable. *See Padilla*, 643 F. Supp. 2d at 313 (granting summary judgment on plaintiffs' claim for liquidated damages, finding a willful violation of the minimum wage provisions where the defendants "claimed a tip credit and a meal allowance, yet they concede[d] that they never provided plaintiff with a pay stub setting forth these allowances); *see also Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008) (finding willful violation of tip credit provisions); *Chan v. Sung Yue Tung Corp.*, No. 03-cv-6048, 2007 WL 313483, at *19 (S.D.N.Y. Feb. 1, 2007) (same).

The defendants did this despite the large amount of resources available to them as a company in the top .03% largest employers in the country. They had at their disposal: experienced national labor counsel, whose attorneys specialize in the legal and regulatory issues surrounding the restaurant industry in New York State; a dedicated human resource

department designed to track these issues; membership in numerous professional organizations dedicated to helping members comply. Notably, the defendants do not appear to genuinely dispute that they failed to take simple compliance measures such as calling the DOL, asking other human resources professionals, using the resources of the human resources organizations they belong to, or even simple internet research. *See* Plaintiffs' Appendix, Ex. A Doc. No. 146-2, (Sabio Dep.) at 97-77. This conduct certainly counts as recklessness and defendants have offered no evidence to indicate that their conduct was anything other than reckless.

## CONCLUSION

For all the foregoing reasons, the defendants have failed to carry their burden to come forward with admissible evidence to show that they complied with either the wage notice requirement or the pay stub requirement. Nor have they come forward with any admissible evidence to rebut plaintiffs' showing that their violations were willful. Plaintiffs are therefore entitled to judgment as to the defendants' liability and as to the defendants' liability for liquidated damages. Plaintiffs therefore respectfully ask that the Court grant their motion for summary judgment and deny the defendants' cross-motion.

Dated: April 3, 2014

**THOMAS & SOLOMON LLP**

By:     s/ J. Nelson Thomas
         J. Nelson Thomas, Esq.
         Michael J. Lingle, Esq.
         Justin M. Cordello, Esq.
         Jared K. Cook, Esq.
         *Attorneys for Plaintiffs*
         693 East Avenue
         Rochester, New York 14607
         Telephone:  (585) 272-0540
         nthomas@theemploymentattorneys.com

mlingle@theemploymentattorneys.com
jcordello@theemploymentattorneys.com
jcook@theemploymentattorneys.com

Exhibit 1

12 NYCRR 137-1.5

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.5

COMPILATION OF CODES, RULES AND REGULATIONS OF THE STATE OF NEW YORK

TITLE 12. DEPARTMENT OF LABOR

CHAPTER II. DIVISION OF LABOR STANDARDS

SUBCHAPTER B. MINIMUM WAGE ORDERS

PART 137. RESTAURANT INDUSTRY

SUBPART 137-1. MINIMUM WAGE AND ALLOWANCES

Current through amendments included in the New York State Register, Volume XXXI, Issue 52, dated December 30, 2009.

**Section 137-1.5. Tip allowance for food service worker**

EMERGENCY REGULATION

(a) On or after March 31, 2000, a food service worker shall receive a cash wage of at least $3.30 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $5.15 per hour.

(b) On or after January 1, 2005, a food service worker shall receive a cash wage of at least $3.85 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $6.00 per hour.

(c) On or after January 1, 2006, a food service worker shall receive a cash wage of at least $4.35 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $6.75 per hour.

(d) On or after January 1, 2007, a food service worker shall receive a cash wage of at least $4.60 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $7.15 per hour.

(e) On or after July 24, 2009, a food service worker shall receive a cash wage of at least $4.65 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $7.25 per hour.

**CREDIT(S)**

Sec. repealed, new filed: Dec. 23, 1966; June 16, 1970; April 18, 1974; Dec. 5, 1974; amds. filed: Sept. 29, 1978; Dec. 16, 1986; renum. 137-1.4, new added by renum. 137-1.6, filed: March 30, 1990 as emergency measure; June 8, 1990; renum. 137-1.6, new filed: April 4, 2000 as emergency measure, expired 90 days after filing; July 18, 2000 as emergency measure, expired 90 days after filing; Oct. 31, 2000 as emergency measure; Feb. 7, 2001 as emergency measure, expired 90 days after filing; renum. 137-1.6, new filed Aug. 1, 2003; repealed, new filed: Dec. 21, 2004 as emergency measure, expired 90 days after filing; March 22, 2005 as emergency measure; May 4, 2005 eff. May 25, 2005; filed: July 22, 2009 as emergency measure, eff. July 24, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 20, 2009 expires Jan. 17, 2010.

<General Materials (GM) - References, Annotations, or Tables>

© 2014 Thomson Reuters. No claim to original U.S. Government Works.