# Exhibit A

# REPORT AND RECOMMENDATION OF THE MINIMUM WAGE BOARD TO THE COMMISSIONER OF LABOR PURSANT TO LABOR LAW SECTION 655 (ARTICLE 19, THE MINIMUM WAGE ACT)

## I. Forward

### A. Appointment of Board

Legislation enacted in 2000 requires that within six months after enactment of any change in the statutory minimum wage, the Commissioner appoint a wage board to study whether changes are warranted in the wage orders governing wages payable to food service workers. In connection with an increase in the federal minimum wage from $6.55 per hour to $7.25 per hour, effective July 24, 2009, the New York State statutory minimum wage rate increased from $7.15 per hour to $7.25 per hour.

On March 18, 2009, the Commissioner of Labor duly appointed the undersigned members to the 2009 Restaurant and Hotel Industry Wage Board (the "Board") to examine and review existing minimum wage orders governing the restaurant and hotel industries (12 NYCRR 137 *et seq.* and 12 NYCRR 138 *et seq.*) and to report to the Commissioner any recommendations for changes to these orders.

As required by law, the Board consists of representatives of employees selected upon nomination of the state American Federation of Labor/Congress of Industrial Organizations, representatives of employers selected upon nomination of the New York State Business Council, and public members nominated by the Commissioner of Labor.

These representatives are:

**Linda H. Donahue, Chairperson**
Senior Extension Associate
School of Industrial and Labor Relations
Cornell University

**Neil Kwatra**
Director of Political Strategic Affairs
NY Hotel & Motel Trades Council, AFL-CIO

**Daniel C Murphy**
President
NYS Hospitality & Tourism Association

**Rick J Sampson**
President and CEO
NYS Restaurant Association

**James W. Versocki, Esq**
Archer, Byington, Glennon & Levine LLP

**Peter Ward**
International Vice President & Business Manager
UNITE HERE Local 6

B.    The Commissioner's Charge

The Commissioner tasked the Board with the following comprehensive charge:

> **First**, as an overarching issue, you should consider whether the hotel and restaurant Wage Orders should be combined into one wage order. Many provisions are common to both industries. Those provisions that are not held in common could continue to be addressed in specialized provisions, as they are currently. Please consider the advantages and disadvantages of combining the Wage Orders.
>
> **Second,** there area number of matters you should consider regarding gratuities, or tips. As you probably know, the Wage Orders allow employers to pay tipped employees a somewhat lesser rate based on their receipt of tips. You should consider the following questions regarding allowances for gratuities.
>
> 1.    Should two-tiered tip allowances continue to exist or should we adopt a single tip allowance, in order to make tip allowances less confusing for workers and easier for employers to comply with? A related question is whether different occupational groups or business types should continue to have different tip credits.
>
> 2.    Should the Wage Orders be amended to clarify how overtime rates are calculated for (a) tipped employees whose employers receive a tip allowance, and (b) employees subject to the lower statutory rate set by Labor Law Section 652(4)?
>
> 3.    Under federal law, in order to receive a tip allowance, employers must inform tipped employees that they are getting a lower rate based on receipt of gratuities, and must also keep an accurate record of tips received by employees. Employers who do not do so may not receive a tip allowance. Should the Wage Orders be amended to conform with federal law in this respect?
>
> 4.    Should the Wage Orders be amended to provide more specific guidance to employers regarding the permissibility and appropriate guidelines for tip sharing and tip pooling?
>
> 5.    Should the Wage Orders be amended to provide more specific

guidance to employers regarding the reasonable expectations of banquet customers in regard to gratuities, in light of the 2008 decision of the New York State Court of Appeals in *Samiento v. World Yacht Inc.*?

**Third**, when employers provide meals or lodging, the Wage Orders also allow the employers to claim a credit toward the minimum wage based on provision of such benefits — and, as a result, pay a lower rate to employees who receive such benefits. Several matters you should consider about these meals and lodging allowances are as follows:

1. Should the definition of a meal be updated?

2. Should the Wage Orders permit the meal and lodging allowances as part of the wages of employees who are paid *above* the minimum wage, as they are permitted to be part of the wages of minimum wage employees?

3. Existing Wage Orders require that payroll records show any credits claimed towards minimum wage. Should the wage order deny credits for meals or lodging received if the payroll records do not show the credits?

**Fourth**, you should consider several matters with regard to employee uniforms:

1. Should the definition of a uniform be changed? Is the blanket "ordinary wardrobe" exclusion adequate to protect workers from unreasonable expenses?

2. Should the Commissioner adopt a "wash and wear" exemption from uniform maintenance pay, as in the federal wage and hour regulations?

**Fifth**, as currently written, there are several provisions of the Wage Orders which apply only to "the applicable minimum wage rate" and thus phase out when an employee's rate rises above a certain level. For example, the "spread of hours" provision requires an extra hour of pay in addition to the minimum hourly wage when there is a spread of hours, and thus, it phases out as the wage level rises. If the Wage Orders' language were different, the spread of hours provision could be an additional payment owed to

...

employees who work very long workdays, regardless of their hourly wage rate. Similarly, call-in pay and the uniform maintenance allowance are additional payments owed in addition to the minimum wage rate. Should these provisions be changed so that they explicitly apply to all employees, regardless of wage level? And if not, should the language of the Wage Orders be amended to clarify further and explain the phase-out process?

**Sixth**, regarding the "spread of hours" provision: should that regulation be amended or eliminated? Is it sufficiently well-known to achieve the desired effects of discouraging excessive shift length and of compensating the worker for the extra burden involved? If not, are there revisions to the Wage Order which could better achieve these goals?

Finally, many employers in these industries operate in violation of overtime requirements because they pay a flat weekly rate for a work schedule with regular or varying hours in excess of forty, with no evidence showing that they are paying a higher rate for hours worked beyond the first forty than they paid for the first forty hours. There is federal and state case law addressing this fact pattern. Are there any provisions which could be included in the Wage Orders which would more explicitly clarify for employers and employees the fact that the overtime requirement still applies and must be complied with when overtime eligible employees are paid weekly rates?"

## II. Report

A.   Gathering the Record: Organizational Activities

The Board first met on March 31, 2009, in New York City, with Commissioner of Labor M. Patricia Smith, Deputy Commissioner for Wage Protection and Immigrant Services Terri Gerstein, and representatives from the Department's Division of Research and Statistics and Division of Labor Standards to acquaint the Board with its responsibilities and establish a timeline for its further activities. Members were advised that the resources of the Department, including Counsel's Office, were available to them upon request. Board members requested that the Division of Research and Statistics prepare a report regarding the employment of workers in the restaurant and hotel industries. The Board discussed the process of obtaining public comment and scheduled three public hearings to be held during May around the state.

The Board met on five more occasions, on April 22 before the public hearings and on June 11, June 22, July 16, and September 18 following the hearings. Meetings were publicized in advance and open to the public. The meetings were videotaped and subsequently posted as webcasts on the Departmental website, with closed captioning. DVDs and transcripts of the meetings are part of the record. E-mail and documents shared among Board members and Departmental staff are also part of the record.

B. Public Hearings

The Wage Board is given the power to conduct public hearings by Section 655.3 of the Labor Law. In order to provide the representatives of interested employer and employee groups, as well as members of the general public, with maximum opportunity to present and submit their views and data concerning possible changes to the restaurant and hotel industry minimum wage orders, Wage Board members and Departmental staff used multiple means of advertising the public hearings in advance. Board members shared the information announcing the hearings with persons, groups or organization memberships they felt may be impacted by any changes in the wage orders of the restaurant and hotel industries. Notices of Public Hearings were published in the State Register. Notices were sent to labor and employer organizations believed to have an interest in these deliberations. The departmental website advertised these hearings. Press releases were widely distributed through the department's media vendor. For those unable to testify in person, all publicity notices stated the opportunity to submit written testimony through June 3, 2009. Those planning to testify in person were encouraged to submit a written copy of their testimony as well.

The Board held its first public hearing on May 6, 2009, in Buffalo, with 8 persons giving testimony and 5 observers. The Board held its second public hearing on May 15, 2009, in Albany, with 10 persons giving testimony and 4 observers. The Board held its third public hearing on May 22, 2009, in New York City, with 41 persons giving testimony and an unknown number of observers, estimated at about 90 people. The Board accepted written testimony through June 3, 2009, and received 53 separate submissions, including a bulk submission containing the testimony of 16 persons. As time permitted, Board members questioned persons testifying about their knowledge and experiences working in and operating businesses in the hotel and restaurant industries. The hearings were videotaped and subsequently posted as webcasts on the Departmental website, with closed captioning. DVDs and transcripts of the hearings are part of the record.

The response to the public hearings, based on the number of persons who appeared and/or testified at those hearings and the number of written comments received, was substantial and covered a wide spectrum of issues affecting the hotel and restaurant industries. Many of the comments received by the Board focused on the perceived need for an increase in the minimum wage, particularly to tipped employees, requests by employers that the tipped minimum wage and statutory minimum wage not be increased beyond the statutorily-mandated increases, requests for greater clarity in the wage orders affecting the hotel and restaurant industries, greater enforcement of those regulations, and other various issues. Due to the volume of comments received at the public hearings and in written testimony, the Board respectfully refers the Commissioner to those written comments and/or videotaped sessions as she considers this Report and Recommendation.

### III. Recommendations

After receiving all public testimony, in person or via written submissions, the Board convened to review this information and to make the following observations. To better articulate a vision of a new Hospitality Order, the Board drafted proposed regulations; a copy of the proposed Hospitality Order is annexed to this Report and Recommendations as Exhibit "A." References to the proposed Hospitality Order drafted by the Board are found throughout the Board's recommendations, below.

A.   Consolidation of the Restaurant and Hotel Wage Orders.

No opposition to the consolidation of the Hotel and Restaurant Wage Orders into one wage order was expressed by any parties. Such a consolidation is consistent with the practice over the past 30 years to combine previous wage orders covering multiple industries in order to afford employer and employees a clearer understanding of laws affecting their industries. Based on the numerous commonalities in the hotel and restaurant industries, particularly in food service, the Board agreed that it is appropriate to consolidate the Hotel and Restaurant Wage Orders into one Wage Order, to be called the Hospitality Industry Wage Order, and recommends that the Commissioner take such action.

B.   Concerning Wages to Tipped Employees and Service Employees and Consolidation of Multiple Rates into One Tipped Employee Classification

The Board received numerous comments concerning the need for clarity in the Hotel and Restaurant Wage Orders. Many remarked on the confusion that

employers in the industry face based on the numerous classifications of tipped employees that currently exist under The Hotel and Restaurant Wage Orders. The Board concurs that it is in the interest of employers and employees to attempt to reduce the number of worker classifications and strive to eventually combine all tipped employees into one class of tipped workers under a consolidated wage order. However, based on the disparity between the food service workers' tipped rate and the service employees' tipped rate (now in excess of $1.00/hour), the Board recommends that such consolidation occur over time. In an effort to achieve that goal, the Board recommends that the tipped minimum wage for food service workers be increased to $4.75, effective January 1, 2010, and then increase to $5.00, effective January 1, 2011. This staged increase will allow employers to better plan for and implement these wage increases. It is of note that the United States economy is currently facing what is commonly referred to as one of the greatest challenges since the Great Depression. Accordingly, the Board acknowledges employer concerns and agrees that the tipped rate for food service workers should increase gradually and not jump to the service worker tipped hourly rate at one time.

C.  Concerning Gratuities and Tips

The Board recommends that the consolidated wage order provide clear and concise guidance to employers and employees, so that both parties may understand the law and, therefore, comply with it. The Board recommends that the new Hospitality Wage Order include a clarification of how overtime rates are calculated for tipped employees and non-tipped employees (*See*, proposed Section 12 NYCRR § 137-1.3). The Board further recommends that the Commissioner adopt a requirement that when employees receive a lower hourly wage based on the receipt of tips (a tip allowance), employers be allowed to receive such a tip allowance only if they notify the employee of the tip credit system. Providing an employer with concise guidance on the appropriate notice (*See*, proposed 12 NYCRR § 137 – 1.2.e) will remove any uncertainty as to this issue. This process will allow employees to better understand what the tip credit actually means for them. To ensure compliance with this notice provision, employers who fail to notify their employees of the tip allowance system will be prohibited from taking any tip credit for an employee who is not notified of the tip credit system (*See*, proposed 12 NYCRR § 137 – 1.2.e).

The Board believes that employers should be provided guidance regarding tip sharing and tip pooling. The current regulations fail to advise employers, and employees, about the difference between a tip sharing system and a tip pooling system. (*See*, proposed 12 NYCRR, Section 137 – 3.15 and 3.16). Tip sharing,

which is allowed by New York State Statute (<u>See</u>, Labor Law § 196-d) is often confused with tip pooling as evidenced at the public hearings . The Board recommends that the new Hospitality Wage Order specifically define a tip sharing system (where an employer may direct food service employees to share their tips with other food service workers who customarily receive tips) versus a tip pooling system (where food service employees agree to pool their tips and manage the disbursement of those tips amongst food service workers). The Board agrees that the current prohibition against an employer-mandated tip pooling system is unworkable in the hospitality industry. Currently, one employee may refuse to participate in a tip pool, even where every other food service worker in a restaurant has agreed to participate in a tip pooling system. This potentially creates conflict and confusion for both the employer – who is currently prohibited from interfering in the tip pool – and employees.

The Board recommends that the Commissioner allow employers to advise food service workers that their restaurant or hotel operates under a tip pooling system. This provision, however, would not allow an employer to be involved in the determination or allocation of the shares of tips received by employees who are in the tip pool; employees must control the internal operation of the tip pool. To ensure that employers do not involve themselves within the inner workings of the tip pooling system, any employer who violates a tip pooling system by attempting to dictate the share of a tip pool received by employees will be prohibited from taking a tip credit or tip allowance for any food service employees during the period the employer has violated this proposed section. The Board believes that this strong penalty will discourage employers from improperly interfering in the tip pool system operated by employees.

Concerning the reasonable expectations of banquet customers in regard to gratuities in light of the 2008 decision of the New York State Court of Appeals in *Samiento v. World Yacht Inc.,* the Board agrees that the *Samiento* decision provides clear guidance to employers that they may not retain any charges that appear to be a gratuity. The guiding standard in the banquet industry is whether the customer reasonably believes that the charge will go to the employees performing services at the banquet function. As the focus of the analysis, as set forth by the Court of Appeals, is on the customers' reasonable expectation, the Board believes that there should be a presumption that any charge associated with a banquet function, on top of food and beverage costs, shall be presumed to be a charge which is purported to be a gratuity. An employer may overcome this presumption by providing clear, <u>written</u> notice to their customers that the charge is not a gratuity.

D.   Concerning Meals and Lodging

The Board recommends that an updated definition of "meal," as well as simplified requirements for lodging, be incorporated into the Hospitality Wage Order. Current language is unnecessarily complex when a stipulation that the provision of nutritious meals and adequate lodging, in accordance with community standards, Department of Health codes or other local ordinances (particularly those offering lodging), would suffice.

The Hospitality Wage Order should permit the meal and lodging allowances as part of the wages of workers who are paid more than the minimum wage (see below).

Employers who fail to properly reflect credits claimed toward minimum wage on their payroll records should be denied the ability to claim those credits for the period in question.

E.   Concerning Uniforms

The Board suggests that the definition of "uniform" be amended to more closely follow federal statutory and regulatory guidelines. In particular, we recommend more specific guidance about what constitutes a required uniform, what the "ordinary wardrobe" exclusion entails, and the conditions under which an employer is responsible for providing and maintaining uniforms (*See,* proposed 12 NYCRR 137-3.13).

F.   Concerning Provisions that Phase-Out Above the Minimum Wage

Existing phase-outs as wages increase above the minimum, including "spread of hours," meals and lodging, call-in pay, split shifts, and uniform provisions, should be eliminated, the Board suggests, as their intent, to protect workers, applies regardless of the wage rate paid to employees.

G.   Concerning "Spread of Hours"

Testimony at public hearings made it clear than long hours of work are a serious problem for some workers. Testimony at the hearings revealed some workers were in excess of 72 hour per week. Existing language regarding the spread of hours should be strengthened, the Board recommends, in order to more rigorously deter excessively long work days and compensate those workers who do work such hours. As noted above, the phase-out should be discontinued (*See,* proposed 12 NYCRR 137-1.5).

H.  Concerning Weekly vs. Hourly Wages and Overtime

The computation of overtime rates for workers would clearly be simplified if all hospitality workers covered by this Wage Order were paid an hourly wage. Overtime calculations for those who are paid at a weekly or piecework rate are complicated and, as a result, frequently figured incorrectly, denying workers their proper overtime rate. Thus, as there seems to be no compelling case to be made for permitting wages to be paid at anything other than an hourly rate, the Board recommends that anything other than hourly rates be prohibited by this Wage Order.

## IV.  Further Considerations

The Board heard and received testimony from employers, restaurant employees, and worker advocacy organizations that made it evident that clear guidance concerning the wage orders was both desired and lacking. With this in mind, the Board has attempted, with encouragement from the Commissioner, to streamline, clarify, and simplify the provisions of the recommended Hospitality Wage Order. These new provisions must now be communicated to interested parties in a manner that is accessible to everyone who is affected. To this end the Board hopes that the New York State Department of Labor website can accommodate a new section on the Hospitality Industry Wage Order, where workers and employers can easily locate and understand the regulations affecting their daily work lives. Given the significant number of non-English-speaking workers in the industry, the Board would like to see web-based information available in languages, in addition to English, that are most often spoken among restaurant and hotel workers.

The Board is also concerned, based on testimony received, that some exploited workers may be intimidated into silence by their unfamiliarity with laws and regulations. We would encourage that information about how to report unscrupulous employers to the Department of Labor be communicated to workers in plain language that makes it clear that undocumented workers are entitled to the protection of New York State laws.

Further, those employers who abide by the laws should be able to have a dialogue with the Department concerning any questions regarding the applicability of the Hospitality Order to their establishment. The Board further encourages the Department to expand its outreach efforts to employers to encourage compliance with state law as many violations may be caused by acts of omission versus commission.

The Board would like to express its thanks to the Department's able, professional staff, particularly those in the Division of Labor Standards, for their assistance to the Board. This Board could not have completed its work without their assistance.

Dated: September 18, 2009

Respectfully submitted,

_____
LINDA H. DONAHUE
Chair, Public Member


_____
JAMES W. VERSOCKI, ESQ.
Public Member


_____
RICK SAMPSON
Employer Member


_____
DANIEL MURPHY
Employer Member


_____
NEIL KWATRA
Employee Member


_____
PETER WARD
Employee Member

712374

The Board would like to express its thanks to the Department's able, professional staff, particularly those in the Division of Labor Standards, for their assistance to the Board. This Board could not have completed its work without their assistance.

Dated: September 18, 2009

Respectfully submitted,

_____
LINDA H. DONAHUE
Chair, Public Member

_____
JAMES W. VERSOCKI, ESQ.
Public Member

_____
RICK SAMPSON
Employer Member

_____
DANIEL MURPHY
Employer Member

_____
NEAL KWATRA
Employee Member

_____
PETER WARD
Employee Member

712374

- 12 -