# Exhibit G

RIS   Hospitality Wage Orders

1.  **Statutory authority:**

The statutory authority for the promulgation of this rule is found in Labor Law sections 653, 656, 199 and 21(11).

2.  **Legislative objectives:**

Pursuant to Section 650 of the Labor Law, the stated purposes of Article 19 (the Minimum Wage Act) are:  to ensure that wage levels are sufficient to provide adequate maintenance for employees and their families; to promote the health, efficiency and well-being of employees; to prevent unfair competition against other employers and their employees; to promote stability of industry; to maintain the purchasing power of employees; and to minimize the necessity to supplement wages with public money for relief or other public and private assistance.

In Article 19, the legislature sets a basic minimum hourly wage rate and authorizes the commissioner to promulgate regulations concerning tip allowances, meals, lodging, apparel, overtime rates, waiting time, call-in pay, and excessive spreads of hours in a workday, and other special wage provisions.  It prescribes a specific process for amending these regulations.  While the commissioner at her own discretion may start the process at any time, the law actually requires the commissioner to appoint a Wage Board within 6 months after any change in the statutory minimum wage rate to examine the wages paid to food service workers.  The Board is to inquire and report and recommend any changes in wage orders governing wages payable to food service workers as defined in Section 651.9, which are the hotel and restaurant industries.  The Board is given the power to take testimony and is required to hold public hearings.  The Board must submit a report to the Commissioner recommending such new regulations and changes in existing regulations as it deems appropriate to carry out the purposes of the act.  Notice of the report is published in at least ten newspapers of general circulation in the state (Labor Law Section 656) and a period of public comment follows.  The Commissioner is given the power to accept, reject or modify the Wage Board's recommendations.  Notice of the Commissioner's decisions is published in the same manner as notice of the report (Labor Law Section 656).  The regulations implementing the Commissioner's decisions are written and submitted through the rule-making process.

Although Article 6 (Payment of Wages) contains no formal statement of purpose, its purpose is to ensure that persons who work for pay, receive the full compensation promised to them, in exchange for their labor and earned by them.  Within Article 6, Section 196-d prohibits the appropriation, by an employer or any other party, of gratuities earned by or intended for the employees.  Section 193 prohibits employers from deducting from wages, or otherwise charging employees for, any costs and charges not specifically authorized by law or regulation or authorized by the employee in order to obtain a desired benefit.

More generally, section 21 (11) authorizes the Commissioner of Labor to issue regulations governing any provision of the NYS Labor Law.

In accordance with the process required by Article 19, the Commissioner of Labor appointed a Wage Board on March 18, 2009, in anticipation of the statutory minimum wage increase scheduled to take effect on July 24, 2009, to review the regulations governing the wages and tips paid to workers in the restaurant and hotel industries.  The Wage Board consisted of six members of the public.  They were:  (1) Linda Donohue, Chair of the Wage Board, Senior Policy Analyst, School of Industrial and Labor Relations, Cornell University (public member); (2) James Versocki, Esq., Archer, Byington, Glennon & Levine, formerly Assistant Attorney General (public member); (3) Rick J. Sampson, President and CEO, NYS Restaurant Association (industry member); (4) Daniel C. Murphy, President, NYS Hospitality & Tourism Association (industry  member); (5) Neil Kwatra, Director of Political Strategic Affairs, NY Hotel & Motel Trades Council, AFL-CIO (labor member); and Peter Ward, International Vice President and Business Manager, UNITE HERE Local 6 (labor member).

The Wage Board organized its inquiry, held three public hearings in Buffalo, Albany and New York City, received a large amount of written and oral testimony, reviewed economic data and research reports on the industries, and deliberated on the issues for more than 5 months before issuing its report and recommendations on September 18, 2009.  The public participation in the process was substantial, consisting of 61 speakers at public hearings and 66 written submissions, some of which were lengthy analyses and not merely duplicative of oral testimony.  Testimony was received from persons representing:

(1) NYS Restaurant Association;
(2) NYS Hospitality & Tourism Association;
(3) UNITE HERE Local 6 and the NY Hotel & Motel Trades Council;
(4) Fox Rothschild LLP representing the Greater NYC Chapters, NYS Restaurant Association;
(5) Jackson Lewis LLP representing businesses in the industry;
(6) Chinese Staff and Workers' Association;
(7) National Mobilization Against SweatShops;
(8) Workplace Project – Centro de Derechos Laborales;
(9) Rochester Regional Joint Board – Workers United;
(10) Tompkins County Workers' Center;
(11) National Employment Law Project;
(12) Legal Aid Society - Employment Law Project;
(13)  Center for Working Families;
(14) Restaurant Opportunities Center of New York (ROC-NY);
(15) SRAC Casual Dining – TGI Friday's;
(16) DZ Restaurants, Inc.;
(17) New York Nightlife Association;
(18) Outback Steakhouse;
(19) T.L. Cannon Corporation dba Applebees Restaurants;
(20) Roycroft Inn;
(21) Professor, Hospitality Management, Erie Community College;
(22) Carlson's Restaurants Worldwide – TGI Friday's;

(23) President and Business Manager, UNITE HERE Local 150;
(24) Member, Hospitality Industry Committee of the NYS Association of Certified Public Accountants,
(25) Make the Road New York
and numerous other individual workers, managers, and owners in the restaurant and hotel industries.

The commissioner issued her response to the Wage Board's recommendations on November 5, 2009. The culmination of the process is the submission of this proposed rule which is intended to replace Parts 137 and 138, governing the restaurant and hotel industries separately, with a new Part 146 governing the entire Hospitality Industry.

**3. Needs and benefits:**

(a) Complexity, opacity, inconsistency, insufficient public awareness.

Problems identified repeatedly in oral and written testimony submitted to the Wage Board were excessive complexity of regulations, opacity of departmental policy and reliance on case law, inconsistent application and lack of knowledge or understanding of the regulations by affected and regulated parties.

To remedy these problems, the regulations have been amended to explain all requirements more clearly, using plain language and examples. They consolidate two regulations (12 NYCRR 137 and 12 NYCRR 138) regarding the hotel and restaurant industries into one new regulation (the hospitality industry) at 12 NYCRR 146. Regarding tips, the proposed regulations replace departmental policies and case law with new regulations to provide clarity and uniformity throughout the hospitality industry. They simplify by consolidating the current two-tiered tip credits, which depend on the amount of tips received, into a single tier for most employees. They eliminate a separate tip credit for housekeeping employees in resort hotels, consolidating them with other tipped service employees. (However, the proposed regulations do retain several special provisions for resort hotels only, namely a higher tip credit for non-food service employees and higher meal and lodging credits for all employees.) They consolidate two-tiered meal credits into a single tier for most employees. They eliminate unnecessary housing regulations by simply requiring compliance with all state, county and local health and housing codes. They eliminate overtime pay requirements unique to the hotel industry, leaving only time-and-a-half after 40 hours as the common rule for all covered workers in the hospitality industry. They extend extra payments that currently apply only to employees at or near the minimum hourly rate (call-in pay, excessive spread of hours pay, uniform maintenance pay) to all covered employees, thus eliminating a phase-out as wage rates rise that is poorly understood and cumbersome to calculate. Extending these extra payments from a limited class to all covered employees will help to make these requirements less obscure and more widely known.

(b) Underpayments arising from failure to pay an hourly rate and/or to pay premium overtime pay.

The largest underpayments in restaurants and hotels stem from failure to pay the minimum hourly rate and/or overtime pay. Long work weeks at fixed salaries are found in the industries, especially among immigrant workers. The wage board received extensive testimony about this problem. Existing regulations do not prohibit paying salaries to non-exempt workers, per se, although they do require that the salary cover at least the minimum hourly rate for all hours worked and they do require extra pay in addition to the salary, at a half-time of the regularly hourly rate, for any overtime hours. Currently, when non-exempt workers are paid a salary for all hours worked, the "regular rate" must be derived by dividing the salary by the total number of hours worked during that pay period. For hours worked in excess of forty per week, the employee must be paid time plus one half the regular rate. For the employer to be found in compliance with overtime requirements, an employer paying a weekly rate must prove a prior, mutual, explicit agreement that the weekly amount consists of one hourly rate for the first 40 hours and a stepped-up rate for any overtime hours worked. This requirement, well established in case law, is not well known, and multitudes of overtime violations result from payment of weekly rates. The problem is compounded by employer failure to keep records of actual hours worked, as employers paying a salary to non-exempt workers for all hours worked often do not understand that they are still required to keep hourly records. Under the current regulations, which technically allow non-exempt workers to be paid by salary, even a well meaning employer can easily end up violating both the minimum wage/overtime and record keeping requirements of Article 19 and its current attendant regulations.

An example helps to illustrate the problem. An employer hires a worker and pays $500 for workweeks of 50 hours. The case law, and logic, require the Labor Department to assume that each of the 50 hours is compensated at the pro-rata rate of $10 per hour, leading to the $500 weekly rate. However, in this illustration, there is no evidence whatsoever that a higher rate has been paid for the final ten hours than for the first forty hours, thus the employer has violated the overtime requirements. To avoid being in violation, the employer would have to demonstrate that he or she and the employee had an explicit, mutual agreement beforehand that the first 40 hours would be paid at $9.09 per hour ($363.60) and the final 10 hours would be paid at $13.64 per hour ($136.40). But in practice, this is virtually never the case. Thus, an employer paying a dollar amount that could be sufficient under the law is found in violation because of a failure to pay a higher rate for hours past forty, a failure resulting from paying a weekly rate. This problem, of weekly rates leading to overtime violations, becomes even more complicated when the workweeks fluctuates.

To remedy these problems, the proposed regulations require that: (i) all non-exempt employees (except commissioned salespeople) be paid an hourly rate; (ii) at the time of hiring and at any time prior to a change in the wage rates, employers must give employees written notices of their regular and overtime hourly rates; and (iii) employers are specifically prohibited from paying employees (except commissioned salespersons) on any basis other than an hourly rate. Failure to pay employees on an hourly-rate basis shall result in the commissioner's calculation of an hourly rate by dividing the employee's total weekly earnings, not including exclusions, by the lesser of 40 hours or the actual number of hours worked by the employee

during that work week.  The determination of regular and overtime wages due will be based upon such calculated hourly rate.

(c)  The size of the gap between regular minimum wage and the tipped rates as set forth in "Effects of $.35 and $.75/hr Increases in Minimum Wage Rats for Tipped Employees in the Hospitality Industry," prepared by the New York State Department of Labor – Division of Labor Standards and available on the Department of Labor's website.

 While some tipped workers earn above $20 per hour when tips are included, many others earn much less; and all must live with unpredictability of tip income.  According to the National Employment Law Project (NELP), the family poverty rate for waiters and waitresses is nearly three times the poverty rate for all workers.  Using 2007 data for New York State, NELP found the median hourly pay of waiters and waitresses was $9.60 including tips.

 The tipped rate as a proportion of the general minimum rate has declined as follows: 70% in 1974, 69% in 1981, 68% in 1991, and 64% (food service) and 68% (non-food service) from 2000 to the present.  Food service workers vastly outnumber other tipped occupations in the industries and the decline of their pay rate as a proportion of the general minimum rate amounts to $.425 per hour or $17 per 40-hour week or $884 per year.

 The proposed $.35 per hour increase in the rate for tipped food service workers only partially recoups the loss.  Although small, it is a step in the right direction.  Occupations affected by it include waitstaff, bussers and dining room attendants, bartender assistants, bartenders, room service waitstaff and others.

 The other proposed increase is $.75 per hour in the rate for tipped non-food service workers.  The tipped rate of these workers as a proportion of the general minimum rate has declined from 70% in 1974 to 68% in 2009, or $.175 per hour or $7.00 per week or $364 per year.  Unlike the $.35 increase, the $.75 proposed increase is not merely playing catch-up.  Instead, it advances these occupations to 78% of the general minimum wage.  The occupations covered by this increase include baggage porters, bellhops, door persons, housekeepers, valet parkers and food delivery workers.

 For an analysis of the effect of the proposed increases in the minimum rates for tipped employees, see the aforementioned "Effects of $.35 and $.75/hr Increases in Minimum Wage Rates for Tipped Employees in the Hospitality Industry."


(d) Bring clear and equitable rules for handling tips into the regulations.

 The proposed regulations flesh out Section 196-d, the Labor Law prohibiting tip appropriation, with basic rules for the handling of tips and mandatory charges on guest bills purported to be gratuities or substitutes for gratuities.  They clarify and fill in interstices in the statute by consolidating and incorporating previously issued case law, departmental guidelines and departmental opinion letters.  They allow employees to voluntarily share or pool their tips.  They allow employers to:  require tip sharing or tip pooling, set the percentages of tips to be

shared with or distributed to various service occupations, limit the occupations eligible to receive shares of tips to those who provide direct personal service to patrons or who assist the direct service providers to do so.  The proposal also   requires employers to give written notice upon hiring to employees of any tip pooling system,  keep specified records on shared and pooled tips and mandatory charges purported to be gratuities or substitutes for gratuities, relieve employers of any liability for an employee's wrongful withholding of his or her tips from shared or pooled tips, give employees participating in the tip pooling or tip sharing systems access to tip records but not the payroll records of other employees, and to distribute in full to employees as gratuities any charge on a guest bill that would be understood by the reasonable customer to be a gratuity or substitute for a gratuity., The proposal establishes a rebuttable presumption that any charge for "service" or "food service" is a charge purported to be a gratuity, unless written notice to customers is provided when a charge for the administration of a banquet, special function or package deal is not a gratuity to be distributed to the employees. The proposal also clarifies that employers are required to distribute to employees the full amount of any tips charged to credit cards, less the pro-rated portion of the tip taken by the credit card company.

(e) Existing call-in, spread of hours, and uniform maintenance protections exclude many workers.

Call-in pay protects workers from capricious short shifts or send-homes.  Spread of hours pay discourages workdays spread out over excessively long time periods and provides extra compensation when short shifts and spread out hours are worked.  Uniform maintenance pay protects workers from the costs and extra unpaid work required to launder, iron, dry clean, etc., uniforms requiring special care.

Current regulations give these protections only to workers paid at or near the minimum hourly rate.  Such workers include some of the better-tipped workers, such as waiters and bartenders in some establishments.  Among the workers currently excluded from such protections are many non-tipped and low-tipped employees, whose wage rates are above the minimum but whose total earnings are far less than the employees in the better-tipped occupations.  Such workers include many cooks and kitchen workers, fast food and counter workers, cafeteria attendants, dining room attendants and bussers, bartenders' helpers, desk clerks, cleaning workers, maintenance & grounds workers, porters, janitors, and others.  The proposed regulations extend the protections involving these matters to all covered workers, and clarify these requirements for the benefit of both employer and employee.

(f) Eliminate unnecessary uniform maintenance protections.

Current regulations require uniform maintenance pay even when the uniforms are made of wash and wear material and are routinely washed and dried with other personal garments, i.e., no extra care is required.  This is unnecessary.

Under the proposed regulations, by adopting a wash-and-wear exemption, far fewer uniforms trigger the extra pay.  In addition, the NYS uniform maintenance regulations are brought into agreement with federal regulations.  The proposed regulations also recognize that

some employees prefer not to use an employer's laundry service even if it functions well. The proposed regulations do not require uniform maintenance pay in such instances.

(g) Avoid captive audience for meal purchases.

Many employees still find themselves in a "captive audience" situation where they have no choice but to purchase food from their hospitality industry employer during their shifts. The custom of employee discounts that are insufficient to prevent meal purchases from costing more than the maximum meal allowance in the wage orders remains common. Charges for restaurant meals eaten by employees have figured in some disputed underpayments. Such charges are difficult to investigate since records of meal purchases often do not exist. When investigating whether a captive audience situation exists, the department has previously relied on departmental policy and case law.

The proposed regulations remedy this by requiring employers, whenever the shift is long enough to invoke the meal period law, to either allow employees to bring their own food or give them a meal at a cost no greater than the meal credit amount in the wage order.

**4. Costs:**

Costs: There are no added costs to the Department of Labor or to state and local governments. Following are the cost effects on hospitality industry businesses.

(a) The minimum hourly rate for tipped non-food service employees increases by $.75 per hour. The minimum hourly rate for tipped food service employees increases by $.35 per hour.

(b) A minimum of three hours call-in pay must be paid to all employees, with payment for actual attendance to be paid at the employees' regular or overtime rate minus tip credit and payment for the balance of the call-in period to be made at the minimum wage with no tip credit subtracted. However, the effect on costs will be negligible, because regularly scheduled shifts are not covered and capricious short shifts of less than 3 hours are infrequent and usually avoidable.

(c) An extra hour of pay at the minimum hourly rate for a workday with a spread of hours greater than10 is extended to all covered employees. This will increase costs for those businesses that require or permit their above-minimum wage employees to work spreads of hours greater than 10 in a day. Each such day will cost an additional $7.25.

(d) The adoption of a wash-and-wear exemption will reduce costs for a large number of businesses that currently pay uniform maintenance pay and will no longer be required to do so. The reduction in costs will be up to $9.00 per week per uniformed employee.

(e) The extension of uniform maintenance pay to all covered employees will increase costs for those employers who have above-minimum wage employees who are required to wear

uniforms that require special care (any care beyond ordinary wet washing and tumble drying with other personal clothing). The increase in costs will be up to $9.00 per week per above-minimum wage uniformed employee.

(f) Meal credits that employers may take for providing meals to food service workers in restaurants and all-year hotels are increased by $.15 per meal, reducing business costs by that amount.

(g) The added cost of complying with the new requirement to give written pay notices to employees whenever their pay rates change is minimal, mainly consisting of the time it takes to fill out a simple pay notice and obtain the employee's signed receipt, times the number of employees affected. If an employee does not read English, the notice must be provided in the employee's primary language only if the Department has made a translation of such notice available free of charge to employers on its website in such language.

(h) The requirement that non-exempt employees be paid hourly rates is neutral with respect to costs. Costs of compliance need not change for those employers who complied with the existing regulations by paying salaries sufficient to cover at least the minimum hourly rate for all hours worked and by adding the additional half-time premium whenever overtime hours were worked. They can convert the salaries into hourly rates that result in the same weekly pay for the average number of hours worked by the employee. The pay of the employee will fluctuate with hours worked but can average the same income over a period of time.

(i) However, there is an added cost, after an employer has failed to pay an hourly rate. The existing regulations treat the salary as constituting the straight-time pay for all hours worked and thus require only the payment of the additional half-time premium for the overtime hours. The proposed regulations treat the salary as constituting the straight time pay for only the first 40 hours and thus require the payment of full time-and-a-half for the overtime hours, in addition to the salary. The difference is the added cost.

(j) The added cost of lowering the overtime pay threshold for residential employees in hotels from 44 hours to 40 hours is one-half the employee's rate of pay times up to 4 hours, whenever the employee works overtime.

(k) The cost reduction from eliminating the overtime premium on the 7th day when a resort hotel employee works less than 40 hours in a week but works a schedule spread over 7 days is the one-half the employee's regular rate times the number of hours worked on the 7th day. The Division of Labor Standards has seldom seen such a situation and representatives of the hospitality industry have confirmed that such a situation seldom arises.

(l) The costs of keeping records on tip pooling, tip sharing, and mandatory charges on guest bills for gratuities will be new costs for those employers who require pooling or sharing and/or who make mandatory charges, unless they already keep such records for their own operational needs. The Department is not able to estimate these costs.

(m) With simpler and clearer rules, the time and costs of disputation and litigation will be reduced for businesses and for the Department of Labor.  The Wage Board received testimony pointing out the need for simpler, clearer, more explicit rules, especially on the handling of tips.  Employers and attorneys stated that the frequency of disputation and litigation would be reduced if such clearer rules were established.

5. **Local government mandates:**

None.  Federal, state and local governments and political subdivisions thereof are excluded from coverage under the proposed wage order by Labor Law Section 651.5 (n) and 651.5 (last paragraph).

6. **Paperwork:**

The two new paperwork requirements are:  (a) businesses in the hospitality industry will be required to keep and retain for six years records related to tip pooling, tip sharing, charges for gratuities, and charges for services unrelated to gratuities.  Some employers already keep such records for their own operational needs; and (b) employers will be required to give written pay notices to employees whenever pay rates change and to retain signed acknowledgments of receipt for six years.

7. **Duplication:**

The proposed rule does not duplicate any other state regulations.  Some overlap of the proposed regulations with federal Fair Labor Standards Act regulations has long existed and continues to exist under the proposed regulations.  However, the federal/state scheme allows states to impose more stringent requirements.  The Department has drafted the proposed regulations to be consistent with federal rules to the extent possible, while still carrying out the spirit and intent of the more stringent and comprehensive state laws in Labor Law Articles 19 and 6.

8. **Alternatives:**

The Wage Board considered many alternatives and proposals before adopting its recommendations.  Several were debated strenuously.  Individual members of the board may not agree with every final Board recommendation.  Each understood that some compromises were necessary.  Some decisions involved prioritizing what was most important and balancing of interests.  All Board members supported the final Report as a whole.  Following are the major alternatives considered.

Alternatives: Whether to bring the minimum rates for tipped workers up to the regular minimum rate by eliminating tip credits, to preserve the existing ratios, or something in between.

Decision: The Board recommended, and the Commissioner accepted, raising the tipped food service worker rate from 64% to 69% of the regular minimum rate, and raising the tipped non-food service worker rate from 68% to 78% of the regular minimum rate.

Alternatives:  Whether to allow employers to require employees to pool their tips and whether to allow employers to set the percentages of the pooled tips to be distributed to each occupation, or to continue the existing policy which disallows both, or some combination.

Decision:  The Board recommended allowing employers to require tip pooling among food service workers but not allowing employers to set the percentages to be distributed to each occupation;  instead, workers should decide the percentage distribution.  The Commissioner agreed with allowing employers to require pooling of tips but disagreed with not allowing employers to set the percentages to be distributed to each occupation.  The proposed rule allows employers to require tip pooling among food service workers and to set the percentages.

Alternatives:  Whether to keep special higher tip credits and meal and lodging allowances in resort hotels or merge resort hotels with all other hotels and restaurants.

Decision:  The Board recommended, and the Commissioner accepted, keeping the higher amounts in recognition of special characteristics of resort hotels.

Alternatives:  Whether to extend call-in pay, excessive spread of hours pay, and uniform maintenance pay to non-exempt employees at above-minimum rates of pay, to keep them applicable to minimum wage employees only as is currently the case, and/or to eliminate spread of hours pay entirely.

Decision:  The Board recommended, and the Commissioner accepted, extending these extra payments to all non-exempt employees at any rate of pay.

Alternatives:  Whether to require that all non-exempt employees be paid hourly rates of pay or to continue to allow salaries, weekly rates, day rates, and piece rates.

Decision:  The Board recommended requiring all non-exempt employees to be paid by the hour.  The Commissioner accepted this recommendation with the exception of commission salespersons.

Alternatives:  Whether to treat any salary as covering only the first 40 hours in a work week, with full time-and-a-half overtime pay due for any hours above 40, or to continue the existing practice of treating a salary for unspecified or varying hours as covering all hours worked in a week, with only half-time pay due for any hours above 40.

Decision:  The Board recommended, and the Commissioner accepted, the first option above (i.e., the salary will only cover the first 40 hours and full time-and-a-half overtime will be due).

Alternatives:  Whether or not to adopt the federal wash-and-wear exemption from uniform maintenance pay.

Decision:  The Board recommended, and the Commissioner accepted, adopting the federal wash-and-wear exemption.

Alternatives:  What is the best way of ensuring that charges for "service" or "food service," and/or any other charges on a guest bill that are not identified as the price for a specified good or service, are distributed in full as gratuities to employees who provided personal service to guests?

Decision:  The Board recommended, and the Commissioner accepted:  (a) putting in the regulations a "rebuttable presumption" that any charge not clearly identified in writing to the guest as a charge for food, beverage, lodging or other specified goods or services is a gratuity intended for the employees; (b) putting in the regulations the "reasonable person" standard for deciding whether a charge is understood by the customer to be a gratuity for the employees; (c) requiring record-keeping and making records available for review by employees.

9.  **Federal standards:**

The federal Fair Labor Standards Act expressly provides that when states have higher or stricter standards, the higher or stricter standard will apply.  This scheme has allowed any state to set higher minimum wages, to cover more workers, to have additional record-keeping requirements, to set higher minimum ages for children to work in certain occupations, etc.  The reverse is the case as well; some states have lower standards, or no standards on a particular issue, in which case federal law provides the most protection if the worker is covered by it.

Currently, both federal and NYS laws set a minimum rate of $7.25 per hour and overtime pay at one-and-one-half times the regular rate.  On most other pay issues, it has long been the case that NYS Labor Law Articles 19 and 6 and their attendant regulations have exceeded federal standards.  The proposed rule exceeds federal standards in the following areas:

Federal tip allowance provisions permit employers to pay tipped employees as little as $2.13 in wages per hour, while the proposed NYS regulations require employers to pay tipped employees at least $4.75 per hour this year and at least $5.00 per hour in 2011.

Federal provisions permit employers to claim the fair market value of meals and lodging as part of the minimum wage paid to employees.  In contrast, the proposed NYS regulations do not allow fair market value credits toward the minimum wage and instead set low fixed limits on the value of meals and lodging as part of the wages paid to employees.

The federal standards set a weekly minimum wage, while some requirements in the proposed NYS regulations apply to both minimum wage and above-minimum wage workers (call-in pay, excessive spread of hours pay, and uniform maintenance pay).

Federal standards do not require any minimum show-up or reporting pay, while the proposed NYS regulations require at least 3 hours pay for reporting to work, unless the employee has a regularly scheduled shift that is shorter.

Federal standards do not require extra pay for workdays spread out over longer time periods, while the proposed NYS regulations require an extra hour of pay when the spread of hours is greater than 10.

Under federal regulations, deductions from wages for items such as required uniforms, cash register shortages, spillage or breakage, etc., are prohibited only to the extent that they depress wages below the minimum or cut into any overtime pay. In contrast, NYS law and the proposed NYS regulations prohibit such deductions in their entirety, protecting the wages of above-minimum wage workers as well as minimum wage workers.

Federal standards do not require that service charges added to guest bills be treated as tips and distributed to employees, even if they were understood by the customer to be a kind of mandatory tip, while the proposed NYS regulations do require that such charges be distributed to employees as tips.

Federal standards allow sub-minimum youth rates while the proposed NYS regulations do not.

Federal uniform maintenance pay amounts are non-specific and variable and are only added to the minimum wage. The proposed NYS uniform maintenance pay amounts are definite, stated amounts and must be added to the wages of all non-exempt employees at any pay rate.

The proposed regulation will eliminate one difference between NYS and federal standards by adopting a long-standing federal "wash and wear" exemption from uniform maintenance pay. Uniform maintenance pay is intended to compensate the employee for the extra expense and unpaid time spent caring for required uniforms. The existing NYS regulations do not exempt any uniform garments. In the proposed regulations, the extra pay is considered unnecessary for uniforms that require no special care beyond wet washing and tumble drying along with the employee's own personal garments. However, if the uniform garments required by the employer need ironing, daily washing, dry cleaning, or commercial cleaning, then the employer will have to pay the extra weekly amount to the employee.

Finally, the federal salary thresholds for exemption from minimum wage and overtime pay are lower than those in the proposed NYS regulations. The differences noted above between New York State and Federal law and regulation are not new to these regulations. Most of these differences also exist in the current regulations.

10.   Compliance schedule:

Regulated entities should be able to achieve immediate compliance with the regulations. All of the payments to employees required in the proposed rule are types of payments already required by the existing regulations, so that the payroll processes necessary for these payments already exist at all complying enterprises. For the same reason, employers compliant with current regulations will not have any difficulty understanding the payments required under the new regulations.

Beginning in March 2009, the Labor Department website and press releases have featured the Wage Board and its inquiry into the pay of workers in the restaurant and hotel industries. Articles and updates on the fact that hearings were being held, testimony was being accepted, the Wage Board submitted its report, the Commissioner responded to the report, and new and revised regulations were being drafted have appeared in hard copy and electronic publications geared toward owners and managers in the restaurant and hotel industries, in industry association member newsletters, and on the websites of major law firms representing employers in the industry.

The Department has received inquiries from numerous law firms, publications geared toward the industry, the Bureau of National Affairs, Thompson Publishing (which sells labor law guides & updates on a subscription basis to employers), human resources consulting firms, companies that sell software to the restaurant and hotel industries, and some hotel and restaurant owners & managers about when the new regulations will be published, when they will take effect.

The Department of Labor will publicize the new regulations with full details on its website, will issue one or more press releases, will directly notify those who submitted testimony to the Wage Board and those who have inquired with the Department about the new regulations during the past year, and will assist employers as needed.