UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ASHLEY HICKS, et al.,

                Plaintiffs,

        v.

T.L. CANNON MANAGEMENT CORP., et al.,

                Defendants.
_____

DECISION & ORDER

13-CV-6455W

## PRELIMINARY STATEMENT

Currently pending before this Court is a motion to compel filed by plaintiffs. (Docket # 234). This class action seeks compensatory, declaratory and injunctive relief on behalf of current and former tipped employees of Applebee's restaurants against various owners and operators of those restaurants in New York for alleged violations of the New York Minimum Wage Act, New York Labor Law ("NYLL") §§ 650 *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (Docket # 82). Defendants assert various defenses and affirmative defenses in their Answer including the following:

> Plaintiffs' claims for liquidated damages, if any, are barred, in whole or in part, because any and all actions taken by Defendants were undertaken in good faith and with reasonable grounds for believing such actions were not in violation of New York State or Federal Law.

(Docket # 90, Sixth Defense).

By decision and order dated August 5, 2014, the district court granted in part and denied in part plaintiffs' motion for summary judgment and denied defendants' motion for summary judgment. (Docket # 205). Plaintiffs subsequently filed the pending motion seeking

an order compelling defendants to provide discovery relating to their good faith affirmative defense including disclosure of communications with counsel. (Docket # 234). Defendants oppose disclosure of attorney-client communications. (Docket # 237).

**PROCEDURAL BACKGROUND**

On November 20, 2013, plaintiffs deposed defendants' corporate representative, Susan Sabio ("Sabio"), Director of Human Resources, pursuant to Fed. R. Civ. P. 30(b)(6). (Docket # 237, Exhibit ("Ex.") G). Prior to the deposition, counsel for defendants advised plaintiffs' counsel in writing, "Defendants do not anticipate relying on the advice of counsel as an affirmative defense to these claims at this time. Therefore, [d]efendants will not be waiving the privilege regarding any communications with counsel at the upcoming 30(b)(6) depositions." (Docket # 237, Ex. F). Defendants did not disclaim reliance on a good faith defense, however. During Sabio's deposition, defendants' counsel interposed numerous objections and directions to the witness not to answer on the grounds of attorney-client privilege (Docket # 237, Ex. G at 61-64, 79-82, 93-95), and counsel for plaintiffs repeatedly appeared to affirm his understanding of defendants' intention to preserve any applicable privilege:

> Q: I don't want – right now I don't want you to tell me what your counsel told you in terms of legal advice.
>
> * * *
>
> Q: Don't tell me what was stated by counsel. Just tell me why you did it. . . .
>
> A: Advice of counsel.
>
> Q: No, I'm not asking for advice.

(Docket # 234, Ex. A at 63, 82).

Approximately two months after Sabio's deposition, plaintiffs moved for summary judgment, and defendants cross-moved for partial summary judgment. (Docket ## 144, 176). The district court granted summary judgment to one of the named plaintiffs on her claim that the defendant that employed her was not entitled to take a tip credit towards the minimum wage rate because it did not provide her with a required wage notice that complied with 12 N.Y.C.R.R. § 146-2.2. (Docket # 205 at 30-31). The court further concluded that although liability had been established, "the record [was] not clear as to the amount of damages that [plaintiff] should be awarded" and further discovery was warranted. (*Id.* at 31, 33). Specifically, the court denied plaintiffs' request for liquidated damages, finding that the evidence adduced by plaintiffs – the deposition testimony of defendants' Director of Human Resources, Susan Sabio – did not "conclusively establish that [d]efendants were not acting in good faith," and noting that "state of mind determinations are generally not appropriate for the [c]ourt to make." (*Id.* at 33).

Plaintiffs now seek to compel defendants to produce "any communications related to the defendants' good faith defense" and to require defendants' corporate representative to respond to deposition questions relating to the defense. (Docket # 234-1 at 8-9). They argue that defendants have waived their right to assert attorney-client privilege on three independent bases: first, by pleading and asserting a good faith defense; second, by partially disclosing during the corporate representative's deposition the content of privileged communications; and, third, by failing to provide a complete privilege log. (Docket ## 234, 238).

**DISCUSSION**

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998)). While "it is well settled that 'the burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it,'" *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (quoting *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997)), "rules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust [are] formulated with caution." *In re County of Erie*, 546 F.3d at 228.

The Second Circuit recognized one such rule of implied waiver in *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.), *cert. denied*, 502 U.S. 813 (1991). There, the court held that a defendant charged with securities fraud was "free to testify without getting into his state of mind, but . . . if he asserted his [state of mind regarding his good faith efforts to comply with the law], the jury would be entitled to know the basis of his understanding that his actions were legal." *Id.* at 1294. The court rejected the defendant's attempt to shield inquiry into his communications with counsel on the grounds that he was not relying on those communications while at the same time to be permitted to testify about his efforts to comply with the law. As the Court explained,

> Th[e] waiver principle is applicable here for Bilzerian's testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required at issue. His conversations with counsel . . .

4

> would have been directly relevant in determining the extent of his knowledge and, as a result, his intent.

*Id.* at 1292.

In addressing the *Bilzerian* decision, the Second Circuit subsequently acknowledged that "the assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege. *In re County of Erie*, 546 F.3d at 228-29. This doctrine of implied waiver, or forfeiture, is grounded in "the notion of unfairness," which prohibits one party from using "an assertion of fact to influence [a] decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *Id.* at 229 (quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)); *see also Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012) ("it would be unfair for a party asserting contentions of good faith to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions") (quoting *Arista Records LLC v. Lime Grp. LLC*, 2011 WL 1642434, *3 (S.D.N.Y. 2011)); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 2012 WL 2568972, *8 (S.D.N.Y. 2012) (same). "The key to a finding of implied waiver . . . is some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense." *In re County of Erie*, 546 F.3d at 228. Waiver determinations on this basis must be made "on a case-by-case basis, and depend[] primarily on the specific context in which the privilege is asserted." *Id.* (quoting *In re Grand Jury Proceedings*, 219 F.3d 183).

In *Erie*, a case upon which defendants place substantial reliance, the court held that the defendants' assertion of a qualified immunity defense did not result in their forfeiture of the attorney-client privilege. *In re County of Erie*, 546 F.3d at 229. The court reasoned that qualified immunity "is an objective, not a subjective, test, and reliance upon advice of counsel

therefore cannot be used to support the defense of qualified immunity." *Id.* Significantly, the court expressly noted that the defendants did "not claim a good faith or state of mind defense." *Id.*

In this case, defendants assert good faith defenses to the imposition of liquidated damages based upon both the NYLL and the FLSA.[1] Section 198(1-a) of the NYLL provides for the imposition of liquidated damages to any employee paid less than the wage to which she was entitled "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." NYLL § 198(1-a); *see also* NYLL § 663(1). Section 260 of the FLSA similarly provides for an award of liquidated damages unless the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]" and the court determines "in its sound discretion" to decline to make such an award. 29 U.S.C. § 260.

As the Second Circuit has recognized, a good faith defense to the imposition of liquated damages under Section 260 of the FLSA contains both a subjective component and an objective component:

> [D]istrict courts [have] discretion to deny liquated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective "good faith" with objectively "reasonable grounds" for believing that its acts or omissions did not violate the FLSA.

*Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (citing 29 U.S.C. § 260). To satisfy the subjective element, "an employer must show that it took 'active

---

[1] Defendants' answer also asserts a separate "lack of willfulness" defense and a separate defense to liability on the grounds that their actions "were taken in good faith conformity with, and in reliance upon, the FLSA, NYLL, applicable U.S. Department of Labor and New York State Department of Labor regulations and opinions, and/or judicial interpretations of the law." (Docket # 90, Eleventh and Thirteenth Defenses).

6

steps to ascertain the dictates of the FLSA and then act to comply with them.'" *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999), *modified on other grounds by Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003)). The good faith defense to the imposition of liquidated damages under the New York Labor Law includes a similar subjective component. *See* NYLL § 198(1-a) (liquated damages shall be imposed "unless the employer proves a *good faith basis to believe* that its underpayment of wages was in compliance with the law") (emphasis added); *see also Inclan v. New York Hosp. Grp., Inc.*, 2015 WL 1399599, *11 (S.D.N.Y. 2015) ("[t]he statutory text of the liquidated damages provisions of the present NYLL is not identical to that of the FLSA . . .[;] however, courts have not substantively distinguished the federal standard from the current state standard of good faith").

In this case, defendants maintain that they should be permitted to argue to the jury that they acted in good faith, but to remove from the jury's evaluation of their subjective state of mind any consideration of communications with or advice from counsel. (Docket # 237 at 9-11). Yet, defendants have not articulated the factual bases upon which they expect to ground their good faith defense. In any event, Sabio's testimony makes clear that communications with counsel informed defendants' decision to issue the January 2012 wage notice at issue in this case.[2] Under these circumstances, even if defendants could identify other facts contributing to their "good faith" state of mind, fairness dictates that they not be permitted to shield from

---

[2] The district court determined that a January 1, 2011 "Associate Pay Rate" Notice issued to and signed by named-plaintiff Raymond was deficient. (Docket # 205 at 30). Although Sabio apparently did not testify about that particular notice, she did testify at length about a subsequent "Notice and Acknowledgement of Pay Rate" issued by defendants in January 2012. (*See*, *e.g.*, Docket ## 61-64, 67-69, 79, 84-85, 90-93, 95). The same reasoning that led Judge Wolford to conclude that the January 2011 Notice was deficient – "it did not state that [defendants] intended to take a tip credit, the amount of the tip credit to be taken from the basic minimum hourly rate, or that [the employee] was entitled to makeup pay if [the employee] did not earn enough in tips to bring her rate of pay up to the basic minimum hourly rate" (Docket # 205 at 30) – would appear to apply equally to the January 2012 Notice and foreclose any argument that it was legally sufficient. Indeed, the parties' focus in their briefs on this motion on the issue of liquidated damages rather than liability suggests that they read Judge Wolford's decision in the same way. (Although the defendants apparently also issued a revised "Pay Rate Notice" in June 2011 that apparently contained some information concerning "tip credit" (Docket # 176-6 at ¶ 21 & Ex. 2-J), the revised pay rate notice, however, was apparently only given to employees hired after June 2011 (*id.* at ¶ 24)).

plaintiffs – and ultimately the jury – the substance of the attorney-client communications that Sabio admitted were part of her decision to issue the wage notice central to some of the class claims.

Sabio testified that the January 2012 wage notice had been drafted by counsel. (Docket # 237-1, Ex. G at 61, 90-92). Rather than issue the notice that had been drafted by counsel, however, Sabio made her own revisions to the draft notice. (*Id.* at 92-93). Specifically, she testified:

> I took out the one paragraph about the allowances because our understanding of the allowances at that point was not tip credit; was that it had to do with meals and lodging, company stores, these types of things, which we did not have.

(*Id.*). Although Sabio did not testify that she deleted the paragraph on allowances at counsel's direction, she did testify that her understanding that allowances did not include tip credit was based upon her previous conversations with counsel. (*Id.* at 95). She further testified that she did not do any "research on [her] own at that point." (Docket # 234-2, Ex. A at 97).

Considering this testimony, defendants' position that they are not relying on advice of counsel in asserting their good faith defense is hard to fathom. Defendants' Human Resources Director has testified that she altered the wage notice drafted by counsel based on an understanding of the meaning of allowances that derived, at least in part, from communications with counsel. Whether defendants want to disclose those communications is beside the point. *See Chevron Corp. v. Donziger*, 2013 WL 6182744, *3 (S.D.N.Y. 2013) ("nor is a disclosure of a privileged communication or portion thereof essential for purposes of the [implied waiver] principle"). If defendants want to defend against the imposition of liquidated damages on the grounds of their purported subjective good faith in issuing the 2012 notice, they may not shield

8

from disclosure the very communications with counsel that they themselves admit informed their belief that the notice was adequate.

In this respect, this case is remarkably similar to the decision in *Wang v. Hearst Corp.*, 2012 WL 6621717 (S.D.N.Y. 2012), which defendants unavailingly seek to distinguish. (*See* Docket # 237 at 10). In *Wang*, the defendants, like defendants here, sought to assert a good faith defense to claims brought under the FLSA and the NYLL without disclosing attorney-client privileged communications on the grounds that they were not relying on legal advice for its good faith defense. *Id.* at *1. In rejecting defendants' argument, the court stated:

> Defendant's assurance that it would "limit any good faith defense to one in which the state of mind was not formed on the basis of legal advice" amounts to little more than semantics without any concrete examples provided by Defendants. On the other hand, I find it difficult to imagine that a good faith defense regarding the FLSA raised by a corporation as large and as sophisticated as [defendant] would not involve the advice of its legal department, and the section of the deposition provided to me confirms at least that much.

*Id.* at *2. As in *Wang*, Sabio's testimony confirms that defendants' decision to issue the January 2012 wage notice "involved the advice" of legal counsel – the notice itself was based on a draft provided by counsel that was altered by Sabio based upon prior communications she had with counsel. To maintain otherwise is an exercise in semantics. *See*, *e.g.*, *Enea v. Bloomberg L.P.*, 2015 WL 4979662, *7 (S.D.N.Y. 2015) (defendant ordered to produce *in camera* attorney-client privileged materials on the grounds that defendant's assertion of good faith defense to FLSA and NYLL claims implicitly waived privilege where "discovery . . . established that there may be privileged . . . materials that call into question the reasonableness of [defendant's] reliance on the statement of a DOL investigator or the outcome of her investigation as bases for its belief that [the classification] was proper"); *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607,

614-15 (S.D.N.Y. 2014) (where defendant invoked good faith defense to FLSA liquidated damages provision and had obtained advice of counsel on challenged classification decision, plaintiffs were entitled to know whether defendant had been advised not to classify employees as exempt in order to evaluate validity of good faith defense).

Finally, defendants' post-argument reliance on *McKee v. PetSmart, Inc.*, 71 F. Supp. 3d 439 (D.C. Del. 214), is misplaced. In *McKee*, the court applied a Third Circuit decision, *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994), which differs materially from the Second Circuit precedent that applies to this case. *McKee v. PetSmart, Inc.*, 71 F. Supp. 3d at 441. In *Rhone-Poulenc*, the Third Circuit held:

> A party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action. While the attorney's advice may be relevant to the matters in issue, the privilege applies as the interests it is intended to protect are still served by confidentiality.

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d at 864. Indeed, the court in *McKee* expressly recognized that the *Rhone-Poulenc* standard differs from the Second Circuit's standard. *McKee*, 71 F. Supp. 3d at 443 ("the court cannot credit the unpublished decisions from the Southern District of New York cited by plaintiffs over binding precedent from the Third Circuit which states that 'extend[ing] the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation … are of dubious validity'") (quoting *Rhone-Poulenc*, 32 F.3d at 864).

Because I conclude that defendants' assertion of a good faith defense to the imposition of liquidated damages on the facts of this case and in the context of Sabio's testimony amounts to an implied waiver of attorney-client privilege, I do not reach plaintiffs' alternative,

but far less convincing, bases for finding waiver.[3]  Accordingly, plaintiffs' motion to compel is granted.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel **(Docket # 234)** is

**GRANTED**.

**IT IS SO ORDERED.**

                                            *s/Marian W. Payson*
                                            MARIAN W. PAYSON
                                          United States Magistrate Judge

Dated: Rochester, New York
         September 3, 2015

---

[3] During oral argument, defendants' counsel represented that defendants would provide a revised privilege log to plaintiffs.