UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ASHLEY HICKS and KRISTIN RAYMOND, on
behalf of themselves and all other employees
similarly situated,

                Plaintiffs,

        -against-

T.L. CANNON CORP., et al.,

                Defendants.

Civil Action No. 13-CV-6455

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022
(212) 583-9600

Craig R. Benson, Esq.
Jessica F. Pizzutelli, Esq.

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .............................................................................................3

PROCEDURAL HISTORY..............................................................................................7

ARGUMENT .................................................................................................................10

    I.      STANDARD OF REVIEW ..........................................................................10

    II.     SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE
          DEFENDANTS APPROPRIATELY CLAIMED THE TIP CREDIT
          AND LOSS OF THE TIP CREDIT IS NOT AN AVAILABLE
          REMEDY FOR ALLEGED TECHNICAL NOTICE VIOLATIONS............10

          A    Plaintiffs' Positions Lack Statutory and Regulatory Support.................11

          B.   The NYDOL Has Confirmed That, Under The Facts Present
                Here, Loss of The Tip Credit Is Not An Available Remedy, And
                The NYDOL's Determination Is Entitled to Deference .........................12

    III.    SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE
          DEFENDANTS' NYLL § 198 AFFIRMATIVE DEFENSES MAKE
          IT IMPOSSIBLE FOR PLAINTIFFS TO SUCCEED ON THEIR
          POST-APRIL 9, 2011 WAGE NOTICE AND PAY STUB CLAIMS
          AS A MATTER OF LAW...............................................................................17

          A.   Plaintiffs' Wage Notice and Pay Stub Claims Pre-April 9, 2011...........17

          B.   Plaintiff's Pay Stub Claims Post-April 9, 2011 .....................................18

          C.   Plaintiff's Wage Notice Claims Post-April 9, 2011................................19

    IV.    SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE
          PLAINTIFFS LACK STANDING TO SUE UNDER RECENT
          SUPREME COURT PRECEDENT ............................................................22

    V.     SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE
          DEFENDANTS PROVIDED PLAINTIFFS WITH COMPLIANT
          WAGE NOTICES.........................................................................................23

A.  Plaintiffs' Wage Notice Claims Are Limited To A Narrow Time Period, And Only To Violations Of The HWO ......................................23

B.  Section 146-2.2 Only Applies To Plaintiffs Who Were Hired, Or Had Their Rate Of Pay Changed, After January 1, 2011 .................23

C.  Defendants Are Entitled To Summary Judgment Because All Plaintiffs Who Were Hired Or Had Their Rate Of Pay Changed After January 1, 2011 (Through December 31, 2013) Received Proper Notice Pursuant to Section 146-2.2 .............................................24

VI.  SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE DEFENDANTS' PAY STUBS ARE COMPLIANT WITH NYLL § 195(3) AND ITS CONCOMITANT REGULATIONS ...............................26

A.  Applicable Legal Standards .................................................................26

B.  Defendants Were Not Required To List "Allowances" On Their Pay Stubs ......................................................................................28

C.  Even If The "Tip Credit" Is An "Allowance," Defendants Nevertheless Still Complied With The Applicable Legal Standards ......29

VII.  SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE DEFENDANTS ARE ELIGIBLE TO TAKE A TIP CREDIT UNDER THE FLSA ...............................................................................................31

VIII.  SUMMARY JUDGMENT SHOULD BE GRANTED FOR THE ADDITIONAL REASONS STATED IN DEFENDANTS' MARCH 14, 2014 CROSS MOTION FOR SUMMARY JUDGMENT (DKT. NOS. 178 AND 197) ................................................................................................33

CONCLUSION ......................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)..................................................................................................10

*Baltierra v. Advantage Pest Control Co.,*
    2015 U.S. Dist. LEXIS 124961 (S.D.N.Y. Sept. 18, 2015)..............................14, 18

*Caldarola v. Calabrese,*
    298 F.3d 156 (2d Cir. 2002).....................................................................................10

*Carvente-Avila v. Chaya Mushkah Rest.,*
    2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016) ............................... passim

*Hernandez v. BCI Coca-Cola Bottling Co.,*
    2012 U.S. Dist. LEXIS 55301 (C.D. Cal. Apr. 12, 2012) (*aff'd Hernandez v. BCI
    Coca-Cola Bottling Co.,* 2014 U.S. App. LEXIS 2916 (9th Cir. Cal. Feb. 18, 2014)) ..........30

*Hicks v. TL Cannon Corp.,*
    35 F. Supp. 3d 329 (W.D.N.Y. 2014) ......................................................................12

*In re Gleason (Michael Vee, Ltd.),*
    749 N.E.2d 724 (N.Y. 2001).....................................................................................21

*Lozano v. Rugfrit 1350 LLC,*
    2015 N.Y. Misc. LEXIS 1451 (N.Y. Sup. Ct. April 27, 2015).................................29

*Matter of OnBank & Trust Co.,*
    688 N.E.2d 245 (N.Y. 1997).....................................................................................21

*Palmieri v. Lynch,*
    392 F.3d 73 (2d Cir. 2004)........................................................................................34

*Pellon v. Business Representation Int'l, Inc.,*
    528 F. Supp. 2d 1306 (S.D. Fla. 2007) ...............................................................31, 32

*People ex rel. Forshey v. John,*
    904 N.Y.S.2d 620 (4th Dept. 2010) ..........................................................................21

*Perez v. G&P Auto Wash Inc.,*
    930 F. Supp. 2d 423 (E.D.N.Y. 2013) ......................................................................31

*Samiento v. World Yacht Inc.,*
    10 N.Y.3d 70 (2008) .................................................................................................14

**Page(s)**

**CASES**

*Sista v. CDC Ixis N. Am., Inc.,*
   445 F.3d 161 (2d Cir. 2006)................................................................10

*Wis. Dep't of Revenue v. William Wrigley, Jr., Co.,*
   505 U.S. 214 (1992)..........................................................................34

**STATUTES**

29 U.S.C. § 203(m) .......................................................................... passim

N.Y. Lab. Law § 195(3) ..................................................................... passim

N.Y. Lab. Law § 198 ........................................................................ passim

N.Y. Lab. Law § 195(1) ..........................................................11, 17, 19, 23

N.Y. Lab. Law § 195(1)(d) ...............................................................8, 19, 20

N.Y. Lab. Law § 198(1-b) .................................................................. passim

N.Y. Lab. Law § 198(1-d) .............................................................17, 18, 19

N.Y. Lab. Law § 199 ..............................................................................17

N.Y. Lab. Law § 218 ..............................................................................13

N.Y. Lab. Law § 652(4) ................................................................... passim

N.Y. Lab. Law § 652(5) ..........................................................................28

N.Y. Lab. Law § 652 ..............................................................................34

**REGULATIONS**

12 N.Y.C.R.R. § 137-2.2 .......................................................11, 16, 27, 28, 29

12 N.Y.C.R.R. § 142-2.5(b)(iii) ...............................................................29

12 N.Y.C.R.R. § 146-1.3 ...........................................................12, 13, 14, 24

12 N.Y.C.R.R. § 146-2.2 .................................................................. passim

12 N.Y.C.R.R. § 146-2.3 .......................................................11, 16, 27, 28, 29

**Page(s)**

**C**ASES

**O**THER **A**UTHORITIES

March 4, 2015 Ltr. From Pico Ben-Amotz to Hon. Joseph D. Morelle ............................... passim

May 4, 2016 Ltr. From James Rogers to Hon. Joseph D. Morelle ........................9, 14, 15, 16, 25

N.Y. Assemb. Memorandum in Support of Legislation of Bill No. A03090 ..............................20

# PRELIMINARY STATEMENT

**"[A] food service employer is eligible to claim the tip credit even when they fail to provide written notice of the tip credit rules provided that the employer can demonstrate compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit."**

**~ Pico Ben-Amotz, General Counsel, New York State Department of Labor, March 4, 2015 Opinion Letter**

This case is about whether Defendants should suffer an over *$99 million dollar judgment* because of alleged technical violations on their pay stubs and wage notices, even though no Plaintiff was harmed or misled and every single Plaintiff was paid all wages and tips they were due under the law.[1] Plaintiffs are current and former tipped employees who worked at Applebee's from September 24, 2006 to the present. Both the FLSA and NYLL allow employers to pay tipped restaurant employees a cash wage less than the standard minimum wage if, like Plaintiffs, the employees receive enough gratuities to compensate for the difference between the tipped minimum wage and the regular minimum wage. *See* 29 U.S.C. § 203(m); N.Y. Lab. Law § 652(4). Plaintiffs claim that Defendants are nevertheless not entitled to claim this "tip credit" against the standard minimum wage, because Defendants' pay stubs and wage notices allegedly violated the technical requirements of New York Labor Law ("NYLL") and regulations, and because Defendants allegedly failed to provide Plaintiffs with notice of the "tip credit" under the Fair Labor Standards Act ("FLSA").

Over two years ago, on August 5, 2014, this Court issued a Decision and Order, denying both parties summary judgment on Plaintiffs' pay stub claims, and granting Plaintiffs summary

---

[1] "Defendants" shall refer to T.L. Cannon Corp., d/b/a Applebee's, T.L. Cannon Management Corp., TLC West, LLC, TLC Central, LLC, TLC Utica, LLC, TLC North, LLC, David A. Stein, Matthew J. Fairbairn, and John Perry. "Plaintiffs" shall mean Named Plaintiffs Ashley Hicks and Kristen Raymond, and the class of tipped employees they purport to represent. For ease of reference, this memorandum of law refers generally to "Defendants" and "Plaintiffs." The parties dispute which Defendants employed Plaintiffs. Nothing in this brief is to be construed as a concession that any Defendant employed any of the Plaintiffs.

judgment regarding Named Plaintiff Kristin Raymond's wage notice claim only. *See* Dkt. 205. At the time of this Court's decision, there was little or no guidance concerning the proper application of the NYLL and its concomitant regulations at-issue here. That has now changed. Both the New York Department of Labor ("NYDOL"), with the above quoted language, as well as a fellow District Court Judge in the Southern District of New York, have provided clarity in this regard.

Indeed, since this Court's August 5, 2014 Decision and Order, there have been several material developments that render this case ripe now for summary adjudication. <u>First</u>, the NYDOL has issued **two opinion letters** which state that loss of the tip credit is not a remedy for the wage notice violations alleged by Plaintiffs. One of those letters specifically addresses this case. The rational contained in both letters is equally applicable to Plaintiffs' pay stub claims and provides a complete defense to all of Plaintiffs' claims. <u>Second</u>, a District Court Judge in the Southern District of New York has recognized that the opinion letter addressing this very case is entitled to deference. *See Carvente-Avila v. Chaya Mushkah Rest.*, 2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016). <u>Third</u>, the New York Legislature passed an amendment correcting the typographical error in NYLL § 198(1-b), which provides a complete, affirmative defense to Plaintiffs' wage notice claims. <u>Fourth</u>, Plaintiffs have stipulated that not a single Plaintiff was underpaid or uninformed; that every single Plaintiff was aware of the manner in which Defendants took the tip credit; and that every single Plaintiff knew the amount of the tip credit.

In light of these material developments, it is undeniable that Defendants are entitled to summary judgment on Plaintiffs' pay stub and wage notice claims. Every single Plaintiff understood that they were being paid the tipped minimum wage for all hours worked in a tipped-

occupation, had actual knowledge that Defendants were taking tip credits from the regular minimum wage, and were not confused by Defendants' pay stubs or wage notices. In addition, every Plaintiff received all of the wages that they were otherwise eligible to receive. Under these circumstances, according to the NYDOL, loss of the "tip credit" is not an available remedy under NYLL or its implementing regulations. Moreover, Defendants are entitled to the affirmative defenses in NYLL § 198, because Defendants paid all wages due. *See* N.Y. Lab. Law § 198. In addition, Defendants are entitled to summary judgment because Plaintiffs lack standing to sue under recent Supreme Court precedent, and because Plaintiffs' claims fail on the merits, as a matter of law. Finally, Defendants are entitled to summary judgment on Plaintiffs' FLSA claims, because Defendants provided the requisite notice and paid the Plaintiffs properly under federal law. For these reasons and those set forth below, Defendants respectfully request that this Court grant Defendants' Motion for Summary Judgment in its entirety.

## STATEMENT OF FACTS

### A. Class Members

The Court certified a Rule 23 class action on behalf of these two subclasses:

| SUBCLASS A: | All current and former tipped employees who worked for Defendants at Applebee's between September 24, 2006 and the present. |
|---|---|
| SUBCLASS B: | All current and former tipped employees working for Defendants at Applebee's between January 1, 2011 and December 31, 2013 (but excluding those who were hired between June 24, 2013 and December 31, 2013). |

(Dkt. 233).

### B. Defendants' Pay Stubs

There is no dispute concerning the content of Defendants' pay stubs. Specifically, from September 24, 2006 to the present, Defendants' pay stubs contained the following information:

- employee name;
- employer name and address (and beginning March 7, 2014, employer telephone number);
- the dates of work covered by the payment of wages;
- gross wages;
- net wages;
- deductions;
- withholdings;
- in pay periods that the employee worked in any non-tipped positions, the hourly rate paid by the defendants and number of hours worked at each non-tipped position during the pay period, denoted as "REGULAR EARNING";
- the hourly rate paid by the defendants and number of hours worked at each tipped position during the pay period, denoted as "REG-TIPPED";
- in pay periods that the employee worked overtime in any non-tipped positions the hourly overtime rate paid by the defendants and number of hours worked at each non-tipped position during the pay period, denoted as "OVERTIME EARNIN";
- the hourly overtime rate paid by the defendants and number of hours worked at each tipped position during the pay period, denoted as "TIPPED-OT";
- the total tips claimed by the employee during the pay period, denoted as "TIPS IN"; and
- in weeks that the employee did not earn sufficient tips to bring their wage to the standard minimum wage, and tip makeup pay was paid by Defendants, tip-makeup pay, denoted as "TIP MAKE UP" or "TIPS TO MINIMUM."

(Def. Stmt. at ¶ 7).[2]

Beginning on July 17, 2015, the pay stubs for TLC West, LLC included this message:

> Hospitality ind: food serv wrkrs-tip cred up to $3.75hr (othr
> serv wrkrs up to 3.10) taken toward $8.75hr min wage.
> If cash wage + tips < 8.75hr, tip makeup added to = 8.75hr.

(Def. Stmt. at ¶ 8).  This message was updated on January 12, 2016, and again on March 15, 2016, to reflect changes in the amount of the tip credit and standard minimum wage.  (Def. Stmt. at ¶¶ 9-10).  In addition, beginning on March 15, 2016, the pay stubs for TLC Central, LLC were updated to include this message:

> Hospitality industry: effective 12/31/15, tip credit up to
> $1.50/hr taken toward $9.00/hr min wage.  If cash
> wage + tips < $9.00hr, tip makeup added to = $9.00 hr.

---

[2] References to Defendants' Local Rule 56 Statement of Material Facts Not In Genuine Dispute are referred to as "Def. Stmt. at ¶ [paragraph #]."

(Def. Stmt. at ¶ 11).

### C.    Defendants' Wage Notices

Beginning on October 26, 2009 and through June 1, 2011, Defendants provided all hourly, tipped employees with a wage notice, entitled "Associate Pay Rate," upon hire. (Def. Stmt. at ¶ 12). The notice listed the employee's name, date of hire, position, rate of pay (per hour), overtime rate (per hour) and regular payday. (Dkt. 244 at Ex. B).

Starting on June 1, 2011 and through June 24, 2013, Defendants provided all hourly, tipped employees with a document entitled "Tip Credit Notification-NY Server," upon hire. (Def. Stmt. at ¶ 13). This notice listed the employee name, date of hire, position, hourly "server rate of pay," hourly overtime rate and regular payday, and also advised employees:

> For servers who receive at least $5.00 per hour and credit for tips, credit shall not exceed $2.25 per hour, provided that the total of tips received plus wages equals or exceeds $7.25 per hour. Extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate. The tip credit cannot exceed tips received. The employee will retain all tips other than what is contributed to tip pool credit.

(Dkt. 244 at Ex. C). The notice contained a similar notification for hosts. (*Id.*).

Beginning on January 1, 2012 and through June 24, 2013, Defendants provided all tipped, hourly employees with additional notice, in a document entitled "TL Cannon Notice and Acknowledgment of Pay Rate and Pay Day." (Def. Stmt. at ¶ 14). This notice listed the name and address of the employer, time the notice was given, regular rate of pay per position, regular payday, frequency of pay, and an explanation of the overtime rate. (Dkt. 244 at Ex. D).

Beginning on June 24, 2013 and through December 31, 2013, Defendants combined the "Tip Credit Notification-NY Server" form and "TL Cannon Notice and Acknowledgment of Pay Rate and Pay Day" form into one, combined form for ease of recordkeeping. (Def. Stmt. at ¶ 15). This form was called "Notice and Acknowledgment of Pay Rate and Payday." (*Id.*). This

notice listed the name, address and phone number of the employer, the time notice was given, the rate(s) of pay for each type of work or shift, the tip credit taken from the minimum wage ("$___ per hour, so that your cash wage is $___ per hour"), an explanation of the overtime pay rate, information about the employer's use of the tip credit[3], other allowances taken, the regular payday, and the frequency of pay. (Dkt. 244 at Ex. E). Defendants provided all tipped, hourly employees with this document upon hire and prior to any change in pay rate. (Def. Stmt. at ¶ 15). Beginning in January 2014, Defendants provided a materially similar form to all tipped, hourly employees upon hire, between January 1 and February 1 of each year, and prior to any change in pay rate. (*Id.* at ¶ 16; Dkt. 244 at Ex. F).

### D. Plaintiffs' Knowledge

During the relevant time period, from September 24, 2006 to the present:

- Plaintiffs understood that they were being paid the tipped minimum wage for all hours that they worked in a tipped occupation (*Id.* at ¶ 2);

- Plaintiffs had actual knowledge that Defendants were taking a tip credit from the minimum wage for those employees working as a server, bartender, host and carside to go server (*Id.*);

- Defendants had a policy to provide their employees verbal notice at orientation that the Defendants would take a tip credit and they would be paid the tipped minimum wage, and Defendants did provide verbal notification that Defendants had a policy to pay its tipped employees extra pay if their tips were insufficient to bring the employee up to the basic minimum hourly rate for the week ("tip makeup pay policy") (*Id.* at ¶¶ 3, 19-22);

- Plaintiffs were not confused by Defendants' wage notices and pay stubs nor did they fail to understand the amounts they were being paid (*Id.* at ¶ 4);

- In the rare instances where the tips that they earned, combined with the tipped minimum wage they were paid, did not bring their wage to the standard minimum

---

[3] This notice provided: "The tip credit only applies to employees who have been informed of the tip wage credit requirements. The tip credit taken may not exceed the value of tips actually received in a work-week. If you do not receive enough tips over the course of a work-week to bring you up to the minimum hourly rate of $7.25 per hour for the first 40 hours of work and $10.875 per hour for hours over 40, you will be paid additional wages to make up the difference…". (*Id.*).

wage, Defendants made up the difference, in accordance with their tip makeup pay policy, which was noted on Plaintiffs' pay stubs (*Id*. at ¶¶ 5, 21-23, 26);

- When combining the tipped minimum wage that Plaintiffs' received, the tips that they earned and any tip makeup pay provided, Plaintiffs never earned less than minimum wage, and in most instances earned more than minimum wage while working in a tipped position for Defendants (*Id*. at ¶¶ 6, 21-23, 26); and

- Defendants also had these posters prominently displayed in all of their restaurants: (1) New York State and Federal Employment Regulations for years 2006 – 2015; and (2) Hospitality Minimum Wage Poster (*Id*. at ¶¶ 1, 24-25).

### E. Plaintiffs Seek Over $99 Million In Damages

Despite Plaintiffs' concessions that Defendants informed them that they would apply the tip credit towards the minimum wage and that the tips they earned always caused Plaintiffs to earn at least the full minimum wage (and often far more), Plaintiffs nevertheless claim they are entitled to over $99 million in damages. (Pizzutelli Decl. at ¶ 8, Ex. 7 at p. 9).[4]

## PROCEDURAL HISTORY

Plaintiffs filed their Complaint on September 14, 2012. (Dkt. 1). Plaintiffs filed an Amended Complaint on April 10, 2013. (Dkt. 82). Defendants filed an answer to the Amended Complaint on May 24, 2013. (Dkt. 90).

On January 27, 2014, Plaintiffs moved for partial summary judgment as to the Named Plaintiffs Ashley Hicks and Kristin Raymond, and certain moving opt-in Plaintiffs. (Dkt. 144). In their motion, Plaintiffs contended that, prior to January 1, 2011, Defendants did not provide compliant pay stubs, as required by the New York Minimum Wage Order For The Restaurant Industry. (*Id*.). Plaintiffs also contended that, after January 1, 2011, Defendants did not comply with the provisions of the Hospitality Wage Order requiring them to provide wage notices.

---

[4] The Declaration of Jessica F. Pizzutelli in Support of Defendants' Motion for Summary Judgment, dated September 22, 2006, shall be referred to as "Pizzutelli Decl. at ¶ [paragraph #]."

(*Id.*).[5]  That same date, Plaintiffs also moved to certify the class.  (Dkt. 143).  On March 13, 2014, Defendants cross-moved for partial summary judgment.  (Dkt. 176).  Defendants also filed a response to the class certification motion.  (Dkt. 177).  Neither Plaintiffs nor Defendants moved for summary judgment on Plaintiffs' federal claims.

On August 5, 2014, this Court issued a Decision and Order on the above motions (the "August 5 Order").  (Dkt. 205).  The Court granted Plaintiffs' motion to certify the class under Fed. R. Civ. P. 23.  (*Id.* at 7).  The Court also denied both Plaintiffs' and Defendants' motions for summary judgment regarding Plaintiffs' pay stub claims.  (*Id.*).  In doing so, the Court distinguished each case relied upon by Plaintiffs, finding that no case granted summary judgment under the circumstances present here, where Plaintiffs were neither underpaid nor uniformed.  (*Id.* at 19-20).  The Court also found it was "not clear" that the information provided on Plaintiffs' pay stubs violated the pre-2011 regulatory requirement of showing "allowances" that were "claimed as part of the minimum wage."  (*Id.* at 21).

The Court granted Plaintiffs' motion for summary judgment on Plaintiff Raymond's wage notice claim only and reasoned that the "[Associate Pay Rate form] did not state that her employer intended to take a tip credit, the amount of the tip credit to be taken from the basic minimum hourly rate, or that she was entitled to makeup pay if she did not earn enough in tips to bring her rate of pay up to the basic minimum hourly rate."  (*Id.* at 30).  This Court further determined that the remedy for this purported violation was awarding Plaintiff Raymond damages in the amount of the tip credit Defendants applied to Raymond's wages for each hour that she worked.  (*Id.* at 31).  This Court reasoned:  "The Department of Labor's interpretation of the statutes it is charged with enforcing is entitled to deference by this Court."  (*Id.* at 30).  This

---

[5] For ease of reference, Defendants refer to the New York Minimum Wage Order For The Restaurant Industry and the Hospitality Wage Order as "HWO," generally, and where applicable, cite to the specific sections at-issue.

Court also found that Defendants were not entitled to the statutory affirmative defense because the language of the statute is limited to alleged violations of NYLL § 195(1)(d), a section of the labor law unrelated to Plaintiffs' claims. (*Id.* at 29).

Since the Court's August 5 Order, there have been several material developments. The parties agreed to two stipulations concerning the content and form of Defendants' pay stubs and wage notices (Dkt. 244), and concerning Plaintiffs' individual knowledge concerning the "tip credit" taken from the minimum wage (Dkt. 249). Neither stipulation was available to Defendants or the Court during the prior summary judgment briefing. These stipulations clarify that not one Plaintiff was underpaid or uninformed about the "tip credit." (*Id.*).

On December 29, 2014, amendments to the Wage Theft Prevention Act ("WTPA") were enacted into law, which corrected the typographical error in NYLL § 198(1-b), which provides a complete, affirmative defense to an employer from technical violations of the wage notice requirements if the employer made complete and timely payment of all wages due. *See* N.Y. Lab. Law § 198(1-b) (2014).

Then, on March 4, 2015, Pico Ben-Amotz, General Counsel at the NYDOL, confirmed in writing that employers are still eligible to claim the tip credit, even when failing to provide written notice of the tip credit rules, provided that "their employees understood the manner in which the employer took the tip credit." (Pizzutelli Decl. at Ex. 8). On May 4, 2016, James Rogers, Deputy Commissioner for Worker Protection at the NYDOL, reaffirmed this position. (*Id.* at Ex. 9).

Finally, on March 1, 2016, District Judge Katherine Forrest found, in the *Carvente-Avila* decision, that the March 4, 2015 opinion letter was entitled to deference, and denied the plaintiff-employees' request for loss of the tip credit. *See Carvente-Avila,* 2016 U.S. Dist. LEXIS 75396,

at *5-9. With these factual and legal developments, this case is now ripe for summary adjudication, and Defendants move this Court for summary judgment in their favor.

**ARGUMENT**

**I.      STANDARD OF REVIEW.**

Rule 56(c) of the Federal Rules of Civil Procedure requires summary judgment if the evidence demonstrates "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable [fact finder] could return a verdict for the nonmoving party.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (internal citations omitted). Once the moving party has met its burden, the opposing party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (internal citations omitted). Instead, the "nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* (emphasis original). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247-48 (emphasis original). Here, there is no genuine issue of material fact, and dismissal of Plaintiffs' claims is warranted as a matter of law.

**II.      SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE DEFENDANTS APPROPRIATELY CLAIMED THE TIP CREDIT AND LOSS OF THE TIP CREDIT IS NOT AN AVAILABLE REMEDY FOR ALLEGED TECHNICAL NOTICE VIOLATIONS.**

Both the FLSA and NYLL allow employers to pay tipped restaurant employees a cash wage less than the standard minimum wage if the employees receive gratuities sufficient to

compensate for the difference. *See* 29 U.S.C. § 203(m); N.Y. Lab. Law § 652(4). Plaintiffs claim that Defendants were not entitled to claim this "tip credit" because Defendants allegedly failed to provide Plaintiffs with a pay stub that complied with the technical requirements of NYLL § 195(3), 12 N.Y.C.R.R. § 137-2.2 (repealed)[6] and 12 N.Y.C.R.R. § 146-2.3 (the "pay stub claims"). (Dkt. 82 at ¶¶ 17-18).[7] Plaintiffs also claim that Defendants allegedly failed to provide Plaintiffs with wage notices that complied with the technical requirements of 12 N.Y.C.R.R. § 146-2.2 (the "wage notice claims"). (*Id.* at ¶ 17).[8] Despite these claims, Plaintiffs admit and acknowledge that at all times they understood they were being paid the tipped minimum wage for hours worked in a tipped occupation, had actual knowledge that Defendants were applying a tip credit towards their wages, understood that Defendants provided tip make-up pay (when necessary), and Plaintiffs never earned less than minimum wage. (Def. Stmt. at ¶¶ 2-6, 18-26). As the NYDOL has made clear during the pendency of this action, under these circumstances, loss of the "tip credit" is not an available remedy as a matter of law and Defendants are therefore entitled to summary judgment.

### A.  Plaintiffs' Positions Lack Statutory And Regulatory Support.

The NYLL provides no specific prerequisites for allowing tip credits. *See Carvente-Avila,* 2016 U.S. Dist. LEXIS 75396, at *7. Furthermore, neither the statute requiring pay stubs, NYLL § 195(3), nor its accompanying regulations, 12 N.Y.C.R.R. §§ 137, 146, require the

---

[6] The text of the statute and regulations changed during the relevant time period. Relevant, repealed and/or modified versions of the statutes and regulations were previously provided to the Court, and can be located at Dkt. 176-2.

[7] The parties do not dispute that Defendants substantially complied with the statute and regulations. The parties only dispute whether the paystubs contained (or were required to contain) information that specifically identified "allowances, if any, claimed as part of the minimum wage" (12 N.Y.C.R.R. § 137-2.2 (repealed), NYLL § 195(3)(effective April 9, 2011) and/or "credits claimed (for tips, meals and lodging) if any" (12 N.Y.C.R.R § 146-2.3) (effective Jan. 1, 2011).

[8] Section 146-2.2 provides: "Prior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-2.2. Plaintiffs did not plead a violation of NYLL § 195(1) in their Amended Complaint. *See* Dkt. 82.

issuance of compliant *pay stubs* as a condition precedent to paying the tipped minimum wage.[9]

**B.** **The NYDOL Has Confirmed That, Under The Facts Present Here, Loss Of The Tip Credit Is Not An Available Remedy, And The NYDOL's Determination Is Entitled To Deference.**

On March 4, 2015, Pico Ben-Amotz, in his capacity as General Counsel to the NYDOL, wrote a letter to the Hon. Joseph D. Morelle, Majority Leader of the New York State Assembly ("March 4 Opinion Letter") regarding Plaintiffs' claims in this very case. In that letter, General Counsel Ben-Amotz wrote: "In response to your inquiry regarding *Hicks v. TL Cannon Corp.,* 35 F. Supp. 3d 329 (W.D.N.Y. 2014), I write to summarize the [NYDOL's] interpretation of the intersection of the tip credit and notice of pay rules." *See March 4 Opinion Letter* at 1.[10] Mr. Ben-Amotz was responding to Majority Leader Morelle's inquiry whether, "as a precondition to claiming a tip credit . . . an employer [must] provide *written* notice of the tip credit rules." *Id.* (emphasis added). The March 4 Opinion Letter answered with a resounding and unambiguous: "*No*." The March 4 Opinion Letter reasoned:

> … a food service employer is eligible to claim the tip credit even when they fail to provide written notice of the tip credit rules provided that the employer can demonstrate compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit…

* * *

---

[9] In their prior summary judgment motion, Plaintiffs rely, instead, on inapposite case law to support their position that loss of the tip credit is an available remedy for pay stub violations, despite the dearth of statutory authority. However, as this Court previously recognized, "the cases relied upon by Plaintiffs involving contested motions for summary judgment concerned other violations by the employers [not present here] and, in each case, resulted in the employees being uninformed and/or underpaid." (Dkt. 205 at 21).

[10] The letter addresses the regulation that requires written notice of pay rates upon hire, 12 N.Y.C.R.R. § 146-2.2, and the tip credit regulation, 12 N.Y.C.R.R. § 146-1.3, which went into effect in January 2011. *Id.* Section 146-1.3 provides that an employer may only take the tip credit if the employee "receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part." 12 N.Y.C.R.R. § 146-1.3. Section 146-2.2 provides that prior to the start of employment or any change in an employee's hourly rate of pay, an employer must provide the employee with written notice of the employee's regularly hourly pay rate, overtime hourly pay rate, the amount of the tip credit, if any, to be taken from the basic minimum hourly rate, the regular payday, and an explanation that extra pay is required if tips are insufficient to bring the employee up to the basis minimum hourly rate. *See* 12 N.Y.C.R.R. § 146-2.2.

> *DOL's interpretation of 12 N.Y.C.R.R. § 146-1.3 is compelled both by the plain language of the regulation and the need to prevent unintended consequences, such as loss of eligibility for the tip credit for otherwise compliant employers and an unjustified windfall for employees that have actual notice of their employer's tip credit practices.* If an employer can demonstrate compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit, there is no policy rationale to preclude the employer from claiming the tip credit simply because the employer did not provide written notice of the tip credit rules. Alternatively stated, *written notice is not necessary to protect employees that have actual knowledge of the tip credit rules.*

*Id.* at 2 (emphasis added). The NYDOL concluded that this interpretation provides a strong incentive for employers to comply with written notice requirements "without being unnecessarily punitive to those employers [like Defendants] that [allegedly] do not provide the required written notice and without providing an inappropriate windfall to employees [like Plaintiffs] that have suffered no prejudice." *Id.* at 2.[11]

The March 4 Opinion Letter is entitled to deference and must be followed here, and in fact, one federal court within New York that was presented with this issue has already granted deference to the March 4 Opinion Letter. Specifically, in *Carvente-Avila v. Chaya Mushkah Rest.*, the court specifically relied upon the March 4 Opinion Letter to deny the plaintiffs' motion for reconsideration, where plaintiffs argued for loss of the tip credit as a remedy for violations of 12 N.Y.C.R.R. §§ 146-1.3, 146-2.2. 2016 U.S. Dist. LEXIS 75396 at *3. The court first laid out the law on deference:

> New York courts have . . . consistently held that the NYDOL's "interpretation of a statute it is charged with enforcing is entitled to deference." *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 470-71 (2013); *see also State v. GTE Valeron Corp.*, 553 N.Y.S.2d 555, 557 (1990) ("Judicial deference should therefore be accorded the interpretation by the [New York] Department of Labor ..."). In fact, Barenboim involved the NYDOL's interpretation of a regulation under another

---

[11] The letter observes that failure to comply with the written notification requirements contained in 12 N.Y.C.R.R. § 146-2.2 subjects an employer to civil penalties under Section 218 of the Labor Law. *See March 4 Opinion Letter* at 1-2. Section 218 of the Labor Law provides for the Commissioner – but not private litigants – to collect civil penalties. *See* N.Y. Lab. Law § 218.

provision under Section 146 of the New York Minimum Wage Order, 12 N.Y.C.R.R. §§ 146-2.14. *Id.* 21 N.Y.3d at 470-71. In addition, New York courts have held that "regulations by the agency responsible for [statutory] administration, if not irrational or unreasonable, should be upheld." *Howard v. Wyman*, 28 N.Y.2d 434, 438 (1971). ***"The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Id.***

*Id.* at *6 (emphasis added). *Accord Samiento v. World Yacht Inc.,* 10 N.Y.3d 70, 79 (2008) (addressing DOL opinion letters: "The Labor Department's interpretation of a statute it is charged with enforcing is entitled to deference"); *accord Baltierra v. Advantage Pest Control Co.,* 2015 U.S. Dist. LEXIS 124961, at *20 (S.D.N.Y. Sept. 18, 2015) ("Because the DOL is charged with enforcing New York's labor regulations, its interpretation of New York's spread of hours provision [contained in opinion letters] is entitled to deference").

Applying that law, the *Carvente-Avila* court held that there is a rational basis for the conclusions made in the March 4 Opinion Letter. 2016 U.S. Dist. LEXIS 75396 at *6. In fact, the Court pointed out three separate rational bases (which were also set forth in the March 4 Opinion Letter):

(1) the plain language of the tip credit notice regulation, Section 146-1.3, does not require *written* notice as a precondition to claiming the tip credit;

(2) there was a policy reason for not allowing loss of the tip credit as a remedy for the pay notice regulations – because of the "'need to prevent unintended consequences, such as loss of eligibility for the tip credit for otherwise compliant employers and an unjustified windfall for employees that have actual notice of their employer's tip credit practices'"; and

(3) Section 146-2.2's penalties already provide "strong incentive" to comply with the pay notice regulations without being unnecessarily punitive.

*Id.* at *6-8. Accordingly, the court held that deference was required and the loss of the tip credit was not an available remedy. *Id.* at *8-9. This Court has previously recognized that "[t]he [NYDOL's] interpretation of the statutes it is charged with enforcing is entitled to deference by this Court," (Dkt. 205 at 30), and should make the same finding here.

Since the March 4 Opinion Letter and the *Carvente-Avila* decision, the NYDOL has reaffirmed its position in a ***second*** opinion letter. On May 4, 2016, James Rogers, in his capacity as Deputy Commissioner for Worker Protection for the NYDOL, wrote a letter to the Hon. Joseph D. Morelle ("May 4 Opinion Letter," and with the March 4 Opinion Letter, the "Opinion Letters"). That letter addressed the circumstances where an employer provided its employees with several written notices regarding the employer's tip credit rules, and whether those notices, when taken together, provided employees with sufficient and specific enough notice to entitle the employer to the tip credit. *May 4 Opinion Letter* at 1. In the May 4 Opinion Letter, Mr. Rogers concluded that where employees "are informed of the tip credit with the proviso that they are in all events entitled to the minimum wage" the employer will not be deprived of the tip credit. *Id.* at 2. Mr. Rogers reasoned: "That the employer's wage notice does not with precise language track the regulation … does not, in and of itself, deprive the employer of the tip credit." *Id.* Mr. Rogers further stated that, if an employer can demonstrate that its employees received legal wages, understood how the employer took the tip credit, and understood that they could never earn less than minimum wage, then there is no policy rationale precluding the employer from claiming the tip credit. *Id.* As with the March 4 Opinion Letter, the May 4 Opinion Letter is also entitled to deference. *Carvente-Avila,* 2016 U.S. Dist. LEXIS 75396 at *6.

These two Opinion Letters should be applied here, to both Plaintiffs' wage notice *and paystub* claims, because they address the broad question of whether an employer can be penalized tens of millions of dollars by repaying a tip credit to employees who have suffered no harm if the employer (allegedly) merely failed to technically comply with the written notice requirements in the HWO. *See March 4 Opinion Letter* at 2; *May 4 Opinion Letter* at 2. The answer from the NYDOL is a clear and unequivocal "***NO***." Further, the underlying policy

rationale behind the Opinion Letters – the "need to prevent unintended consequences, such as loss of eligibility for the tip credit for otherwise compliant employers and an unjustified windfall for employees that have actual notice of their employer's tip credit practices" (*Id.*), would be flouted if loss of the tip credit resulted due to violations of 12 N.Y.C.R.R. § 137-2.2 (repealed) and/or 12 N.Y.C.R.R. § 146-2.3. There is simply no basis for an argument that loss of the tip credit results from a violation of the pay stub regulation, but not the wage notice regulation.

Here, loss of the tip credit is not an available remedy, because: (1) Defendants complied with the minimum wage requirements; and (2) Plaintiffs understood how Defendants took the tip credit. (*See Opinion Letters*). Specifically, Plaintiffs received pay stubs with every payment of wages identifying the type of payment made. (Def. Stmt. at ¶ 7). Plaintiffs were paid the tipped minimum wage for all hours that they worked in a tipped occupation, and had actual knowledge that Defendants were taking a tip credit from the minimum wage for employees working in tipped positions. (*Id*. at ¶ 2). And, in the rare instances where the tips Plaintiffs earned, combined with the tipped minimum wage they were paid, did not bring their wage to the standard minimum wage, Defendants made up the difference, in accordance with their tip makeup pay policy, which was noted on Plaintiffs' pay stubs. (*Id*. at ¶¶ 5, 21-23). When combining the tipped minimum wage that Plaintiffs received, the tips that they earned and any tip makeup pay provided, Plaintiffs never earned less than minimum wage, and in most instances earned more than minimum wage, while working in a tipped position. (*Id*. at ¶¶ 6, 26). Moreover, Plaintiffs have stipulated that they were not confused by Defendants' wage notices and pay stubs, nor did they fail to understand the amounts they were being paid. (*Id*. at ¶ 4).

As the NYDOL has confirmed, under these circumstances, loss of the eligibility for the tip credit is not an available remedy. *See March 4 Opinion Letter; May 4 Opinion Letter; accord*

*Carvente-Avila,* 2016 U.S. Dist. LEXIS 75396 at *8.   As such, Defendants are entitled to summary judgment on Plaintiffs' NYLL wage notice and pay stub claims.

III.   **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE DEFENDANTS' NYLL § 198 AFFIRMATIVE DEFENSES MAKE IT IMPOSSIBLE FOR PLAINTIFFS TO SUCCEED ON THEIR POST-APRIL 9, 2011 WAGE NOTICE AND PAY STUB CLAIMS AS A MATTER OF LAW.**

On April 9, 2011, the New York legislature passed the WTPA.   As part of the Act, the legislature made it an affirmative defense to violations of NYLL § 195(1) (the statutory provision requiring wage notices) and NYLL § 195(3) (the statutory provision requiring pay stubs) if the employer made complete and timely payment of all wages due.   *See* N.Y. Lab. Law § 198(1-b), (1-d).

Although Plaintiffs assert their wage notice claim under the HWO only, these regulations were promulgated under Articles 6 and 19 of the NYLL, including NYLL § 199, which provides "[t]he commissioner may issue such rules and regulations as he determines necessary for the purposes of carrying out the provisions of this article."   N.Y. Lab. Law § 199.   The "provisions of this article" include Sections 195 and 198 of Article 6 of the NYLL, *i.e.*, the only statutes that address wage notices.   Thus, the affirmative defenses in NYLL § 198 apply to Plaintiffs' wage notice claims under the HWO.

Here, Defendants made complete and timely payment of wages to Plaintiffs, and are therefore entitled to these statutory affirmative defenses.

A.   **Plaintiffs' Wage Notice and Pay Stub Claims Pre-April 9, 2011.**

Prior to April 9, 2011, the effective date of the WTPA, the remedies for a violation of NYLL § 195(1) (wage notices) and § 195(3) (pay stubs), and their implementing regulations, were found in NYLL § 198, which only provided for recovery for underpayment of wages.   *See* N.Y. Lab. L. § 198(3) (eff. until April 9, 2011) (providing for the recovery of "wages, benefits

and wage supplements."). Because Plaintiffs were paid all wages due, and were not underpaid in

any way (Def. Stmt. at ¶¶ 5-6, 21-23, 26), Plaintiffs are not entitled to any recovery under NYLL

§ 198 prior to April 9, 2011. *See also Baltierra,* 2015 U.S. Dist. LEXIS 124961 at *27-29.

**B.     Plaintiff's Pay Stub Claims Post-April 9, 2011.**

As of April 9, 2011, NYLL § 198 was amended to clarify that loss of the tip credit is not

an available remedy for pay stub violations. Instead, NYLL § 198 provided for a penalty of up

to $2,500 for failure to issue a compliant pay stub under NYLL § 195(3). The amendments to

NYLL § 198 also incorporated an affirmative defense, exonerating an employer from liability if

the employer made complete and timely payment of all wages due to the employee. *See* N.Y.

Lab. Law § 198(1-d). Specifically, as amended by the WTPA, § 198(1-d) provides:

> In any action or administrative proceeding to recover damages for violation of
> subdivision three of section one hundred ninety-five of this article, *it shall be an*
> *affirmative defense that (i) the employer made complete and timely payment of*
> *all wages due pursuant to this article or articles nineteen or nineteen-A of this*
> *chapter to the employee who was not provided statements as required by*
> *subdivision three of section one hundred ninety-five of this article* or (ii) the
> employer reasonably believed in good faith that it was not required to provide the
> employee with statements pursuant to paragraph (e) of subdivision one of section
> one hundred ninety-five of this article.

N.Y. Lab. Law § 198(1-d) (effective April 9, 2011) (emphasis added). Effective February 27,

2015, NYLL § 198(1-d) was amended to increase the monetary penalty from $2,500 to $5,000.

*See* N.Y. Lab. Law § 198(1-d) (effective Feb. 27, 2015).

Here, Defendants made complete and timely payment of all wages due to Plaintiffs.

There is no allegation in the Amended Complaint that Defendants failed to pay Plaintiffs their

wages in a timely manner. (*See* Dkt. 82). Plaintiffs have stipulated that, at all times, Plaintiffs

received complete payment -- *i.e.*, they never earned less than minimum wage, and usually

earned more than minimum wage while working in a tipped position for Defendants. (Def. Stmt.

at ¶ 6). And, according to the NYDOL, Defendants may claim a tip credit. Because there is no

issue of material fact, Defendants are entitled to summary judgment on Plaintiffs' pay stub claims as a matter of law because: (1) there was no statutory right to recover prior to April 9, 2011; and (2) after April 9, 2011, Defendants are entitled to the NYLL § 198(1-d) affirmative defense.

### C. Plaintiff's Wage Notice Claims Post-April 9, 2011.

Similarly, after April 9, 2011, NYLL § 198(1-b) provided for statutory penalties -- and not loss of the tip credit -- for violations of NYLL § 195(1), the statutory wage notice requirement from which the at-issue regulations are promulgated. NYLL § 198(1-b) also contains an affirmative defense available to employers who fail to provide a compliant wage notice. *See* N.Y. Lab. Law § 198(1-b). Prior to its recent amendment, the statute provided:

> In any action or administrative proceeding to recover damages for violation of paragraph (d) [sic] of subdivision one of section one hundred ninety-five of this article, it shall be an affirmative defense that *(i) the employer made complete and timely payment of all wages due pursuant to this article or article nineteen or article nineteen-A of this chapter to the employee who was not provided notice as required by subdivision one of section one hundred ninety-five of this article or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with notice pursuant to subdivision one of section one hundred ninety-five of this article.*

N.Y. Lab. Law § 198(1-b) (effective April 9, 2011) (emphasis added). The provision's former reference to the affirmative defense for violations of "paragraph (d)" was a typo, as it should have read "paragraph (a)." This is further demonstrated by the language of NYLL § 198(1-d), which provides the same affirmative defense for violations of NYLL § 195(3), the statutory pay stub requirements. *See supra* at Section III, B.

In the August 5 Order, this Court denied the applicability of the affirmative defense, reasoning that:

> [b]y its own terms, the affirmative defense is limited to alleged violations of NYLL §195(1)(d), which addresses errors or omissions in non-English language notices. Here, Plaintiffs do not assert a violation of NYLL § 195(1)(d), nor is it the

provision of law that the relevant sections of the Wage Order seek to enforce.

(Dkt. 205 at 29).   In so ruling, this Court relied on the then plain language contained in the

statute.   However, the inclusion of section (d) instead of (a) in NYLL § 198 (1-b) was in error, as

section (d) does not relate to any conduct that could cause a violation.   *See* N.Y. Lab. Law §

195(1)(d) ("An employer shall not be penalized for errors or omissions in the non-English

portions of any notice provided by the commissioner").   The State Assembly recognized this

error in the statute:

> Bill § 2 amends Labor Law § 198 to ***clarify*** two provisions relating to potential
> affirmative defenses under the WTPA.  Currently, subdivision 1-b provides for
> two affirmative defenses (complete and timely payment of wages and good faith
> belief) in '...any action or administrative proceeding to recover damages for
> violation of paragraph (d) of subdivision one of section one hundred ninety-five
> of this article....'  ***Said paragraph (d) does not relate to any conduct that could
> result in a violation - It only provides that an employer may not be penalized for
> errors or omissions in the non-English portions of any notice provided by the
> Commissioner.  The amendment deletes the reference to paragraph (d) to make
> clear that the violation in question would be a violation of subdivision 1 of
> § 195.***
>
>          * * *
>
> Labor Law § 198 currently sets forth affirmative defenses in actions under the
> WTPA which ***refer back to the wrong provisions of § 195*** - this bill would
> provide the ***correct references***.

N.Y. Assemb., Memorandum in Support of Legislation, Bill No. A03090 (emphasis added) ("the

***clarifications*** of certain aspects of the affirmative defenses in Labor Law § 198 would retain the

benefits of the WTPA while significantly lowering the burden on reputable employers").[12]

On September 2, 2014, Defendants brought this to the Court's attention in a motion for

reconsideration.  (Dkt. 214).  This Court declined to rely on the amendment, but only because it

had not yet been enacted into law.  This Court reasoned:  "If the current language of NYLL

---

[12] A copy of N.Y. Assemb. Memorandum in Support of Legislation of Bill No. A03090 is attached to the Pizzutelli
Decl. as Ex. 10.

-20-

§ 198(1-b) fails to encompass all actions the New York State Legislature wishes to be subject to the affirmative defense set forth therein, it is that body, and not this Court, that must expand it." (Dkt. 224 at 8).

The New York State Legislature did just that. On December 29, 2014, the amendments to the WTPA were enacted into law and the affirmative defense now correctly reads:

> In any action or administrative proceeding to recover damages for violation of ***paragraph (a)*** of subdivision one of section one hundred ninety-five of this article, ***it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or article nineteen or article nineteen-A of this chapter to the employee who was not provided notice as required by subdivision one of section one hundred ninety-five of this article*** or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with notice pursuant to subdivision one of section one hundred ninety-five of this article.

N.Y. Lab. Law § 198(1-b) (12/29/14) (emphasis added). This amendment which, in the Legislature's own words was meant to "correct" and "clarify" what § 198(1-b) was always meant to do and say, is retroactive to April 9, 2011, the effective date of the WTPA. *See In re Gleason (Michael Vee, Ltd.)*, 749 N.E.2d 724, 726-27 (N.Y. 2001) (the Legislature intended the amendment to the statute to apply retroactively because, *inter alia*, "the purpose of the amendment was to clarify what the law was always meant to do and say"); *Matter of OnBank & Trust Co.*, 688 N.E.2d 245, 247-48 (N.Y. 1997) (the Legislature intended the amendment to the statute to apply retroactively because "the amendment was intended to clarify the law" and "was intended to clarify that statute")(internal quotations and citation omitted); *People ex rel. Forshey v. John*, 904 N.Y.S.2d 620, 622 (4th Dept. 2010) (the amendment "should be given retroactive effect" because "the legislative history establishes that the purpose of the 2008 amendment was to clarify what the law *was always meant to say and do*") (internal quotation marks and citations omitted).

It is undisputed that Defendants made timely payment of all wages due to Plaintiffs. (*See* Dkt. 82). Plaintiffs also received complete payment and never earned less than minimum wage while working in a tipped position for Defendants. (Def. Stmt. at ¶¶ 6, 26). And, according to the NYDOL, Defendants may claim a tip credit. Because there is no issue of material fact, Defendants are entitled to summary judgment on Plaintiffs' wage notice claims because: (1) there was no statutory right to recover prior to April 9, 2011; and (2) after April 9, 2011, Defendants are entitled to NYLL § 198 (1-b) affirmative defense.

## IV. SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFFS LACK STANDING TO SUE UNDER RECENT SUPREME COURT PRECEDENT.

On May 16, 2016, the United States Supreme Court held, in *Spokeo, Inc. v. Robins,* that plaintiffs do not have standing to sue absent the existence of a concrete injury, even in the context of a statutory violation where the statute provides for actual and/or statutory damages. 136 S. Ct. 1540 (2016). The Supreme Court clarified that bare procedural, trivial violations, divorced from any concrete injury, does not confer standing. The Court held:

> [Plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id.* at 1550.

Here, Plaintiffs have not alleged a concrete injury sufficient to establish Article III standing under *Spokeo.* Plaintiffs concede that they were not injured because of the allegedly non-complaint wage statements and wage notices: Plaintiffs were paid all wages due and were not confused by the wage statements or wage notices. (Def. Stmt. at ¶¶ 4-6, 26). Under these

circumstances, it is hard to imagine how the failure to disseminate an (allegedly) non-compliant wage notice or pay stub, without more, could work any concrete harm, especially when the Plaintiffs' pay was otherwise entirely accurate. *Spokeo,* 136 S. Ct. at 1550. As such, Plaintiffs do not have standing to bring their wage notice, pay stub, or FLSA claims, and Defendants are entitled to summary judgment as a matter of law.

## V. SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE DEFENDANTS PROVIDED PLAINTIFFS WITH COMPLIANT WAGE NOTICES.

### A. Plaintiffs' Wage Notice Claims Are Limited To A Narrow Time Period, And Only To Violations Of The HWO.

Plaintiffs' wage notice claims are very limited. The Amended Complaint does not allege that Defendants violated NYLL § 195(1), the statutory wage notice requirement. *See* Dkt. 82 (citing NYLL § 195(3) and accompanying regulations for paystub claims, but only citing HWO for wage notice claims). Instead, Plaintiffs claim only that Defendants failed to technically comply with the HWO wage notice regulation contained in 12 N.Y.C.R.R. § 146-2.2. Plaintiffs' wage notice claims are also limited by the scope of the Rule 23 class, which encompasses current and former tipped employees working for Defendants at Applebee's between January 1, 2011 and December 31, 2013 (but excluding those who were hired after June 24, 2013). (Dkt. 233).

### B. Section 146-2.2 Only Applies To Plaintiffs Who Were Hired, Or Had Their Rate Of Pay Changed, After January 1, 2011.

Section 146-2.2 was added to the HWO effective January 1, 2011, and included for the first time these written notice requirements:

(a) Prior to the start of employment, an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate...

(b) Such notice shall also be required prior to any change in the employee's hourly rates of pay.

12 N.Y.C.R.R. § 146-2.2.

By its express terms, Section 146-2.2 only requires notice in two circumstances: "[p]rior to the start of employment" and "prior to any change in the employee's hourly rates of pay." *See* 12 N.Y.C.R.R. § 146-2.2 (effective Jan. 1, 2011). Further, by its plain terms, Section 146-2.2 requires such notice **after** January 1, 2011. *Id.* The regulation expressly states that notice is required "**prior to**" the start of employment or a change in pay rate. *Id.* This regulation could not possibly apply to employees who were either hired or had their rate of pay changed **on** January 1, 2011, because then Defendants would have had to provide employees with notice **"prior to"** January 1, 2011, when there was no obligation to do so.

Here, Plaintiffs' pay rate increased on January 1, 2011, contemporaneously with the enactment of the HWO. (Def. Stmt. at ¶ 2; 176-6 at ¶ 5). There was, therefore, no requirement that Defendants provide Plaintiffs with Section 146-2.2 notice on January 1, 2011. And, as set forth below, after January 1, 2011, Defendants provided Section 146-2.2 notice to Plaintiffs who were hired after January 1, 2011, or who had their rate of pay changed after that date.[13]

---

[13] In the Court's August 5, 2014 Decision and Order, the Court found that even if Named Plaintiff Raymond's pay increased at the same time the HWO became effective, Defendants were still required to provide all tipped employees with Section 146-2.2 wage notices because a separate section of the HWO, 12 N.Y.C.R.R. § 146-1.3 provides that an employer may take a tip credit towards the basic minimum hourly rate only if the employee has received the notice required by 12 N.Y.C.R.R. § 146-2.2. (Dkt. 205 at 28). The Court observed: "There is nothing in the regulations suggesting that existing employees were not equally entitled to notice prior to the employer taking a tip credit, and it is undisputed that Ms. Raymond did not receive a notice containing the information set forth in 12 N.Y.C.R.R. § 146-2.2... Defendants could only take advantage of the tip credit by providing the required notice to Ms. Raymond." *Id.* at 28-29. Since the August 5 Decision and Order, the NYDOL has made clear that 12 N.Y.C.R.R. § 146-1.3 does not require **written notice** for an employer to claim the tip credit. *See March 4 Opinion Letter.* Therefore, there is no requirement that all Plaintiffs employed on or before January 1, 2011 also receive a written wage notice in order for Defendants to be eligible to claim the tip credit. And, by the regulation's express terms, the only employees who were required to receive a Section 146-2.2 wage notice were those employees who were either hired after January 1, 2011 or who had their pay rate changed after that date.

**C.  Defendants Are Entitled To Summary Judgment Because All Plaintiffs Who Were Hired Or Had Their Rate Of Pay Changed After January 1, 2011 (Through December 31, 2013) Received Proper Notice Pursuant To Section 146-2.2.**

From January 1, 2011 to June 1, 2011, Defendants provided new hires with several forms of notice concerning their compensation which, when taken together, satisfy the requirements of Section 146-2.2.[14]  Defendants provided new hires with written notice of their regular hourly rate, overtime rate, and regular payday in a document entitled "Associate Pay Rate."  (Def. Stmt. at ¶ 12).  Defendants also prominently displayed in all restaurants a combined federal and state minimum wage poster and Hospitality Minimum Wage Poster, which made explicit that: effective January 1, 2011, $7.25/hour was the basic hourly rate; that tipped employees would receive a minimum cash wage of $5.00/hour; that Defendants would take a tip credit of $2.25/hour; and that Plaintiffs' total pay must equal at least $7.25/hour.  (Def. Stmt. at ¶¶ 1, 24-25).  Employees were also told at orientation that they were paid a tipped wage, and that if they did not make enough in tips to bring them up to the standard minimum wage, the Company would provide tip makeup pay.  (Def. Stmt. at ¶¶ 3, 19-21).  Taken together, these various forms of notice provided Plaintiffs with sufficient and specific notice to satisfy Section 146-2.2.  *E.g., May 4 Opinion Letter* at 2 (noting employer's wage notice need not track the regulation with precise language, and that notice provided by employer from multiple sources, when taken together, was sufficient for employer to claim tip credit).

Then, starting on June 1, 2011 through June 24, 2013, Defendants provided hourly, tipped employees with a new form of written notice, entitled "Tip Credit Notification – NY Server," upon hire.  (Def. Stmt. at ¶ 13).[15]  As required by the HWO, this document provided tipped employees with written notice of:  (1) hourly pay rate; (2) overtime hourly pay rate; (3)

---

[14] Plaintiffs' hourly rate of pay did not change during this time period.  (Def. Stmt. at ¶ 2; 176-6 at ¶ 5).
[15] Plaintiffs' hourly rate of pay did not change during this time period.  (Def. Stmt. at ¶ 2; 176-6 at ¶ 5).

the amount of tip credit; (4) the regular payday; and (5) notification that tip make up pay would be provided if the employee did not make tips sufficient to bring the employee up to the basic minimum hourly rate.[16] (Dkt. 244 at Ex. C). Employees had to sign and acknowledge receipt of this document. (*Id.*). Thus, starting on June 1, 2011, Section 146-2.2 was satisfied by the single "Tip Credit Notification – NY Server" form. *See* 12 N.Y.C.R.R. § 146-2.2.

Thereafter, beginning on June 24, 2013 and through December 31, 2013, Defendants provided all tipped hourly employees upon hire and prior to any change in pay rate with a document entitled "Notice and Acknowledgment of Pay Rate and Payday." (Def. Stmt. at ¶ 15). This notice also expressly satisfies the requirements of Section 146-2.2, and Plaintiffs have never asserted that this notice is non-compliant. *See* 12 N.Y.C.R.R. § 146-2.2. Indeed, employees who were hired between June 24, 2013 and December 31, 2013 are carved out of the Rule 23 class definition. (Dkt. 233).

Because all Plaintiffs hired or who had their rate of pay changed between January 1, 2011 and December 31, 2013 received proper notice under Section 146-2.2, Defendants are entitled to summary judgment on Plaintiffs' wage notice claims.

## VI. SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE DEFENDANTS' PAY STUBS ARE COMPLIANT WITH NYLL § 195(3) AND ITS CONCOMITANT REGULATIONS.

### A. Applicable Legal Standards.

NYLL § 195(3) and its concomitant regulations have been amended several times during the relevant period. Before January 1, 2011, NYLL § 195(3) provided:

---

[16] Although the overtime rate listed on the "Tip Credit Notification-NY Server" form is incorrect, this is of no moment because Plaintiffs were at all times paid the correct overtime rate (Def. Stmt. at ¶ 26) and were informed of their correct overtime rate. For example, Plaintiffs received written notice of their correct overtime rate(s) on their paystubs (Def. Stmt. at ¶ 7). Further, starting on January 1, 2012 and through June 24, 2013, Defendants provided all tipped, hourly employees with a document entitled "TL Cannon Notice and Acknowledgment of Pay Rate and Payday," which also provided employees with written notice of their regular hourly pay rate and overtime pay rate. (Def. Stmt. at ¶ 14). Employees were required to sign and acknowledge receipt of this document. (*Id.*).

> Every employer shall … furnish each employee with a statement with every
> payment of wages, listing gross wages, deductions and net wages, and upon the
> request of an employee furnish an explanation of how such wages were
> computed.

N.Y. Lab. Law § 195(3) (effective until April 9, 2011).  Defendants provided Plaintiffs with a

pay stub listing "gross wages, deductions and net wages" (Def. Stmt. at ¶ 7) and therefore

complied with § 195(3).

Regulations promulgated under NYLL § 195(3) can be found in the HWO.  Prior to

January 1, 2011, the regulations required:

> Every employer covered by this Part shall furnish to each employee a statement
> with every payment of wages listing hours worked, rates paid, gross wages,
> allowances, if any, claimed as part of the minimum wage, deductions and net
> wages.

12 N.Y.C.R.R. § 137-2.2 (repealed).  The regulations do not define the term "allowances."  *Id.*

From January 1, 2011 to April 8, 2011, the language in NYLL § 195(3) stayed the same.

The concomitant regulation, however, was amended and moved to a different section of the N.Y.

Codes, Rules and Regulations.  The new regulation stated:

> Every employer shall provide to each employee a statement, commonly referred
> to as a pay stub, with every payment of wages.  The pay stub must list hours
> worked, rates paid, gross wages, credits claimed (for tips, meals and lodging) if
> any, deductions and net wages.

12 N.Y.C.R.R. § 146-2.3 (effective January 1, 2011).

On April 9, 2011, the legislature passed the Wage Theft Prevention Act, which amended

the paystub requirements set forth in NYLL § 195(3).  The amended Section 195(3) states:

> Every employer shall . . . furnish each employee with a statement with every
> payment of wages, listing the following: the dates of work covered by that
> payment of wages; name of employee; name of employer; address and phone
> number of employer; rate or rates of pay and basis thereof, whether paid by the
> hour, shift, day, week, salary, piece, commission, or other; gross wages;
> deductions; allowances, if any, claimed as part of the minimum wage; and net
> wages. For all employees who are not exempt from overtime compensation as

established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. . . .

N.Y. Lab. Law § 195(3) (effective Apr. 9, 2011).

The content of Defendants' pay stubs is undisputed. (Def. Stmt. at ¶7). Indeed, the parties have stipulated that Defendants provided Plaintiffs with most of the information required under NYLL and its concomitant regulations. (*Id.*) (Defendants' pay stubs contained dates of work covered by the payment of wages, name of employee, name of employer, address of employer, rate or rates of pay and basis thereof (hourly), gross wages, deductions, net wages, regular hourly rate or rates of pay, overtime rate or rates of pay, number of regular hours worked, and number of overtime hours worked). The parties dispute only whether Defendants provided Plaintiffs with "allowances, if any, claimed as part of the minimum wage" and/or "credits claimed (for tips, meals and lodging) if any." *See* N.Y. Lab. Law § 195(3) (effective April 9, 2011); 12 N.Y.C.R.R. § 137-2.2 (repealed); 12 N.Y.C.R.R 146-2.3 (effective Jan. 1, 2011).

### B.     Defendants Were Not Required To List "Allowances" On Their Pay Stubs.

Prior to April 9, 2011, NYLL § 195(3) had no requirement to list allowances. *See* N.Y. Lab. Law §195(3) (until April 9, 2011). It was the regulations promulgated under §195(3), alone, that incorporated this requirement. *See* 12 N.Y.C.R.R. § 137-2.2 (effective until December 31, 2010). On April 9, 2011, the Wage Theft Prevention Act amended NYLL § 195(3), and, for the first time, added a requirement to list "allowances." *See* N.Y. Lab. Law § 195(3) (effective April 9, 2011). Because Defendants did not provide Plaintiffs with a meal or lodging allowance, no allowance was required to be listed on the paystub. (Def. Stmt. at ¶ 17). *See* NYLL § 652(5) (referencing "meal and lodging allowances for a food service worker"), *compare* N.Y. Lab. Law § 652(4) (referencing tipped wage rate for food service worker without

reference to "allowances"). Thus, prior to January 1, 2011, Defendants pay stubs were fully compliant with NYLL § 195(3) and its corresponding regulations, because no allowance needed to be listed on the paystub.

**C.** **Even If The "Tip Credit" Is An "Allowance," Defendants Nevertheless Still Complied With The Applicable Legal Standards.**

Even crediting Plaintiffs' argument that the "tip credit" is an "allowance" claimed as part of the minimum wage, Defendants' pay stubs are still compliant, because neither the NYLL nor its concomitant regulations require that the amount of the "allowance" or "credit" be listed separately on the paystub.[17] Outside the restaurant industry, for example, where a tip credit is an allowance against the standard minimum wage, the regulation requires that "the allowance claimed by the employer is recorded on a weekly basis as a separate item in the wage record." *See* 12 N.Y.C.R.R. § 142-2.5(b)(iii). The HWO never contained the same requirement. *See* 12 N.Y.C.R.R. §§ 137-2.2, 146-2.3.

Here, the pay stub contains two clear categories of earnings: (1) REGULAR EARNINGS; and (2) REG-TIPPED. (Def. Stmt. at ¶ 7). In pay periods that the employee worked in any non-tipped positions, the "REGULAR EARNINGS" category reflects the hourly rate paid by Defendants and number of hours worked at each non-tipped position during the pay period. (*Id.*). In material contrast, the "REG-TIPPED" category reflects the hourly rate paid by the Defendants and number of hours worked at each tipped position during the pay period. (*Id.*). By virtue of simply identifying the tipped minimum wage as "REG-TIPPED," as well as by distinguishing between "REGULAR EARNINGS" and "REG-TIPPED," the pay stubs make it fundamentally obvious that an "allowance" or "credit" was claimed when an employee was paid the "REG-TIPPED" rate. Thus, both the NYLL and regulations are satisfied, because the pay

---

[17] Effective January 1, 2011, the Commissioner of Labor issued new regulations which added a requirement that pay stubs list "credits claimed (for tips, meals and lodging), if any." 12 N.Y.C.R.R. § 146-2.3.

stubs make clear that "allowances" or "credits" were "claimed as part of the minimum wage." *See* NYLL § 195(3); 12 N.Y.C.R.R. §§ 137-2.2, 146-2.3; *see also Lozano v. Rugfrit 1350 LLC,* 2015 N.Y. Misc. LEXIS 1451, at *13-14 (N.Y. Sup. Ct. April 27, 2015) ("Although plaintiff may have desired the information in a different format, the only issue is whether or not defendants satisfied their legal requirement for notice…").

In any event, Plaintiffs have stipulated that throughout the relevant time period, they had actual knowledge of the standard minimum wage, and that Defendants were taking tip credits from that standard minimum wage. (Def. Stmt. at ¶ 2). Therefore, without reference to any other outside source, Plaintiffs could also calculate any "allowance" or "credit" they allege was taken from the standard minimum wage by simply subtracting the "REG-TIPPED" wage set forth on their pay stub from the standard minimum wage, of which they were independently aware. *See Hernandez v. BCI Coca-Cola Bottling Co.,* 2012 U.S. Dist. LEXIS 55301, at *20-22 (C.D. Cal. Apr. 12, 2012) (defendant's wage statements were in substantial compliance and performing simple math to get the required information is not a compensable injury) (*aff'd Hernandez v. BCI Coca-Cola Bottling Co.,* 2014 U.S. App. LEXIS 2916 (9th Cir. Cal. Feb. 18, 2014)).

Furthermore, after July 17, 2015, Defendants' paystubs for TLC West, LLC were updated to include the following message:

> Hospitality ind: food serv wrkrs-tip cred up to $3.75hr (othr
> serv wrkrs up to 3.10) taken toward $8.75hr min wage.
> If cash wage + tips < 8.75hr, tip makeup added to = 8.75hr.

(Def. Stmt. at ¶ 8). This message was updated for changes to the amount of the tip credit and standard minimum wage in January 2016 and again in March 2016. (Def. Stmt. at ¶¶ 9-10). In

addition, as of March 15, 2016, the pay stubs for TLC Central, LLC were modified to include the following message:

> Hospitality industry: effective 12/31/15, tip credit up to
> $1.50/hr taken toward $9.00/hr min wage.  If cash
> wage + tips < $9.00hr, tip makeup added to = $9.00 hr.

(Def. Stmt. at ¶ 11).   Since the paystubs with these messages also explicitly meet the requirements of both NYLL §195(3) and its concomitant regulations, the Court should grant Defendants' motion for summary judgment on Plaintiffs' paystub claims.

## VII.   SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE DEFENDANTS ARE ELIGIBLE TO TAKE A TIP CREDIT UNDER THE FLSA.

Under federal law, an employer is eligible to take a tip credit from the minimum wage if (1) the employer has informed the tipped employee of statutory requirements related to the tip credit; and (2) all tips received by such employee have been retained by the employee, except those tips that are contributed by the employee to a permissible tip pool or tip share.  *See* 29 U.S.C. § 203(m).[18]   There is no allegation in the Amended Complaint that Plaintiffs could not retain all tips they received.   (Dkt. 82).   Accordingly, Plaintiffs' FLSA claims are premised entirely on their allegation that they were not informed of the statutory requirements related to the tip credit.

Section 203(m) is satisfied if an employer can show that it "informed employees that tips were being credited against their wages."  *See Perez v. G&P Auto Wash Inc.,* 930 F. Supp. 2d

---

[18]29 U.S.C. § 203(m) provides:  "In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to-- (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on the date of the enactment of this paragraph [enacted August 20, 1996]; and (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 6(a)(1) [29 USCS § 206(a)(1)].   The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

423, 435 (E.D.N.Y. 2013) (a prominently displayed poster may satisfy §203(m) notice requirement if poster notifies employees that employer intends to take tip credit regarding employee salary) (internal citations and quotations omitted); *Pellon v. Business Representation Int'l, Inc*., 528 F. Supp. 2d 1306, 1310-11 (S.D. Fla. 2007) (Section 203(m)'s requirement was met through prominent display of FLSA poster explaining tip credit). While employees must be "informed" of the employer's use of the tip credit, the employer need not "explain" the tip credit. *Id.* at 1310 (internal citations omitted). The FLSA's notice provision does not require that the notice be given in writing. *See* 29 U.S.C. § 203(m).

Here, Defendants informed Plaintiffs that tips were credited against their wages in many ways. During the orientation process, managers notified new employees of their wage rate, regular pay day and whether any portion of their wages is derived from tips. (Def. Stmt. at ¶¶ 3, 19). Managers also explained to employees that Defendants' had a tip makeup pay policy, and that tip makeup pay is provided to employees in weeks where they do not earn enough in tips to make up the difference between the tipped minimum wage and the standard minimum wage (i.e., that Defendants would pay employees the difference). (*Id.* at ¶¶ 3, 20-21). Furthermore, at all times relevant to this lawsuit, Defendants had the required federal and state minimum wage poster prominently displayed in each of their restaurants, in the back of the house. (*Id.* at ¶ 24). The poster notifies employees that: "Employers of tipped employees must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation," and that employers must provide tip makeup pay. (*Id.*). In addition, Defendants also had the NYS Hospitality Industry minimum wage information poster prominently displayed in each of their restaurants, in the back of the house. (*Id.* at ¶ 25). This poster makes clear that Defendants were taking a tip credit against the standard minimum wage. (*Id.*). And, beginning on June 1, 2011,

Defendants also provided written wage notices to their employees upon hire which set forth the tip credit and explained Defendants' tip makeup pay policy. (*Id*. at ¶ 13). At all times, Plaintiffs understood that they were being paid the tipped minimum wage for all hours worked in a tipped occupation; had actual knowledge that Defendants were taking a tip credit; and Plaintiffs never earned less than minimum wage. (Def. Stmt. at ¶¶ 2, 6, 21-22, 26).

Based on the foregoing, Defendants have satisfied their obligations under 29 U.S.C. § 203(m), and as such, Defendants' motion for summary judgment on Plaintiffs' FLSA notice claim should also be granted.

**VIII. SUMMARY JUDGMENT SHOULD BE GRANTED FOR THE ADDITIONAL REASONS STATED IN DEFENDANTS' MARCH 14, 2014 CROSS MOTION FOR SUMMARY JUDGMENT (DKT. NOS. 178 AND 197).**

For brevity, Defendants do not repeat herein, but incorporate by reference, all arguments made in their first motion for summary judgment. *See* Dkt. 178, 197. In the alternative to the arguments asserted herein, Defendants remain steadfast in their belief that they are entitled to summary judgment because the NYLL provides a separate, statutory lower minimum wage for food service workers (with no allowance or credit), from which additional "allowances" for food and lodging may be taken. Because Defendants did not take an "allowance" for food or lodging, nor a "credit" from this lower minimum wage, they were (therefore) not required to notify employees of such "allowances" or "credits." *See* Dkt. 178, at pp. 10-12.

Defendants are also entitled to summary judgment for the additional reason that loss of the tip credit is contrary to the remedies provided by NYLL § 198 and NYLL § 652(4), which do not, nor have they ever, provided for loss of the tip credit as an available remedy for (alleged) technical wage notice and pay stub violations. *Id.* at 16. In the context of Plaintiffs' wage notice claims, where the regulations conflict with the statute, the statute governs. *Id.* (citing cases).

Moreover, Plaintiffs are not entitled to any damages because Plaintiffs were at all times paid in accordance with NYLL § 652(4), and Defendants are entitled to a credit of all wages paid to Plaintiffs and all tips earned by Plaintiffs. *Id.* at 21-22, *citing* Industrial Board of Appeals Decision for Tip Top Car Wash (Dkt. 176-2 at Ex. F).

Finally, even if loss of the tip credit was available as a theoretical remedy for technical and non-consequential pay stub and notice deficiencies, the doctrine of *de minimis non curat lex* ("the law does not concern itself with trifles") provides that such a remedy is not warranted. *Id.* at 19-21. Here, Plaintiffs were paid all wages due under NYLL § 652(4). (Def. Stmt. at ¶ 26). "Application of *de minimis* is particularly important in cases such as the one at hand, where stark, all-or-nothing operation of the statutory language would have results contrary to its underlying purposes." *Wis. Dep't of Revenue v. William Wrigley, Jr., Co.,* 505 U.S. 214, 231 (1992). Plaintiffs have suffered no injury, and as such, the doctrine of *de minimis non curat lex* should be applied. *E.g., Palmieri v. Lynch*, 392 F.3d 73, 75 (2d Cir. 2004) (holding that where the plaintiff suffered no damage, application of the maxim *de minimis non curat lex* is justified absent any constitutional issues raised).

## CONCLUSION

Plaintiffs and their attorneys are seeking a $99 million dollar windfall, absent any injury to a single Plaintiff. This simply cannot be the outcome here, where:

- Defendants have paid Plaintiffs all wages due under NYLL § 652 and federal law;
- the NYDOL and the New York State Legislature have confirmed that the NYLL was not intended to provide such a penalty;
- Plaintiffs suffered no concrete harm, and therefore lack standing to bring their claims under recent Supreme Court precedent;
- Defendants complied with the NYLL and its concomitant wage notice and pay stub regulations; and
- Defendants provided Plaintiffs with notice of the tip credit pursuant to the FLSA.

Therefore, Defendants respectfully request this Court grant Defendants' motion for

summary judgment and dismiss Plaintiffs' NYLL wage notice and pay stub claims, and Plaintiffs' FLSA notice claims, in their entirety.

Date: September 22, 2016  
      New York, New York

*/s/ Jessica F. Pizzutelli*  
Craig R. Benson, Esq.  
Jessica F. Pizzutelli, Esq.  
LITTLER MENDELSON, P.C.  
900 Third Avenue  
New York, NY 10022  
(212) 583-9600  
cbenson@littler.com  
jpizzutelli@littler.com  
*Attorneys for Defendants*

142620128

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of September, 2016, a true and accurate copy of Defendants' Notice of Motion for Summary Judgment, Declaration of Jessica F. Pizzutelli in Support of Defendants' Motion for Summary Judgment and supporting Exhibits, Defendants' Local Rule 56 Statement of Material Facts Not in Genuine Dispute, and Defendants' Memorandum of Law in Support of Motion for Summary Judgment was sent via e-mail to the following:

> J. Nelson Thomas, Esq.
> nthomas@theemploymentattorneys.com
>
> Jessica Lukasiewicz, Esq.
> jlukasiewicz@theemploymentattorneys.com
>
> *Attorneys for Plaintiffs*

/s/ Jessica F. Pizzutelli
Jessica F. Pizzutelli