**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ASHLEY HICKS** et al., | |
| *Plaintiffs,* | |
| v. | |
| **T.L. CANNON CORP.**  et al., | |
| *Defendants.* | |

Civil Action

No. 13-cv-6455 (EAW)

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THOMAS & SOLOMON LLP**
 *Attorneys for Plaintiffs*
693 East Avenue
Rochester, New York 14607
(585) 272-0540

Of Counsel:   J. Nelson Thomas
Michael J. Lingle
Jessica L. Lukasiewicz
Jonathan W. Ferris

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES..................................................................................ii

PRELIMINARY STATEMENT ...........................................................................1

FACTS ...................................................................................................................1

    *Class members were <u>not</u> aware of how they were being paid* .....................2

    *Class members were <u>not</u> paid all their wages due* ......................................4

    *Defendants' arguments are largely a rehash of their previously rejected arguments* ......4

ARGUMENT ........................................................................................................6

    I.    Defendants are not entitled to summary judgment on Subclass A ..........6

        A.    This Court's previous rulings have already rejected defendants' motion for summary judgment on two occasions and defendants cannot reargue those points again here................................................7

        B.    Defendants did not list the tip credit as required by law ..................9

            1.    *Tip credit needed to be listed under the pre-2011 regulation* .............................10

            2.    *Tip credit needed to be listed under the post-2011 regulation* .............................12

            3.    *The defendants' pay stubs did the opposite of what the law required* ...................13

            4.    *The Ben-Amotz Letter does not provide a defense* ...............................................16

        C.    The Labor Law § 198 affirmative defenses does not apply to the claims of Subclass A ......................................................................16

            1.    *The affirmative defense does not apply because Subclass A's claims are being brought pursuant to § 652 Minimum Wage Law not § 198 of the Payment of Wages Law* ...............................17

            2.    *Class members were not paid all their wages due* .............................................18

    II.    Defendants are not entitled to summary judgment on Subclass B ........20

        A.    The Ben-Amotz Letter provides no defense to the defendants. .......20

            1.    *The letter is not basis to alter this Court's earlier ruling* .................................21

2.  *The Ben-Amotz Letter is not entitled to deference* ............................................ 22

    a. The Legislature did not delegate interpretative authority to Pico Ben-Amotz .................................................................................... 22

    b. Because the issue involves pure statutory interpretation, the DOL's opinion is not entitled to deference ............................................... 22

    c. The Ben-Amotz Letter is not entitled to deference because it contravenes prior DOL interpretations ........................................ 23

    d. The Ben-Amotz Letter is contrary to the plain language of the statute ...................................................................................... 25

**B.**  **Section 198 is not a viable affirmative defense** ..............................**26**

1.  *The affirmative defense does not apply because Subclass B's claims are being brought pursuant to § 652 Minimum Wage Law and not § 198 of the Payment of Wages Law* ........................................................................... 27

2.  *Class members were not paid all their wages due* ........................................... 27

**C.  All Subclass B members were entitled to a wage notice** .......................**27**

**D.**  **Prior to June 24, 2013, defendants' notices were improper** .............**28**

**III.**  **Defendants are not entitled to summary judgment on the FLSA claims** **29**

**IV.**  **Defendants' catch-all argument is improper**...........................................**29**

**CONCLUSION** ...................................................................................................**30**

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Ashmore v. CGI Grp., Inc.*,
  No. 11 Civ. 8611(AT), 2014 WL 1414314 (S.D.N.Y. Apr. 7, 2014) ............................... 21

*In re Charles A. Field Delivery Serv.*,
  66 N.Y.2d 516 (1985) ................................................................................................. 23, 25

*Copantitla v. Fiskardo Estiatorio, Inc.*,
  788 F. Supp. 2d 253 (S.D.N.Y. 2011) ......................................................................... 11, 14

*Franco v. Jubilee First Ave. Corp.*,
  No. 14-CV-07729 (SN), 2016 WL 4487788 (S.D.N.Y. Aug. 25, 2016) .......................... 14

*Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, No. 1:08-CV-019 (LEK/RFT),
  2009 WL 1748743 n.11 (N.D.N.Y. June 19, 2009) ........................................................ 8

*Heinlein v. N.Y. State Office of Children & Family Servs.*,
  60 A.D.3d 1472, 876 N.Y.S.2d 293 (4th Dep't 2009) ..................................................... 25

*Hinckley v. Seagate Hosp. Grp., LLC*,
  No. 16-CV-6118 CJS, 2016 WL 6524314 (W.D.N.Y. Nov. 3, 2016) .......................... 9, 14

*Hosking v. New World Mort., Inc.*,
  No. 07-CV-2200 (MKB), 2013 WL 5132983 (E.D.N.Y. Sept. 12, 2013) ......................... 8

*Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*,
  No. 08 CIV. 3725 DC, 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010) ...................... 11, 14

*KSLM-Columbus Apartments, Inc. v. N.Y. State Div. of Human Housing & Comty. Renewal*,
  5 N.Y. 303 (2005) ........................................................................................................ 22

*Kurcsics v. Merchants Mut. Ins. Co.*,
  49 N.Y.2d 451 (1980) ............................................................................................... 22, 23

*Lanzetta v. Florio's Enterprises, Inc.*, 763 F. Supp. 2d 615 (S.D.N.Y. 2011) *on reconsideration*,
  No. 08 CIV. 6181 DC, 2011 WL 3209521 (S.D.N.Y. July 27, 2011) ....................... 11, 14

*Melito v. Am. Eagle Outfitters, Inc.*,
No. 14-CV-2440 (VEC), 2016 WL 6584482 (S.D.N.Y. Nov. 7, 2016) ............................. 8

*Mendez v. Pizza on Stone, LLC*,
No. 11 CIV. 6316 DLC, 2012 WL 3133547 n.3 (S.D.N.Y. Aug. 1, 2012) ................ 10, 14

*Monterossa v. Martinez Rest. Corp.*,
No. 11 CIV. 3689 JMF, 2012 WL 3890212 (S.D.N.Y. Sept. 7, 2012) ...................... 10, 14

*Myers v. Hertz Corp.*,
No. 02 Civ. 4325(BMC)(MLO), 2007 WL 2126264 (E.D.N.Y. July 24, 2007) ........... 8, 21

*Padilla v. Manlapaz*,
643 F. Supp. 2d 302 (E.D.N.Y. 2009) ........................................................................ 11, 14

*Richardson v. Comm'r of N.Y.C. Dep't of Social Servs.*,
88 N.Y.2d 35 (1996) .................................................................................................... 23, 25

*Sai Qin Chen v. E. Mkt. Rest., Inc.*,
No. 13 CIV. 3902 HBP, 2015 WL 5730014 (S.D.N.Y. Sept. 30, 2015) ......................... 14

*Settlement Home Care, Inc. v. Indus. Bd. of Appeals of Dep't of Labor*,
151 A.D.2d 580 (2d Dep't 1989) ................................................................................... 12

*Topliff v. Wal–Mart Stores East LP*,
No. 04–CV–0297, 2007 WL 911891 n. 65 (N.D.N.Y. Mar. 22, 2007) ........................... 29

*Visiting Nurse Serv. of N.Y. Home Care v. N.Y. State Dep't of Health*,
5 N.Y.3d 499, 840 N.E.2d 577 (2005) .......................................................................... 25

## **Statutes**

N.Y. Labor Law § 21(11) .......................................................................................... 10, 22

N.Y. Labor Law § 195 ..............................................................................................*passim*

N.Y. Labor Law § 198 ..............................................................................................*passim*

N.Y. Labor Law § 652 ..............................................................................................*passim*

N.Y. Labor Law § 653(2) ............................................................................................ 22, 24

N.Y. Labor Law § 663 ...................................................................................................... 17

**Regulations**

12 N.Y.C.R.R. §§ 137-1.2 ................................................................................................ 13

12 N.Y.C.R.R. § 137-1.5 .................................................................................................. 11

12 N.Y.C.R.R. 137-2.2 ........................................................................................... 10, 11, 12

12 N.Y.C.R.R. §§ 146-1.2 ................................................................................................ 13

12 N.Y.C.R.R. §§ 146-1.3 ................................................................................................ 25

12 N.Y.C.R.R. § 146-2.2 .................................................................................... 12, 13, 25, 28

## PRELIMINARY STATEMENT

Defendants' motion for summary judgment is largely a rehash of the arguments they have made to this Court on one and sometimes two occasions. Those arguments fare no better on the third attempt than they did on the two times before. Much like before, the defendants' papers also rely on a number of inaccurate and dubious representations about the record. Therefore, the Court should again deny defendants' request for summary judgment.

Significantly, defendants' papers focus much of their efforts to having the Court reverse its earlier grant of summary judgment to the class on Subclass B, the Wage Notice Claim. In contrast, the defendants offer relatively few arguments in regards to the claims of Subclass A. Recovery for Subclass A, though, would satisfy the claims of Subclass B because Subclass A covers all the damages for Subclass B, and also includes more employees over a longer time period. Therefore, as set forth in the class's moving papers, because Subclass A is entitled to summary judgment, this Court need not even consider the arguments in these papers as it relates to Subclass B.

## FACTS

The facts in this case have been discussed in multiple decisions from this Court, and in multiple rounds of briefing from the parties, and therefore there is no need to detail the facts yet again in this briefing.

However, there are several misstatements of facts raised in the defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment that warrant correction.

***Class members were <u>not</u> aware of how they were being paid.***

Defendants repeatedly claim in their papers that class members knew that: they were being paid the minimum wage; they had actual knowledge a tip credit was being taken; the defendants informed the class members in meetings how they were being paid; the class members were not confused by the pay stubs; and defendants had posters prominently displayed in their stores that were compliant with the law. *See* Defs.' Br. at 6-7.[1]

Defendants claim the basis for these "facts" is the Stipulated Order in this case. However, as the stipulation makes clear, "the class does not concede [these statements] to be true" and that "they do not believe discovery will ultimately reveal these asserted facts to be true . . . ." *See* Docket Number ("Doc. No.") 249 at 1. For defendants to repeatedly claim that the class "stipulated" that these facts were true, is wrong. To the contrary, as set forth in the stipulation itself, the class members do **not** believe these facts to be true. *See id.* ("plaintiffs . . . do not believe that the stipulated facts are necessarily accurate.").

Even ignoring the stipulation, as discussed below, defendants' own pay stubs and wage notices informed the class members that Applebees was paying them **below** the minimum wage, and that Applebees was **not** providing a tip credit. Therefore, the record (and actually defendants' own documents in the record) refutes claims such as "Plaintiffs understood they were being paid the minimum wage for all hours that they worked," or "Plaintiffs had actual knowledge that Defendants were taking a tip credit from the minimum wage," or that "Plaintiffs were not confused by defendants' wage notices or paystubs . . . ." Defs.' Br., Doc. No. 281-6 at 6. Given the contrary representations in the defendants' own pay records, such claims are false—a point underscored by the Stipulated Order. Therefore, whenever the

---

[1]     Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, Doc. No. 281-6, is cited throughout as "Defs.' Br."

defendants' papers make these outlandish claims about these stipulated facts, the point can be ignored as contrary to both the record and stipulation in this case.

More to the point, and as discussed in the legal analysis below, even if true, these issues are not relevant for this motion, as noted explicitly in the Stipulated Order. *See* Doc. No. 249. The reason these facts are not relevant is because the issue in this motion is whether the defendants provided the requisite **notice** that would enable them to take the tip credit, not whether some plaintiffs had subjectively divined the intricacies of the New York Labor Law and magically figured out that they were being paid in ways that were never reflected on their pay documents from defendants. The class members' subjective knowledge is not a factor under the governing statutes and regulations. Instead, the issue was one entirely under defendants' own control: did they objectively provide the required notice to use the tip credit. For this reason the class stipulated that, although it did not believe defendants' "facts" to be true, the more important argument is that these facts are not relevant to this motion (and, correspondingly, discovery need not be conducted on them prior to a ruling).

Defendants also claim that the stipulation is somehow "new" and therefore warrants a different outcome than their last unsuccessful motions for summary judgment. Defs' Br. at 9. This claim is perplexing. While the parties entered into two stipulations following this Court's August 5th Order, *see* Doc. Nos. 244, 249, the parties' April 15, 2015 stipulation (Doc. No. 249) is virtually identical to the parties' March 12, 2014 stipulation which was entered into by this Court *prior* to issuing its August 4th Order. *See* Doc. Nos. 182, 205. These very facts were used by defendants in their statement of material facts submitted in support of their earlier cross motion for summary judgment. *See, e.g.*, Doc. No. 176-3 at 24,

35-41. Thus, again, defendants have already relied upon these factors in earlier briefing so cannot now claim they are new.

***Class members were <u>not</u> paid all their wages due.***

Defendants also repeatedly claim that there is no dispute that the class members were paid all their wages due. *See* Doc. No. 281-5 ¶¶ 5-6, 21-23, 26; Doc. No. 281-6 at 3, 18-19, 22. If that were so, there would be no lawsuit. The class members are suing precisely because they were not paid all their wages due.

It is bold for the defendants to continue to make this argument that the Court has already rejected on multiple occasions, describing it as "a circular argument without any support in the law. By definition, if Defendants took a tip credit to which they were not entitled, they underpaid wages." Decision and Order, Doc. No. 205 at 24.  Nor does the defendants' record citation even support their argument. The defendants, as they did in their earlier motions, cite the parties' stipulation that only through tips paid **by customers** to class members did the class members' income rise above the minimum wage. *See* Defs.' Br. at 18, Doc. No. 249 at ¶ 6. The fact that with **customers'** gratuitous tips the employees' income rose above the minimum wage does not mean the **defendants** paid the class members all the wages they were required to pay, or that defendants provided the correct pay statements to pay the class members at the lower sub-minimum wage rate—which is the conduct at issue in these motions.

***Defendants' arguments are largely a rehash of their previously rejected arguments***

As discussed below, defendants' arguments in these papers are simply rehashes of arguments they made and lost to this Court on one, and sometimes two, occasions, as shown in the chart below. *See* Docket No. 176.

| Argument | Defendants' October 3, 2016 motion for summary judgment | Defendants' March 13, 2014 cross motion for summary judgment |
|---|---|---|
| Loss of a tip credit is not an available remedy for a technical violation | *See, e.g.*, Doc. No. 281-6 at 10-17. | *See, e.g.*, Doc. No. 176-13 at 14-19 |
| NYLL 198 provides an affirmative defense to defendants' liability after April 9, 2011 | *See, e.g.*, Doc. No. 281-6 at 17-22. | *See, e.g.*, Doc. No.176-13 at 15, 24-25. |
| Plaintiffs lack standing since all wages were paid | *See, e.g.*, Doc. No. 281-6 at 22-23. | *See, e.g.*, Doc. No. 176-13 at 13-14, 19-21. |
| Pay stubs are generally compliant with the NYLL | *See, e.g*, Doc. No. 281-6 at 26-31. | *See, e.g.*, Doc. No. 176-13 at 12-13. |

On August 5, 2014, this Court denied each of the arguments raised in defendants'
March 13, 2014 cross motion for summary judgment. *See* Do. No. 205. Shortly thereafter,
defendants filed a motion for reconsideration, relying on these same arguments. *See* Doc. No.
214. The Court again rejected each of defendants' arguments. *See* Decision and Order, Doc.
No. 224 at 8-9 ("Defendants' . . . arguments in support of their Motion for Reconsideration
simply rehash their arguments already rejected by this Court."). Therefore, as discussed
below, the defendants arguments simply re-plow old ground and can be easily rejected.

## ARGUMENT

### I.      Defendants are not entitled to summary judgment on Subclass A.

The parties agree that the facts regarding the Subclass A's claim (the "Pay Statement
Claim") are not disputed and can be decided on summary judgment. Def.'s Memo of Law,
Doc. No. 281-6, at 3, 28 ("There is no dispute concerning the content of Defendants' pay
stubs." "The content of Defendants' pay stubs is undisputed."). Under these undisputed
facts—as set forth in Subclass A's moving papers—Subclass A is entitled to summary
judgment. Pls.' Memo of Law, Doc. No. 286 at 10-14. And, correspondingly, there is nothing
in defendants' cross-motion that would warrant judgment in their favor. Virtually all of
defendants' arguments are the same arguments they made (and lost) to this Court previously,
both in their initial motion for summary judgment, and again in their motion for
reconsideration. *See* Doc. No. 176-13; 214-1.

Defendants argue again here: 1) that defendants listed "most" of what they were
required to list under the law so that they are entitled to judgment in their favor, Defs.' Br.,
Doc. No. 281-6 at 26-31; 2) that § 198 provides an affirmative defense to defendants'
liability after April 9, 2011, *id.* at 17-22; and 3) that Subclass A was paid all their wages due

(which they claim also deprives the subclass of any standing to sue) *id.* at 17-18, 22-23. (In passing, defendants suggest, but never really argue, that a letter to Joseph Morelle may also provide a defense to the Subclass A's claim.) All three arguments were previously rejected by this Court twice; they have not become any more persuasive with the passage of time, or in their third presentation to the Court.

> **A.   This Court's previous rulings have already rejected defendants' motion for summary judgment on two occasions and defendants cannot reargue those points again here.**

Significantly, this is not the first, or second time, but the third time that this Court has considered defendants' motion for summary judgment on the claims of Subclass A. The Court has repeatedly rejected the defendants' argument that they were entitled to judgment in their favor based on the pay statements they provided. Decision and Order, Doc. No. 205 at 23-24. As this Court held, "the pay statements at issue did not provide the requisite notice to the employees that Defendants were taking a tip for credits against the minimum wage." *Id.* at 23. The Court held that neither the information provided, or "simple math," somehow provided the notice as required by law. *Id.* Because the pay statements did not show employees their actual minimum wage less the tip credit allowance, "Defendants have not shown that their actions complied with the NYLL and its associated regulations by providing Plaintiffs with all the information to which they were entitled." *Id.* at 25. The Court also rejected defendants' argument that the employees were paid all their wages due and thus were entitled to no additional recovery. *Id.* at 24-25.

The Court identified the main outstanding issue to be resolved, namely, whether the 30(b)(6) testimony of the defendant was confirming that no tip allowances were listed on the

pay stub (an issue that has now been resolved in favor of the class members). *Id.* at 22-23; Doc. No. 224 at 10; Doc. No. 286 at 11-12.

Following the Court's decision, the defendants then filed a motion for reconsideration, Doc. No. 214, raising their same arguments, and also arguing that § 198 of the Labor Law provided defendants with an affirmative defense to the Pay Statement Claim. This Court rejected both defendants' rehash of their previous arguments and defendants' § 198 argument. Decision and Order, Doc. No. 224 at 8.

Defendants again make these same arguments in these papers.

The law is clear that a party cannot re-litigate issues it has already lost in litigation. The law of the case doctrine holds that once a court has decided an issue in litigation, it binds the parties in the litigation. *See, e.g., Hosking v. New World Mort., Inc.*, No. 07-CV-2200 (MKB), 2013 WL 5132983, at *4 (E.D.N.Y. Sept. 12, 2013) ("The law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same case . . . .") (internal quotations and citations omitted); *Myers v. Hertz Corp.*, No. 02 Civ. 4325(BMC)(MLO), 2007 WL 2126264, at *2 (E.D.N.Y. July 24, 2007) (law of the case doctrine binds the parties to the court's prior rulings); *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, No. 1:08-CV-019 (LEK/RFT), 2009 WL 1748743, at *8 n.11 (N.D.N.Y. June 19, 2009) (any decision made at one stage of a case becomes binding precedent throughout later stages of the case). This is particularly true here where the defendants have already made, and lost, a motion for reconsideration, and none of their regurgitated arguments meet either the standard or time limits for a motion for reconsideration. *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2016 WL 6584482, at *3 (S.D.N.Y. Nov. 7, 2016) (law of the case

doctrine precluded defendant from "relitigating issues that the Court already decided" in a prior Order, and stating that "a motion for reconsideration would now be untimely.").

Here, the arguments that defendants presently make are the exact same that they have previously raised in their summary judgment motion and motion for reconsideration. *Compare* Doc. No. 176-13 at 12-21, 24-25; Doc. No. 214-1 at 5-16; *with* Doc. No. 281-6 at 10-23, 26-31. In addition to the fact that the Court has already rejected those arguments, defendants fare no better now.  While the Court previously found that the factual record was not sufficiently developed at the time of defendants' previous motion for summary judgment, further discovery in the form of a 30(b) deposition from Susan Sabio, defendants' Director of Human Resources, shows that there is no dispute that the pay stubs do not contain the proper tip credit being taken as required under the regulations. Doc. No. 286 at 11-12.

Therefore, in addition to their substantive problems discussed previously and below, defendants' arguments are not available at this juncture in the case.

**B.     Defendants did not list the tip credit as required by law.**

The Court's previous decisions rejecting the defendants' motion for summary judgment on the Pay Statement Claim were correct. Defendants also admit in their current papers that they only met "most" of the law's requirements. Defs,' Br., Doc. No. 281-6 at 28. Defendants are correct that they did not meet all the law's requirements, but by using the word "most" they understate the level of their violations. Defendants' pay stubs actually violated the most basic requirements of the pre- and post-2011 regulation. Thus, there is no factual dispute about what defendants listed in their pay stub, and there should be no legal dispute that what they listed was not sufficient under the law to pay Subclass A at the tip credit rate.

Whether before or after the 2011 regulatory amendment, the underlying requirement of the pay statement regulation was the same. *See Hinckley v. Seagate Hosp. Grp., LLC*, No. 16-CV-6118 CJS, 2016 WL 6524314, at *6 (W.D.N.Y. Nov. 3, 2016) (rejecting defendants' attempts to distinguish the pre- and post-amendment regulation because such arguments "put[] form over substance since the difference between the two iterations of the regulation [was] a change in citation only.") (internal quotation marks omitted). It required an employer's pay stub to accurately reflect the way the law required the tip credit be calculated and paid. That meant that the pay stub was to show the employee being paid at the full minimum wage, and that the employer was making up part of the minimum wage with a "credit," or "allowance," from tips paid by customers. Conversely, it was **not** to show the employee simply being paid at a lower tip credit rate, because legally that was not permissible, and it was also **not** to omit the amount of the tip credit being provided to the employee. This requirement—that the pay stub reflect the legally required way an employer can pay the tip credit employee—is both understandable and undemanding and, as discussed below, is the fundamental point of the pay statement regulation whether before or after 2011.

       1.    *Tip credit needed to be listed under the pre-2011 regulation.*

Defendants argue now, as before, that the pre-2011 regulation at 12 N.Y.C.R.R. 137-2.2[2] did not require them to list the tip credit on the employee's pay stub, and that the

---

[2]      Defendants claim that the 12 N.Y.C.R.R. 137-2.2 regulation was promulgated pursuant to § 195(3). That is false. The regulation states clearly on its front page that it was promulgated pursuant to Article 19 of the Minimum Wage Law (and not § 195(3) of Article 6 the Payment of Wages Law). Defendants know this full well as they attached these regulations to their own papers. Benson Decl., Doc. No. 176-2, Ex. A, Minimum Wage Order for the Restaurant Industry, Ex. A. "Promulgated by the Commissioner of Labor Pursuant to the Minimum Wage

information they did list complied with the regulation. *Compare* Defs.,' Memo of Law, Doc. No. 281-6 at 28-31; *with* Defs.' Memo of Law, Doc. No. 176-13 at 12-13. As discussed above, this Court rejected that argument, in a ruling echoed in all the holdings of all other courts that had considered the issue. *See* Decision and Order, Doc. No. 205 at 23; *Monterossa v. Martinez Rest. Corp.*, No. 11 CIV. 3689 JMF, 2012 WL 3890212, at *4 (S.D.N.Y. Sept. 7, 2012); *Mendez v. Pizza on Stone, LLC*, No. 11 CIV. 6316 DLC, 2012 WL 3133547, at *4 n.3 (S.D.N.Y. Aug. 1, 2012); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 290 (S.D.N.Y. 2011); *Lanzetta v. Florio's Enters., Inc.*, 763 F. Supp. 2d 615, 623-24 (S.D.N.Y. 2011), *on reconsideration*, No. 08 CIV. 6181 DC, 2011 WL 3209521 (S.D.N.Y. July 27, 2011); *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 CIV. 3725 DC, 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010); *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 309-10 (E.D.N.Y. 2009).

This Court is correct. Section 137-2.2 required that before an employer could use the tip credit, it had to list all "allowances" it was taking against the minimum wage. And the regulation made clear that the tip credit **is** an allowance—in fact, "allowance" is actually in the title of the regulation describing the tip credit: "**Tip allowance** for food service worker." *See* 12 NYCRR § 137-1.5 (pre-2011 version)) (emphasis added). Following the heading, the regulation states that, "Every employer...shall furnish to each employee a statement with every payment of wages listing . . . **allowances**, if any, claimed as part of the minimum wage . . . . " *See* Doc. No. 145 at 18-19 (12 NYCRR § 137-2.2 (pre-2011 version)) (emphasis added). Therefore, the pre-2011 regulations expressly required that the tip credit be listed as

---

Act (Article 19 of the New York Labor Law) Statutory authority: Labor Law, Article 2, § 21(11) and Article 19, § 652." *See also id. at* Ex B.

an "allowance" on the pay stub. To the degree that the defendants contend that the tip credit was not an "allowance," the regulatory language itself flatly contradicts that contention.

The DOL's interpretation is the same. The DOL expressly refers to the tip credit allowance under the pre-2011 regulations as a "tip **allowance**." For example, when, prior to issuing the 2011 regulations, the DOL began examining the tip credit issue, the Commissioner directed the Minimum Wage Board to explore whether the "tip **allowance**" should be expressly made to conform to the analogous federal provisions. *See* Doc. No. 191-2 at 3. In accepting the Board's recommendation, the Commissioner again referred to the tip credit as a "tip allowance:" "I accept the recommendation to require employers to notify tipped employees of any tip allowances that will be taken and to **disallow the tip allowance** if such notice is not given." *See* Doc. No. 191-3 at 2 (Order of Commissioner of Labor M. Patricia Smith on the Report and Recommendation of the 2009 Wage Board) (emphasis added).

Further, to the degree there is any dispute about how the term "allowance" is to be construed, as this Court previously held, "This Court is cognizant that the requirements of the New York Minimum Wage Act are to be construed in favor of employees." Decision and Order, Doc. No. 205, c*iting Settlement Home Care, Inc. v. Indus. Bd. of Appeals of Dep't of Labor*, 151 A.D.2d 580, 581 (2d Dep't 1989).

Therefore, under 12 N.Y.C.R.R. § 137-2.2 an employer was required to list the tip allowance on any pay statement if it wanted to take at the lower tip credit rate.

2.      *Tip credit needed to be listed under the post-2011 regulation.*

Although defendants quibble about whether they needed to list the tip credit as an allowance prior to 2011, that argument is not applicable after 2011. The post-2011

regulations at 12 N.Y.C.R.R. § 146-2.2 make it crystal clear that an employer wanting to use the tip credit had to show the server that they were being paid the minimum wage and show the amount of the tip credit that was being taken.

Although it does not make a material difference, defendants repeatedly claim in their papers that the applicable regulations (prior to 2011 12 N.Y.C.R.R. § 137-2.2 and post-2011 12 N.Y.C.R.R. § 146-2.2) were promulgated pursuant to Labor Law § 195, and also imply that Labor Law § 195 is the entire universe of pay stub requirements for employers. Both propositions are untrue. First, as discussed at footnote 2 above, the relevant regulations are promulgated pursuant to § 652 Minimum Wage Law, not § 195 of the Payment of Wages Act. Second, although defendants are correct that Labor Law § 195 also contains pay statement requirements for employers, and that defendants' conduct violated § 195 as well, as explained at Section II(C) below, § 195 is not the basis for the summary judgment motion here. Instead, the motion is based on the separate regulations of § 652 of the Minimum Wage Law at 12 N.Y.C.R.R. § 137-2.2, and its post-2011 revision at 12 N.Y.C.R.R. § 146-2.2.

> 3. *The defendants' pay stubs did the opposite of what the law required.*

Turning to the facts of this case, there is no dispute about what was listed, and what was not listed, on the defendants' pay stubs up until well into 2015. First, the pay stubs reflected (incorrectly) that the class members' wage rate was $5.00.[3] Decision and Order,

---

[3]     During the relevant liability period, the predominant basic minimum hourly wage in New York State was $7.25. *See* 12 N.Y.C.R.R. §§ 146-1.2; 137-1.2; *see also* Doc. No. 176-2 at Exs. A, B. During that same period, New York's predominant hourly tip credit rate or tip allowance for food service workers was $5.00. *See* 12 N.Y.C.R.R. §§ 146-1.3; 138-2.1; *see also* Doc. No. 176-2 at Ex. B. Defendants' pay stubs reflect (incorrectly) that employees' wage rates were $5 an hour, when in fact the regulations required that they show employees they were being paid the minimum wage of $7.25 an hour (with $2.25 being made up by the tip credit).

Doc. No. 205 at 23; Pls.' Statement of Material Facts Not in Dispute, Doc. No. 287 at ¶ 3; Doc. No. 288-1, Ex. A; Doc. No. 288-2, Ex. A at 190-91. Even the defendants admit that the pay stubs reflected the wrong rate of pay. Pls' Statement, Doc. No. 287 at ¶ 4; Doc. No. 288-2 at 190-91, 193.  Second, the pay stubs did not show the tip credit being taken as required by the regulation. *See* Doc. No. 286 at 11-12; Doc. No. 287 at ¶ 2; Doc. No. 288-1, Ex. A; Doc. No. 288-2, Ex. B-2. Therefore, the pay stubs did not notify employees of the legally required way for an employer to use the tip credit; instead it showed the employees not being paid the minimum wage, and showed no tip credit whatsoever. The defendants' claim that they provided "most" of the required information is a charitable way of admitting they provided they exact opposite of what the law requires. Defs.' Br., Doc. No. 281-6 at 28. Given the lack of any facts supporting defendants' motion, defendants are not entitled to judgment as a matter of law.

Defendants then repeat several half-hearted arguments against liability. First, they claim that the "REG-TIPPED" category (improperly showing that the employee was paid below minimum wage) somehow provided the requisite notice to class members that they were paid the minimum wage. Defs.' Br., Doc. No. 281-6 at 29-30. The Court has already rejected this argument. Decision and Order, Doc. No. 205 at 23. The Court was correct because the "REG-TIPPED" line does nothing to comply with the regulation—and actually violates it—because it shows the employee **not** being paid the minimum wage, and does not show any tip credit. *See Hinckley*, 2016 WL 6524314, at *6-7; *Franco v. Jubilee First Ave. Corp.*, No. 14-CV-07729 (SN), 2016 WL 4487788, at *12 (S.D.N.Y. Aug. 25, 2016); *Sai Qin Chen v. E. Mkt. Rest., Inc.*, No. 13 CIV. 3902 HBP, 2015 WL 5730014, at *5-6 (S.D.N.Y. Sept. 30, 2015); *Monterossa*, 2012 WL 3890212, at *4; *Mendez*, 2012 WL 3133547, at *4   n.3;

- 14 -

*Copantitla*, 788 F. Supp. 2d at 290; *Lanzetta*, 763 F.Supp.2d at 623-24; *Cao*, 2010 WL 4159391, at *2; *Padilla*, 643 F.Supp.2d at 309-10 (S.D.N.Y. 2009).

Second, the defendants claim repeatedly in their papers that the class members had actual knowledge of the standard minimum wage and that defendants were taking tip credits from that wage. *See, e.g.*, Doc. No. 281-6 at 11, 16, 30. There are at least two problems with this argument. First, it misrepresents the record. As discussed above, defendants cite to the parties' stipulation. However, as the stipulation makes clear, "the class does not concede [these statements] to be true" and that "they do not believe discovery will ultimately reveal these asserted facts to be true." For defendant to repeatedly claim the plaintiffs "stipulated" these facts were true, is wrong.

Second, and more fundamentally, what the class members did stipulate to was that these facts "are not relevant to this motion." The reason that these facts are not relevant to this motion is that defendants' liability does not turn on the subjective state of mind of the class members; it turns objectively on whether the notice defendants provided in the pay statements complied with the law. If the employer wanted to take advantage of the generous tip credit provisions, the law required the employer to show the employee the legally acceptable calculations in the pay stub. It did not matter what the employee thought. The ability to use the tip credit is based on a objective notice that is completely within the employer's control. The regulations certainly do not permit an employer to take advantage of the tip credit by showing the employees' pay was calculated illegally. Therefore, the regulation never says—nor do the defendants claim it does—that as long as an employee can somehow subjectively deduce the required information through other sources, the employer can show illegal calculations on the pay stub and still take advantage of the tip credit. Nor

would such a rule make sense. If an employee's actual pay stub is showing that she was being paid below the minimum wage, and additionally showing that she is not receiving a tip credit, that is how an employee would believe she is being paid, regardless of any subjective beliefs she might have about how the employer should be paying her under wage and hour laws.

The defendants made, and lost, an almost identical point to the Court in regards to class certification. Defendants argued class certification was impermissible because liability would turn on each employee's subjective awareness derived from sources other than her pay stubs regarding how she was being paid. See Doc. No. 214-1 at 20, 24; Doc. No. 222 at 7-8. The Court rejected defendants' argument "that there must be an individualized inquiry into precisely what and when each putative plaintiff understood about their pay . . . ." Doc. No. 224 at 10. As this Court held, the certified issue in this case is an objective one: did the defendants provide pay stubs to employees that would allow the defendants to take advantage of the tip allowance? That answer hinges on what the defendants put in their own pay stub, not subjective opinions of various employees.

### 4.     *The Ben-Amotz Letter does not provide a defense.*

Defendants claim in passing that the Ben-Amotz Letter provides a defense not only to Wage Notice Claim (Subclass B), but to the Pay Statement Claim as well (Subclass A). Doc. No. 281-16 at 15-17. That is not correct.

As an initial matter, as to the Pay Statement Claim, the Ben-Amotz Letter suffers from all the deficiencies outlined in Section II(A) below in regards to the Pay Notice Claim. But more specifically to the Pay Statement Claim, the Ben-Amotz Letter mentions **nothing** about Pay Statement requirements. Therefore, although the defendants succeeded in getting a letter opining that they should not be liable in this case on the Pay Notice claim, they were

unable to secure anything that opined that they should be absolved of liability as to Pay Statement Claim. And, significantly, just after the Ben-Amotz Letter did not endorse their noncompliant pay stubs, the defendants changed their pay stubs to become compliant with the regulation.

### C. The Labor Law § 198 affirmative defense does not apply to the claims of Subclass A.

As they did in their motion for reconsideration, defendants argue again in these papers that they are entitled to summary judgment under Labor Law § 198. As discussed above, these arguments are not subject to reconsideration yet another time. Regardless, though, defendants' arguments are no more meritorious now than they were before. First, § 198 does not even apply to violations of the Minimum Wage Law at issue in this motion, and even if it did, as this Court previously held, defendants cannot meet the terms of the affirmative defense because defendants did not pay all wages owed.

> 1. *The affirmative defense does not apply because Subclass A's claims are being brought pursuant to § 652 Minimum Wage Law not § 198 of the Payment of Wages Law.*

Defendants' argument fails for a fundamental reason. By its own terms § 198 does not apply to claims brought under Article 19 (Minimum Wage Law), because it only applies to general wage claims brought under § 195 of the Labor Law, which is part of the Wage Payment Law. N.Y. Labor Law § 198. As § 198 explicitly states, the defense only applies "in any action…to recover damages for violation of subdivision 3 of **section one hundred ninety-five** . . . ." *Id.* (emphasis added). The claims at issue in this motion are brought under § 652 of the Minimum Wage Law, not § 195, which is contained in a different article, different section, and has a different enforcement provision than § 198. Section 198 (and § 195) are part of Article 6 of the New York Labor Law (found in Labor Law §§ 190-199) and

governs the general failure to pay wages. It is therefore natural that § 198 in Article 6 explicitly only covers violations of Article 6 (and there only claims under § 195(3)), and does not apply to other articles, such as the Minimum Wage Law contained in Article 19 (found in Labor Law §§ 650-665). Thus § 652 of the Minimum Wage Act (the violation at issue in this motion) is not enforced via § 198, but has its own enforcement provisions in § 663, on which Subclass A relies. *See* N.Y. Lab. Law § 663(1). And, notably, § 663 provisions **does not** contain any affirmative defense like the one in § 198 on which defendants rely, demonstrating the legislature made a conscious choice to **not** make the defense available to employers in minimum wage cases such as this. *See id.* It makes sense that the legislature chose to have stronger wage statement protections for minimum wage employees in Article 19, as opposed to looser protection which includes highly compensated employees. Regardless of the reason, however, the statute is clear that the § 198 affirmative defense does not apply to the § 652 and regulatory changes at issue in this motion. More specifically, the defense is limited to cases not involving minimum wage or tip credit claims; when the employee (potentially highly compensated) received all pay due; and the only claim is simply that the employee should have received more notice under § 195(3). None of these factors are present here.

Therefore, the § 198 affirmative defense is simply not applicable to the claims of Subclass A.

   2. *Class members were not paid all their wages due.*

Throughout their papers, defendants continually and incorrectly claim that the class members were paid all their wages due. Defs.' Br., Doc. No. 281-6 at 17-18, 22-23. From this they argue that 1) there is no recovery for the Pay Statement Claim prior to the regulatory

change in 2011; 2) that the § 198 affirmative defense is available after April 9, 2011; and 3) the class does not have standing to sue under the Supreme Court's decision in *Spokeo*. But each of these arguments fail, though, because they are all founded on the incorrect premise that defendants paid class members all the wages due.

First, this Court has already rejected this argument. Decision and Order, Doc. No. 205 at 24 (defendants' position "is a circular argument without any support in the law. By definition, if Defendants took a tip credit to which they were not entitled, they underpaid wages."). Further, if the defendants were correct and they had paid all wages due to the class, then the defendants would simply win the case on its merits and there would be no reason to even invoke an affirmative defense. The defense can only be invoked because the issue is whether in fact the defendants paid all the wages due.

Second, as discussed above, the defendants' record citation does not even support defendants' claim that they paid the class members all the wages they were due. The fact that tips paid **by customers** pushed the class members' income above the minimum wage does not mean **defendants** paid the class members all the Minimum Wage Law required the defendants themselves to pay, or that defendants provided the correct pay statements to pay the class members at the lower sub-minimum wage rate. To the contrary, as explained in the class's moving papers, the defendants did not pay the employees minimum wage, or properly follow the requirements to pay the employees at tip credit rates. *See* Doc. No. 286 at 10-12.

Therefore, defendants are wrong legally and factually in claiming that the class members were undisputedly paid all the wages due and their arguments premised on this notion similarly fail.

The defendants' failure to pay the wages required also shows why defendants' *Spokeo* argument fails. Defendants argue that because class members were paid all the wages they were due, class members have suffered no injury and thus do not have standing to sue.[4] Defs.' Br., Doc. No. 281-6 at 22-23. For the reasons discussed above, Subclass A was not paid all the wages due, have therefore suffered a concrete injury and have standing to sue under *Spokeo*.

In sum, defendants' arguments as to Subclass A fail both because § 198 only applies— as the statute itself states—to claims under § 195(3) (not the claims in this motion brought under § 652), and because, regardless, the class members were not paid all the wages due which is required to even invoke § 198 in § 195(3) claims.

## II.     Defendants are not entitled to summary judgment on Subclass B.

Recovery to Subclass A moots out the need to analyze the claims of Subclass B. Subclass B involves in the same recovery to the same class members as Subclass A, but over a shorter period of time. Therefore, given that there can be no double recovery, there is no need to even reach the claims of Subclass B because Subclass A is entitled to summary judgment.

Regardless, as with the claims of Subclass A, this is the third time the defendants are asking the Court to rule in its favor, having lost the prior two attempts. This Court has repeatedly, and correctly, not only rejected defendants' request for summary judgment on

---

[4]     This rationale is a repeat of the "circular argument" this Court previously rejected. Decision and Order, Doc. No. 205 at 24. Under defendants' theory, any time a party asserts it can win on liability, the other party has no "standing" because it cannot recover and thus has no injury. That reverses the judicial process. If a defendant is successful in a case, she will succeed in having the plaintiff's claim dismissed on the merits. That victory that does not mean that the plaintiff never had "standing" to sue. If that were the case, every defense in every case would raise a *Spokeo* issue. Instead, *Spokeo* only applies when the plaintiff herself relies on a claim that never involved a concrete injury to her.

Subclass B, but has granted Subclass B summary judgment. There is no basis to change those decisions.

### A.     The Ben-Amotz Letter provides no defense to the defendants.

Most of defendants' argument relies on a letter secured by Joseph Morelle purporting to overturn this Court's earlier decision in case. The letter, however, does not provide a basis to overturn this Court's decision.

### 1.     The letter is not basis to alter this Court's earlier ruling.

As discussed above, when a Court issues a ruling it becomes the binding law of the case. *Myers v. Hertz Corp.*, 2007 WL 2126264, at *2. That decision is not subject to change absent a valid motion for reconsideration. *See Ashmore v. CGI Grp., Inc.*, No. 11 Civ. 8611(AT), 2014 WL 1414314, at *1 (S.D.N.Y. Apr. 7, 2014) ("In the absence of . . . a motion for reconsideration . . . the district court's decision 'may not usually be changed.'").

Here, the defendants' do not move to reconsider this Court's earlier decision, nor would such a motion be proper. Therefore, this Court's earlier multiple decisions granting and reaffirming summary judgment to Subclass B remain in force.

Additionally, defendants' attempt to have a letter to a local politician serve as the basis to overturn a federal court decision is improper. To the degree the defendants disagree with a decision of this Court, federal law provides a number of avenues to contest that decision. They can file a motion for reconsideration, which they unsuccessfully did. Additionally, they can appeal decisions to the Second Circuit, and ultimately the United States Supreme Court. They could also seek certification on appeal of issues of state law to the New York Court of Appeals. If they wanted a quicker decision regarding the decision of

this Court, they could ask the question be certified to the Second Circuit. Those are all appropriate avenues to appeal decisions of this Court.

However, it is not proper to "appeal" this Court's decision to a local politician and obtain a letter that purports to overturn this Court's decision. It is not only improper, such an approach also sets a bad precedent. If allowed, a party dissatisfied with the ruling of this Court, or for that matter any United States District Court, could have that decision "overturned" by getting letters from local politicians in whatever locality they are located. Defendants have plenty of proper avenues to appeal this Court's decision, but an appeal to Joseph Morelle is not one of them.

### 2. The Ben-Amotz Letter is not entitled to deference.

Even setting aside that the Ben-Amotz Letter is not proper, the letter itself is not entitled to deference in deciding the issues in this case.

### a. The Legislature did not delegate interpretative authority to Pico Ben-Amotz.

Not every pronouncement of every state employee is entitled to deference to bind an agency. Instead, the legislature has designated certain agencies who are in charge of implementing and carrying out specific regulations. *See, e.g.*, N.Y. Lab. Law § 21(11) ("the commissioner [of Labor] . . . [m]ay issue such regulations governing any provision of this chapter as he finds necessary and proper.").

In terms of the Department of Labor, the New York Legislature has designated the Commissioner of Labor and the members of the Wage Board as those specific individuals who have the power to interpret and implement the DOL regulations. N.Y. Lab. Law §§ 21(11), 653(2). The DOL's General Counsel has not been given such authority by the

legislature. Therefore, given that the Ben-Amotz Letter does not come from a state official designated to offer opinions on regulations, it is not entitled to deference.

> b.     Because the issue involves pure statutory interpretation, the DOL's opinion is not entitled to deference

The New York Court of Appeals has been clear that the only type of decisions subject to deference are those that "specialized knowledge and understanding . . . [that] entails an evaluation of factual data and inferences." *KSLM-Columbus Apartments, Inc. v. N.Y. State Div. of Human Housing & Comty. Renewal*, 5 N.Y. 303, 312 (2005); *Kurcsics v. Merchants Mut. Ins. Co.*, 49 N.Y.2d 451, 459 (1980). When a decision only involves statutory interpretation, "there is little basis to rely on any special competence or expertise of the administrative agency." *Id*. In this case, as this Court's two prior opinions demonstrate, the issue of the affect of the failure to provide the appropriate Wage Notices is one of statutory construction. Mr. Pico-Amotz may present a different statutory interpretation to Mr. Morelle, but there is nothing in that opinion that involves any specialized knowledge from an evaluation of facts and data peculiar to the DOL that it is worthy of deference. It is simply someone's opinion about a different way to interpret the statute. Therefore, nothing that Mr. Pico-Amotz opines is a basis under New York law to upset this Court's well-reasoned prior decisions.

> c.     The Ben-Amotz Letter is not entitled to deference because it contravenes prior DOL interpretations.

Agency opinions are also not entitled to deference when they depart from previous agency interpretations. As the New York Court of Appeals held, "[a]bsent a reasoned explanation for abandonment of the [agency's] original reading of the regulation at the time of promulgation and adoption here of a diametrically opposite interpretation the agency's change of position was arbitrary and capricious and cannot stand." *Richardson v. Comm'r of*

*N.Y.C. Dep't of Social Servs.*, 88 N.Y.2d 35, 39 (1996);  *In re Charles A. Field Delivery Serv.*, 66 N.Y.2d 516, 520 (1985) ("failure to conform to agency precedent will, therefore, require reversal on the law as arbitrary, even though there is in the record substantial evidence to support the determination made.").

In this case, as this Court previously found, the Wage Board, and the Commissioner of Labor, were clear when implementing the Wage Notice regulation that employers who did not comply with the regulation's requirements would lose the tip credit. The 2011 tip credit regulation grew out of legislation enacted by the New York State Legislature in 2000 requiring the Commissioner of the New York State Department of Labor to convene a wage board within six months of any changes to the minimum wage to study revisions to regulations applicable to food service employees. NYLL § 653(2); *see also* Report and Recommendation of the Minimum Wage Board, Doc. No. 191-2 at 1. After the minimum wage increased on July 24, 2009, the Commissioner appointed the Wage Board, which included representatives of the restaurant and hospitality industries. *Id.*

> One of the questions the Commissioner put to the Wage Board was:
>
> Under federal law, in order to receive a tip allowance, employers must inform tipped employees that they are getting a lower rate based on receipt of gratuities, and must also keep an accurate record of tips received by employees. Employers who do not do so may not receive a tip allowance. Should the Wage Orders be amended to conform with federal law in this respect?

*Id.* at 3.

The Wage Board answered the question in the affirmative, and recommended that the new regulations require that employers provide the Wage Notice: a specific written notice of the employee's wage rates to the employees, and that the employee signs the written notice. Crucially, the Wage Board—which included the representatives representing the defendants'

industry—also recommended that "employers who fail to notify their employees of the tip allowance system **will be prohibited from taking any tip credit** for an employee who is not notified of the tip credit system." *See id.* at 8 (internal citation omitted) (emphasis added). The Commissioner accepted that recommendation, promulgated the proposed regulations, and further confirmed, "I accept the recommendation to require employers to notify tipped employees of any tip allowances that will be taken and to **disallow the tip allowance** if such notice is not given." *See* Doc. No. 191-3 at 3 (emphasis added).

Given that the General Counsel of the Department of Labor is attempting to depart from the long-stated opinion of the Commissioner of Labor (his boss) and the Wage Board (empowered by the legislature to advise and implement the minimum wage regulations)—and he provides no basis for his deviation—his interpretation is entitled to no deference. *Richardson*, 88 N.Y.2d 35 at 39; *In re Charles A. Field Delivery Serv.*, 66 N.Y.2d at 520.

> d.    The Ben-Amotz Letter is contrary to the plain language of the statute.

An agency opinion interpreting a regulation must be consistent with the plain terms of the regulation, otherwise the interpretation is not rational and not entitled to any deference. *See Visiting Nurse Serv. of N.Y. Home Care v. N.Y. State Dep't of Health*, 5 N.Y.3d 499, 506, 840 N.E.2d 577, 580 (2005) ("Although it is true that an agency's interpretation of its own regulation generally is entitled to deference, courts are not required to embrace a regulatory construction that conflicts with the plain meaning of the promulgated language."); *Heinlein v. N.Y. State Office of Children & Family Servs.*, 60 A.D.3d 1472, 1473, 876 N.Y.S.2d 293, 294 (4th Dep't 2009) (same).

The relatively short Ben-Amotz Letter has two fundamental problems. First, it is not accurate. The premise of the letter is that the Wage Notice regulation does not require

"written" notice as a precondition for claiming the tip credit because if a written notice was required, the "requirement would [have been] explicit in the regulation." Doc. No. 281-4, Ex. 8, at 2. Despite what the Ben-Amotz Letter says, the regulation **is** explicit in requiring written notification, as this Court has previously found. Section 146-1.3 states the employee must be "notified of the tip credit as required in § 146-2.2" and § 146-2.2 states explicitly that the employer must in fact provide "**written notice**." Therefore, despite what the Ben-Amotz Letter says, the regulation **does** require written notice to take a tip credit—which is the same conclusion that has been previously reached by the Commissioner of Labor, the Wage Board, as well as this Court on two separate occasions. The Ben-Amotz Letter simply cannot be followed because it misreads the regulation it claims to interpret.

Second, the Ben-Amotz Letter is internally inconsistent. On the one hand it claims that no written wage notice is required, and then alternatively claims that any failure to provide a written wage notice is a violation of the regulations, and enforceable by civil penalties under Labor Law § 218. Doc. No. 281-4, Ex. 8, at 2. However, if the regulation does not require written notice, then failing to provide written notice could hardly be a violation of the regulation, enforceable by civil penalties. But the regulations do require written notice, and that is why a violation of the regulation would trigger liability under § 218, as well as the statute's alternative enforcement remedies. The Ben-Amotz Letter's claim that the law both requires and does not require written notice demonstrates the inconsistency of the letter.

Therefore, because the Ben-Amotz Letter is not consistent with the relevant regulation or even itself, the letter is entitled to no deference.

**B.      Section 198 is not a viable affirmative defense.**

As with the Pay Statement Claim, the defendants claim that § 198 also provides an affirmative defense to the Wage Notice claim. For reasons that echo those set forth above as to the Pay Statement claim, defendants' claim fails. First, defendants spend most of their time claiming that the amendments to the § 198 affirmative defense are retroactive, but ignore the more basic problems with their argument which is that the affirmative defense only applies claims under § 195 and does not apply to violations of the Minimum Wage Law at issue in this motion, and even if it did, as this Court previously held, defendants cannot meet the terms of the affirmative defense because defendants did not pay all wages owed.

> 1.      *The affirmative defense does not apply because Subclass B's claims are being brought pursuant to § 652 Minimum Wage Law and not § 198 of the Payment of Wages Law.*

As with Subclass A, defendants' affirmative defense as to Subclass B fails because it only applies to general wage claims brought under § 195 of the Labor Law. N.Y. Labor Law § 198. Defendants spend much time discussing whether the defense applies to claims under § 195(a) or § 195(d), but it does not matter. As with Subclass A, Subclass B's claims are being brought pursuant to § 652 of the Minimum Wage Law, which as discussed above is not even a part of the same Article as § 198. And as with Subclass A, the enforcement provision of § 652 **does not** contain any affirmative defense for the defendants. Therefore, the § 198 affirmative defense is simply not applicable to the claims of Subclass B.

>    2.    *Class members were not paid all their wages due.*

Again, as with Subclass A, even if § 198 was part of Article 6 it would not apply because the defendants did not pay all the wages due the class members. This argument is discussed fully in Section I(C)(2) above.

## C.    All Subclass B members were entitled to a wage notice.

The defendants argue again, as they have previously argued unsuccessfully, that Subclass B members were not entitled to a wage notice unless they were hired or had their pay changed after January 1, 2011. Doc. No. 281-6 at 23-4. This Court has already addressed and rejected this argument because it "lacks merit" and "is flawed because it misapprehends the manner in which the Minimum Wage Act and its associated regulations operate." Doc. No. 205 at 27-29. Not only are defendants barred from re-litigating this issue, but defendants do not even purport to offer a reason why this Court's ruling was incorrect the first time. Therefore, defendants' argument does not entitle them to summary judgment.

## D.    Prior to June 24, 2013, defendants' notices were improper.

As set forth in more detail in the class's moving papers, the defendants did not provide proper wage notices to Subclass B as a matter of law prior to June 24, 2013. *See* Doc. No. 286 at 3-4, 15-19. Further, this Court has already ruled the defendants' failure to provide the required information on the wage notices justifies summary judgment in favor of the employees. *See* Doc. No. 205 at 30-31. Nothing in defendants' most recent papers alters that conclusion, much less warrants judgment in the defendants' favor. Because these issues have been extensively briefed elsewhere, a condensed explanation will be provided here. As set forth below, the defendants notices are facially deficient and in violation of 12 N.Y.C.R.R. § 146-2.2:

*Stipulated Order, Exhibit B*:[5] As this Court has already ruled, this notice does not comply with the requirements of the 12 N.Y.C.R.R. § 146-2.2. Doc. No. 205 at 30-31.

*Stipulated Order, Exhibit C*: This notice stated that the employees were illegally paid $5.00 an hour (as opposed to the minimum wage) and underreported their overtime rate of pay.

*Stipulated Order, Exhibit D*: Although this notice was based off the DOL's approved wage notice, the defendants deliberately removed the crucial section related to tip credits making the form again facially improper.

Further, as set forth in the class's moving papers, ███████████████████████

██████████████████████████████. Doc. No. 286 at 7.

Given these facial problems with the notices, defendants are not entitled to summary judgment on the claims of Subclass B, and summary judgment is in fact appropriate for the subclass.

## III.    Defendants are not entitled to summary judgment on the FLSA claims.

The defendants cursorily move for summary judgment on the FLSA claims. As the defendants know, the parties have reserved conducting discovery on the FLSA claims until the resolution of these motions on the state law claims. *See* Affirmation of Jonathan W. Ferris ("Ferris Aff.") dated February 13, 2017.  As set forth in the Ferris Aff., the plaintiffs would need additional discovery to respond to defendants' motion and therefore summary judgment is not appropriate at this juncture. *See id*; *see also* Fed. R. Civ. P. 56(d).

## IV.    Defendants' catch-all argument is improper.

Defendants purport to generically incorporate "all arguments" they have made before into this motion. Doc. No. 281-6 at 39. It is not proper to base a motion for summary

---

[5]    The exhibit references are to Doc. 288-1. The dates and individuals to whom the notices were supplied are omitted for the sake of brevity and are discussed in more detail at Doc. No. 286 and 288-1, Ex. A at ¶¶ 5-10.

judgment on claims not specifically articulated in the moving papers. *See Topliff v. Wal–Mart Stores East LP*, No. 04–CV–0297, 2007 WL 911891, at *9 n. 65 (N.D.N.Y. Mar. 22, 2007) (Lowe, M.J.) ("A party may not articulate a legal argument simply by 'incorporating by reference' the argument presented in another document."). Therefore, defendants cannot rely on these arguments. Defendants' request is strange in that they certainly had no hesitation regurgitating any number of unsuccessful arguments from their previous papers and therefore it is not clear to which arguments they are referring. In fact, defendants follow this request by again reasserting arguments they made in their previous papers and again in these papers. However, to the degree this Court considers any arguments under Point VIII of defendants' brief, the class requests the opportunity to file opposing papers.

## CONCLUSION

For the foregoing reasons, the class respectfully requests that this Court deny defendants' motion for summary judgment as to both Subclass A and Subclass B.

Dated: February 13, 2017

**THOMAS & SOLOMON, LLP**

By: s/ J. Nelson Thomas
   J. Nelson Thomas, Esq.
   Michael J. Lingle, Esq.
   Jessica L. Lukasiewicz, Esq.
   Jonathan W. Ferris, Esq.
   *Attorneys for Plaintiffs*
   693 East Avenue
   Rochester, New York 14607
   Telephone: (585) 272-0540
   nthomas@theemploymentattorneys.com
   mlingle@theemploymentattorneys.com
   jlukasiewicz@theemploymentattorneys.com
   jferris@theemploymentattorneys.com