UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ASHLEY HICKS and KRISTIN RAYMOND, on
behalf of themselves and all other employees
similarly situated,

                    Plaintiffs,

        -against-

T.L. CANNON CORP., et al.,

                    Defendants.

Civil Action No. 13-CV-6455

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022
(212) 583-9600

Craig R. Benson, Esq.
Jessica F. Pizzutelli, Esq.

### TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT ...................................................................................................3

  I.    PLAINTIFFS' MOTION SHOULD BE DENIED FOR THE REASONS
       STATED IN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ........3

  II.   PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT
       ON THEIR PAY STUB CLAIMS..................................................................4

  III.  PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON
       THE WAGE NOTICE CLAIMS ....................................................................6

  IV.  PLAINTIFFS ARE NOT ENTITLED TO ANY DAMAGES, INCLUDING
       LIQUIDATED DAMAGES AND PREJUDGMENT INTEREST ......................9

      A.   Plaintiffs Are Not Entitled To Any Damages Because They Have
          Not Met Their Burden As To Liability .........................................................9

      B.   Even If Defendants' Wage Notices Or Pay Stubs Were Deficient,
          Plaintiffs Are Not Entitled To The Damages They Seek..............................9

      C.   Even Assuming Arguendo That Liquidated Damages Could Be
          Imposed, Plaintiffs Are Not Entitled To Liquidated Damages Here ............10

      D.   Plaintiffs Are Not Entitled To Prejudgment Interest On
          Liquidated Damages ...................................................................................14

      E.   The Gurnius Affirmation Should Be Excluded ...........................................15

  V.   T.L. CANNON CORP. AND T.L. CANNON MANAGEMENT CORP.
       ARE NOT PLAINTIFFS' EMPLOYER ...........................................................15

  VI.  THE INDIVIDUAL DEFENDANTS ARE NOT PLAINTIFFS'
       EMPLOYERS..............................................................................................16

      A.   David Stein Is Not Plaintiffs' Employer......................................................17

      B.   Matthew Fairbairn Is Not Plaintiffs' Employer ...........................................18

      C.   John Perry Is Not Plaintiffs' Employer........................................................21

## TABLE OF CONTENTS
### (CONTINUED)

PAGE

D.   *Irizarry* Is Distinguishable ................................................................24

CONCLUSION ........................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

<small>CASES</small>

*Carvente-Avila v. Chaya Mushkah Rest. Corp.*,
    No., 12-CV-5359 (KBF), 2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016).................1

*Design Strategy, Inc. v. Davis*,
    469 F. 3d 284 (2d Cir. 2006)..............................................................................................15

*Diaz v. AJE Mgmt. Corp.*,
    No. 15 Civ. 1602 (AT), 2017 U.S. Dist. LEXIS 4324 (S.D.N.Y. Jan. 10, 2017)...................14

*Fermin v. Las Delicias Peruanas Rest., Inc.*,
    93 F. Supp. 3d 19 (E.D.N.Y. 2015) ..................................................................................14

*Franco v. Jubilee First Ave. Corp.*,
    No. 14-CV-007729 (SN), 2016 WL 4487788 (S.D.N.Y. Aug. 25, 2016) ..............................12

*Hart v. Rick's Cabaret Int'l, Inc.*,
    No. 09 Civ 3043 (PAE), 2013 U.S. Dist. LEXIS 129130
    (S.D.N.Y. Sept. 10, 2013).................................................................................10, 12, 14, 16

*Humphrey v. RAV Investigative & Sec. Servs.*,
    No. 12 Civ. 3581 (NRB), 2016 U.S. Dist. LEXIS 177572 (S.D.N.Y. Nov. 29, 2016) ............5

*Irizarry v. Catsimatidis*,
    722 F.3d 99 (2d Cir. 2013)........................................................................... *passim*

*Khereed v. W. 12th St. Rest. Grp. LLC*,
    No. 15-cv-1363 (PKC), 2016 U.S. Dist. LEXIS 16893 (S.D.N.Y. Feb. 11, 2016)..............8,12

*Lopez v. Maino*,
    15-CV-2285, 2017 U.S. Dist. LEXIS 5367 (S.D.N.Y. Jan. 13, 2017) ............................15, 17

*Lozano v. Rugfrit 1350 LLC*,
    No. 159570/2014, 2015 N.Y. Misc. LEXIS 1451 (N.Y. Sup. Ct. Apr. 27, 2015)....................8

*Ponce v. LaJaunie*,
    No. 152551/2014, 2015 N.Y. Misc. LEXIS 2522
    (N.Y. Sup. Ct., N.Y. Cty. July 15, 2015)........................................................................21, 23

*Salinas v. Starjem Rest. Corp.*,
    123 F. Supp. 3d 442 (S.D.N.Y. 2015).........................................................................8, 20, 23

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ........................................................................1, 3

*Tapia v. Blch 3rd Ave. LLC,*
  No. 14-cv-8529 (AJN), 2016 U.S. Dist. LEXIS 118313 (S.D.N.Y. Sept. 1, 2016) ........ *passim*

*Wirtz v. Pure Ice Co., Inc.,*
  322 F.2d 259 (8th Cir. 1963) ...........................................................21, 22

*Zheng v. Liberty Apparel Co.,*
  355 F.3d 61 (2d Cir. 2003)...................................................................7

**STATUTES**

FLSA ............................................................................................ *passim*

N.Y. LAB Law § 195(1) .........................................................................6

N.Y. LAB.Law § 195(2) ........................................................................8

N.Y. LAB. Law § 198(1-a) ....................................................................9, 10

N.Y. LAB Law § 198(1-b) .....................................................................1, 3

N.Y. LAB Law § 198(1-d).......................................................................1,3

N.Y. LAB Law § 198(3) .........................................................................5

N.Y. LAB Law § 218...............................................................................3

N.Y. LAB Law § 652(4) ........................................................................12, 13

N.Y. LAB Law § 663(1) .........................................................................9

**OTHER AUTHORITIES**

12 N.Y.C.R.R. § 137-2.2 .......................................................................4, 5

12 N.Y.C.R.R. § 146-1.2 ........................................................................7

12 N.Y.C.R.R. § 146-1.3(b) .....................................................................5, 7

12 N.Y.C.R.R. § 146-2.2 .......................................................................*passim*

12 N.Y.C.R.R. § 146-2.3 .......................................................................4, 5

FED. R. CIV. P. 26(a)(1)(c).......................................................................5

Local Rule 56 ..................................................................................15, 16

## PRELIMINARY STATEMENT

In Defendants' Motion for Summary Judgment[1], Defendants describe the many factual and legal developments in this case since this Court's August 5, 2014 Decision and Order (Dkt. 205) ("August 5 Decision"), which now render this case ripe for summary adjudication in Defendants' favor.[2] Specifically, the New York Department of Labor ("NYDOL") issued two opinion letters (one specifically addressing this case), which state that loss of the tip credit is not a remedy for the violations alleged by Plaintiffs. At least one Federal District Judge has already recognized that the NYDOL's opinion is entitled to deference. *See Carvente-Avila v. Chaya Mushkah Rest. Corp.,* No., 12-CV-5359 (KBF), 2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016). The New York Legislature also corrected the typographical error in NYLL § 198(1-b), which along with NYLL § 198(1-d), provide Defendants with a complete affirmative defense to Plaintiffs' claims. And, the United States Supreme Court issued a decision clarifying that Plaintiffs lack standing to sue. *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016).

Plaintiffs' motion for summary judgment is deafeningly silent with respect to these critical legal developments which obliterate Plaintiffs' claims. Plaintiffs do not cite a single authority after 2014 in their summary judgment papers. Instead, Plaintiffs rely, almost entirely, on the August 5 Decision; dedicate little attention to the merits; and focus the majority of their brief on damages, where they seek to lay claim to over ***99 million dollars***, despite the fact that the law is now clear that Plaintiffs are not entitled to any of the damages they seek.  Plaintiffs'

---

[1] Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated September 22, 2016 and filed with this Court on October 3, 2016 at Dkt. 281-6, shall be cited herein as "Def. Mem. at [page number]" or "Defendants' Motion for Summary Judgment."

[2] "Defendants" shall refer to T.L. Cannon Corp., d/b/a Applebee's, T.L. Cannon Management Corp., TLC West, LLC, TLC Central, LLC, TLC Utica, LLC, TLC North, LLC, David A. Stein, Matthew J. Fairbairn, and John Perry. "Plaintiffs" shall mean Named Plaintiffs Ashley Hicks and Kristen Raymond, and the class of tipped employees they purport to represent.  For ease of reference, this opposition refers generally to "Defendants" and "Plaintiffs."  The parties dispute which Defendants employed Plaintiffs.  Nothing in this brief is to be construed as a concession that any Defendant employed any of the Plaintiffs, except for TLC West, LLC and TLC Central, LLC, who Defendants agree employed those Plaintiffs who worked in those regions.

motion for summary judgment must be denied for (at least) five reasons.

First, Plaintiffs' motion for summary judgment should be denied for all of the reasons stated in Defendants' Motion for Summary Judgment. Plaintiffs make no attempt to address, refute or distinguish the dispositive legal developments addressed in Defendants' Motion for Summary Judgment, which handily defeat Plaintiffs' claims.

Second, with respect to their pay stub claims, in addition to the reasons stated in Defendants' Motion for Summary Judgment, Plaintiffs' motion should also be denied for the reasons stated by this Court in the August 5 Decision. Plaintiffs rely on the same facts that were previously before this Court when it denied Plaintiffs' prior motion for summary judgment on their pay stub claims. And, Plaintiffs have not come forward with any additional facts which make their claims any more compelling than the last time this Court rejected them.

Third, with respect to their wage notice claims, in addition to the reasons stated in Defendants' Motion for Summary Judgment, Plaintiffs' motion should also be denied because in the August 5 Decision, this Court did not consider or opine on a separate wage notice which Defendants provided to Plaintiffs, which complied with 12 N.Y.C.R.R. § 146-2.2.

Fourth, even if this Court were to find that Defendants were not entitled to claim the tip credit, and that Plaintiffs are entitled to damages, Plaintiffs' motion must still be denied, because there are genuine issues of material fact relating to Plaintiffs' purported "damages." Specifically, Defendants dispute nearly all of the facts upon which Plaintiffs rely to support their claim for differential and liquidated damages. And, Plaintiffs are not entitled to prejudgment interest on liquidated damages as a matter of law.

Fifth, Plaintiffs' motion for summary judgment must be denied, because Plaintiffs cannot establish that any of the corporate defendants (other than TLC West, LLC and TLC Central,

LLC), or the individual defendants, are Plaintiffs' employer. For these reasons, as discussed more fully below, Plaintiffs' motion for summary judgment should be denied.

## ARGUMENT

## I.  PLAINTIFFS' MOTION SHOULD BE DENIED FOR THE REASONS STATED IN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

Plaintiffs' motion for summary judgment should be denied for the reasons stated in Defendants' Motion for Summary Judgment, which makes clear that, since this Court's August 5 Decision, there were many factual and legal developments which require summary judgment in Defendants' favor. *See, generally,* Def. Mem. For the sake of brevity, Defendants do not repeat those arguments here, but incorporate them by this reference.

Specifically, Plaintiffs' motion for summary judgment must be denied because, as was recently twice recognized by the NYDOL and another federal District Court Judge, Defendants may claim the tip credit, and Plaintiffs are not entitled to any of the damages that they seek. *See* Def. Mem. at 10-17. Indeed, here, there is no private right of action. Instead, as the NYDOL made clear, failure to comply with the notification requirements in the Hospitality Wage Order ("HWO") -- the only claims Plaintiffs assert in their summary judgment papers -- subjects an employer only to civil penalties under N.Y. LAB Law § 218, which may be collected by the Commissioner, but not private litigants. *See* N.Y. LAB Law § 218; Dkt. 281-4 at p. 19, 22. Defendants may also avail themselves of the complete affirmative defenses set forth in N.Y. LAB Law § 198(1-b) and § 198(1-d). *See* Def. Mem. at 17-22. In addition, Plaintiffs lack standing to sue under *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016), because Plaintiffs suffered no injury. *See.* Def. Mem. at 22-23. Indeed, in their papers, Plaintiffs do not claim that they were: (1) ever paid less than the standard minimum wage; (2) were confused by the at-issue pay stubs or wage notices; or (3) were otherwise prejudiced in any way by the technical notice

3

violations they assert.  *See* Pl. Mem., *generally.*[3]  Finally, Plaintiffs' claims fail on the merits, because Defendants' paystubs complied with the requirements of 12 N.Y.C.R.R. § 137-2.2 (repealed) and 12 N.Y.C.R.R. § 146-2.3, and Defendants' wage notices complied with the requirements of 12 N.Y.C.R.R. § 146-2.2.  *See* Def. Mem. at 23-31.  For these reasons, Plaintiffs' motion for summary judgment should be denied.

## II.  PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR PAY STUB CLAIMS.

In addition to the reasons stated in Defendants' Motion for Summary Judgment, Plaintiffs' motion for summary judgment should be denied for the reasons stated in the August 5 Decision.  In the August 5 Decision, this Court denied Plaintiffs' motion for summary judgment on the pay stub claims, reasoning: "it is not clear that the information provided on Plaintiffs' paystubs failed to comply with the pre-2011 regulatory requirement of showing the 'allowances' that were 'claimed as part of the minimum wage.'"  *See Id.* at 19-23.

Contrary to Plaintiffs' assertions, Plaintiffs do not cite any additional facts which make Plaintiffs' arguments any more compelling than the last time this Court rejected them.  As Plaintiffs observe, the parties stipulated that Defendants' paystubs were uniform for all class members from September 24, 2006 until they were changed.  *See* Pl. Mem. at 11; Dkt. 249.  The pay stubs in the parties' stipulation are identical to the pay stubs previously before the Court.  *Compare* Dkt. 244 at Ex. A, *with* Dkt. 176-6 at ¶ 7, Ex. 2-D; *see also* Dkt. 176-9 at pp. 2-14.  Because Plaintiffs have not adduced any additional material facts supporting their positions,

---

[3] Plaintiffs' Memorandum of Law in Support of their Motion for Partial Summary Judgment for the Class, dated September 22, 2016, and filed with this Court on October 7, 2016 at Dkt. 286, shall be cited herein as "Pl. Mem. at [page number]."

4

Plaintiffs' motion for summary judgment should be denied for the same reasons this Court denied their first summary judgment motion on this issue.[4]   *See* Dkt. 205 at 19-23.

Plaintiffs also assert that "the defendants admit that the paystubs reflected the wrong rate of pay," because the paystubs listed $5.00 as the employee's tipped rate, instead of the standard minimum wage of $7.25.   *See* Pl. Mem. at 12.   Defendants made no such admission, and regardless, Plaintiffs' position is directly contradicted by the plain language of the HWO, which required that the paystub list "rates paid" (12 N.Y.C.R.R. § 137-2.2 (repealed), 146-2.3), and which provided that a food service worker must "receive a wage of at least $5.00 per hour…," which is exactly what was listed on Plaintiffs' paystub. 12 N.Y.C.R.R. § 146-1.3(b).

Finally, Plaintiffs claim that they are entitled to damages starting September 24, 2006. Plaintiffs are not entitled to any damages, for the reasons stated here and in Defendants' Motion for Summary Judgment.   In any event, Plaintiffs filed their Amended Complaint, which included for the first time Plaintiffs' notice allegations and which allegations were wholly unrelated to the allegations in their original Complaint, on April 10, 2013.   *Compare* Dkt. 1 *with* Dkt. 82.   The NYLL's statute of limitations is six years.   *See* N.Y. LAB Law § 198(3).   Thus, with respect to

---

[4] The same cannot, however, be said of Defendants' Motion for Summary Judgment.   In the August 5 Decision, this Court denied Defendants' prior summary judgment motion because, at the time, the law was undeveloped as to whether, under the facts present here, Defendants were entitled to claim the tip credit.   *See* Dkt. 205 at 24-26.   Since the August 5 Decision, the law was clarified.   The NYDOL opined that, under the facts of this case, Defendants were entitled to take the tip credit.   *See* Dkt. 281-4 at 19 ("a food service employer is eligible to claim the tip credit… [if] the employer can demonstrate compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit").   The NYDOL's opinion is entitled to deference.   *See Carvente-Avila,* 2016 U.S. Dist. LEXIS 75396, at *6-9.   And, although NYDOL addressed the written wage notice requirements, the NYDOL's reasoning is equally applicable to Plaintiffs' pay stub claims.   *See* Def. Mem. at 15-16.   Moreover, since the August 5 Decision, the parties stipulated that the class understood that they were paid the tipped minimum wage, had actual knowledge of the tip credit taken, and never earned less than the standard minimum wage.   *See* Dkt. 249 at ¶¶ 1-6.   The parties also stipulated to the form of the paystub, which shows that during the weeks Plaintiffs worked in tipped and non-tipped positions (where they earned the standard minimum wage), that it was "obvious from the face of the pay statements" that "simple math" could be performed to determine the tip credit.   *See* Pl. Appx., Ex. A at Ex. A (where "Regular Earnings" are $7.25, and "REG-TIPPED" earnings are $4.65, and tip credit of $2.60 can be determined by simply subtracting $4.65 from $7.25).   These facts were not available to Defendants during the last round of summary judgment briefing, and when coupled with the developments in the law, render this case now ripe for summary adjudication in Defendants' favor.

Plaintiffs' paystub claims, any claims prior to April 10, 2007 are time-barred.  *See Humphrey v. RAV Investigative & Sec. Servs.,* No. 12 Civ. 3581 (NRB), 2016 U.S. Dist. LEXIS 177572, *9-10 (S.D.N.Y. Nov. 29, 2016) ("claims initially raised in the Amended Complaint that do not relate back to the initial complaint are barred… if they accrued [more than 6 years before filing of Amended Complaint]").  For these reasons, Plaintiffs' motion should be denied.

## III.   PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE WAGE NOTICE CLAIMS.

Plaintiffs' motion for summary judgment on their wage notice claims should also be denied for (at least) two reasons.  First, Plaintiffs do not address the legal developments since the August 5 Decision which, for the reasons stated in Defendants' Motion for Summary Judgment, dispose of Plaintiffs' wage notice claims in their entirety.  *See* Def. Mem. at 10-23.

Second, notwithstanding these legal developments, and as explained in Defendants' Motion for Summary Judgment, Defendants provided Plaintiffs with compliant wage notices, including a notice not previously considered by this Court in the August 5 Decision.  Plaintiffs' arguments to the contrary are unavailing.

As a threshold matter, Plaintiffs' motion for summary judgment makes clear that:

- Plaintiffs' wage notice claims are limited to January 1, 2011 through June 24, 2013.  *See* Pl. Mem. at 14-19.

- Plaintiffs do not seek any damages after June 24, 2013.  *Id.*

- Plaintiffs do not bring claims under N.Y. LAB Law § 195(1).  *Id.*; Docket No. 82.

Plaintiffs motion also depends, entirely, on the assumption that, effective January 1, 2011, all current tipped employees were entitled to notice pursuant to 12 N.Y.C.R.R. § 146-2.2.  This is not the case.  *See* Def. Mem. at 23-26.  Because Plaintiffs' cash wage increased on January 1, 2011, and because the regulation simultaneously took effect on January 1, 2011,

Defendants were only required to provide notice to employees hired (or who had their rate of pay changed) after January 1, 2011.  *See* 12 N.Y.C.R.R. § 146-2.2.

Defendants' Motion for Summary Judgment also explains that all Plaintiffs who were hired (or who had their rate changed) after January 1, 2011 received proper notice.  Def. Mem. at 25-26.   And, from June 1, 2011 through June 24, 2013, Defendants provided new hourly employees with a form, entitled "Tip Credit Notification – NY Server," which expressly states:

> For servers who receive at least $5.00 per hour and credit for tips, credit shall not exceed $2.25 per hour, provided that the total of tips received plus wages equals or exceeds $7.25 per hour.   Extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.

*See* Dkt. 244 at ¶ 6, Ex. C.   This language tracked, almost exactly, the language in 12 N.Y.C.R.R. § 146-1.3(b) (effective 1/1/2011) ("A food service worker shall receive a wage of at least $5.00 per hour, and credit for tips shall not exceed $2.25 per hour, provided that the total of tips received plus the wages equals or exceeds $7.25 per hour").

Plaintiffs strain to find fault with this form.   Plaintiffs argue that the form "falsely" told employees that their wage was $5.00/hour, and Defendants were instead required to "inform the employees that they were entitled to a minimum wage of $7.25 an hour, against which a tip credit could be taken."  *See* Pl. Mem. at 16.   This is inconsistent with the plain language of the HWO, which provided that prior to the start of employment "an employer shall give each employee written notice of the employee's ***regular hourly pay rate***, … [and] the amount of the tip credit, if any, to be taken from the ***basic minimum hourly rate***…."  12 N.Y.C.R.R. § 146-2-2(a).  The regulations define "basic minimum hourly rate" as $7.25 per hour.  *See* 12 N.Y.C.R.R. § 146-1.2.   The regulations separately define the food service worker rate to be "a wage of at least $5.00 per hour…".  *See* 12 N.Y.C.R.R. § 146-1.3(b).  If the regulation required the notice

that Plaintiffs suggest, it would not have differentiated between the tipped employee's "regular hourly pay rate" ($5.00/hr) and the "basic minimum hourly rate" ($7.25/hr).

Plaintiffs' complaint is one of semantics.[5]  As one New York Court held when rejecting a materially identical argument:   "Although plaintiff may have desired the information in a different format, the only issue is whether or not defendants satisfied their legal requirement for notice, which they have."   *Lozano v. Rugfrit 1350 LLC,* No. 159570/2014, 2015 N.Y. Misc. LEXIS 1451, at *13 (N.Y. Sup. Ct. Apr. 27, 2015); *accord Khereed v. W. 12th St. Rest. Grp. LLC,* No. 15-cv-1363 (PKC), 2016 U.S. Dist. LEXIS 16893, at *7-8 (S.D.N.Y. Feb. 11, 2016) (denying employee's motion for summary judgment where notice stated the employee was paid a rate of $5.00 per hour and $7.50 for overtime); *accord Salinas v. Starjem Rest. Corp.,* 123 F. Supp. 3d 442, 475, n. 2 (S.D.N.Y. 2015) (rejecting employees' argument that notice was defective because it stated Plaintiffs would be paid regular rate of $5.00 per hour).   Here, Defendants satisfied their legal requirement for notice by informing employees of the "amount of the tip credit ["credit shall not exceed $2.25 per hour"]… to be taken from the basic minimum wage ["$7.25 per hour"]."   *See* 12 N.Y.C.R.R. § 146-2.2; Dkt. 244 at p. 12.[6]   For these reasons, Plaintiffs' motion must be denied.

---

[5] Plaintiffs also claim in conclusory fashion that the wage form "misled the employees."  Pl. Mem. at 17.  Plaintiffs do not, however, cite a single fact to support their contention that any employee was misled.  *Id.*

[6] Plaintiffs argue that the "form falsely told employees their overtime rate was the minimum wage, not time and one-half the minimum wage."  *See* Pl. Mem. at 17.  While the overtime rate on the "Tip Credit Notification-NY Server" form is incorrect, Plaintiffs nevertheless received written notice of their correct overtime rate(s) on their paystubs. *See* Pl. Appx., Ex. A, ¶ 1. Therefore, Defendants did not need to provide a corrected wage notice.  *See* N.Y.LAB.L. § 195(2) ("Every employer shall… notify his or her employees in writing of any changes to the information [in the wage notice] at least seven calendar days prior to the time of such changes, ***unless such changes are reflected on the wage statement***…") (emphasis added).  *See also Khereed,* 2016 U.S. Dist. LEXIS 16893, at *7-8 (denying employee motion for summary judgment where notice stated rate was $5.00 per hour and $7.50 for overtime).

IV.   **PLAINTIFFS ARE NOT ENTITLED TO ANY DAMAGES, INCLUDING LIQUIDATED DAMAGES AND PREJUDGMENT INTEREST.**

    A.   **Plaintiffs Are Not Entitled To Any Damages Because They Have Not Met Their Burden As To Liability.**

Plaintiffs bring their claims only under the HWO.  *See* Pl. Mem., *generally*.  Plaintiffs have failed to satisfy their burden to prove that Defendants' wage notices or pay stubs violated the HWO.  *See* Sections I-III, *supra*; Def. Mem. at 23-31.  Therefore, Plaintiffs are not entitled to any damages, including liquidated damages or prejudgment interest.

    B.   **Even If Defendants' Wage Notices Or Pay Stubs Were Deficient, Plaintiffs Are Not Entitled To The Damages They Seek.**

Even if Defendants' wage notices or pay stubs were deficient, for the reasons stated above and in Defendants' Motion for Summary Judgment, Defendants could still claim the tip credit, and Plaintiffs are not entitled to the differential between the tip credit rate and standard minimum wage.  *See* Sections I - III, *supra*; Def. Mem. at 10-17.  And, because Defendants properly paid Plaintiffs the tip credit wage, Plaintiffs are not entitled to any liquidated damages. Pursuant to N.Y. LAB Law § 663(1), an employee is only entitled to "an additional amount as liquidated damages" for "underpayment of wages."  *See* N.Y. LAB L. § 663(1); *accord* § 198(1-a).  As set forth above, there is no underpayment of wages.  Plaintiffs do not claim that they were ever paid less than the standard minimum wage.  *See* Pl. Mem., *generally*.  And, the NYDOL confirmed that Defendants properly claimed the tip credit, because a food service employer is eligible to claim the tip credit even when they fail to provide written notice of the tip credit. *See* Dkt. 281-4 at 19.  Accordingly, because Plaintiffs were paid all wages due, there was no "underpayment of wages," and Plaintiffs are not entitled to liquidated damages.

C. **Even Assuming Arguendo That Liquidated Damages Could Be Imposed, Plaintiffs Are Not Entitled To Liquidated Damages Here.**

Even if this Court found that Defendants were liable for underpayment of wages, Plaintiffs are not entitled to 100 percent liquidated damages for the entire statute of limitations period. N.Y. LAB Law § 198 only provided for 25 percent liquidated damages prior to April 9, 2011. *See* N.Y. LAB. Law § 198(1-a) (2009). It was not until April 9, 2011 that the law was amended to raise the amount of liquidated damages recoverable from 25 percent to 100 percent. *See* N.Y. Lab. L. § 198(1-a) (2010).

Plaintiffs also bear the burden to prove willfulness to recover 25 percent liquidated damages for violations that accrued prior to November 24, 2009. *See* N.Y. LAB. Law § 198(1-a) (2008). To meet that burden, Plaintiffs must offer evidence that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Hart v. Rick's Cabaret Int'l, Inc*., No. 09 Civ. 3043 (PAE), 2013 U.S. Dist. LEXIS 129130, at *90 (S.D.N.Y. Sept. 10, 2013) (citations omitted). "'Mere negligence' or unreasonableness on the part of the employer is insufficient." *Id*. (citations omitted). "[P]laintiffs must prove more than that defendant 'should have known' it was violating the law. 'Should have known' implies a negligence or 'reasonable person' standard. Reckless disregard, in contrast, involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Hart*, 2013 U.S. Dist. LEXIS 129130, at *91 (citations omitted). On November 24, 2009, New York adopted the "good faith affirmative defense" to liquidated damages. *See* N.Y. LAB Law § 198(1-a) (2009). "To establish the requisite subjective 'good faith,' an employer must show that it took 'active steps to ascertain the dictates of the [law] and then act to comply with them.'" *Hart*, 2013 U.S. Dist. LEXIS 129130, at *93 (citations omitted). As this Court previously

recognized in denying Plaintiffs' motion for summary judgment on liquidated damages, "state of mind determinations are generally not appropriate for the Court to make."  Dkt. 205 at 33.

With respect to Plaintiffs' pay stub claims, Defendants took affirmative steps to ascertain and comply with the law in multiple ways. Defendants retained and relied on a highly qualified, reputable outside payroll company, Paychex, Inc., to provide legally compliant pay stubs to Plaintiffs.  *See* Pl. Appx., Ex. B, at 197-203.[7]  Plaintiffs argue that the payroll processor "was clear that it was providing no advice about whether the pay statement complied with the law." *See* Pl. Mem. at 20.  In support, Plaintiffs cite to fine print in the contract that reads:  "Client acknowledges and agrees that Paychex is not rendering legal, tax, accounting, or investment advice <u>in connection with</u> the <u>services</u> to be performed."  Of course, it makes sense that Paychex would include this disclaimer in their contracts so that clients did not assume that Paychex was providing legal advice regarding wages, overtime, taxes, deductions or other issues relating to how its clients compensate their employees, which certainly bear some "<u>connection with</u>" the payroll <u>services</u> Paychex provides.  It defies reason, however, to interpret this language to mean that Paychex was not agreeing to provide Defendants with a legally compliant <u>product</u> – i.e., the paystub.  And, nowhere in the contracts does Paychex claim that it is not agreeing to provide a legally compliant paystub.  *See* Pl. Appx., Exs. D-1 to D-5.  To the contrary, it is Paychex's ***business*** to provide paystubs, and it was entirely reasonable for Defendants to rely on this reputable payroll company to provide them with compliant paystubs.[8]

---

[7] Citations to documents in Plaintiffs' Appendix, filed with this Court on October 7, 2016, and located at Docket Nos. 288, 288-1 through 288-11, shall be cited herein as "Pl. Appx. at [Exhibit, Page Number, Etc.]."

[8] Plaintiffs assert that "defendants knew what the regulation required and knew their paystubs did not comply."  Pl. Mem. at 20.  This bald assertion is unsupported by the record.  To the contrary, Defendants' 30(b)(6) witness made clear that Defendants reasonably relied on their outside payroll company to provide legally compliant paystubs.  *See* Pl. Appx., Ex. B, at 197-203.  Plaintiffs also claim that "even after this Court in August of 2014 directly noted to defendants the numerous deficiencies in their arguments justifying their pay statement defendants simply ignored this Court's ruling and did nothing to correct their paystubs."  *See* Pl. Mem. at 20.  Again, Plaintiffs endeavor to recast the August 5 Decision into something it is not.  In the August 5 Decision, this Court ***denied*** Plaintiffs' motion

Furthermore, it is undisputed that Defendants, through their payroll company, provided Plaintiffs with pay stubs throughout the relevant time period, and that Plaintiffs were always paid in accordance with N.Y. LAB Law § 652(4).  *See* Dkt. 244 at ¶ 1; Dkt. 249 at ¶ 6.  It is also undisputed that the pay stubs clearly listed the hourly rate paid by the Defendants to tipped employees as "REG-TIPPED"; the total tips claimed by the employee as "TIPS IN"; and any tip makeup pay provided by Defendants as "TIP MAKE UP" or "TIPS TO MINIMUM."  *See* Dkt. 244 at ¶ 1. At all relevant times, Defendants displayed the New York State and Federal Employment Regulations, which specified the standard minimum wage, and notified employees that tips earned would be credited toward the minimum wage.  *See* Dkt. 249 at ¶ 1; Dkt. 176-6 at ¶ 17, Ex. 2-G; Pizzutelli Decl. at ¶ 6, Ex. 5.[9] Defendants also provided verbal notice to employees that Defendants would take a tip credit, that employees would be paid the tipped minimum wage, and that Defendants would provide extra pay if an employee's tips were insufficient to bring the employee up to the basic minimum hourly rate for the week.  *See* Dkt. 249 at ¶¶ 2-6.  If these undisputed facts do not demonstrate good faith on the part of Defendants to comply with the law, then it is hard to imagine under what scenario the good faith defense would apply.  For these reasons, Plaintiffs' motion should be denied.  *See, e.g., Franco v. Jubilee First Ave. Corp.,* No. 14-CV-007729 (SN), 2016 WL 4487788, at *18 (S.D.N.Y. Aug. 25, 2016) (denying plaintiffs' motion for summary judgment on liquidated damages where defendants relied on advice from their payroll company, and verbally informed employees of tip credit); *accord Khereed,* 2016 U.S. Dist. LEXIS 16893, at *18-19 (denying plaintiff's motion for

---

for summary judgment and declined to find that Defendants' pay stubs were non-compliant.  (Dkt. 205 at 19-25).  *See Hart,* 2013 U.S. Dist. LEXIS 129130, at *91 ("[A] risk of being found legally liable for a given business practice does not necessarily bespeak a corporate determination that this practice is unlawful.  Nor is it necessarily reckless to adhere to such a practice in the face of a legal risk").

[9] The Declaration of Jessica F. Pizzutelli in Support of Defendants' Motion for Summary Judgment, sworn to on September 22, 2016 and located at Dkt. 281-1 shall be referred to herein at "Pizzutelli Decl."

summary judgment as to liquidated damages where employer retained a qualified payroll company and provided wage documentation to all employees).

With respect to Plaintiffs' wage notice claims, it is undisputed that Defendants provided wage notices throughout the relevant time period and that Plaintiffs were always paid in accordance with N.Y. LAB Law § 652(4). *See* Dkt. 244 at ¶¶ 5-9, Exs. B-F; Dkt. 176 at ¶¶ 12-13; Dkt. 249 at ¶¶ 5-6. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████. *See* Pl. Appx., Ex. B, at 212-14, Ex. B-6; Def. Appx., Ex. 5, at 209; *Id.* at Ex. 10, at Ex. A.[10] ████████████████████████████████

████████████████████████████████████████. *See* Pl. Appx. at Ex. B-6. ████████████████████████████████

████████████████████████████████████. *See* Pl. Mem at 7-8, 20-21.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████. *See* Pl. Appx. at Ex. B-6; Def. Appx., Ex. 10 at Ex. A; Dkt. 244 at ¶ 6, Ex. C.[11]

Furthermore, at all relevant times, Defendants displayed the New York State and Federal Employment Regulations, which specified the standard minimum wage, notified employees that tips earned would be credited toward the minimum wage, and that Defendants would provide tip

---

[10] Citations to Defendants' Appendix, dated February 13, 2017, shall be cited herein as "Def. Appx. [Exhibit number, page number, etc.]."

[11] ████████████████████████████████████████████ *See* Pl. Mem. at 21. However, Defendants separately provided Plaintiffs with the "Tip Credit Notification-NY Server," which included the necessary tip credit notices for those employees that were required to receive this notice under the HWO. *See* Dkt. 244 at ¶ 6, Ex. C. And, Defendants reasonably deleted the reference to "allowances" from the hourly employee wage notice, because they did not provide tipped employees with allowances, such as meal, food and lodging. *See* Pizzutelli Decl., Ex. 4, at 67:25-9.

make up pay. *See* Dkt. 249 at ¶ 1; Dkt. 176-6 at ¶ 16-17, Exs. 2-F, 2-G; Pizzutelli Decl. at ¶ 6, Ex. 5.  Defendants provided employees with paystubs that also clearly reflected that employees were being paid a tipped minimum wage, the amount of tips claimed, and the tip makeup pay provided.  *See* Dkt. 244 at ¶ 1.  Defendants provided verbal notice to employees that Defendants would take a tip credit, that employees would be paid the tipped minimum wage, and that Defendants would provide extra pay if an employee's tips were insufficient to bring the employee up to the basic minimum hourly rate for the week.  *See* Dkt. 249 at ¶¶ 2-6; Dkt. 176-6 at ¶¶ 9-13; Pizzutelli Decl. at ¶ 5, Ex. 4 at 85:17-87:23.  As with Plaintiffs' pay stub claims, if these undisputed facts do not demonstrate good faith to comply with the law, then it is hard to imagine under what scenario the good faith defense would apply.  This is simply not a case where an employer is flagrantly disregarding the labor law and failing to pay its employees in accordance with it.  For these reasons, Plaintiffs' motion for summary judgment should be denied.  *Hart*, 2013 U.S. Dist. LEXIS 129130, at *93 (denying plaintiffs' motion for summary judgment regarding good faith defense where Court could not rule out showing that employer took active steps to ascertain dictates of FLSA and then act to comply with them).

### D.   Plaintiffs Are Not Entitled To Prejudgment Interest On Liquidated Damages.

Plaintiffs also seek prejudgment interest on liquidated damages.  *See* Pl. Appx., Ex. K, ¶¶ 18-19, 25, 29, 34, 39, 43, 47.  Plaintiffs are not entitled to prejudgment interest on liquidated damages as a matter of law.  *See Diaz v. AJE Mgmt. Corp.,* No. 15 Civ. 1602 (AT) (JCF), 2017 U.S. Dist. LEXIS 4324, at *11 (S.D.N.Y. Jan. 10, 2017) ("Pre-judgment interest is available on actual damages awarded under the NYLL, but not on liquidated damages"); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015) (same) (citing cases).

**E.    The Gurnius Affirmation Should Be Excluded.**

Plaintiffs' motion for summary judgment must also be denied for the separate reason that Plaintiffs rely, entirely, on the Affirmation of Dr. Audrius Girnius ("Girnius Affirmation") to support their damages calculations.   However, the first time Defendants learned of the calculations appended to the Girnius Affirmation was when Plaintiffs' served their summary judgment papers.  *See* Def. Appx., Ex. 10 at ¶¶ 2-5.  The Girnius Affirmation is different than the declaration of Dr. Girnius produced to Defendants in discovery and contains new calculations not previously disclosed to Defendants. *Id.; compare* Pl. Appx. Ex. K to Pizzutelli Decl. at ¶ 8, Ex. 7.  Because Plaintiffs did not disclose these computations to Defendants, as required by FED. R. CIV. P. 26(a)(1)(c), and because Defendants did not have the opportunity to take discovery regarding Dr. Girnius' revised calculations and therefore meaningfully challenge same, this evidence must be excluded.  *See Design Strategy, Inc. v. Davis,* 469 F. 3d 284, 296-297 (2d Cir. 2006) (affirming district court order precluding party from presenting evidence because it had not disclosed damages computation as required by FED. R. CIV. P. 26(a)(1)(c)).

Further, far from being "undisputed," even if Plaintiffs were entitled to the differential damages they seek (they are not), there are disputed issues of material fact regarding whether the calculations contained in the Girnius Affirmation are accurate.  *See* Defendants' Local Rule 56 Opposing Statement and Counter-Statement of Material Facts, at ¶ 49; *accord Lopez v. Maino,* 15-CV-2285, 2017 U.S. Dist. LEXIS 5367, *19 (S.D.N.Y. Jan. 13, 2017) ("factual disputes regarding the amount of damages cannot be resolved on summary judgment").

**V.    T.L. CANNON CORP. AND T.L. CANNON MANAGEMENT CORP. ARE NOT PLAINTIFFS' EMPLOYER.**

Defendants agree that TLC West, LLC employed class members in its region, and TLC Central, LLC employed class members in its region.  Plaintiffs claim, however, that "the other

corporate defendants are also the plaintiffs' employers." *See* Pl. Mem. at 21. The only facts proffered by Plaintiffs in support of this contention relate to T.L. Cannon Management Corp. *See* Pl. Mem. at 22-29. Accordingly, to the extent Plaintiffs claim that T.L. Cannon Corp., TLC Utica, LLC, or TLC North, LLC are Plaintiffs' employer, Plaintiffs' motion for summary judgment must be denied as unsupported by the factual record. Indeed, T.L. Cannon Corp. "has no purpose." *See* Def. Appx., Ex. 3, at 29:10-31:6; Pl. Appx., Ex. I, at 71:14-16. It has no employees, and has no revenue coming into it. *Id.* Similarly, there are no restaurants in TLC, Utica, LLC, and TLC North, LLC has never had a single restaurant or single employee. *Id.* at 22:16-22; *see also* Pl. Appx., Ex. H, at 16:10-23; Def. Appx., Ex. 3, at 17:19-18:20; Pl. Appx., Ex. I, at 59:8-20. And Defendants dispute many facts Plaintiffs rely upon in support of their contention that T.L. Cannon Management Corp. is Plaintiffs "employer." *See* Defendants' Local Rule 56 Opposing Statement and Counter-Statement of Material Facts, at ¶¶ 78-109. Indeed, despite Plaintiffs' contention, there is no joint control or parent-subsidiary relationship among the corporate Defendants, and each entity is its own stand-alone company. *See* Pl. Appx., Ex. I, at 16:16-19:11, 21:17-24:10; *see also Hart,* 967 F. Supp. 2d at 940, n. 16 (declining to apply single employer / integrated enterprise test in the FLSA context). Because there are disputed issues of material fact, Plaintiffs' motion for summary judgment should be denied.

## VI.   <u>THE INDIVIDUAL DEFENDANTS ARE NOT PLAINTIFFS' EMPLOYERS.</u>

Plaintiffs assert that the individual defendants should be jointly and severally liable, because they allegedly possessed "operational control." *See* Pl. Mem. at 29-35. Courts apply an "economic reality" test to determine whether an individual is an employer under the FLSA. *See Irizarry v. Catsimatidis*, 722 F.3d 99, 111 (2d Cir. 2013). Relevant factors include: "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employment records.'"  *Id*.  at 104-105.  Courts also
examine whether alleged individual employers possess "operational control" over the company's
employment of the plaintiff.  *Id.* at 109.  In *Irizarry,* the Second Circuit observed that "[e]vidence
that an individual is an owner or officer of a company, or otherwise makes corporate decisions
that ***have nothing to do with an employee's function***, is insufficient to demonstrate 'employer'
status."  *Id.* (emphasis added).  To be an "employer," an individual must have "some degree of
individual involvement in a company in a manner that ***affects employment-related factors*** such
as workplace conditions and operations, personnel, or compensation….".  *Id.* (emphasis added).
"Ownership, or a stake in a company, is insufficient to establish that an individual is an
'employer' without some involvement in the company's employment of the employees."  *Id.*

   Here, Plaintiffs seek summary judgment only with respect to their NYLL claims.[12]  This
motion must be denied, because: (1) there are genuine disputes over many of the facts upon
which Plaintiffs rely; and (2) because, even applying the FLSA's broader definition of
"employer," the individual defendants here do not qualify as "employers" under the NYLL.[13]

### A.    David Stein Is Not Plaintiffs' Employer.

   Plaintiffs do not proffer any evidence that David Stein ("Stein") is Plaintiffs' employer.
Plaintiffs do not assert that Stein had the power to hire and fire Plaintiffs; that he supervised or

---

[12] Importantly, although the Second Circuit in *Irizarry* held that the above tests applied to FLSA claims, the Second Circuit declined to hold that the same "employer" test applied to claims under the NYLL, instead finding that the question had yet to be answered by the New York Court of Appeals.  *Id.* at 117. The Court did not opine regarding what test would apply under the NYLL. *Id.*  The Second Circuit has previously cautioned that at least some parts of the NYLL utilize a more restrictive definition of "employer."  *See Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 78-79 (2d Cir. 2003) (noting similarities between FLSA and NYLL § 651, but distinguishing apparently narrower definition in NYLL §190).

[13] When evaluating whether there are genuine disputes of material fact, a court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Lopez,* 2017 U.S. Dist. LEXIS 5367, *8 (finding material disputes of fact as to employment relationship of the parties) (internal citation omitted).  "It is a settled rule that [c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Id.* (internal citation omitted).

controlled employee work schedules or conditions of employment; that he determined the rate or method of payment; or that he maintained any employment records.  *See* Pl. Mem. at 31.

Instead, Plaintiffs argue that Stein had "operational control" because he was "co-founder of the company" and "a shareholder."  *See* Pl. Mem. at 31.  This is not enough.  *Irizarry,* 722 F.3d at 109 ("Ownership, or a stake in a company, is insufficient to establish that an individual is an 'employer'"); *accord Tapia v. Blch 3rd Ave. LLC,* No. 14-cv-8529 (AJN), 2016 U.S. Dist. LEXIS 118313, at *27 (S.D.N.Y. Sept. 1, 2016) (that individual defendant is "a 50% shareholder in [company]… is insufficient, standing alone, to establish individual FLSA liability").  Plaintiffs also claim that "at times" Stein "attended senior staff meetings."  *See* Pl. Mem. at 31.  This is misleading.  Stein was not present for the senior staff meetings, but instead would "at times" stop by for lunch.  *See* Pl. Appx., Ex. I, at 51:9-52:12.  Finally, Plaintiffs claim that Stein "made decisions about distributions of profits."  *See* Pl. Mem. at 31.  This assertion is unsupported by the record, and even if true, such evidence relates to "corporate decisions that have nothing to do with an employee's function," which the Second Circuit has warned is "insufficient to demonstrate 'employer' status."  *Irizarry,* 722 F.3d at 109.

The truth is that Stein is retired, and has been for over eleven years.  *See* Pl. Appx., Ex. I, at 83:3-7.  He is a financial investor in the Company, nothing more.  *See* Pl. Appx., Ex. F, at 14; Ex. G, 14:8-12; Ex. H, 28:22-29:3; Ex. I, 89:12-16.  Plaintiffs seek to hold Stein individually liable for millions of dollars by sole virtue of the fact that he is a shareholder for some of the corporate Defendants.  The law is clear that this is not enough.  *Irizarry,* 722 F.3d at 109; *Tapia,* 2016 U.S. Dist. LEXIS 118313, at *27.  Plaintiffs' motion should be denied.

**B.    Matthew Fairbairn Is Not Plaintiffs' Employer.**

Similarly, Matthew Fairbairn ("Fairbairn") is not Plaintiffs' employer.  Fairbairn does not hire or fire restaurant level employees such as Plaintiffs, nor does he comment on any human

resources related decisions.  *See* Def. Appx., Ex. 7, ¶¶ 2-10; Pl. Appx., Ex. I, at 85; Ex. G, 14:7-21, 16:3-10.  And, Plaintiffs do not assert (because they cannot) that Fairbairn supervises or controls employee work schedules or conditions of employment; determines the rate or method of payment for Plaintiffs; or maintains any employment records.  *See* Pl. Mem. at 32-33; *accord* Def. Appx., Ex. 7.  Simply put, Fairbairn is not involved in the day-to-day operations of any of the corporate Defendants.  *See* Pl. Appx., Ex. F, at 12:20-24; Ex. H, 27:10-13.

Nevertheless, Plaintiffs claim that Fairbairn had "operational control over the business" because he: (1) was co-founder, president and a shareholder in various of the corporate defendants (Pl. Mem. at 32); (2) "managed other high level employees" and determined the compensation for Ritch Mabry and John Perry (*Id.*); (3) visited the restaurants (*Id.*); (4) was involved in determining the distributions made to shareholders (*Id.*); (5) attended senior staff meetings (*Id.*); (6) reviewed profit and loss statements "for the company" (*Id.*); (6) was "very involved" in running the company (*Id.* at 33); (7) had "authority for budgeted amounts for the company" (*Id.*); (8) set "goals" for the overall business for the year (*Id.*); (9) was "involved" with the policies and practices of the company, including employment and labor regulations (*Id.*); and (10) because the Director of Human Resources, Susan Sabio, reported to John Perry, who reported to Fairbairn (*Id.*).  These asserted facts are either untrue, or insufficient to make Fairbairn an "employer" under the NYLL as a matter of law.

First, as noted above, ownership interest is not enough to establish "employer" status. *Irizarry,* 722 F.3d at 109; *Tapia,* 2016 U.S. Dist. LEXIS 118313, at *27.

Second, there is no evidence that Fairbairn "manage[d] other high level employees," and Fairbairn certainly did not manage Plaintiffs or even their direct managers.  *See* Def. Appx., Ex. 7, at ¶¶ 2-5.  Even if he did, that does not make him Plaintiffs' employer.  *See Tapia,* 2016 U.S.

Dist. LEXIS 118313, at *26 (shareholder was not "employer" under NYLL despite the fact that he "played at least some part in directing employees and managers in carrying out their tasks").

Third, although Plaintiffs claim that Fairbairn visited the individual restaurants, these visits were infrequent. Fairbairn lives and works in Florida (Def. Appx., Ex. "1", at 4-5; Ex. 7, ¶ 1), and the restaurants are located in New York. Although Fairbairn would try to visit with "ten multiunit managers" a "couple times a year," "sometimes that doesn't happen." *See* Pl. Appx., Ex. F, at 21-22. And, when Fairbairn did make these visits, they were "largely a social call," and have nothing to do with Plaintiffs or their employment. *Id.* at 23, *see also* Def. Appx., Ex. "1", at 27; Ex. 7 at ¶¶ 1-7; Pl. Appx., Ex. F, 26:10-21, Ex. I, 85:21-23; *Salinas,* 123 F. Supp. 3d at 464 ("[President and CEO's] daily presence at the Restaurant reveals nothing about her level of authority); *Tapia,* 2016 U.S. Dist. LEXIS 118313, at *26 (finding shareholder was not "employer" despite the fact that he "frequented the restaurant").

Fifth, although Plaintiffs claim that Fairbairn "reviewed" profit and loss statements, Fairbairn had no role in determining what budgeted amounts should be for various items on the profit and loss statement, including payroll. *See* Pl. Appx., Ex. I, at 84. Indeed, Fairbairn had no role at all in determining overhead. *Id.* Fairbairn also had no involvement in individual payroll or human resources issues relating to the Plaintiffs. Def. Appx., Ex. 7, ¶ 7. *See Tapia*, 2016 U.S. Dist. LEXIS 118313, at *26 (reviewing payment records was not sufficient to make individual employer).

Sixth, despite Plaintiffs' contention that Fairbairn was "very involved" in running the company, the record makes clear that this "involvement" had nothing to do with the Plaintiffs' employment. Instead, Fairbairn spent the vast majority of his time dealing with the franchisor and other franchisees. *See* Pl. Appx., Ex. F, at 14:8-15:7, 20:4-15. *See Irizarry,* 722 F.3d at 109

(individual defendant must have operational control over the employment of the plaintiff-employees "rather than simply operational control of the company").  Similarly, even if Fairbairn was involved in setting high-level "goals" for the "overall business," or attended senior staff meetings where no decisions were made (Pl. Appx., Ex. I, at 51:2-13), this has nothing to do with the terms and conditions of Plaintiffs' employment.  *Id.*; Pl. Appx., Ex. G, 14:2-16:24.

Finally, the record belies Plaintiffs assertion that Fairbairn was "involved" with the policies and labor practices of the company, including employment regulations.  *See* Def. Appx., Ex. 1, at 34, 42-43; Pl. Appx., Ex. G, at 14; *see also* Def. Appx., Ex. 2, at 16-17; Ex. 7 at ¶¶ 8-10.  To the contrary, Fairbairn employed staff to "understand all the detail and the minutia" and it is his staff, specifically the Director of Human Resources, who are "charged with the responsibility of making sure [the company] is in compliance."  *See* Def. Appx., Ex. 1, at 34; *see also Wirtz v. Pure Ice Co., Inc.,* 322 F.2d 259, 262-263 (8th Cir. 1963) (upholding trial court determination that individual was not employer because he "left the matter of compliance with the Fair Labor Standards Act up to the various managers of the businesses in which he had an interest") (cited with approval by *Irizarry*); *accord Ponce v. LaJaunie,* No. 152551/2014, 2015 N.Y. Misc. LEXIS 2522, at *6 (N.Y. Sup. Ct., N.Y. Cty. July 15, 2015) (single email relating to employees' work hours, by itself, was not dispositive as to whether individual defendant controlled plaintiffs' conditions of employment).  Plaintiffs' motion should be denied.

### C.    John Perry Is Not Plaintiffs' Employer.

As with Stein and Fairbairn, John Perry ("Perry") is not Plaintiffs' employer.  Perry did not hire and fire restaurant level employees such as Plaintiffs, nor did he hire and fire Plaintiffs' direct managers.  *See* Def. Appx., Ex. 8, at ¶¶ 2-3.  Indeed, Perry testified at deposition that it would be ***inappropriate*** for him to ask a direct report to fire restaurant level employees such as Plaintiffs.  *Id.*  He was not involved in disciplining, setting daily or weekly schedules, monitoring

attendance or other conditions of employment for Plaintiffs.  *See* Def. Appx., Ex. 2, at 68-69. Further, Perry was not involved in setting compensation or making payments to the Plaintiffs. *Id.* at 92-93.  Nor was Perry responsible for maintaining employment records.  *See* Def. Appx., Ex. 3, at 93:19-94:4; Def. Appx., Ex. 8, ¶ 4.

Nevertheless, Plaintiffs claim that Perry is their employer because: (1) he is President of various corporate Defendants, and because he was a shareholder of TLC West and TLC Central (Pl. Mem. at 33); (2) his "role included monitoring wage and hour compliance" (*Id.* at 34); (3) he was "involved" in the approval of Company's best practices procedures (*Id.*); (4) the Director of Human Resources reported to Perry (*Id.*); (5) he visited the individual restaurants (*Id.*); (6) he attended senior staff, department head, and director of operations meetings (*Id.*); (7) he reviewed sales performance and operations metrics (*Id.*); (8) he had "authority over budgeted amounts for the company" and developed a bonus plan for directors of operations (*Id.* at 35); (9) he "set goals for the overall business for the year" (*Id.*); and (10) he was involved in determining distributions to shareholders (*Id.*).  These assertions are either untrue or not enough.

First, as noted above, ownership interest is not enough to establish "employer" status. *Irizarry,* 722 F.3d at 109; *Tapia,* 2016 U.S. Dist. LEXIS 118313, at *27.

Second, Perry's role did not include "monitoring wage and hour compliance."  *See* Pl. Mem. at 34; Pl. Appx., Ex. G, at 102.  To the contrary, even according to Plaintiffs' own Statement of Material Facts Not in Dispute, Perry did not inquire whether the company complied with wage and hour laws, but instead left that function to the Director of Human Resources.  *See* Pl. Statement at ¶¶ 25-26; *accord* Pl. Appx., Ex. G, at 38:11-21; *Wirtz,* 322 F.2d at 262.

Third, Perry was not "involved" in the approval of the Company's best practices procedures.  *See* Pl. Mem. at 34.  To the contrary, Perry would typically be ***notified*** of any best

practices and procedures, as an FYI, but would not be **involved** in their development.  *See* Pl. Appx., Ex. B, at 169.  *See Salinas,* 123 F. Supp. 3d at 465 (CEO and President was not "employer" under NYLL despite having "input" into policy document).

Fourth, it is not material whether the Director of Human Resources reported to Perry. And, Perry has never over-ruled a decision made by the Director of Human Resources.  *See* Def. Appx., Ex. 8, ¶ 7.  Further, Perry had no role in supervising either Plaintiffs, or Plaintiffs' managers.  *See* Def. Appx., Ex. 8, ¶¶ 2-3.  *See Tapia,* 2016 U.S. Dist. LEXIS 118313, at *26 (shareholder was not "employer" under NYLL despite the fact that he "played at least some part in directing employees and managers in carrying out their tasks"); *Ponce,* 2015 N.Y. Misc. LEXIS 2522, at *6 (no evidence that individual controlled rate or method of pay, where record revealed that plaintiffs' wages were determined by other staff).

Fifth, that Perry would visit the individual restaurants reveals nothing about his control over the Plaintiffs.  *Salinas,* 123 F. Supp. at 464; *Tapia,* 2016 U.S. Dist. LEXIS 118313, at *26.

Sixth, Perry did not determine distributions to shareholders, nor did he have financial control over any of the corporate Defendants.  Def. Appx., Ex. 8, at ¶¶ 5-6.  For example, Perry could not close a restaurant, declare bankruptcy, sign a paycheck, or procure a loan on behalf of any of the corporate Defendants.  *Id.*

Seventh, even if Perry attended leadership meetings, reviewed sales/operations metrics, reviewed the budget, and set high level business goals, none of these facts relate to Plaintiffs' employment. *See Irizarry,* 722 F.3d at 109 (individual defendant must have operational control over the employment of the plaintiff-employees "rather than simply operational control of the company").  Plaintiffs' motion should be denied.

### D.   *Irizarry* Is Distinguishable.

Plaintiffs cite only one case, *Irizarry v. Catsimatidis,* in support of their claims that Stein, Fairbairn, and Perry are "employers."  *See* Pl. Mem. at 29-35.  In *Irizarry,* the Second Circuit considered whether an individual defendant was an "employer" under the FLSA.  The Court found it significant that the individual defendant had frequent contact with individual stores and employees.  *Irizarry,* 722 F.3d at 116.  The Court also emphasized that the individual defendant dealt with promotion of store personnel.  *Id.*  The Court gave particular weight to the fact that the individual defendant was directly involved in the hiring of managerial employees, who were directly in charge of the plaintiffs.  *Id.* at 114, 116.  In the end, the Court found that the "facts here make for a close case." *Id.* at 116-17.

None of these material facts are present here.  Plaintiffs do not allege that Stein, Fairbairn or Perry had frequent contact with the employees.  Indeed, neither Stein nor Fairbairn even had frequent contact with the individual restaurants.  Def. Appx., Ex. 3, 88:7-15, *supra* Section VI, A-B.  Neither Stein, Fairbairn nor Perry dealt with setting employee daily or weekly schedules, employee discipline, or the hiring, firing or promotion of restaurant personnel, like the Plaintiffs, or their managers.  *See supra* at Section VI, A-C.  This was all done by the general managers at the individual restaurants.[14]  Simply put, this is not the case, such as in *Irizarry*, where the individual defendants have any actual involvement with the plaintiff-employees.  The evidence relied upon by Plaintiffs is based, almost entirely, on the hypothetical authority the individual Defendants might have over the terms and conditions of Plaintiffs' employment – e.g., the hypothetical authority to hire, fire, and direct the Director of Human Resources to make changes to employment policies (even though they do not) – by sole virtue of their positions, and

---

[14] *See, e.g.,* Pl. Appx., Ex. B. 164:20-165:10; Ex. H, 22:5-12, Ex. H-1; Ex. G, 108:15-20; Ex. I, 80:9-81:19, Def. Appx., Ex. 4, 103:4-135:3, 17:3-22:23; 39:2-9, 50:8-11.

completely divorced from the actual facts. Indeed, if this Court were to find, based merely on the allegation that the individual Defendants were the "boss" and therefore had the hypothetical authority to do whatever they please, then nearly every owner and/or high level executive at any company would face potential exposure by mere virtue of their position – which the Second Circuit rejected as a basis for imposing employer liability. *Irizarry,* 722 F.3d at 109; *see also Tapia,* 2016 U.S. Dist. LEXIS 118313, at *26-27. For these reasons, Plaintiffs' motion should be denied.

**<u>CONCLUSION</u>**

For the reasons stated herein, and in Defendants' Motion for Summary Judgment, Defendants respectfully request that Plaintiffs' motion for summary judgment be denied in its entirety, and that Defendants' Motion for Summary Judgment be granted on Plaintiffs' wage notice, pay stub, and FLSA notice claims.

Date:   February 13, 2017  
      New York, New York

*/s/ Jessica F. Pizzutelli*  
Craig R. Benson, Esq.  
Jessica F. Pizzutelli, Esq.  
LITTLER MENDELSON, P.C.  
900 Third Avenue  
New York, NY  10022  
(212) 583-9600  
cbenson@littler.com  
jpizzutelli@littler.com  
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of February, 2017, a true and accurate copy of: (1) Defendants' Opposition to Plaintiffs' Motion for Summary Judgment; (2) Defendants' Local Rule 56 Opposing Statement and Counter-Statement of Material Facts; and (3) Defendants' Appendix to Opposing Statement and Counter-Statement with Exhibits 1-11, were sent via e-mail to the following:

> J. Nelson Thomas, Esq.
> nthomas@theemploymentattorneys.com
>
> John Ferris
> jwferris@theemploymentattorneys.com
>
> Jessica Lukasiewicz, Esq.
> jlukasiewicz@theemploymentattorneys.com
>
> *Attorneys for Plaintiffs*

*/s/ Jessica F. Pizzutelli*_____
Jessica F. Pizzutelli

1