UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ASHLEY HICKS, *et al.*,

                    Plaintiffs,

            v.

T.L. CANNON MANAGEMENT CORP., TLC
WEST LLC, TLC CENTRAL LLC, TLC
NORTH LLC, MATTHEW J. FAIRBAIRN,
JOHN A. PERRY, T.L. CANNON CORP., and
DAVID A. STEIN,

                    Defendants.

**DECISION AND ORDER**

13-CV-06455 EAW



## INTRODUCTION

Plaintiffs commenced this action on September 23, 2012, alleging violations of the New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, related to Defendants' alleged failure to pay minimum wages to Plaintiffs. (Dkt. 82). Currently before the Court are the parties' competing motions for partial summary judgment (Dkts. 281, 285) related to two claims: (1) Plaintiffs' claim that Defendants did not comply with the New York State requirements related to information that must be provided on a pay stub where the employer takes a tip credit (the "Pay Statement Claims"); and (2) Plaintiffs' claim that after January 1, 2011, Defendants failed to comply with the provisions of the New York State Wage Order for the Hospitality Industry ("the Wage Order") (12 N.Y.C.R.R. Part 146) requiring them to provide certain notices to employees before taking a tip credit (the "Wage Notice Claims"). For the

- 1 -

reasons discussed below, both motions are denied.  However, the Court amends it prior determination concerning the availability of an affirmative defense to Defendants under NYLL § 198, but declines to grant summary judgment in favor of Defendants on that defense due to outstanding issues of disputed facts.

## FACTUAL BACKGROUND

The factual background of this case is set forth in detail in this Court's Decision and Order entered August 5, 2014 (Dkt. 205) (the "August 5th Decision and Order"), familiarity with which is presumed for purposes of this Decision and Order.  In the August 5th Decision and Order, the Court granted Plaintiffs' motion for class certification, granted in part and denied in part Plaintiffs' motion for partial summary judgment, and denied Defendants' motion for partial summary judgment. (Dkt. 205).  In particular, the Court granted summary judgment to named plaintiff Kristin Raymond on her Wage Notice Claim against defendant TLC West, LLC, only, finding that Ms. Raymond had not been provided with a compliant wage notice.  (*Id.* at 30).  The Court has summarized below additional facts that are relevant to the instant motions and that are not contained in the August 5th Decision and Order.

On March 4, 2015, in response to an inquiry regarding the August 5th Decision and Order, Pico Ben-Amotz, General Counsel to the New York Department of Labor (the "NYDOL") authored a letter (the "Opinion Letter") (Dkt. 281-4 at 18-19) to the Hon. Joseph D. Morelle, Majority Leader of the New York State Assembly, in which he purported to "summarize the [NYDOL's] interpretation of the intersection of the tip credit and notice of pay rules in 12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2." *Id.* at 18. The

- 2 -

Opinion Letter states that, contrary to this Court's prior findings, the NYDOL does not interpret 12 N.Y.C.R.R. § 146-1.3 ("§ 146-1.3") as requiring an employer to provide its employees *written* notice of the tip credit rules in order to maintain its eligibility to take the tip credit. Instead, according to the Opinion Letter, the position of the NYDOL is that "a food service employer is eligible to claim the tip credit even when they fail to provide written notice of the tip credit rules provided that the employer can demonstrate compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit." Dkt. 281-4 at 18.

On March 21, 2015, the parties entered into a stipulation whereby they agreed to certain facts. (Dkt. 244) (the "March 21st Stipulation"). In particular, the parties stipulated to the contents of the pay stubs provided by Defendants from September 24, 2006, through the date of March 21st Stipulation, and to the content of certain notices provided by Defendants from October 26, 2009, to June 1, 2011, from June 1, 2011, to June 24, 2013, from January 1, 2012, to June 24, 2013, from June 23, 2013, to December 31, 2013, and from January 1, 2014, to the date of March 21st Stipulation. *Id.* at 1-4. United States Magistrate Judge Marian W. Payson "so ordered" the March 21st Stipulation on March 24, 2015. (Dkt. 244 at 5).

On April 15, 2015, the parties entered into another stipulation. (Dkt. 249) (the "April 15th Stipulation"). Pursuant to the April 15th Stipulation, Plaintiffs agreed that, for purposes of the instant motions for summary judgment, they would not "contend that . . . the motions should be decided because [certain] facts are not true." (*Id.* at 1-2). Those facts include: (1) Defendants prominently displayed in all their restaurants the

- 3 -

New York State and Federal Employment Regulations for years 2006-2015 and the Hospitality Minimum Wage Poster; (2) during the relevant time period, Plaintiffs understood that that they were being paid the tipped minimum wage for all hours they worked in a tipped occupation and had actual knowledge that Defendants were taking tip credits from the minimum wage for employees working as a server, bartender, host, or carside-to-go server; (3) during the relevant time period, Defendants had a policy to provide their employees with verbal notice at orientation that Defendants would take a tip credit and that tipped employees would be paid the tipped minimum wage, and that Defendants further provided verbal notification that they had a policy to pay their tipped employees extra if their tips were insufficient to bring the employee up to the basic minimum hourly wage; (4) during the relevant time period, Plaintiffs were not confused by Defendants' wage notices and pay stubs, nor did they fail to understand the amounts they were being paid; (5) during the relevant time period, in the rare instances where the tips an employee earned, combined with the tipped minimum wage they were paid, did not bring that employee's wage up to the standard minimum wage, Defendants made up the difference; and (6) during the relevant time period, when combining the tipped minimum wage that they received, the tips that they earned, and any tip makeup pay provided, Plaintiffs never earned less than the standard minimum wage. (*Id.* at 1-3). Significantly (and as discussed further below), Plaintiffs did *not* stipulate to the truth of these facts and in fact expressly reserved the right to "inform the Court that they do not believe that discovery will ultimately reveal these asserted facts to be true." (*Id.* at 1). Judge Payson "so ordered" the April 15th Stipulation on April 16, 2015. (*Id.* at 4).

- 4 -

## PROCEDURAL HISTORY

Plaintiffs filed their complaint on September 14, 2012. (Dkt. 1). With leave of the Court, Plaintiffs filed an amended complaint on April 10, 2013, and Defendants filed an answer to the amended complaint on May 24, 2013. (Dkt. 82, 90).

Plaintiffs filed a motion for approval of their FLSA collective action on October 18, 2013, and Defendants filed a cross-motion for approval of their proposed collective action notice on November 15, 2013. (Dkt. 128, 134). On December 10, 2013, the Court entered an order instructing the parties to confer and submit a jointly-approved proposed notice of collective action. (Dkt. 139). The Court approved the final proposed notice of collective action on December 20, 2013. (Dkt. 141).

On January 27, 2014, Plaintiffs filed a motion for class certification and a motion for partial summary judgment as to the named plaintiffs Ashley Hicks and Kristin Raymond, as well as certain opt-in plaintiffs. (Dkts. 143, 144). Defendants cross-moved for partial summary judgment on March 14, 2014. (Dkt. 176). On August 5, 2014, this Court entered the August 5th Decision and Order, granting Plaintiffs' motion for class certification, granting in part and denying in part Plaintiffs' motion for partial summary judgment, and denying Defendants' motion for partial summary judgment. (Dkt. 205).

On September 2, 2014, Defendants filed a motion for reconsideration of portions of the August 5th Decision and Order. (Dkt. 214) (the "Motion for Reconsideration"). The Court denied the Motion for Reconsideration on October 8, 2014. (Dkt. 224).

On October 31, 2014, Plaintiffs filed a second motion for partial summary judgment. (Dkt. 228). On November 5, 2014, the Court entered a Decision and Order

declining to exercise its discretion to entertain a second motion for partial summary judgment and instructing the parties not to file any further dispositive motions prior to the close of fact discovery without leave of the Court. (Dkt. 231).

On November 7, 2014, the Court entered an Order approving the following class definitions: Subclass A, defined as "All current and former tipped employees who worked for Defendants at Applebee's between September 24, 2006 and the present"; and Subclass B, defined as "All current and former tipped employees working for Defendants at Applebee's between January 1, 2011 and December 31, 2013 (but excluding those who were hired between June 24, 2013 and December 31, 2013)." (Dkt. 233).

On June 6, 2016, in response to a request from the parties, the Court entered an Order allowing the parties to file dispositive motions related to the Pay Statement Claims and the Wage Notice Claims. (Dkt. 274). Defendants filed their instant motion for partial summary judgment on October 3, 2016. (Dkt. 281). Plaintiffs filed their instant motion for partial summary judgment on October 7, 2016. (Dkt. 285). The parties filed responses to their opponents' respective motions on March 1, 2017 (Dkts. 297-299), and filed replies in further support of their own motions on March 23, 2017 (Dkts. 305-306). Oral argument on the instant motions was held on December 14, 2017. (Dkt. 315).

## DISCUSSION

### I.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).   Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'"  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87) (emphasis in original).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

## II.    The Impact of the April 15th Stipulation

As a threshold matter, the Court must consider what impact the April 15th Stipulation (Dkt. 249) has on the resolution of the instant motions.   The April 15th Stipulation provides that, with respect to the facts set forth therein, for the sole purpose of the instant motions, Plaintiffs "can inform the Court that they do not believe that discovery will ultimately reveal these asserted facts to be true and that the [asserted facts] are not relevant to the motion[s], but will not contend that any of the motions should be decided because such facts are not true." (*Id.* at 1-2).

Defendants contend that, for purposes of the instant motions, the April 15th Stipulation constitutes agreement to the truth of the facts contained therein by Plaintiffs.

(*See* Dkt. 305 at 2).  Plaintiffs, on the other hand, argue that, according to the plain language of the April 15th Stipulation, they have not conceded that these facts are true and that they have agreed only not to argue that the facts at issue are relevant to the instant motions.  (*See* Dkt. 297 at 8-9).

As a general rule, this Court is bound to enforce a stipulation which it has approved.  *See Sinicropi v. Milone*, 915 F.2d 66, 69 (2d Cir. 1990) (the court has "a "duty to enforce the stipulation which it ha[s] approved") (internal quotation omitted); *see also Fisher v. First Stamford Bank & Tr. Co.*, 751 F.2d 519, 523 (2d Cir. 1984) ("Generally, a stipulation of fact that is fairly entered into is controlling on the parties and the court is bound to enforce it.").  A stipulation is "treated as a contract among the parties . . . and is subject to general principles of contract construction and interpretation."  *United States v. Assets of Revere Armored, Inc.*, 131 F.3d 132, 132 (2d Cir. 1997) (citations omitted).  Accordingly, where the terms of a stipulation are "clear and unambiguous," the Court will enforce them as written.  *Id.*

In this case, the Court agrees with Plaintiffs that the plain language of the April 15th Stipulation forecloses any argument that Plaintiffs have conceded the truth of the facts set forth therein, inasmuch as Plaintiffs expressly reserved the right to "inform the Court that they do not believe that discovery will ultimately reveal these asserted facts to be true. . . ." (Dkt. 249 at 1).  Instead, Plaintiffs stipulated that they would not argue that the facts contained in the April 15th Stipulation were dispositive with respect to any of the instant motions.  Plaintiffs have not done this in their moving papers (to the contrary,

they contend that the facts at issue are wholly irrelevant to the Court's determination), and so the Court does not find that Plaintiffs have run afoul of the April 15th Stipulation.

The Court further notes that, while Plaintiffs may have agreed not to argue that the facts set forth in the April 15th Stipulation should govern the outcome of the instant motions, Plaintiffs' lack of argument in this regard does not preclude the Court from concluding that these facts are indeed dispositive, or that they are material to the resolution of the relevant legal issues. "[A] court is free to disregard stipulations if parties have spoken to the legal effect of admitted facts . . . since the court cannot be controlled by agreement of counsel on a subsidiary question of law." *Marden v. Int'l Ass'n of Machinists & Aerospace Workers*, 576 F.2d 576, 580 (5th Cir. 1978) (internal quotation omitted); *see also Smith-Corona Marchant Inc. v. Am. Photocopy Equip. Co.*, 214 F. Supp. 348, 351 (S.D.N.Y. 1962) ("The court cannot be bound by any understanding between the parties which amounts to an agreement to withhold relevant information from the court. The court is concerned only with ascertaining the merits of this motion. . . ."). As such, to the extent any of the parties contend that the April 15th Stipulation prevents the Court from finding that certain facts are relevant to its consideration of the instant motions, any such agreement by the parties is not binding on this Court and is without legal effect.

## III.    Plaintiffs Have Standing to Bring their Claims

Defendants argue that they are entitled to summary judgment with respect to both the Pay Statement Claims and the Wage Notice Claims because, pursuant to the United States Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016),

Plaintiffs lack standing to bring those claims. More particularly, Defendants argue that *Spokeo* stands for the proposition that "bare procedural, trivial violations, divorced from any concrete injury, do[] not confer standing," and that Plaintiffs have not suffered a concrete injury because they were paid all wages due. (Dkt. 281-6 at 28).

Defendants' argument is based on an overly broad reading of *Spokeo*. In that case, the plaintiff sought to bring a class action lawsuit under the Fair Credit Reporting Act of 1970 (the "FCRA") based on the alleged failure of the defendant, the operator of an online "people search engine," to maintain and disseminate accurate information. 136 S. Ct. at 1544. The Ninth Circuit Court of Appeals held that the plaintiff had standing to bring the claim, inasmuch as he claimed that the defendant had disseminated inaccurate information about him, in derogation of his statutory rights. *Id.* at 1545. The Supreme Court reversed, holding that a "bare procedural violation" of the FCRA is insufficient to confer standing, because "[a] violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550.

Contrary to Defendants' argument, *Spokeo* does not stand for the proposition that a statutory violation, standing alone, can never constitute a concrete injury. In fact, the Court explicitly stated in the *Spokeo* decision that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one [the legislature] has identified." *Id.* at 1549 (emphasis in original); *see also Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) ("We do not understand *Spokeo* categorically to have precluded violations of statutorily mandated procedures from

qualifying as concrete injuries supporting standing. . . .   [S]ome violations of statutorily mandated procedures may entail the concrete injury necessary for standing.").

In this case, the Court finds that violation of the procedures created by the relevant provisions of the NYLL and the FLSA may in fact result in a concrete injury.   These statutes were drafted and enacted to protect the rights of employees such as Plaintiffs, and their procedural provisions are specifically designed to guard against the concrete harm that workers are subject to when they are mis- or uninformed regarding their rights and the responsibilities of their employers.   Indeed, the Court has already soundly rejected Defendants' argument that the issues involved in this matter are trivial or somehow underserving of this Court's attention.   Under these circumstances, a violation of the relevant procedural requirements is sufficient to establish standing.   *See Strubel*, 842 F. 3d at 189 ("where [the legislature] confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient risk of real harm to the underlying interest to establish concrete injury") (internal quotation omitted).

## IV.    Intervening Changes in the Law Warrant Reconsideration of the Court's Earlier Decision on Defendants' Claimed Affirmative Defense

In support of their earlier motion for partial summary judgment, Defendants argued (albeit at oral argument, and not in their moving papers) that they were entitled to the affirmative defense set forth in NYLL §§ 198(1-b) and (1-d) (the "§ 198 Affirmative Defense").   The Court rejected this argument in the August 5th Decision and Order, explaining that, by its own terms, the § 198 Affirmative Defense applied only to violations of NYLL § 195(1)(d), which governs errors or omissions in non-English

language notices. (Dkt. 205 at 29). In the Motion for Reconsideration, Defendants argued that the reference to § 195(1)(d) was a typographical error, and that the Court should therefore apply the § 198 Affirmative Defense, despite the fact that it did not, on its face, apply to Plaintiffs' claims. (*See* Dkt. 214-1 at 11). The Court rejected this argument as well, holding that, to the extent NYLL § 198 ("§ 198") contained a typographical error, it was the province of the legislature, and not this Court, to correct it. (Dkt. 224 at 6-8).

In the interval between the Court's denial of the Motion for Reconsideration and the filing of the instant motions, the New York State legislature amended § 198. On December 29, 2014, amendments to the New York State Wage Theft Prevention Act were enacted and changed the reference from NYLL § 195(1)(d) to NYLL § 195(1)(a). As a result of this intervening change in the law, Defendants contend that the Court should revisit its prior determination that Plaintiffs' claims are not subject to the § 198 Affirmative Defense.

The Court agrees with Defendants that this intervening change in the controlling law warrants revisiting its prior rejection of Defendants' assertion of the § 198 Affirmative Defense. For the reasons discussed below, the Court finds that Plaintiffs' claims are subject to the § 198 Affirmative Defense. However, the Court further finds that, on the current record, Defendants have failed to establish their entitlement to the § 198 Affirmative Defense as a matter of law.

## A.     The § 198 Affirmative Defense Applies to Plaintiffs' Wage Notice and Pay Statement Claims

The current version of § 198(1-b) provides, in relevant part, as follows:

> In any action or administrative proceeding to recover damages for violation of paragraph (a) of subdivision one of section one hundred ninety-five of this article, it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or article nineteen or article nineteen-A of this chapter to the employee who was not provided notice as required by subdivision one of section one hundred ninety-five of this article or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with notice pursuant to subdivision one of section one hundred ninety-five of this article.

New York Labor Law § 198(1-b).   Similarly, the current version of § 198(1-d) provides, in relevant part:

> In any action or administrative proceeding to recover damages for violation of subdivision three of section one hundred ninety-five of this article, it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or articles nineteen or nineteen-A of this chapter to the employee who was not provided statements as required by subdivision three of section one hundred ninety-five of this article or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with statements pursuant to paragraph (e) of subdivision one of section one hundred ninety-five of this article.

New York Labor Law § 198(1-d).

As a threshold issue, Defendants argue, and Plaintiffs have failed to contest in their responsive papers[1], that the December 2014 amendments to the § 198 Affirmative Defense apply retroactively.   The Court agrees.   Under New York law, "[w]hether a

---

[1]     At oral argument, Plaintiffs' counsel indicated for the first time that Plaintiffs contest the retroactive applicability of the amendments to § 198, but did not offer any arguments in support of that position.

statute is to be applied prospectively or retroactively generally requires determination of legislative intent. When a statute creates a new right of action, it is presumed that the Legislature intended the statute to be applied prospectively only unless a contrary intent clearly appears. On the other hand, statutes that are remedial in nature may be applied retrospectively." *Duell v. Condon*, 84 N.Y.2d 773, 783 (1995) (internal citations omitted); *see also In re Gleason (Michael Vee, Ltd.)*, 96 N.Y.2d 117, 122 (2001) ("remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose"). "[T]he reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal." *Duell*, 84 N.Y.2d at 783.

Here, the legislative history of the amendments to the § 198 Affirmative Defense demonstrates that they are remedial and that that the legislature intended them to have retroactive effect. In amending § 198, the State Assembly expressly acknowledged that the reference to § 195(1)(d) was a typographical error and that the amendments were intended to "clarify" and "correct" the provisions relating to the § 198 Affirmative Defense. (*See* Dkt. 281-4 at 26-27). The New York Court of Appeals has recognized that retroactive application of a statutory amendment is appropriate where it is intended to "clarify" a statute. *See Matter of OnBank & Tr. Co.*, 90 N.Y.2d 725, 731 (1997) (amendment applied retroactively where sponsor stated that it was intended to clarify a statute); *see also In re Gleason*, 96 N.Y.2d at 122 (statutory amendments would be applied retroactively where they were meant to "clarify what the law was always meant to do and say").

The Court acknowledges that a Report and Recommendation ("R&R") entered in *Marin v. Apple-Metro, Inc.*, No. 12-cv-5274 (ENV)(CLP) , 2017 WL 4950009 (E.D.N.Y. October 4, 2017) reached a contrary conclusion.[2]   The Court is not persuaded by the analysis of this issue in the *Marin* R&R.  The court in *Marin* did not consider whether the amendments to the § 198 Affirmative Defense were remedial in nature, nor did it discuss the legislative history of the amendments.  Moreover, the cases cited in *Marin* for the proposition that the amendments to the § 198 Affirmative Defense do not apply retroactively are inapposite.  In both *Saucedo v. On the Spot Audio Corp.*, No. 16 CV 451, 2016 WL 8376837 (E.D.N.Y. Dec. 21, 2016) and *Saldana v. New Start Group, Inc.*, No. 14 CV 4049, 2016 WL 3683530 (E.D.N.Y. July 5, 2016), the issue before the court was whether amendments to the amount of liquidated damages provided for in § 198 applied retroactively.  The analysis of whether an increase in the damages available under a statute applies retroactively is fundamentally different from the issue of whether the correction of a typographical error applies retroactively, and the *Marin* R&R does not acknowledge or discuss this difference.  *Chen v. JP Standard Construction Corp.*, No. 14-CV-1086 (MKB), 2016 WL 2909966 (E.D.N.Y. Mar. 18, 2016), the third case cited in the *Marin* R&R, was decided on a motion for default judgment and contains no retroactivity analysis whatsoever.  Accordingly, the Court declines to follow the holding of the *Marin* R&R regarding retroactivity.

---

[2]     Objections to the *Marin* R&R are currently pending, and it has not been accepted by the assigned district judge at this time.

As noted above, Plaintiffs failed to argue in their responsive papers that the amendments to the § 198 Affirmative Defense do not apply retroactively. They do argue that the § 198 Affirmative Defense applies only to actions brought pursuant to NYLL § 195 and that their claims are brought pursuant to NYLL §§ 652 and 663. This argument lacks merit.

As this Court explained in the August 5th Decision and Order, Plaintiffs' Wage Notice Claims are based on the regulatory requirements set forth in §§ 146-1.3 and 146-2.2, which require employers to notify employees of the tip credit prior to taking it. (*See* Dkt. 205 at 26). These regulations were promulgated pursuant to NYLL § 199, which vests the New York Department of Labor with the authority to "issue such rules and regulations as [the Commissioner of Labor] determines necessary for the purposes of carrying out the provisions of this article." *See Carvente-Avila v. Chaya Mushkah Rest. Corp.*, No. 12-CV-5359 (KBF), 2016 WL 3221141, at *2 (S.D.N.Y. Mar. 1, 2016) (noting §§ 146-1.3 and 146-2.2 were promulgated pursuant to NYLL § 199). Notably, NYLL § 195(1)(a) is the only provision of the NYLL that sets forth a requirement that employees be provided with a wage notice, and so the only reasonable interpretation of §§ 146-1.3 and 146-2.2 is that the NYDOL deemed them necessary to carry out NYLL § 195(1)(a). *See Boreali v. Axelrod*, 130 A.D.2d 107, 119 (3d Dep't 1987), *aff'd*, 71 N.Y.2d 1 (1987) (regulations must be reasonably related to the purposes of the enabling legislation and must be "in harmony with the language, policy, remedial structure and legislative history of the governing statute"). Accordingly, the Wage Notice Claims arise out of NYLL § 195(1)(a).

With respect to Plaintiffs' Pay Statement Claims, in their Amended Complaint, Plaintiffs expressly assert that these claims arise pursuant to NYLL § 195(3). *See* Dkt. 82 at ¶ 18. The Court is not persuaded by Plaintiffs' arguments that these claims, which relate to the requirements of and expressly refer to NYLL § 195(3), somehow instead arise under NYLL §§ 652 and 663, neither of which make any reference to information that must be included in a pay statement. Accordingly, Plaintiffs' argument that their Wage Notice and Pay Statement claims arise under NYLL §§ 652 and 663 lacks merit.

In sum, and for the foregoing reasons, the Court finds that the § 198 Affirmative Defense is applicable to Plaintiffs' Wage Notice and Pay Statement Claims and that, if Defendants are ultimately able to show that they otherwise paid all wages due to Plaintiffs, they will not be liable for further damages. However, and for the reasons discussed below, the Court further finds that it cannot hold, based on the current record, that Defendants paid all wages due to Plaintiffs.

## B. Factual Issues Preclude Summary Judgment Based on the § 198 Affirmative Defense

Plaintiffs have argued that the § 198 Affirmative Defense does not apply here because they were not paid all of their wages due and that, as a matter of law, Defendants cannot make such a showing. Defendants, relying on the April 15th Stipulation, contend that they paid all wages due to Plaintiffs and that Plaintiffs were at all times paid at least the standard minimum wage.

The Court first determines that, contrary to Plaintiffs' argument, it is possible that Defendants could ultimately show that they are entitled to the § 198 Affirmative Defense.

Plaintiffs' argument relies on the Court's statement in the August 5th Decision and Order that "'[b]y definition, if Defendants took a tip credit to which they were not entitled, they underpaid wages.'" (Dkt. 297 at 25 (quoting Dkt. 205 at 24)). Plaintiffs have taken this statement out of context. The Court's statement in the August 5th Decision and Order referred to Defendants' argument that there had been no underpayment of wages as a matter of law – the Court rejected this argument, explaining that, if Defendants were not entitled to take the tip credit, they underpaid wages by definition. (Dkt. 205 at 24). The Court's statement was quite clear, and was premised on the legal possibility that Defendants had taken a tip credit to which they were not entitled. However, nothing in the Court's decision foreclosed the possibility that Defendants could show that they were entitled to take the tip credit, or that they had otherwise paid all wages to which Plaintiffs were entitled. As such, to the extent that Plaintiffs argue that Defendants are foreclosed as a matter of law from asserting that they paid Plaintiffs all wages due and owing, they are incorrect. At least one New York Court has reached the same conclusion. In *Ahmed v. Morgans Hotel Grp. Mgmt.*, LLC, 54 Misc. 3d 1220(A), 55 N.Y.S.3d 691 (Sup. Ct., N.Y. Co. 2017), the court granted summary judgment to the defendant based on the § 198 Affirmative Defense where, although the plaintiff had not received the notices required by the Wage Order, he acknowledged that he had received "$5.00 per hour as his base wage, and $2.25 in tips per hour to meet the minimum wage in effect at that time." *Id.* at 1220A, 691.

However, the Court does find that, based on the current record, Defendants have failed to demonstrate that they are entitled to summary judgment based on the § 198

Affirmative Defense.  With respect to affirmative defenses, the defendant relying upon them bears "the burden of . . . establishing [them] at trial or on a motion for summary judgment." *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996).  In this case, Defendants' assertions that they paid Plaintiffs the wages that were due and owing and that Plaintiffs never received less than minimum wage are based on the April 15th Stipulation and, as the Court has already explained, the April 15th Stipulation is insufficient, standing alone, to demonstrate that no genuine issue of material fact exists with respect to the facts set forth therein.  Moreover, the Court notes that Plaintiffs' Amended Complaint expressly asserts that Defendants forced Plaintiffs to work in jobs that were unrelated to their tipped jobs while paying them subminimum wages.  Discovery on this claim has been stayed, and neither party has presented the Court with any factual information regarding the related allegations' truth or falsity.  This Court cannot decide, in a factual vacuum and based solely on the April 15th Stipulation, that Defendants paid all wages due and owing when there are clearly outstanding factual issues and legal claims that bear on that determination.    Accordingly, the Court denies Defendants' request for summary judgment based on the § 198 Affirmative Defense without prejudice to renewal upon a more fully developed factual record.

The Court further notes that the existence of a genuine issue of material fact related to Defendants' entitlement to the § 198 Affirmative Defense forecloses any possibility of granting summary judgment in favor of Plaintiffs on the Wage Notice and Pay Statement Claims.  As a result, the Court need not and declines to discuss any further

the specific arguments made in support of Plaintiffs' motion for partial summary judgment.

## V.    The Court Declines to Vacate its Earlier Grant of Summary Judgment to Named Plaintiff Kristin Raymond at this Time

In the August 5th Decision and Order, the Court found in favor of named plaintiff Kristin Raymond with respect to her Wage Notice Claim against her former employer, defendant TLC West, LLC.  The Court's holding rested on its determination that "the record plainly shows that Defendants did not provide Ms. Raymond with a compliant wage notice on January 1, 2011."  (Dkt. 205 at 30).   However, the Court declined to award damages to Ms. Raymond at that time, noting that "the record is not clear as to the amount of damages that Ms. Raymond should be awarded." (Dkt. 205 at 31).

In connection with their motion for partial summary judgment, Defendants ask the Court to revisit this holding in light of intervening developments.   Specifically, Defendants contend that this Court should defer to the Opinion Letter, which interprets both § 146-1.3 and 12 N.Y.C.R.R. § 146-2.2 ("§ 146-2.2") and concludes that "a food service employer is eligible to claim the tip credit even when they fail to provide written notice of the tip credit rules provided that the employer can demonstrate compliance with all other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit."    (Dkt. 281-4 at 18).    Plaintiffs oppose Defendants' request that the Court revisit its prior holding, arguing that (1) the doctrine of law of the case renders the Court's prior holding binding, and (2) the Opinion Letter is not entitled to deference.

A.    **The Doctrine of Law of the Case does not Prevent the Court from Revisiting its Prior Holding**

The doctrine of law of the case, pursuant to which the Court "avoid[s] reconsideration of matters once decided during the course of a single continuing lawsuit," is discretionary and "merely expresses the practice of the courts generally to refuse to reopen what has been decided." *Devilla v. Schriver*, 245 F.3d 192, 197 (2d Cir. 2001) (internal quotations omitted). It does not represent a limit on the Court's authority, and the Court remains free to revisit its earlier determinations, particularly in cases of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983) (internal quotation omitted).

In this case, the doctrine of law of the case does not prevent the Court from revisiting its prior holding because new evidence that bears on the issue – namely, the NYDOL's purported interpretation of the relevant regulations, as set forth in the Opinion Letter – is now available. Under these circumstances, the Court finds it appropriate to consider whether this new evidence ultimately changes its analysis.

B.    **The Court is not Persuaded, on the Current Record, that the Opinion Letter Requires Vacating the August 5th Decision and Order**

With respect to the Opinion Letter, the parties have focused, in their competing motions, on whether or not it is entitled to deference by this Court. The Court notes as an initial matter that it finds the provenance of the Opinion Letter peculiar, to say the least. As set forth above, the Opinion Letter was obtained through political channels as a direct attempt to contradict this Court's prior decision. Defendants have not identified

- 21 -

any authority addressing the deference due to a purported agency interpretation under these highly unusual circumstances, and the Court is not persuaded that the traditional analysis is applicable where a party has admittedly sought the proffered interpretation solely because it was unhappy with an earlier judicial decision. Judicial review is a long-established and important aspect of our government's separation of powers, and just as it is inappropriate for the courts to interfere in the functions of the legislative and executive branches, so too does it seem problematic for a party to invite an executive agency to intervene in an ongoing litigation. *See generally United States v. Windsor*, 570 U.S. 744, 762 (2013) (noting that "[i]t is emphatically the province and duty of the judicial department to say what the law is").

Having reviewed the Opinion Letter in detail, the Court determines, for the reasons set forth below, that, on its own terms, it does not require vacatur of the August 5th Decision and Order. Accordingly, the Court need not and does not reach the issue of whether the Opinion Letter is entitled to deference, a matter on which courts in this Circuit have disagreed. *Compare Carvente*-Avila, 2016 WL 3221141, at *2 ("The NYDOL Letter is entitled to deference") *with Marin*, 2017 WL 4950009, at *32 ("The Court declines to defer to the conclusion reached by Mr. Ben-Amotz").

In order to properly analyze the impact of the Opinion Letter, it is first necessary to identify what the August 5th Decision and Order did and did not hold. Federal Rule of Civil Procedure 56(g) expressly provides this Court with the authority, where it determines that a party is not entitled to all the relief sought in a motion for summary judgment, to nonetheless "enter an order stating any material fact . . . that is not genuinely

in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). In this case, the factual determination made in the August 5th Decision and Order was that "Defendants did not provide Ms. Raymond with a compliant wage notice [pursuant to § 146-2.2] on January 1, 2011." (Dkt. 205 at 30). The notice at issue, in contravention of § 146-2.2, did not state that Ms. Raymond's employer intended to take a tip credit, nor did it state the amount of the tip credit to be taken or that Ms. Raymond was entitled to makeup pay if she did not earn enough in tips to bring her rate of pay up to the basic minimum hourly wage. (*Id.*). Accordingly, the Court found that "no reasonable jury could conclude that this wage notice complied with the Wage Order." (*Id.*). In short, the August 5th Decision and Order concluded, as a matter of law, that Defendants had failed to comply with the requirements of § 146-2.2.

The Opinion Letter does not change this conclusion, nor could it do so. The plain language of § 146-2.2 requires that certain information be provided in the wage notice, and that information was not provided in this case. Instead, the Opinion Letter is concerned solely with the appropriate *remedy* for a violation of § 146-2.2 – namely, whether an employer who fails to provide a compliant wage notice but is otherwise able to "demonstrate compliance with all of the minimum wage requirements and that their employees understood the manner in which the employer took the tip credit" (Dkt. 281-4 at 18) is solely subject to civil penalties under Section 218 of the NYLL or also loses the right to claim the tip credit. On its face, then, the Opinion Letter presupposes that the employer in question failed to comply with the written notification requirements of § 146-2.2. Accordingly, nothing in the Opinion Letter requires the Court to revisit its

conclusion in the August 5th Decision and Order that Defendants failed to provide Ms. Raymond with a wage notice that complied with the Wage Order.

With respect to the issue of the appropriate remedy for Defendants' violation of the Wage Order, the Court did state in the August 5th Decision and Order that "Defendants were not entitled to take a tip credit" due to the failure to provide a compliant wage notice. (Dkt. 205 at 31). The Court ultimately declined to reach the issue of damages, explaining that it could not determine from the record the amount of damages owed to Ms. Raymond. (*Id.*). As such, the Court's statement regarding Defendants' entitlement to take the tip credit amounted to dicta, inasmuch as it was not necessary to the result ultimately reached by the Court. *See In re Bean*, 252 F.3d 113, 118 (2d Cir. 2001) (findings are dicta if they were "not necessary to decide the issue before the district court"). There is no need for the Court to reopen or vacate its prior order based solely on dicta found therein.

As discussed at length above, there are factual issues in this case regarding the applicability of the § 198 Affirmative Defense that preclude entry of summary judgment on behalf of the plaintiffs. Those same factual issues prevent the Court from reaching the issues of damages at this time. Of course, "dicta . . . is not binding as the law of the case," *Ryan v. Allen*, 992 F. Supp. 152, 156 (N.D.N.Y. 1998), and, if and when the issue of damages does become ripe, Defendants may, at that time, argue that loss of the tip credit is not an available remedy for their violation of the wage notice requirements set forth in § 146-2.2. That time is not now, and so there is no reason for the Court to vacate

the August 5th Decision and Order, or to decide whether the Opinion Letter is entitled to deference as to the damages Ms. Raymond may ultimately recover.

### C.   Defendants have not Established that their Employees were Otherwise Aware of the Tip Credit Rules

For the reasons discussed above, the Court declines to vacate the August 5th Decision and Order at this time. However, even if the Court was inclined to grant deference to the Opinion Letter and find that an employer may claim the tip credit where it fails to provide a written wage notice as provided in § 146-2.2 but is otherwise able to demonstrate compliance with all of the minimum wage requirements and its employees' understanding of the manner in which the employer took the tip credit, the Court still could not grant summary judgment in Defendants' favor.

Defendants argue that they are entitled to summary judgment in their favor with respect to the Wage Notice Claims because Plaintiffs had actual knowledge that Defendants were taking a tip credit from the minimum wage for employees working in tipped positions. (Dkt. 281-6 at 22). However, the factual basis for this argument is the April 15th Stipulation and, as discussed at length above, the Court rejects Defendants' contention that the April 15th Stipulation is sufficient to establish the truth of the facts set forth therein. Moreover, the Court finds that its resolution of Defendants' eligibility for the tip credit turns on the disputed fact of whether or not Plaintiffs, in fact, had actual knowledge of the tip credit rules. In other words, while Plaintiffs may have agreed not to contend that their actual knowledge is a material fact in resolving the instant motions, the Court made no such agreement, and the Court does indeed find that Plaintiffs' actual

knowledge is highly relevant.   Accordingly, the Court would not grant summary judgment to Defendants on the Wage Notice claims at this time even were it to adopt the analysis set forth in the Opinion Letter.

## VI.   Defendants' Remaining Arguments Related to the Pay Statement and Wage Notice Claims Lack Merit

In addition to the arguments considered by the Court above, Defendants have also argued that they are entitled to summary judgment because they provided Plaintiffs with compliant wage notices and pay statements, and have further purported to incorporate by reference all the other arguments made in their initial motion for partial summary judgment. Defendants' remaining arguments represent nothing more than a regurgitation of arguments that were squarely rejected by this Court in the August 5th Decision and Order and its denial of the Motion for Reconsideration.   Defendants have offered no reason, such as new evidence or an intervening change in controlling law, as to why the Court should revisit those issues at this time.   Defendants are advised that any further attempts to reassert already rejected arguments based on nothing more than counsel's disagreement with the Court's analysis will be summarily denied.

## VII.   Defendants' Motion for Summary Judgment on Plaintiffs' FLSA Claims is Denied

In addition to seeking summary judgment on the Pay Statement and Wage Notice Claims, Defendants ask the Court for summary judgment on Plaintiffs' FLSA claims. The Court's Order granting the parties permission to file additional dispositive motions was limited to the Pay Statement Claims and the Wage Notice Claims. (*See* Dkts. 273, 274).   The Court notes that discovery has been stayed as to all claims other than the Pay

Statement Claims and the Wage Notice Claims. (*See* Dkt. 241). As such, the Court finds that it would be inappropriate and premature to consider summary judgment as to Plaintiffs' FLSA claims.

## VIII. The Court Declines to Reach the Issue of Defendants' Status as Employers

In connection with their motion for summary judgment, Plaintiffs have asked the Court to determine, as a matter of law, that all of the Defendants should jointly be considered Plaintiffs' employers. (*See* Dkt. 286 at 13-14). Defendants oppose this request, contending that genuine issues of material fact exist with respect to the status of all Defendants except TLC West, LLC and TLC Central, LLC. For the reasons discussed below, the Court finds that summary judgment on this point is not warranted at this time.

As a threshold matter, the Court notes that Plaintiffs have analyzed the issue of whether Defendants are liable as Plaintiffs' employers solely under federal law, but the Second Circuit has expressly noted that the standard for employer status under the NYLL and the standard for employer status under the FLSA are not necessarily the same. *See Irizarry v. Catsimatidis,* 722 F.3d 99, 117 (2d Cir. 2013) ("Plaintiffs assert that the tests for 'employer' status are the same under the FLSA and the NYLL, but this question has not been answered by the New York Court of Appeals."); *cf. Hart v. Rick's Cabaret Int'l, Inc.,* 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) ("the New York Court of Appeals has articulated a standard for determining whether a worker is an employee . . . under the NYLL that is phrased differently than the FLSA inquiry"). Plaintiffs' moving papers do not discuss or consider this issue, nor do they present any argument as to why the Court should apply a federal standard in determining whether Defendants qualified as

- 27 -

employers under New York law.   Because they have not analyzed the issue of Defendants' employer status under New York law, Plaintiffs have not met their burden of demonstrating that all Defendants should be considered their employers with respect to their NYLL claims.

Moreover, and as discussed above, the Court did not grant the parties permission to file dispositive motions related to Plaintiffs' FLSA claims, nor has discovery related to these claims occurred.  It would, therefore, be premature for the Court to determine based on the current record that all Defendants qualified as Plaintiffs' employers for FLSA purposes.   Accordingly, Plaintiffs' request for summary judgment regarding Defendants' status as employers is denied without prejudice to renewal upon a more complete record.

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment (Dkt. 281) is denied, but the Court amends its prior determination that Defendants are not entitled to the § 198 Affirmative Defense as a matter of law.  As noted above, the § 198 Affirmative Defense is applicable to Plaintiffs' Wage Notice and Pay Statement Claims, but fact issues preclude summary judgment in favor of Defendants on that affirmative defense.   In addition, Plaintiffs' motion for partial summary judgment (Dkt. 285) is denied.

The parties are reminded that the Court's prior order prohibiting the filing of dispositive motions prior to the completion of fact discovery without the Court's permission (Dkt. 231) remains in effect.

For reasons of judicial efficacy, the Court orders that any further stipulations between the parties in this case requiring Court approval must be submitted to the undersigned.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 12, 2018
      Rochester, New York